1  Brian C. Park, WSBA No. 25584
   Jacqueline Middleton, WSBA No. 52636
2  STOEL RIVES LLP
   600 University Street, Suite 3600
3  Seattle, WA 98101
   *brian.park@stoel.com*
4  *jacqueline.middleton@stoel.com*
   Tel.: (206) 386-7542
5  Fax: (206) 386-7500

6  Joshua A. Hartman (*pro hac vice*
   forthcoming)
7  MERCHANT & GOULD, P.C.
   1900 Duke St., Suite 600
   Alexandria, VA  22314
8  Tel.: (703) 518-4504
   Fax:  (612) 332-9081
9  *jhartman@merchantgould.com*

10 Eric R. Chad (*pro hac vice* forthcoming)
   MERCHANT & GOULD, P.C.
11 2200 Fifth Street Towers
   150 South Fifth Street
12 Minneapolis, MN 55402-4247
   Tel.: (612) 332-5300
13 Fax: (612) 332-9081
   *echad@merchantgould.com*

   Qianwu Yang (*pro hac vice* forthcoming)
   Xiaomin Cao (*pro hac vice* forthcoming)
   SHM LAW FIRM
   China Resources Tower, 2666 Keyuan South
   Rd., Nanshan
   25F
   Shenzhen, China 518052
   Tel.: +86 139 2521 2009
   *yang@shm.law*
   *cao.xiaomin@shm.law*

14

15                 UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF WASHINGTON
16                        AT SEATTLE

17 SHENZHEN ROOT
   TECHNOLOGY Co., Ltd.,                    No. 2:23-cv-631
18
                                            **DECLARATORY JUDGMENT**
19 Plaintiff,                               **COMPLAINT**

20 v.                                       JURY DEMAND

21 CHIARO TECHNOLOGY, LTD.,

22 Defendant.

23

24

25

26

COMPLAINT AND JURY DEMAND — 1

1
2
3
4

Plaintiff Shenzhen Root Technology Co., Ltd., trading as "Momcozy" ("Momcozy" or "Plaintiff"), hereby files this Declaratory Judgment Complaint against Defendant Chiaro Technology, Ltd., trading as "Elvie" ("Elvie" or "Defendant"), and alleges as follows:

## NATURE OF THE ACTION

5
6
7
8
9

1.       This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, and the United States Patent Act, 35 U.S.C. § 1, *et seq.* Momcozy seeks declaratory judgments that U.S. Patent No. 11,357,893 ("the '893 Patent")[1] is not infringed by Momcozy's wearable breast pumps, including without limitation its flagship product, the S12 Pro, and that the '893 Patent is invalid.

10
11
12

2.       This action further arises under the laws of the state of Washington. Momcozy seeks an order remedying Defendant's tortious interference with Momcozy's business expectancies.

13

## FACTUAL BACKGROUND

14

**A.       Momcozy Is a Leading Seller of Breast Pumps on the Amazon.com Marketplace**

15
16
17
18
19
20

3.       Momcozy is a leader in the maternity- and infant-care product fields. Momcozy is the top brand in Amazon's baby category. The vast majority of Momcozy's United States sales are made through the Amazon.com marketplace, where it has been the leading seller in the "Breast Pump" and "Electric Breast Pump" product categories and the top brand in the "baby" category. Since entering the market in early 2019, Momcozy has been extraordinarily successful—its sales have at least doubled each year.

21
22
23
24
25

4.       Momcozy's flagship product is the S12 Pro breast pump, which it developed to include an innovative design and suction structure that helps mothers solve the problem of breastfeeding. Within months after its launch on November 8, 2022, the S12 Pro generated millions of dollars in sales via the Amazon.com marketplace and achieved the number one position in the electric breast pump product category. The resounding marketplace success of Momcozy's breast

26

[1] *See* Ex. 1.

COMPLAINT AND JURY DEMAND — 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

pumps, including the S12 Pro, is no accident—moms have responded to its combination of innovation, quality, comfort, and value, and the S12 Pro has earned Amazon.com buyer reviews that average more than four stars.

**B.      Defendant Has Accused Momcozy's More Successful Products of Infringing the '893 Patent**

5.      Defendant also sells maternal care products, including breast pumps, which it markets under the Elvie trade name. Although, like Momcozy, Defendant sells its breast pump products in the United States through Amazon.com, it has failed to achieve Momcozy's marketplace success—Defendant's breast pumps are ranked far outside of the top ten on Amazon.com and have earned inferior average ratings based on buyer reviews.

