STERNE, KESSLER, GOLDSTEIN & FOX PLLC
Nirav N. Desai (*pro hac vice* forthcoming)
Josephine Kim (*pro hac vice* forthcoming)
Richa Patel (*pro hac vice* forthcoming)
1100 New York Avenue N.W.
Washington, D.C. 20005
Telephone: 202.371.2600
Facsimile: 202.371.2540
Email: ndesai@sternekessler.com
Email: joskim@sternekessler.com
Email: rpatel@sternekessler.com

*Attorneys for Defendant Chiaro Technology, Ltd.*

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHENZHEN ROOT TECHNOLOGY Co., Ltd., | Case No. 2:23-cv-631 |
| Plaintiff, | Honorable: John H. Chun |
| v. | **DEEFENDANT'S OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |
| CHIARO TECHNOLOGY Ltd., | |
| Defendant. | |

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND ............................................................................... 5

   A.    Elvie is an Innovation Leader in Women's Health Products .................... 5

   B.    Elvie's Enforcement of the '893 Patent ...................................................... 7

III.  LEGAL STANDARD ......................................................................................... 8

IV.   ARGUMENT ....................................................................................................... 9

   A.    This Court Does Not Possess Jurisdiction ................................................. 9

   B.    Momcozy's Non-infringement and Invalidity Arguments Are Not Likely to Succeed on the Merits ................................................................................... 11

      1.    Momcozy's Device Has Already Been Found to Infringe .................... 11

      2.    Momcozy's Non-infringement Arguments Are Flawed ...................... 13

      3.    Momcozy's Invalidity Arguments Misapply the Law ......................... 15

   C.    Momcozy Has Not Shown that It Will Be Irreparably Harmed ................ 17

   D.    The Balance of Equities Weighs Against a TRO ...................................... 20

   E.    The Public Interest Weighs Against Issuing the Requested TRO ............ 21

V.    THE COURT SHOULD REQUIRE MOMCOZY TO POST A BOND......................... 21

VI.   CONCLUSION.................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
    559 F.3d 1046 (9th Cir. 2009)....................................................................................... 9, 19

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
    73 F. Supp. 2d 1228 (W.D. Wash. 1999), *vacated on other grounds,* 239 F.3d
    1343 (Fed. Cir. 2001) ..................................................................................................... 4

*Apple Inc. v. Samsung Elecs. Co.*,
    695 F.3d 1370 (Fed. Cir. 2012) ................................................................................... 18

*Augustine v. U.S.*,
    704 F.2d 1074 (9th Cir. 1983)...................................................................................... 10

*Capon v. Eshhar*,
    418 F.3d 1349, 76 USPQ2d 1078 (Fed. Cir. 2005).................................................... 16

*Dahl v. Swift Distrib., Inc.*,
    2010 WL 1458957 (C.D. Cal. April 1, 2010) ............................................................ 17

*East West Bank v. Shanker*,
    2021 WL 3112452 (N.D. Cal. July 22, 2021) ............................................................ 21

*Fin. & Sec. Prods. Ass'n v. Diebold, Inc.*,
    2005 WL 1629813 (N.D. Cal. July 8, 2005) .............................................................. 21

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70*
    *of Alameda Cnty.*,
    415 U.S. 423 (1974) ....................................................................................................... 9

*Johnson v. Couturier*,
    572 F.3d 1067 (9th Cir. 2009)....................................................................................... 9

*LA Alliance for Human Rights v. County of Los Angeles*,
    14 F.4th 947 (9th Cir. 2021).......................................................................................... 5

*Lydo Enters. v. City of Las Vegas*,
    745 F.2d 1211 (9th Cir. 1984)..................................................................................... 17

*Martin v. Johnson*,
    454 F.2d 746, 172 USPQ 391 (CCPA 1972) ............................................................. 17

iii

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) ............................................................................................................ 10

*Microsoft Corp. v i4i L.P.*,
    131 S. Ct. 2238 (2011) ....................................................................................................... 17

*Nat'l Collegiate Athletic Ass'n v. Governor of New Jersey*,
    393 F.3d 597 (9th Cir. 2019)............................................................................................. 22

*NOSSK, Inc. v. Fitness Anywhere LLC*,
    2022 WL 1093662 (N.D. Cal. Apr. 12, 2022) ......................................................... 13, 18, 19

*Power Integrations, Inc. v. CogniPower LLC*,
    2020 WL 3574747 (D. Del. July 1, 2020)......................................................................... 11

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*,
    944 F.2d 597 (9th Cir. 1991)............................................................................................. 18

*Sierra Forest Legacy v. Rey*,
    577 F.3d 1015 (9th Cir. 2009)............................................................................................. 9

*Studio 010, Inc. v. Digital Cashflow LLC*,
    2020 WL 3605654 (W.D. Wash. July 2, 2020)............................................................ 3, 4, 18

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
    240 F.3d 832 (9th Cir. 2001)............................................................................................... 9

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
    299 F.3d 1313 (Fed. Cir. 2002)........................................................................................ 14

*Union Oil Co. of Cal. v. Atl. Richfield Co.*,
    208 F.3d 989 (Fed. Cir. 2000).......................................................................................... 15

*Vas-Cath Inc. v. Mahurkar*,
    935 F.2d 1555, 19 USPQ2d (Fed. Cir. 1991)................................................................... 16

*Winter v. Nat. Res. Def. Council*,
    555 U.S. 7 (2008) ....................................................................................... 2, 9, 19, 21

*Zepeda v. U.S. Immigration & Naturalization Serv.*,
    753 F.2d 719 (9th Cir. 1983)....................................................................................... 2, 11

**Statutes**

22 U.S.C. § 2201 ........................................................................................................................... 2

DEFENDANTS' OPPOSITION TO MOTION FOR
TEMPORARY RESTRAINING ORDER

CASE NO. 2:23-CV-631

**Other Authorities**

Beverly Reid O'Connell & Karen L. Stevenson, *Rutter Group Practice Guide: Federal Civil Procedure Before Trial, National Edition*, § 13:95 (updated Apr. 2018) ......................................................................................................................... 17

