UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHENZHEN ROOT TECHNOLOGY Co., Ltd.,<br><br>Plaintiff,<br><br>v.<br><br>CHIARO TECHNOLOGY Ltd.,<br><br>Defendant. | CASE NO. 2:23-cv-00631-JHC<br><br>ORDER DENYING TRO; GRANTING ORDER TO SHOW CAUSE |

Before the Court is Plaintiff's motion for a temporary restraining order (TRO) and for an order to show cause as to why a preliminary injunction should not issue. Dkt. # 21 (sealed motion); Dkt. # 17 (redacted motion). Defendant received notice of the motion and filed an opposition brief. Dkt. # 28.

For the reasons below, the Court DENIES Plaintiff's motion for a TRO but GRANTS Plaintiff's request for an order to show cause as to why a preliminary injunction should not issue. The Court will set a preliminary-injunction briefing schedule and preliminary-injunction hearing by separate order. The Court also DENIES Defendant's Motion for Leave to File Surreply to Plaintiff's Supplemental Briefing Addressing the Jurisdictional Issue. *See* Dkt. # 42. Defendant may further address the jurisdictional issue in the preliminary-injunction briefing.

# I

## BACKGROUND

Plaintiff sells breast pumps on the Amazon.com marketplace. Dkt. # 17 at 7. Among the products it sells is its flagship "S12 Pro" breast pump. *Id.*

Defendant also sells maternal care products, including breast pumps, and directly competes with Plaintiff. *Id.* Defendant is the owner of U.S. Patent No. 11,357,893 ("the '893 Patent"). *Id.* at 11.

In June 2022, Defendant wrote to Plaintiff to state its view that certain of Plaintiff's breast pumps infringe the '893 Patent. *Id.* at 17. Defendant requested that Plaintiff cease and desist from making, using, importing, selling, or offering to sell those products. *Id.* Plaintiff responded that its products do not infringe. *Id.* After the parties exchanged further correspondence, Defendant asked Amazon to initiate an Amazon "APEX" proceeding based on the '893 Patent. *Id.* As described by Plaintiff, "[a]n APEX proceeding is an extrajudicial dispute resolution process conducted before a neutral evaluator selected by Amazon who receives a fixed fee of $4,000, which the losing party must pay." *Id.*

Following briefing from the parties, the neutral evaluator in the APEX proceeding found in favor of Defendant. *Id.* at 18. One day after the APEX decision—on April 25, 2023—Amazon removed the S12 Pro products from its marketplace. *Id.* This "delisted" the products and prevented Plaintiff from selling the products on Amazon. *Id.*

On April 28, 2023, Plaintiff filed this action, seeking (1) declaratory relief of non-infringement and invalidity and (2) damages based on Defendant's tortious interference with a business expectancy. *See* Dkt. # 1. On May 9, 2023, Plaintiff filed a motion for a temporary restraining order. *See* Dkt. # 22. The Court requested (Dkt. # 30) and received (Dkt. # 33) supplemental briefing from Plaintiff on a jurisdictional issue.

ORDER DENYING TRO; GRANTING
ORDER TO SHOW CAUSE - 2

## II

## LEGAL STANDARDS FOR TROS

When evaluating a request for a TRO, courts apply the same factors as used to evaluate a request for a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain a TRO, a plaintiff must show that they are (1) likely to succeed on the merits, (2) likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). The first two factors are the most important. *Nken v. Holder*, 556 U.S. 418, 434 (2009). The Ninth Circuit applies a "sliding scale" approach, in which a stronger showing as to one or more factors can outweigh weaker showings as to other factors. *See Recycle for Change v. City of Oakland*, 856 F.3d 666, 669 (9th Cir. 2017); *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

## III

## DISCUSSION

A.   Jurisdiction

As a threshold matter, Defendant argues that the Court lacks jurisdiction. Dkt. # 28 at 14–16. According to Defendant, there is no "case or controversy" between it and the named plaintiff in this case, "Shenzhen Root Technology Co., Ltd." *Id.* Defendant says that an entity bearing this name was not a party to the Amazon proceedings, listed on the "Momcozy" website, or named in any correspondences between the parties. *Id.* Therefore, Defendant argues that the Court lacks jurisdiction to issue a declaratory judgment (or equitable relief supporting such a judgment) because there is no actual case or controversy between it and *this* plaintiff.