6.      Unable to fairly compete in the market, Defendant has instead sought to interfere with Momcozy's sales via the Amazon.com marketplace via unsupported and incorrect accusations of patent infringement. In particular, Defendant has accused Momcozy's breast pumps of infringing the '893 patent, titled "Breast Pump System," and naming Jonathan O'Toole, Adam Rollo, and Andrew Carr as inventors and Chiaro Technology, Ltd. as the applicant and assignee.[2] The '893 patent issued on June 14, 2022, from U.S. Patent Application No. 17/203,050 (the "'050 Application"), which Defendant filed on March 16, 2021, long after Momcozy entered the breast pump market.

7.      The '893 patent describes its purported invention as an improved "wearable breast pump system including a housing shaped at least in part to fit inside a bra and a piezo air-pump."[3] The patent's specification describes breast pumps that predated this invention as typically using a "large suction generating device . . . . [that] is attached by air lines to one or two breast shields which engage with the user's breasts."[4] Such prior art breast pumps' "suction generating device" applied a "pressure cycle . . . via the air lines[] to the breast shields[,] . . . . [which] generate[d] a

---

[2] Ex. 1, the '893 patent, cover page.
[3] *Id.*, Abstract.
[4] *Id.* at 1:43-46.

COMPLAINT AND JURY DEMAND — 3

pressure cycle on the user's breasts to simulate the suction generated by a feeding child."[5] Such prior art breast pumps also typically included components such as "[m]ilk collection bottles," which could be in the form of separate bottles connected to each breast shield with tubing.[6] In addition, such prior art breast pumps often included "specialized bras" to enable mothers to use the breast pump "discretely, such as in an office environment."[7] These specialized bras included "a central slit, for the nipple tunnel of the breast shield to extend through," and held the "breast shield within the bra, with the suction generating device and milk bottle outside the bra."[8]

8.      The '893 patent also notes that "[f]ully integrated wearable breast pump systems have begun to enter the market . . . [that contain] the suction source, power supply and milk container . . . in a single, wearable device[,] [such that] there is no need for bulky external components or connections."[9] But the patent identifies additional problems with these wearable breast pumps. For example, the patent describes an earlier patent application, US 2013 0023821 A1, that discloses an "integrated wearable breast pump system" in which "[t]he breast shield has a small protrusion to engage with the[] housing components," including "a motor driven vacuum pump and power source."[10]

9.      The '893 patent purports to improve upon these prior art breast bumps. Its "Summary of the Invention" section identifies "[t]he invention [a]s a wearable breast pump system including: a housing shaped at least in part to fit inside a bra; a piezo air-pump fitted in the housing and forming part of a closed loop system that drives a separate, deformable diaphragm to generate negative air pressure, that diaphragm being removably mounted on a breast shield."[11] Figures 3 and 4 below depict an embodiment of this alleged invention:

---

[5] *Id.* at 1:46-50.
[6] *Id.* at 1:52-56.
[7] *Id.* at 1:57-58.
[8] *Id.* at 1:61-62.
[9] *Id.* at 2:7-12.
[10] *Id.* at 2:45-53.
[11] *Id.* at 3:66-4:4.

COMPLAINT AND JURY DEMAND — 4

STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA  98101

1
2
3
4
5
6
7
8
9
10

 

**'893 patent, Fig. 3**     **'893 patent, Fig. 4**

As these figures show, the disclosed breast pump includes a housing (element 1) and milk collection container (element 3) that together from a shape that "roughly conforms with the shape of a tear-drop' shaped breast[,] . . . . which allows the breast pump 100 to substantially fit within the cup of a user's bra."[12] Also shown above is a breast shield (element 7), which nestles into the housing when the components are assembled together. The housing contains a piezo air pump (not shown above), and the breast pump includes a "diaphragm [element 13] for transferring the pressure from the pump to the milk-collection side of the system."[13] The diaphragm is held in place by a two-part diaphragm housing (elements 19A and 19B). As shown above, one of these parts of the diaphragm housing, element 19B, "is provided in a recessed portion of the housing 1."[14]

10.     The '893 patent contains a single independent claim and 27 dependent claims, all of which depend from independent claim 1. Claim 1 recites:

A breast pump device that is configured as a self-contained, in-bra wearable device, the breast pump comprising:

a housing that includes:

a battery, and

---

[12] *Id.* at 8:38-41.
[13] *Id.* at 10:35-37.
[14] *Id.* at 11:34-36.