Fed. R. Civ. P. 65(b)(1)(A) ................................................................................................ 9

U.S. Const. art. III, § 2, cl. 1 ............................................................................................. 2

## I.    INTRODUCTION

Plaintiff's plea for extraordinary emergency relief is contradicted given its delay in bringing its motion and unwarranted given the outcome of the APEX proceeding.[1] Amazon-seller Momcozy participated—voluntarily—in Amazon's 11-week APEX proceeding beginning in February 2023, fully briefed the very same non-infringement argument Plaintiff raises here, and lost. A Neutral Patent Evaluator considered Momcozy's argument, rejected it, and determined that Elvie is likely to succeed in showing that Momcozy's S12 and S12 Pro products infringe claim 1 of Elvie's '893 patent. Having lost, Plaintiff now asks this Court for the extraordinary relief of an order interfering with third-party Amazon's right to police its own marketplace by de-listing infringing products for sale—and that too on an "emergency" basis.

But there is no emergency here. Plaintiff's motion asking this Court to upset the status quo comes more than two weeks after Momcozy's products were taken down from Amazon, more than three months after Momcozy willingly agreed to participate in the APEX proceeding, and almost *one year* after Elvie first contacted Momcozy about its infringing products. Momcozy has known since at least February that a possible outcome of the Neutral Patent Evaluator's decision was the delisting of Momcozy's S12 Pro product from Amazon. And Amazon makes clear in the agreements Momcozy signed to participate in the APEX program that if Momcozy brought a declaratory judgment action during the pendency of the APEX proceeding, Amazon would halt the APEX proceeding for the duration of the DJ action and permit Momcozy's products to remain listed. *See* Ex. 5 of D.I. 20 (Hartman Decl.) at 1. Instead, after fully briefing its non-infringement

---

[1] Elvie references "Momcozy" and "Plaintiff" interchangeably throughout this motion, but as explained in this Opposition (at Section IV.A), Elvie disputes that the proper Momcozy entit(ies) have appeared in this case. Defendant Chiaro Technology Ltd., d/b/a Elvie is referred to herein as "Elvie."

1    position during the APEX proceeding and losing, Momcozy waited more than two weeks after the

2    de-listing of its products from Amazon to cry for extraordinary emergency relief. *See Winter v.*

3    *Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008) (noting that a temporary restraining order is "an

4    extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled

5    to such relief").

6         More troubling is that it is not even clear that Plaintiff Shenzhen Root Technology Co.,

7    Ltd. is actually the party with whom Elvie has an actual case or controversy vesting declaratory

8    judgment jurisdiction in this Court. *See Zepeda v. U.S. Immigration & Naturalization Serv.*, 753

9    F.2d 719, 727 (9th Cir. 1983) ("A federal court may issue an injunction if it has personal

10   jurisdiction over the parties and subject matter jurisdiction over the claim…"). For a federal court

11   to have subject matter jurisdiction over a declaratory judgment action, an actual case or

12   controversy must exist between the parties. *See* U.S. Const. art. III, § 2, cl. 1; 22 U.S.C. § 2201. At

13   no point has Elvie interacted with any entity known as Shenzhen Root Technology Co., Ltd.

14   located at the address identified in the Complaint. *See* D.I. 1 at ¶ 24. Instead, in what appears to be

15   an elaborate corporate shell game, Elvie has interacted with no less than ***seven*** different corporate

16   entities, all of which appear to claim to be "Momcozy." Here, there is nothing in the record

17   demonstrating that Plaintiff Shenzhen Root Technology Co., Ltd. is in fact the "Momcozy" entity

18   with which Elvie has a dispute. Plaintiff was not the entity that participated as the Momcozy

19   "Seller" in the APEX proceeding, nor the entity with which Elvie exchanged patent enforcement

20   correspondences last year. *See* Ex. 10 of D.I. 22 (Pan Decl.). Elvie has neither heard of nor dealt

21   with Plaintiff or its alleged CEO, Pan Silin. Nor is there any reference to Plaintiff entity, Plaintiff's

22   address, or Pan Silin on Momcozy's website. It is the party seeking declaratory judgment that

23   bears the burden of showing the existence of an actual controversy between the parties, and here

2

1    Momcozy has failed to do so. Momcozy's Motion should be denied on this basis alone.[2]

2        Even assuming the Court possesses declaratory judgment jurisdiction, none of the

3    applicable factors support Momcozy's temporary restraining order ("TRO") request. ***First***,

4    Momcozy's non-infringement and invalidity arguments are not likely to succeed on the merits. As

5    to Momcozy's non-infringement argument, Momcozy has already lost the Amazon APEX

6    proceeding, where a Neutral Patent Evaluator found that Momcozy's S12 Pro product likely

7    infringes Elvie's '893 patent. Moreover, a patent-infringement analysis requires a two-step process

8    of (1) construing the claims and then (2) comparing the properly construed claims to the accused

9    device. Momcozy's motion, however, is devoid of the claim construction analysis required in step

10   one and is therefore fatally flawed. As to Momcozy's invalidity argument, Momcozy misapplies

11   the applicable legal standard and limits the claimed invention to a specific embodiment.

12

13       ***Second***, the harm to Momcozy absent the requested relief is not irreparable. As an initial

14   matter, Momcozy's two-week delay in seeking a TRO once its products were de-listed undermines

15   its claim of immediate irreparable harm. *See Studio 010, Inc. v. Digital Cashflow LLC*, 2020 WL

16   3605654, at *2 (W.D. Wash. July 2, 2020). Momcozy also could have filed a DJ action at any

17   point since June 2022 to avoid its current predicament, but it chose not to. None of Momcozy's

18   financial woes warrant a TRO because "any damages resulting from lost profits are purely

19   financial and do not support a finding of irreparable harm." *Id*. Momcozy's speculation of

20   reputation and market share damage in the absence of a TRO also does not justify a TRO. *Id.* at

21   *1.