The Declaratory Judgment Act provides that "in a case of actual controversy," a federal court may "declare the rights and other legal relations of any interested party seeking such

ORDER DENYING TRO; GRANTING
ORDER TO SHOW CAUSE - 3

declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). As the Supreme Court has explained, an "actual controversy" exists when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech*, Inc., 549 U.S. 118, 127 (2007) (quotation marks omitted). In patent cases, a "controversy" requires an affirmative act by the patentee to enforce their rights. *See Asia Vital Components Co. v. Asetek Danmark A/S*, 837 F.3d 1249, 1253 (Fed. Cir. 2016). But it does not require that the patentee initiate legal proceedings; there only needs to be a "definite and concrete patent dispute" between the parties. *Danisco U.S. Inc. v. Novozymes A/S*, 744 F.3d 1325, 1330 (Fed. Cir. 2014); *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007).

Defendant's jurisdictional argument is based on a concern about the name of the plaintiff in this litigation—that the named plaintiff is not the same named entity with which it had interacted in the Amazon proceedings and in prior communications. But as Plaintiff explained in its supplemental brief (Dkt. # 33), any jurisdictional confusion stems from the fact that Plaintiff recently changed its English name. "Plaintiff changed its English name from 'Shenzhen Root E-Commerce Co., Ltd.' to "Shenzhen Root Technology Co., Ltd.,' and both names refer to the same entity—Plaintiff." Dkt. # 33 at 5.

Accordingly, at this stage, the Court is satisfied that it possesses jurisdiction: There appears to be an actual controversy between Plaintiff and Defendant, even if Plaintiff has done business under various English names. So long as the various names refer to the same corporate entity, there does not seem to be a jurisdictional issue.[1]

---

[1] As mentioned above, Defendant may address this issue again in the next round of briefing if it wishes to rebut any arguments or evidence presented by Plaintiff.

ORDER DENYING TRO; GRANTING
ORDER TO SHOW CAUSE - 4

B.     Motion for a Temporary Restraining Order

Plaintiff moves for a TRO. Dkt. ## 17, 21. Plaintiff requests a TRO that compels Defendant to "withdraw its infringement complaints to Amazon, including those related to the APEX decision." Dkt. # 17 at 7. Amazon has communicated to Plaintiff that it would "reinstate" the delisted products upon issuance of a court order in Plaintiff's favor, "whether a TRO or an order finding non-infringement or invalidity." Dkt. # 40-1.

The Court concludes that a TRO is not warranted at this juncture. The purpose of a TRO is to preserve the status quo and prevent irreparable harm until the Court can consider the appropriateness of a preliminary injunction. *See Reno Air Racing Assoc., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006); *Jones v. H.S.B.C. (USA)*, 844 F. Supp. 2d 1099, 1100 (S.D. Cal. 2012) ("The underlying purpose of a TRO is to preserve the status quo and prevent irreparable harm before a preliminary injunction hearing may be held."); *Arizona Recovery Hous. Ass'n v. Arizona Dep't of Health Servs.*, 462 F. Supp. 3d 990, 996 (D. Ariz. 2020) ("The purpose of a preliminary injunction is to preserve the status quo and the rights of the parties until a final judgment on the merits can be rendered, while the purpose of a [TRO] is to preserve the status quo before a preliminary injunction hearing may be held." (citation omitted) (alteration in original)).

Plaintiff argues that without a TRO, it will suffer various forms of "irreparable harm." For example, Plaintiff asserts that the majority of its sales take place through the Amazon marketplace; that sale of the S12 Pro products accounted for a sizable share of its revenue and profits during the first quarter of 2023; that delisting its products will "significantly hinder" financing opportunities; that delisting causes irreparable harm to the company's reputation and goodwill; and that the company may have to alter its workforce if its products are not quickly

relisted. Dkt. # 22 at 6, 9, 11; Dkt. # 17 at 19–21, 30–33. All told, Plaintiff says delisting "threatens [the company's] very existence." Dkt. # 17 at 31.