COMPLAINT AND JURY DEMAND — 5

STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA  98101

a pump powered by the battery and generating negative air pressure;

a breast shield made up of a breast flange and a nipple tunnel;

a milk container that is configured to be attached to and removed from the housing; and

a diaphragm configured to be seated against a diaphragm holder that forms a recess or cavity at least in part with an external surface of the housing, the diaphragm deforming in response to changes in air pressure caused by the pump to create negative air pressure in the nipple tunnel.

11.     The version of claim 1 that appeared in the '050 Application as originally filed does not include the limitations in the last paragraph, including "a diaphragm configured to be seated against a diaphragm holder that forms a recess or cavity at least in part with an external surface of the housing." Rather, Defendant amended claim 1 to add those limitations in response to a rejection by the U.S. Patent and Trademark Office examiner who assessed the '050 Application based on prior art references, including US 2013 0023821 A1. Notwithstanding Defendant's amendment to add these limitations, the '893 patent does not describe any breast pump having a "diaphragm holder that forms a cavity at least in part with an external surface of the housing." Indeed, the '050 Application, as originally filed, does not use the word "cavity."

**C.      Momcozy's Breast Pumps Do Not Infringe Claim 1 of the '893 Patent**

12.     Momcozy's breast pumps, including the S12 Pro, differ from the breast pump recited by claim 1 of the '893 patent. For example, the S12 Pro's housing, which includes a non-piezo pump, is positioned atop a domed milk container that fits over the breast, such that it projects out above a bra when worn.



**Momcozy's S12 Pro**

13.     Momcozy's breast pumps do not meet each of claim 1's limitations. For example, the S12 Pro does not include "a diaphragm holder that forms a recess or cavity at least in part with an external surface of the housing," as claim 1 requires. Rather, as shown below, the S12

COMPLAINT AND JURY DEMAND — 6

Pro's diaphragm holder is completely separate from the housing and does not form a recess or cavity with the housing's external surface—the diaphragm holder is located entirely within the milk container. It instead includes a tube extending from the outer surface of the milk container that inserts into an opening in the housing, enabling transfer of the negative pressure generated by the pump to the diaphragm:

14.     Because the wall of the S12 Pro's milk container separates its diaphragm holder



from the pump's housing, the diaphragm holder does not "form[] a recess or cavity at least in part with the external surface of the housing," as claim 1 requires. At least for this reason, the S12 Pro does not infringe the '893 patent.

**D.      Defendant Interfered with Momcozy's Sales Via Amazon.com by Initiating an Amazon "APEX" Proceeding and Baselessly Accusing the S12 Pro of Infringement**

15.     In June 2022, Defendant wrote to Momcozy claiming that certain of its breast pumps infringed the '893 patent, demanding that Momcozy cease and desist from making, using, importing, selling, or offering to sell those products, and requesting information that Defendant could use to calculate damages. Defendant specifically stated that these "demands do not constitute

COMPLAINT AND JURY DEMAND — 7

an offer of settlement."[15] Momcozy responded in July 2022 and explained that its products do not infringe.

16.     After the Parties exchanged further correspondence, on or around February 1, 2023, Defendant requested that nonparty Amazon.com, Inc. ("Amazon") initiate an Amazon Patent Evaluation Express ("APEX"), an extrajudicial patent dispute resolution process conducted before a single neutral evaluator selected by Amazon who receives a fixed fee of $4,000, which the losing party must pay. APEX proceedings are abbreviated proceedings, lasting only a few weeks, with no opportunity for discovery or to submit evidence and with strict limits on the available defenses. Unsurprisingly, the APEX program "has drawn criticism for disproportionately one-sided outcomes[,] leading to its use as a retaliatory tool."[16] As one authority has observed, "[t]he patent holder wins a disproportionate amount in APEX proceedings, creating incentives to initiate the process without valid claims."[17]

17.     Through its APEX request, Defendant sought to have Amazon remove allegedly infringing product listings of Momcozy's breast pumps, including its flagship S12 Pro product, from the Amazon.com marketplace; its request included the Amazon Standard Identification Numbers ("ASINs") for the S12 Pro, B09VPNMT1P and B09VPRJ2S8. Momcozy has sold these and other breast pumps included in the APEX request through corporate affiliates that it controls, Shenzhen Conglin e-Commerce Co., Ltd., and Shenzhen Jinruihang Technology Co., Ltd.