22

23

24

25   _____

[2] Elvie is investigating the convoluted facts surrounding who "Momcozy" really is and intends to
26   move to dismiss the Complaint for lack of declaratory judgment jurisdiction.

27
     DEFENDANTS' OPPOSITION TO MOTION FOR                    CASE NO. 2:23-CV-631
28   TEMPORARY RESTRAINING ORDER

*Third*, the balance of equities does not favor granting injunctive relief. The status quo is maintained, not by granting the TRO or preliminary injunction, but by keeping Momcozy's infringing S12 Pro devices off the Amazon marketplace. Had Momcozy filed its declaratory judgment action while the APEX proceeding was pending, Amazon would have halted the APEX proceeding and there would be no need for a TRO. That Momcozy now regrets the outcome of the APEX decision, which it knew was a possibility for months, is no reason to upset the status quo. The balance of equities also weighs against a TRO any preliminary injunctive relief because Momcozy wants to reap the benefits provided by Amazon (selling on Amazon's platform and voluntarily participating in the APEX proceeding), but on the other hand comes to this Court to disparage Amazon and its APEX proceeding after it has lost.[3]

*Fourth*, the injunction is not in the public interest. The public interest favors permitting the enforcement of intellectual property rights. *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 73 F. Supp. 2d 1228, 1249 (W.D. Wash. 1999) ("The public has a strong interest in the enforcement of intellectual property rights."), *vacated on other grounds,* 239 F.3d 1343 (Fed. Cir. 2001). The public is not disserved by keeping the S12 Pro products de-listed on Amazon because, as Momcozy admits (at 14), there are innumerable similarly priced alternatives available on Amazon

---

[3] Momcozy disparages the APEX proceeding (Mot. at 11-12) and claims that it leads to "disproportionately one-sided outcomes," but the article on which Momcozy relies is the opinion of a law student who pontificates without any statistics to support his theory. Other legal commentators have congratulated Amazon for taking steps to provide a fast, low-cost way to monitor its platform for patent infringement. *See, e.g.*, Ex. 1 (Katherine Corry and Tommy Martin, "Prompt, Inexpensive Relief From Patent Infringement Available to Small Startups through Amazon's APEX Process", Baker Botts Thought Leadership (Jan 1, 2023), Ex. 2 (Michael R. Graif and Matthew C. Hurley, "Amazon's Utility Patent Neutral Evaluation Proceeding: Let the Seller Beware", Mintz Insights Center (Mar. 22, 2022), and Ex. 3 (Tammy J. Terry and Lisa E. Margonis, "Unpacking Amazon's Patent Infringement Evaluation Process" (Law360 (Mar. 19, 2021).

DEFENDANTS' OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER

CASE NO. 2:23-CV-631

from other sellers, several of which appear nearly identical to S12 Pro. *See, e.g.*, Ex. 4 of D.I. 22 (Pan Decl). Momcozy also continues to sell its S12 Pro products on other readily accessible platforms like Walmart.com and its own Momcozy website, to which its social media account links. *See* Ex. 5; Ex. 6.

Finally, the APEX Procedure issued by Amazon does not say that Amazon *will* reinstate the de-listed products upon an order that they don't infringe, but only that Amazon *may* allow relisting. *See* Ex. 5 of D.I. 20 (Hartman Decl.) at 5. Therefore, the TRO may not even result in the relief that Momcozy hopes for. *See LA Alliance for Human Rights v. County of Los Angeles*, 14 F.4th 947, 958 (9th Cir. 2021) (reversing grant of preliminary injunction when the movant failed to show relief was non-speculative).

The Court should deny Momcozy's request for a TRO and Order to Show Cause because any emergency is of Momcozy's own making. To the extent the Court does not deny Momcozy's motion in its entirety, Elvie respectfully requests that it be permitted the opportunity to prepare briefing, together with an expert declaration, responding to an Order to Show Cause why a preliminary injunction should not be issued.

## II.    FACTUAL BACKGROUND

### A.    Elvie is an Innovation Leader in Women's Health Products

Elvie is an award-winning, London-based technology company that is disrupting the women's health space with its groundbreaking technology. Elvie began as a start-up company founded by Tania Boler in 2013 with the mission to create a global hub of connected health and lifestyle products for women. By 2017, Elvie was recognized as one of the UK's top 33 startups by TechCityUK and named one of the 15 startups "To Watch" by The Sunday Times. *See* Ex. 8 (Paul Abbott, *33 of the UK's Most Promising Tech Companies Join Upscale 2017*, TechNation (Jan. 26,

DEFENDANTS' OPPOSITION TO MOTION FOR
TEMPORARY RESTRAINING ORDER

CASE NO. 2:23-CV-631

2017)); Ex. 9 (*Research Report 2017*, The Sunday Times Tech Track) at 23. Elvie is committed to continue investing in its innovative products to improve the lives of women around the globe.

In 2018, Elvie released its revolutionary Elvie Pump system. With its in-bra, discreet, silent, and wireless design, the Elvie Pump system has changed the way the mothers are able to breastfeed. Indeed, prior to the release of the Elvie Pump, the breast pump industry remained largely stagnant for almost half a century. *See* Ex. 10 (Sarah Buhr, *Kegel trainer startup Elvie is launching a smaller, smarter, hands-free breast pump*, TechCrunch (Sept. 14, 2018)). Elvie developed the Elvie Pump after an intensive research and development effort. Over 200 women provided feedback during the development of the Elvie Pump, ensuring that the inventors had absolute confidence that they were directly addressing the concerns of breastfeeding mothers. *See* Ex. 11 (*Elvie*, Core77 Design Awards 2019). Noted as one of "the biggest innovation[s] in pumping technology of the past 100 years," *see id.*, the Elvie Pump's trailblazing technology includes a coin-sized pump, sleek design, and the ability to run quietly and discreetly. The Elvie Pump opened a new product category and gives mothers unprecedented freedom to pump whenever and wherever they would like.