The Court does not minimize these harms: Taking these statements as true, Plaintiff has at least raised a question as to whether it will suffer irreparable harm in the future. But the Court is not persuaded that these harms are so concrete and immediate that *emergency* relief *in the form of a TRO* is justified. *See Studio 010, Inc. v. Digital Cashflow LLC*, No. 2:20-CV-01018-RAJ, 2020 WL 3605654, at *2–3 (W.D. Wash. July 2, 2020). Aside from ordinary lost-revenue concerns (which could perhaps be compensable through money damages, *see Rent–A–Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)), Plaintiff has not demonstrated that the harms asserted are so immediate and irreparable that they will occur in the period between this order and a future preliminary-injunction hearing. *See Nat'l Urb. League v. Ross*, 484 F. Supp. 3d 802, 805 (N.D. Cal. 2020) ("Temporary restraining orders 'serv[e] the[ ] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974)); *Jones*, 844 F. Supp. 2d at 1100. Indeed, Plaintiff filed this motion two weeks after its products were delisted, suggesting that the "imminence" of the harm alleged is not measured in hours or days.[2] *See Studio 010*, 2020 WL 3605654, at *2–3. And here, issuance of a TRO would require Defendant to take affirmative action by withdrawing its infringement allegations with Amazon. *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). The Court prefers to further evaluate these (and other) arguments at the preliminary-injunction stage, when the

---

[2] Additionally, Plaintiff was apparently on notice that filing a lawsuit could "suspend" the APEX proceeding. *See* Dkt. ## 20-5 at 2, 28 at 25. But Plaintiff opted not to do so until after the APEX proceeding produced an unfavorable result.

ORDER DENYING TRO; GRANTING
ORDER TO SHOW CAUSE - 6

Court will have the benefit of a hearing and more thorough briefing. *See Nat'l Urb. League*, 484 F. Supp. 3d at 804 ("The issuance of a TRO is at the Court's discretion.").

This decision should not be read to imply that the action or Plaintiff's motion is without merit. To the contrary, based on its initial review of the '893 Patent, the Court tentatively believes that Plaintiff is likely to prevail on the merits. Claim 1 of the '893 Patent requires a "diaphragm holder that forms a recess or cavity at least in part with an external surface of the housing." '893 Patent at 71:45–47. The accused product's diaphragm holder does not appear to "form" a "recess or cavity" with the "external surface of the housing." Instead, it appears that the accused product's diaphragm holder is placed entirely within the milk container and does not contact the housing's external surface to form a recess or cavity. Defendant provides no meaningful response. Dkt. # 28 at 16–20. While Defendant criticizes Plaintiff's interpretation of the claim, Defendant provides no persuasive interpretation of its own, nor does it explain how the accused products satisfy the "recess or cavity" limitation of the claim. *Id.*[3]

But for the reasons above, the Court believes that the harms cited are not so immediate and irreparable that an emergency TRO is appropriate.[4] Instead, the Court will further evaluate the motion at the preliminary-injunction stage with the benefit of additional briefing and a hearing.

## IV

### CONCLUSION

The Court hereby DENIES Plaintiff's motion for a TRO but GRANTS Plaintiff's request for an order to show cause as to why a preliminary injunction should not issue. *See* Dkt. ## 17,

---

[3] The Court expresses no opinion on Plaintiff's invalidity arguments. *See* Dkt. # 21 at 27–30.
[4] The remaining two TRO factors do not meaningfully alter the Court's conclusion. *See Nken*, 556 U.S. at 434 (noting that the first two factors are the most important).

21. The Court DENIES Defendant's Motion for Leave to File Surreply to Plaintiff's Supplemental Briefing Addressing the Jurisdictional Issue. *See* Dkt. # 42. The Court will set a preliminary-injunction briefing schedule and preliminary-injunction hearing by separate order.

Dated this 17th day of May, 2023.

*[signature]*

John H. Chun
United States District Judge