18.     After Defendant asked Amazon to initiate the APEX proceeding, Amazon contacted Momcozy in writing on February 1, 2023. Amazon informed Momcozy that it could either participate in the APEX or attempt to resolve the dispute with Defendant or in litigation.[18] Amazon further alerted Momcozy that if it refused to participate in the APEX proceeding and failed to resolve the dispute or file a district court complaint within three weeks, then Amazon

---

[15] Ex. 2.
[16] Nicholas Lipperd, "Is Amazon's APEX the Top Option for Patent Rights?", WASH. J. OF LAW, TECH. & ARTS (Jan. 31, 2023), https://wjlta.com/2023/01/31/is-amazons-apex-the-top-option-for-patent-rights/ (last visited Apr. 27, 2023).
[17] *Id.*
[18] *See* Ex. 3.

COMPLAINT AND JURY DEMAND — 8

STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA  98101

would remove Momcozy's relevant product listings.[19] Although Momcozy attempted to resolve the dispute with Defendant, this was unsuccessful. Because of the importance of sales of the S12 Pro via Amazon.com to its business, Momcozy thus agreed to participate in the APEX proceeding.

19.     Unfortunately, consistent with the APEX's reputation as disproportionately favoring patent owners, and even though the S12 Pro does not meet each limitation of the '893 patent's single independent claim (including "a diaphragm holder that forms a recess or cavity at least in part with an external surface of the housing"), the APEX proceeding resulted in a finding adverse to Momcozy.

20.     This result was particularly surprising for the S12 Pro because Defendant did not address that product in its opening APEX submission; its analysis focused on a different model, the S12, which materially differs from the S12 Pro. Unlike the S12, the S12 Pro's diaphragm holder is located entirely within the milk container, such that there is no objectively reasonable basis for contending that the S12 Pro's diaphragm holder forms a recess or cavity at least in part with the external surface of the housing. Yet Defendant did not separately address this limitation with respect to the S12 Pro in its opening APEX briefing, suggesting that Defendant did not analyze or review the S12 Pro prior to including it in its APEX request. Defendant separately discussed the S12 Pro only in its APEX reply brief, effectively conceded that the S12 Pro's diaphragm does not form a "recess" at least in part with the housing's external surface, and failed to meaningfully explain how the diaphragm holder forms a "cavity" in part with the external surface of the housing, even though the diaphragm holder is enclosed within the S12 Pro's milk container.

21.     One day after the APEX decision, on April 25, 2023, Amazon removed the ASINs for the S12 Pro, such that Momcozy can no longer sell the product via Amazon.com. Amazon sellers cannot appeal the result of an APEX decision. Momcozy thus is left with no means of addressing the incorrect APEX ruling and reactivating its products listings other than this action. Absent a declaration of non-infringement, invalidity, or unenforceability, Defendant may continue

---

[19] *See id.*

COMPLAINT AND JURY DEMAND — 9

STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101

to utilize Amazon's extra-judicial procedures to exclude Momcozy's noninfringing products from the Amazon.com marketplace, leading to significant losses in sales, customers, and goodwill. Furthermore, due to the APEX decision against Momcozy, Defendant will have the ability to immediately and summarily remove Momcozy's products, including redesigns in most cases, from the Amazon.com marketplace.

22.     This delisting has already severely harmed Momcozy's business. Momcozy's lost sales of the delisted S12 Pro amount to thousands of dollars a day and a significant portion of Momcozy's projected revenue. Further, the delisting also will lead to declines in Momcozy's product reviews, ratings, and Amazon ranking, which results in lower product visibility in consumer searches and affects Momcozy's ability to retain "Amazon Choice" and "Amazon Bestseller" recognition on the Amazon.com platform.