Elvie's research and development work culminated in the issuance of intellectual property to protect its pioneering technology, including U.S. Patent No. 11,357,893 (the "'893 patent"), which covers a breast pump device that is configured as a self-contained, in-bra wearable device. The Elvie Pump's innovation is recognized by the industry. Elvie has received numerous awards for the Elvie Pump since its launch. *See* Ex. 12 (*Achievements at Elvie + Chiaro* (Mar. 25, 2023)) (listing 22 awards for the Elvie Pump alone). For example, in 2019, TIME named the Elvie Pump as one of the "Best Inventions [of] 2019"; the Core77 Design Awards named the Elvie Pump as a runner up in the category of Health & Wellness; and Dezeen named the Elvie Pump the "[W]earable [D]esign of the [Y]ear." *See* Ex. 13, 11, 14. In 2020, the European Centre awarded the Elvie Pump

6

the "'Good Design Award[].' *See* Ex. 15. Further, in 2022, Forbes named the Elvie Pump the "Best Wearable Breast Pump." *See* Ex. 16.

In light of the Elvie Pump's groundbreaking technology and popularity, copycat devices (including Momcozy's S12 device) have recently begun appearing in the marketplace. Upon confrontation, an Amazon seller of copycat products explained that suppliers such as "Shenzhen TPH Technology Co., Ltd" have "repeatedly assured" them that their product is non-infringing and have "grabbed most of the market share in the catalog of the electric breast pump" by flooding Amazon with a dozen product entries by the same supplier. Ex. 17. These devices are typically sold at a much lower price point than the Elvie Pump because, unlike Elvie, the manufacturers of these devices did not have to invest in comparable research and development, nor do they maintain hospital-grade quality devices as Elvie does.

### B.    Elvie's Enforcement of the '893 Patent

In June 2022, Elvie sent a cease and desist letter to the entities "Shenzhen Root E-Commerce Co., Ltd" and "Hong Kong Dian Ying Industry Co. Ltd." regarding Momcozy's infringing activities. *See* Ex. 2 of D.I. 1 (Complaint). Elvie identified these entities because at that time they had been listed on the Momcozy website's "Contact Us" page with their respective addresses (neither of which is the entity or address of Plaintiff in the Complaint). *See* Ex. 18. In their responsive letter, these entities directed Elvie to a third entity, "Shenzhen TPH Technology Co., Ltd.," who allegedly was the manufacturer and, according to these entities, "has warranted and guaranteed that it has complete intellectual property rights for those products, which do not infringe any intellectual property rights of others, including the '893 patent." *See* Ex. 19. Even after receipt of Elvie's letter (*see* D.I. 1 (Complaint) at ¶ 27) and notice of patent infringement, Momcozy continued its sales of infringing products unabated and did not file a declaratory judgment action.

7

On January 30, 2023, Elvie received notice that its request to participate in the Amazon APEX proceeding as to Momcozy's infringing products had been accepted. Thereafter, two different entities (not otherwise named in this Opposition), responded as the "Seller" on behalf of Momcozy and agreed to participate in the APEX proceeding. *See* Ex. 10 of D.I. 22 at 1. A Neutral Patent Evaluator—an experienced, partner-level patent attorney at a Boston law firm—was assigned to the case and the parties submitted their briefing, for which the parties were given unlimited pages for claim charts and exhibits. Upon completion of the 7-week briefing schedule, the Neutral Patent Evaluator found on April 24, 2023 that Elvie had shown a likelihood of success of showing infringement. Per the APEX rules and procedures, on April 25, 2023, the infringing Momcozy Amazon listings were removed from the Amazon marketplace. *See* Complaint (D.I. 1) at 9. At no point during the pendency of the APEX proceeding did Momcozy file a declaratory judgment action, which would have paused the APEX proceeding. Ex. 5 of D.I. 20 (Hartman Decl.) at 1. Instead, Momcozy waited and filed this declaratory judgment action on April 28, 2023, four days after Momcozy lost the APEX action. *See* D.I. 1 (Complaint). Momcozy then waited a further eleven days before it filed the instant emergency TRO motion demanding relief within days.

## III.    LEGAL STANDARD

A temporary restraining order (TRO) may be granted only on a clear showing of immediate, irreparable injury. Fed. R. Civ. P. 65(b)(1)(A). The Supreme Court has cautioned that TROs "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974). The standards for issuing a temporary restraining order and a preliminary injunction are "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush*

8

& Co., 240 F.3d 832, 839 & n.7 (9th Cir. 2001). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24. Therefore, a district court should enter a preliminary injunction only "upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. In either case, such a showing requires that the plaintiff establish he or she "is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20; *see Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009); *see also Johnson v. Couturier*, 572 F.3d 1067, 1081 (9th Cir. 2009); *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

## IV.    ARGUMENT

### A.    This Court Does Not Possess Jurisdiction

This Court does not have jurisdiction in this declaratory judgment action because there is no evidence that the Plaintiff, "Shenzhen Root Technology Co., Ltd.," is the proper Momcozy entity with which Elvie has a case or controversy. To satisfy Article III's standing requirements, the party seeking a declaratory judgment must show that "under all the circumstances, . . . there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Here, there is nothing in the record demonstrating that Shenzhen Root Technology Co., Ltd. is indeed the "Momcozy" entity that Elvie has a dispute with—namely, the entity selling infringing Momcozy products on Amazon. For example, Shenzhen Root Technology Co., Ltd. was not the entity that responded as "Momcozy" in the Amazon APEX proceeding. *See* Ex. 10 of D.I. 22 at 1. Nor does its name or address currently appear on the "Momcozy" website (*see* Ex. 21), nor has it previously appeared, though a litany of other entities have been listed at one time or another

9

as seen in a compendium of Wayback Machine captures of Momcozy's "Contact Us" page. *See* Ex. 4. Nor was Shenzhen Root Technology Co., Ltd. identified as "Momcozy" in the correspondences exchanged a year ago when Elvie demanded that Momcozy cease selling infringing products on Amazon. *See* Ex. 2 of Complaint (D.I. 1) at 2.