23.     Based on the foregoing, a justiciable case or controversy exists between Plaintiff and Defendant as to whether the S12 Pump infringes the '839 Patent, whether Defendant wrongfully prosecuted the APEX action against Plaintiff, and whether the claims of the '893 patent are valid and enforceable. Momcozy therefore has filed this Complaint to redress the incorrect APEX decision, obtain declaratory judgments of patent noninfringement and invalidity, and remedy the damage to its business caused by Defendant's interference with Momcozy's Amazon.com business.

## PARTIES

24.     Plaintiff is organized under the laws of the People's Republic of China and has its principal place of business at Shenzhou Computer Building, Curie Madame Avenue, Longgang District, Shenzhen, China.

25.     Defendant is organized under the laws of the United Kingdom, with its principal place of business at 63-66 Hatton Garden, EC1N 8LE, London, United Kingdom. On information and belief, Defendant is the assignee and owner of the '893 patent.

COMPLAINT AND JURY DEMAND — 10

STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA  98101

**STANDING, JURISDICTION, AND VENUE**

26.      This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, the United States Patent Act, 35 U.S.C. § 1, *et seq.*, and the laws of the state of Washington. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 2201, 2202, 1331, and 1338(a) because an actual case or controversy currently exists between the Parties regarding the subject matter of this action, and the Court would have subject matter jurisdiction over this action if Defendant initiated suit for patent infringement. This court has subject matter over the state law claims asserted in this action pursuant to 28 U.S.C. § 1367(a) because they are so related to the declaratory judgment claims that they form part of the same case or controversy.

27.      Further, Momcozy has standing under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, because a substantial controversy exists between Momcozy and Defendant, which have adverse legal interests, of sufficient immediacy and reality to warrant the issue of a declaratory judgment. Based on Defendant's conduct—including (i) sending cease-and-desist letters accusing Momcozy of infringing the '893 patent, demanding information sufficient to calculate damages, and representing that these "demands do not constitute an offer of settlement";[20] and (ii) prosecuting an APEX proceeding in which it argued that Momcozy's products infringed and should be removed from Amazon.com—Momcozy has a real apprehension that it will face suit or other adverse action from Defendant regarding the '893 patent. Indeed, via the APEX proceeding, Momcozy already has been forced to address Defendant's infringement accusations in an alternative dispute resolution and has suffered both pecuniary and nonmonetary injuries as a result. Declaratory relief is thus appropriate and necessary to establish that the making, using, importation, sale, or offer of sale of the S12 Pro does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '893 Patent. Momcozy is entitled to a judgment declaring that it has not infringed and will not infringe any

---

[20] Ex. 2.

COMPLAINT AND JURY DEMAND — 11

**STOEL RIVES LLP**
600 University Street, Suite 3600
Seattle, WA  98101

1 claim of the '893 patent and an injunction requiring Defendant to retract its takedown requests

2 from Amazon.

3        28.      This Court has personal jurisdiction over Defendant because it purposefully availed

4 itself of the privileges of conducting commercial and legal activities in Washington through the

5 APEX proceeding, Momcozy's claims arise out of these activities, and this Court's exercise of

6 jurisdiction would be reasonable. As discussed above, Momcozy's claims arise out of Defendant's

7 prosecution of an APEX dispute resolution by Amazon to have Momcozy's products at issue

8 removed from the Amazon.com marketplace. As is widely known, Amazon's principal place of

9 business is located in Seattle, Washington, and on information and belief, Amazon manages

10 relations among sellers on its marketplace and administers the APEX program from its Seattle

11 facilities. Further, the agreement governing the Parties' APEX proceeding, which Defendant

12 signed, states that "Participants agree to the jurisdiction and venue of the federal and state courts

13 located in King County, Seattle, Washington."[21] Because Defendant voluntarily initiated an APEX

14 legal action directly related to Momcozy's claims with Amazon in Seattle, Washington, and agreed

15 to jurisdiction and venue in this forum, Defendant may reasonably expect to face litigation in this

16 district.

17        29.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a

18 substantial part of the events giving rise to the claim occurred in this district and were perpetrated

19 by Defendant using a resident of and wrongfully prosecuting an APEX legal proceeding in this

20 district—namely, the APEX proceeding discussed above. In addition, as also discussed above,

21 Defendant agreed with respect to the APEX proceeding "to the jurisdiction and venue of the federal

22 and state courts located in King County, Seattle, Washington."[22] Further, venue is proper in this

23 judicial district pursuant to 28 U.S.C. § 1391(c) because Defendant is subject to personal

24 jurisdiction in this district, and there is no other juridical district in which a substantial part of the

25 events or omissions giving rise to the claim occurred.