Much of Plaintiff's motion is premised on the Declaration of Pan Silin, but Elvie has never interacted with or heard of Ms. Pan. *See Augustine v. U.S.*, 704 F.2d 1074, 1077 (9th Cir. 1983) (noting that "'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims'"). And despite being the alleged founder and CEO of Momcozy, Ms. Pan appears nowhere on the Momcozy website.

Instead, the entities identified on the Momcozy website "Contact Us" page in 2022 were "Shenzhen Root E-Commerce Co., Ltd." and "Hong Kong Dian Ying Industry Co. Ltd." *See* Ex. 18. These entities then pointed to "Shenzhen TPH Technology Co., Ltd." as being the manufacturer of Momcozy's accused S12 Pro device. *See* Ex. 19. Others have also identified "Shenzhen TPH Technology Co., Ltd." as the supplier who "repeatedly assured [them] that this product is not infringing." Ex. 17. Yet the two parties who responded as "Momcozy" in the APEX proceeding were different (and not otherwise named in this Opposition). *See* Ex. 10 of D.I. 22 at 1. The Complaint (at 8) identifies "Shenzhen Jinruihang Technology Co., Ltd." as "corporate affiliates" through which "Momcozy has sold these and other breast pumps." The owner of the U.S. "Momcozy" trademark is a different entity still. *See* Ex. 22 (identifying Shenzhen Lutejiacheng Technology Co., Ltd.). Momcozy's own exhibits each identify a different Momcozy entity. *See, e.g.*, Ex. 2 to Pan Declaration (entering the "Legal business name" as "shenzhenshiconglindianzishangwuyouxiangongsi"). Neither the Shenzhen Root Technology Co.,

10

Ltd. Corporate entity name nor address has ever appeared before in any record to Elvie's knowledge, except in the Complaint and Pan Declaration. Shenzhen Root Technology Co., Ltd. has the burden to show that it alone—out of all the various other entities representing that they are Momcozy—is the correct plaintiff with standing to bring a DJ action. Even if the plaintiff entity is related to or in business with the party that Elvie has an actual case or controversy with, courts have found that to be insufficient to confer standing. *See, e.g.*, *Power Integrations, Inc. v. CogniPower LLC*, 2020 WL 3574747 (D. Del. July 1, 2020) (dismissing non-infringement declaratory judgment action for lack of case or controversy because Defendants' allegations of infringement against Plaintiff's customers was not an implicit accusation of indirect infringement as to Plaintiff).

Absent jurisdiction over the parties, the Court may not issue a TRO or preliminary injunction. *See Zepeda*, 753 F.2d at 727 ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim . . ."). Therefore, lack of jurisdiction alone is reason to deny Momcozy's motion. It is also imperative that the correct parties are named so that, to the extent Elvie ultimately prevails on its forthcoming counterclaims of patent infringement, Elvie can collect damages from the correct parties.

### B. Momcozy's Non-infringement and Invalidity Arguments Are Not Likely to Succeed on the Merits

#### *1. Momcozy's Device Has Already Been Found to Infringe*

The non-infringement argument Plaintiff asserts is likely to succeed before this Court has already failed before a Neutral Patent Evaluator. Amazon designed its APEX procedure "[t]o efficiently resolve claims that third-party product listings infringe utility patents." Ex. 5 of D.I. 20 (Hartman Decl.) at 1. "APEX is voluntary, confidential, and allows owners of U.S. utility patents or their authorized representatives, such as attorneys or exclusive licensees . . . to obtain a fast

11

evaluation of patent infringement claims against products . . . , identified by Amazon Standard Identification Number, listed by third-party sellers . . . on amazon.com." *Id.* If sellers volunteer to participate, a Neutral Patent Evaluator reviews a patent infringement claim against the seller's product listings on amazon.com. *Id.* The Evaluator will set a schedule for submission of written arguments. *Id.* In general, the Schedule will provide: (i) the Patent Owner with 14 days for its initial arguments; (ii) Sellers with 14 days to respond; and (iii) the Patent Owner with 7 days to reply. *Id.* The Patent Owner may use a total of 20 double-spaced 8.5 x 11" pages between its two submissions. *Id.* Each Seller may use 15 double-spaced pages in its response. *Id.* Claim charts and exhibits are not counted against page limits. *Id.* "To make the Evaluation fast, efficient, and relatively low-cost, it is limited to one claim from one unexpired U.S. utility patent." *Id.* And there are no depositions, document requests, or other forms of discovery. *Id.* The evaluator will make a yes/no decision about whether the patent covers the product listings." *Id.*

On January 30, 2023, Elvie initiated the APEX proceeding against Momcozy and three other sellers of similar products, accusing 20 Amazon listings by Amazon Standard Identification Number (ASIN). Two sellers elected not to participate and two sellers, Momcozy and one other, volunteered to go forward. The Neutral Patent Evaluator set a briefing schedule and Elvie promptly submitted its opening brief on March 20, 2023. *See* Ex. 6 of D.I. 20. Two weeks later, three entities (none of which were called Momcozy) submitted identical responsive briefs. One week later, on April 10, 2023, Elvie submitted a reply brief responding to the non-infringement arguments raised by sellers. *See* Ex. 7 of D.I. 20. On April 24, the Neutral Patent Evaluator provided his "yes/no" decision determining that Elvie was likely to show infringement of claim 1 of the '893 patent. *See* Ex. 8 of D.I. 20.