26
---
[21] Ex. 4, Amazon Patent Evaluation Express Agreement ¶ 5 (Feb. 1, 2023).
[22] *Id.*

COMPLAINT AND JURY DEMAND — 12

STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA  98101

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## COUNT I
### Declaratory Judgment of Non-Infringement of the '893 Patent

30.     Momcozy repeats and realleges each of the preceding paragraphs as if they are restated here and incorporates them by reference.

31.     The manufacture, use, offer for sale, sale, and/or import of Momcozy's breast pumps, including the S12 Pro, have not infringed and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '893 Patent. This is because Momcozy's breast pumps, including the S12 Pro, do not meet each and every limitation recited in claim 1 of the '893 Patent, as infringement requires.

32.     For example, and without limitation, the S12 Pro does not satisfy claim 1's requirement of "a diaphragm holder that forms a recess or cavity at least in part with an external surface of the housing." As explained above, the S12 Pro's diaphragm holder is located entirely within the milk container and does not form any recess or cavity with the external surface of the housing. Instead, the S12 Pro includes a tube extending from the outer surface of the milk container inserts into a separate opening in the housing when assembled, which enables direct transfer of the negative pressure generated by the pump to the diaphragm. Because the S12 Pro's milk container entirely encloses the diaphragm holder, separating it from the pump's external housing, the diaphragm holder does not "form[] a recess or cavity at least in part with the external surface of the housing," as claim 1 requires.

33.     An actual and justiciable case or controversy therefore exists between Momcozy and Defendant regarding whether Momcozy has infringed the claims of the '893 patent. Declaratory relief is thus appropriate and necessary to establish that the making, using, importation, sale, or offer of sale of the S12 Pro does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '893 Patent. Momcozy is entitled to a judgment declaring that it has not infringed and will not infringe any claim of the '893 patent.

COMPLAINT AND JURY DEMAND — 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**COUNT II**
**Declaratory Judgment of Invalidity of the '893 Patent Under 35 U.S.C. § 112(a)**

34.     Momcozy repeats and realleges each of the preceding paragraphs as if they are restated here and incorporates them by reference.

35.     The claims of the '893 patent are invalid for lack of written description and non-enablement under 35 U.S.C. § 112(a) because the patent's specification fails to reasonably convey to persons of ordinary skill in the art that the inventors had possession of the claimed subject matter as of the filing date. Further, the specification fails to disclose the full scope of claim 1 in sufficient detail to enable persons of ordinary skill to construct the breast pump recited in claim 1.

36.     For example, and without limitation, claim 1 of the '893 patent requires "a diaphragm holder that forms a recess or cavity at least in part with an external surface of the housing." As discussed above, this limitation was not included in the claims as originally filed in the '050 Application that led to the '893 patent; instead, it was added via amendment during prosecution to overcome the Patent Office examiner's rejections based on prior art.

37.     But the specification does not describe a breast pump having a diaphragm holder that meets the full scope of this limitation. Although the specification discusses embodiments of the invention that include a diaphragm holder that forms a "recess" in the external surface of the pump's housing, it does not describe any embodiment in which a diaphragm holder forms a "cavity at least in part with an external surface of the housing." Indeed, other than in the limitation of claim 1 added via amendment, the specification does not use the term "cavity."

38.     Consequently, the '893 patent's specification does not reasonably convey to persons having ordinary skill in the field of breast pump systems that the inventors possessed a breast pump that included "a diaphragm holder that forms a cavity at least in part with an external surface of the housing" as of the '050 Application's filing date. Claim 1 of the '893 patent is thus invalid for lack of written description. Further, because the specification does not enable persons

STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA  98101

of ordinary skill to construct a breast pump that includes "a diaphragm holder that forms a cavity at least in part with an external surface of the housing," claim 1 is invalid for non-enablement.

39.     Because claim 1 is invalid under section 112(a), each of the '893 patent's dependent claims are also invalid.

40.     An actual and justiciable case or controversy therefore exists between Momcozy and Defendant regarding the validity of the '893 Patent. Declaratory relief is thus appropriate and necessary, and Momcozy is entitled to a judgment declaring that the '893 patent's claims are invalid.