DEFENDANTS' OPPOSITION TO MOTION FOR                          CASE NO. 2:23-CV-631
TEMPORARY RESTRAINING ORDER

Having lost the APEX proceeding, Momcozy now loudly criticizes the process it voluntarily undertook. But all of the criticisms Momcozy raises were features of the process clearly spelled out in the APEX agreements Momcozy signed on to. *See* Ex. 5 of D.I. 20 (Hartman Decl.) at 1; Ex. 4 of D.I. 1 (Complaint) at 1. Momcozy mischaracterizes a law student's online post as suggesting the APEX proceeding is somehow unfair to accused sellers. But even a cursory review of the online post (Mot. at n.53) shows that the quote that Plaintiff relies so heavily upon (at 11) relies on and links to an article simply warning sellers against the dangers of ignoring an invitation to participate in APEX or not taking it seriously. *See* Mot. at n.53 (citing in turn to Ex. 3). Momcozy did neither. Indeed, Momcozy fully participated in the APEX program, submitting a 15-page response brief plus 10 pages of non-infringement claim charts focused on just one issue—non-infringement of just a single claim of a single Elvie patent. Unlike the cited article warning not to ignore an APEX invitation, Momcozy was happy to accept the invitation and participated fully—happy that is until the Neutral Patent Evaluator disagreed with Momcozy's non-infringement argument.

Momcozy did not succeed in the APEX proceeding and it won't succeed here.

### 2. **Momcozy's Non-infringement Arguments Are Flawed**

Even if Momcozy had not already lost the APEX proceeding, Plaintiff has failed here to demonstrate a likelihood of success on the merits with respect to non-infringement of the '893 patent. In the declaratory judgment context, a plaintiff moving for relief must meet a "high" burden of proof demonstrating that it is likely to succeed on the merits of its non-infringement and invalidity arguments. *See NOSSK, Inc. v. Fitness Anywhere LLC*, 2022 WL 1093662, at *4-5 (N.D. Cal. Apr. 12, 2022) (declining to grant an injunction ordering a patentee to withdraw its complaints to Amazon because the alleged infringer did not meet its "high" burden of showing a likelihood of success on the merits). The patent infringement analysis is a two-step process: first, courts must determine the

DEFENDANTS' OPPOSITION TO MOTION FOR    CASE NO. 2:23-CV-631
TEMPORARY RESTRAINING ORDER

scope of the claims as a matter of law; second, the properly construed claims must then be compared to the allegedly infringing device. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1323 (Fed. Cir. 2002). While Momcozy acknowledges the proper analysis required, Momcozy failed to undertake it—a fatal error. *See* Mot. at 17.

**First**, Momcozy failed to conduct *any* claim construction analysis. *See id.* Indeed, Momcozy's Motion is devoid of any claim construction proposals despite the fact that its entire argument hinges on one specific limitation: whether its product contains "a diaphragm holder that forms a recess or cavity at least in part with an external surface of the housing . . . ." Mot. at 19. Without a proper claim construction analysis, it is impossible to determine whether a product is infringing. *See Teleflex,* 299 F.3d at 1323.

**Second**, rather than undertaking the correct analysis, Momcozy impermissibly reads claim 1 of the '893 patent narrowly without providing any rationale as to why. Mot. at 19-20. For example, for the single claim element Plaintiff's expert Mr. Bauer alleges is not met, Mr. Bauer concludes "Thus, the external surface of the housing **must** have a recess or cavity interfacing with the diaphragm, and this recess or cavity must either interact with or function as at least part of the diaphragm holder." Bauer Decl., ¶ 40 (emphasis added). But the actual claim language is not so narrow. The claim language only recites that the "diaphragm holder [] forms a recess or cavity ***at least in part*** with an external surface of the housing . . . ." '893 patent, 71:45-47 (emphasis added). This same argument was fully briefed to the Neutral Patent Evaluator and was rejected.

Momcozy's next non-infringement argument asserts the S12 Pro's claimed "recess or cavity" has "no contact with the diaphragm." Mot. at 19. But again, the claims do not require any "contact" with the diaphragm and, having skipped the first step of the infringement inquiry,

14

Momcozy has failed to explain why the claims should be construed as such. This non-infringement argument too was raised in the APEX Proceeding and the Neutral Patent Evaluator rejected it.

Finally, Momcozy states at several places in its brief that the S12 Pro's diaphragm is "entirely within" the milk container. *Id.* at 2, 9, 19. But the plain meaning of the claim language has no requirement or prohibition regarding whether the diaphragm is entirely within the milk container or not. Here again, Momcozy shirks the requirement to construe the claims so it can hand-wave a non-infringement argument divorced from the claim language.

None of the language of claim 1 requires construction beyond the plain and ordinary meaning, and for the reasons discussed, Momcozy will not succeed on the merits of its non-infringement argument. Should the Court entertain the show cause motion for preliminary injunction, Elvie intends to provide expert testimony supporting the above and myriad other flaws in Plaintiff's likelihood of success argument.

### 3.    *Momcozy's Invalidity Arguments Misapply the Law*

Momcozy next alleges that it is likely to succeed in showing that the claims of the '893 patent are invalid for lack of written description. Momcozy's entire argument is premised on the fact that the claim term "cavity" does not appear in the specification. (Mot. at 22.) But "the invention claimed does not have to be described in *ipsis verbis* in order to satisfy the description requirement of § 112." *Union Oil Co. of Cal. v. Atl. Richfield Co.*, 208 F.3d 989, 1000 (Fed. Cir. 2000).

The specification discloses that:

> In preferred embodiments, the first half 19A of the diaphragm housing 19 is integral with the breast shield. The second half 19B of the diaphragm housing is provided in a recessed portion of the housing 1. The diaphragm 13 self-seals in this diaphragm housing 19 around its outer edge, to form a watertight and airtight seal.

'893 patent, 11:32-38.

15

> Once the breast pump 100 is activated and a pumping cycle is begun, the pumps 83A, 83B generates a negative air pressure which is transmitted via an air channel to a first side of the diaphragm 13 mounted on the diaphragm housing 19A . . . The diaphragm 13 transmits this negative pressure to its opposite side (denoted the milk - flow side 13A). This negative pressure is transferred through a small opening in the diaphragm housing 19A to the breast shield nipple tunnel . . . ."

*Id.* at 13:62-14:4.

This language describes embodiments of the invention that track and support the claim language:

> a diaphragm configured to be seated against a diaphragm holder that forms a recess or cavity at least in part with an external surface of the housing, the diaphragm deforming in response to changes in air pressure caused by the pump to create negative air pressure in the nipple tunnel.