## COUNT III
### Tortious Interference With Prospective Business Expectancy

41.     Momcozy repeats and realleges each of the preceding paragraphs as if they are restated here and incorporates them by reference.

42.     Defendant knowingly and intentionally interfered with Momcozy's valid business expectancy of sales of its breast pumps, including the S12 Pro, via Amazon.com by improper means, causing Amazon to terminate that expectancy by removing the ASINs for those breast pumps, resulting in damages from Momcozy's lost sales of those breast pumps and associated products.

43.     As discussed above, Momcozy has been the leading seller in the "Breast Pump" and "Electric Breast Pump" categories on Amazon.com, achieving millions of dollars in sales.

44.     Defendant had knowledge of Momcozy's sales of the S12 Pro and other breast pumps via Amazon.com, as shown by its APEX request directed to those products.

45.     By submitting the APEX request and prosecuting the subsequent APEX proceeding, Defendant intentionally interfered with and caused the termination of Momcozy's ability to sell the S12 Pro and other breast pumps via Amazon.com.

46.     And Defendant used improper means to so interfere—as explained above, Defendant lacked an objectively reasonable basis to include at least the S12 Pro in its APEX request and accuse it of infringing the '893 patent, as shown by its failure to separately address

COMPLAINT AND JURY DEMAND — 15

STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA  98101

that model in its opening APEX brief and to meaningfully explain how it includes a "diaphragm holder forming a recess or cavity at least in part with an external surface of the housing."

47.     As a result of this misconduct, Momcozy has suffered damages, including thousands of dollars a day in lost sales of the S12 Pro and other breast pumps.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

i.      A judgment declaring that the manufacture, use, offer for sale, sale, and/or importation of Plaintiff's products have not infringed and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '893 patent;

ii.     A judgment declaring that the claims of the '893 patent are invalid;

iii.    An order enjoining Defendant from further enforcement of the '893 patent and requiring it to retract its takedown request from Amazon.

iv.     An award of monetary damages sufficient to compensate Plaintiff for Defendant's tortious conduct;

v.      An order awarding Plaintiff costs and reasonable attorney's fees as permitted by law; and

vi.     Such other and further relief as this Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: April 28, 2023.          STOEL RIVES LLP

*/s/Brian C. Park*
Brian C. Park, WSBA No. 25584
Jacqueline Middleton, WSBA No. 52636
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101
*brian.park@stoel.com*
*jacqueline.middleton@stoel.com*
Tel.: (206) 386-7542
Fax: (206) 386-7500

COMPLAINT AND JURY DEMAND — 16

STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA  98101

1

2          Joshua A. Hartman (*pro hac vice* forthcoming)
           MERCHANT & GOULD, P.C.
3          1900 Duke St., Suite 600
           Alexandria, VA  22314
4          Tel.: (703) 518-4504
           Fax:  (612) 332-9081
           *jhartman@merchantgould.com*
5
           Eric R. Chad (*pro hac vice* forthcoming)
6          MERCHANT & GOULD, P.C.
           2200 Fifth Street Towers
7          150 South Fifth Street
           Minneapolis, MN 55402-4247
           Tel: (612) 332-5300
8          Fax: (612) 332-9081
           *echad@merchantgould.com*
9
           Qianwu Yang (*pro hac vice* forthcoming)
10         Xiaomin Cao (*pro hac vice* forthcoming)
           SHM LAW FIRM
11         China Resources Tower, 2666 Keyuan South Rd.,
           Nanshan 25F
12         Shenzhen, China 518052
           Tel.: +86 139 2521 2009
13         *yang@shm.law*
           *cao.xiaomin@shm.law*
14
15         Attorneys for Plaintiff

16         SHENZHEN ROOT E-COMMERCE CO, LTD.

17

18

19

20

21

22

23

24

25

26

COMPLAINT AND JURY DEMAND — 17

**STOEL RIVES LLP**
600 University Street, Suite 3600
Seattle, WA  98101

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification and serve such filing on all counsel of record.

DATED:  April 28, 2023.

/s/ Karrie Fielder
Karrie Fielder, Litigation Practice Assistant

COMPLAINT AND JURY DEMAND — 18

**STOEL RIVES LLP**
600 University Street, Suite 3600
Seattle, WA  98101