*Id.* at claim 1, 71:45-50.

Clearly, a recess is literally supported by the specification. A POSITA, or indeed a lay person, would understand that the described "air channel" in the specification could be a cavity that transfers negative pressure from the pump to the diaphragm. The fact that the word "cavity" does not appear explicitly in the specification—as a matter of law—does not support a lack of written description. Air channels of varying configurations for conveying the action of the pump would be well known in the field of breast pumps. *See Martin v. Johnson*, 454 F.2d 746, 751, 172 USPQ 391, 395 (CCPA 1972) (stating "the description need not be in *ipsis verbis* [i.e., "in the same" words] to be sufficient"). *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1345 (Fed. Cir. 2016) (stating "[w]hen examining the written description for support for the claimed invention, [the Federal Circuit] have held that the exact terms appearing in the claim 'need not be used in haec verba'" (quoting *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed.Cir.1997)); *Innova/Pure Water,*

16

*Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1120 (Fed. Cir. 2004) (stating "that this is simply a case where the patentee used different words to express similar concepts").

U.S. patents are entitled to a presumption of validity and invalidity that must be shown by clear and convincing evidence. *See Microsoft Corp. v i4i L.P.*, 131 S. Ct. 2238 (2011). In view of the plain language of these claims and the clear disclosure in the specification, Momcozy is not likely to meet its high burden of invalidity for lack of written description. If the Court entertains Momcozy's show cause motion, Elvie intends to provide expert testimony to support written description, though Elvie contends none is necessary to find that Momcozy is not likely to succeed on the merits of this argument.

### C.    Momcozy Has Not Shown that It Will Be Irreparably Harmed

TRO emergency relief is not warranted here because Momcozy had ample opportunity to bring a DJ action or file a TRO earlier, but it repeatedly delayed in seeking relief. It has been two weeks since they lost the Amazon APEX infringement proceeding during which a TRO could have been filed; 13 weeks since the Amazon APEX proceeding was initiated during which a DJ action would have halted the APEX proceeding; and almost a *year* since Elvie first reached out to Momcozy to file a DJ action. The TRO motion was not even filed simultaneously with the DJ Complaint, but a week after. *See* D.I. 17. *See also Lydo Enters. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) (holding that a delay in seeking a injunctive relief is a factor to be considered in weighing the propriety of relief); *Dahl v. Swift Distrib., Inc.*, 2010 WL 1458957, at *4 (C.D. Cal. April 1, 2010) (finding that an 18-day delay in filing a TRO application "implie[d] a lack of urgency and irreparable harm").

Now Momcozy alleges that it needs relief in a matter of days. But this is an emergency of Momcozy's own making and does not warrant the extraordinary relief it now seeks. *See also* Beverly

17

Reid O'Connell & Karen L. Stevenson, *Rutter Group Practice Guide: Federal Civil Procedure Before Trial, National Edition*, § 13:95 (updated Apr. 2018) ("An important factor will be whether the applicant could have sought relief earlier by a motion for preliminary injunction, avoiding the necessity for a last-minute TRO. Delay in seeking relief may be evidence of laches…or negate the alleged threat of 'immediate' irreparable injury…The court has discretion to deny the application on either ground.").

Momcozy has also not shown that it faces immediate *irreparable* harm justifying its request for injunctive relief. Merely showing some lost market share is insufficient to satisfy this requirement. *See Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1324-25 (Fed. Cir. 2012). Momcozy lists a number of woes—including "lost customers, goodwill, revenues, and market share," and other lost opportunities resulting from the APEX infringement decision and subsequent de-listing of its product. Mot. at 24. But courts faced with similar situations have confirmed that "[a]ny damages resulting from lost profits, lost customers, and lost business opportunities are purely financial and do not establish irreparable harm." *NOSSK*, 2022 WL 1093662, at *2-*3 (declining to grant an injunction requiring defendant to submit notice to Amazon retracting defendant's grievances of patent infringement, despite alleged harms of lowered product placement on Amazon.com, decreased customer views, and lost sales); *see also Studio 010*, 2020 WL 3605654, at *4 (denying TRO motion even when DJ plaintiff argued that it "will not survive" if its ability to sell its product on Amazon is not "immediately restored").[4]

---

[4] The cases relied on here by Momcozy are inapposite. *See, e.g.*, *Microsoft Corp. v. Motorola, Inc.*, 871 F. Supp. 2d 1089, 1102-1103 (W.D. Wash. 2012), *aff'd*, 696 F.3d 872 (9th Cir. 2012) (involving an injunction to enjoin Motorola from enforcing an injunction that would stop Microsoft from using a standard essential patent); *Aitkin v. USI Ins. Servs. LLC*, 2022 WL 1439128, at *2 (9th Cir. 2022) (involving a preliminary injunction to enforce a non-compete

18

Momcozy alleges (at 15) that some of the imminent harms, such as the unavailability of the S12 Pro product during the "holiday season" or Mother's Day and Prime Day, would inflict "difficult-to-quantify" damage. But it admits in the same paragraph that the damage can be quantified. *See* Mot. at 15 (explaining that on Prime Day 2022, Momcozy's daily breast pump sales increased a certain percent). Momcozy also fails to explain why it waited to seek relief until the eve of the "holiday season," when it could have sought relief months earlier.

With respect to Momcozy's claim of non-economic harm, such as the loss of business opportunities and goodwill, courts have found that it is insufficient for a plaintiff to argue potential irreparable harm, rather than *imminent* irreparable harm. *See* Mot. at 13 (explaining that the de-listing will "*potentially*" cause harm and that Momcozy "*expects* that the prolonged unavailability of the S12 Pro on Amazon.com would result" in certain events) (emphasis added); *see also NOSSK*, 2022 WL 1093662, at *3. A plaintiff seeking a preliminary injunction must show more than the "possibility" of irreparable injury; he must demonstrate that irreparable injury is "likely" in the absence of preliminary relief. *Winter*, 555 U.S. at 22; *Am. Trucking*, 559 F.3d at 1052. Momcozy has not done so here. And again, Momcozy fails to explain why it delayed in seeking relief if such harms were indeed imminent and likely.

Momcozy's speculation of financial and market share damage in the absence of a TRO may further be unjustified to the extent Momcozy's "lost sales" in the S12 Pro product are simply being diverted to other nearly identical products sold on Amazon that are supplied by Momcozy. Elvie has reason to believe that Momcozy supplies numerous other sellers with the same product. *See* Ex. 17 (Amazon seller explaining that "Shenzhen TPH Technology Co., Ltd" has "grabbed most of the

---

clause, the breach of which would lead to concrete non-monetary harm such as loss of longstanding client relationships).

DEFENDANTS' OPPOSITION TO MOTION FOR
TEMPORARY RESTRAINING ORDER

CASE NO. 2:23-CV-631

market share in the catalog of the electric breast pump" by flooding Amazon with a dozen product entries by the same supplier"). *See also* Ex. 4 of Pan Decl. (showing various "competitor" best-sellers on Amazon that appear near-identical to Momcozy's S12 Pro product).

### D.    The Balance of Equities Weighs Against a TRO

The balance of equities also does not favor granting injunctive relief. The status quo is maintained by keeping Momcozy's infringing S12 Pro devices off the Amazon marketplace, not by granting the requested injunctive relief. Momcozy willingly agreed to participate in Amazon's APEX program in February 2023, knowing that a possible outcome was the delisting of Momcozy's S12 Pro product from Amazon. Had Momcozy brought a declaratory judgment action during the pendency of the APEX proceeding, Amazon would have halted the APEX proceeding for the duration of the DJ action and there would be no need for the instant TRO request. *See* Ex. 5 of D.I. 20 (Hartman Decl.) at 1. That Momcozy now regrets the outcome of the APEX decision, which it long knew was a possibility, is no reason to upset the status quo.

The balance of equities also weighs against injunctive relief because Momcozy wants to on the one hand take advantage of the Amazon's services by selling on its platform and participating in the APEX proceeding, but on the other hand interfere with third-party Amazon's right to police its own marketplace.

Further, Momcozy's TRO requests that Chiaro withdraw all infringement complaints related to the APEX decision, which would also include Momcozy's S12 breast pump (non "Pro" version). But Momcozy focuses their arguments towards their S12 Pro product and does not explain why it is entitled to restore sales of the S12. In addition, the APEX proceeding also included other sellers—not parties in this case—whose similar S12 products were also taken down as part of the same APEX decision. Accordingly, the balance of equities further weighs against a TRO because it would allow

20

Momcozy and other sellers to continue selling the known infringing S12 breast pump on Amazon's website without making any showing here as to why that should be the case.

### E. The Public Interest Weighs Against Issuing the Requested TRO

Finally, the injunction is not in the public interest. The public interest favors permitting the enforcement of intellectual property rights. *See East West Bank v. Shanker*, 2021 WL 3112452, at *14 (N.D. Cal. July 22, 2021) ("It is well-established that courts often find that the public has a strong interest in protecting intellectual property rights." (internal citations omitted)); *Fin. & Sec. Prods. Ass'n v. Diebold, Inc.*, 2005 WL 1629813, at *7 (N.D. Cal. July 8, 2005) (denying an injunction because "[i]f this injunction were granted, Diebold would essentially be forced to give up its intellectual property rights"). The public is not disserved by keeping the S12 Pro products de-listed on Amazon because, as Momcozy admits (at 14), there are innumerable similarly priced alternatives available on Amazon from other sellers, several of which appear *identical* to S12 Pro. *See, e.g.*, Ex. 4 of D.I. 22 (Pan Decl.). *See also supra* at Section IV.D.

Moreover, the S12 Pro product has only been removed from one platform, but remains available on numerous other sources including Walmart.com and Momcozy's own website. Any replacement parts or components that the public may need to buy are all still readily accessible on Amazon, Momcozy's website, and via other online retailers.

Therefore, none of the four applicable *Winter* factors support Momcozy's TRO request.

## V. THE COURT SHOULD REQUIRE MOMCOZY TO POST A BOND

Should the Court grant Momcozy's requested relief, it should require Momcozy to post a bond. For the reasons articulated above in Section IV.B, there is not a substantial likelihood that Momcozy will succeed on the merits. Therefore, there is a realistic likelihood of harm because Elvie may be wrongfully enjoined. *See Nat'l Collegiate Athletic Ass'n v. Governor of New Jersey,*

21

393 F.3d 597, 599 (9th Cir. 2019) ("[FRCP] 65(c) requires the party seeking a TRO to give security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.").

## VI.    CONCLUSION

For all the reasons stated herein, Momcozy's motion for TRO and Order to Show Cause should be denied.

DATED this 11th day of
May, 2023

Lowe Graham JonesPLLC

_____
Mark P. Walters, WSBA No. 30819
Mitchell D. West, WSBA No. 53103
walters@LoweGrahamJones.com
west@LoweGrahamJones.com
1325 Fourth Avenue, Suite 1130
Seattle, WA 98101
T: 206.381.3300
F: 206.381.3301

Sterne, Kessler, Goldstein & Fox PLLC

_____
Nirav N. Desai (*pro hac vice* pending)
1100 New York Ave., NW
Washington, DC 20005
Telephone: 202.371.2600
Facsimile: 202.371.2540

22

DEFENDANTS' OPPOSITION TO MOTION FOR
TEMPORARY RESTRAINING ORDER

CASE No. 2:23-CV-631

## CERTIFICATE OF SERVICE

I, Rischel Voigt, hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record via the Court's CM/ECF system and/or electronic mail on May 11, 2023.

By: */s/ Rischel Voigt*
Rischel Voigt, Paralegal

DEFENDANTS' OPPOSITION TO MOTION FOR
TEMPORARY RESTRAINING ORDER

CASE NO. 2:23-CV-631