1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

THE HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHENZHEN ROOT TECHNOLOGY CO.,
LTD., HONG KONG LUTE TECHNOLOGY
CO., LIMITED, AND SHENZHEN CONGLIN
E-COMMERCE CO., LTD.,

                        Plaintiffs,

            v.

CHIARO TECHNOLOGY, LTD.,

                        Defendant.

No. 2:23-cv-00631

**AMENDED COMPLAINT FOR
DECLARATORY JUDGMENT AND
OTHER RELIEF**

JURY DEMAND

        Plaintiffs Shenzhen Root Technology Co., Ltd.[1], formerly known as Shenzhen Root e-Commerce Co., Ltd. (trading as "Momcozy") and its affiliates Hong Kong Lute Technology Co., Limited and Shenzhen Conglin e-Commerce Co., Ltd. (collectively "Momcozy" or "Plaintiffs"), hereby file this Amended Complaint against Defendant Chiaro Technology, Ltd., trading as "Elvie" ("Elvie" or "Defendant"), and alleges as follows:

                        **NATURE OF THE ACTION**

        1.        This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, and the United States Patent Act, 35 U.S.C. § 1, *et seq.* Momcozy seeks declaratory judgments that

---

[1] Plaintiff Shenzhen Root Technology Co., Ltd. owns all relevant rights and has standing to bring this action. However, given that Defendant has challenged that standing and out of an abundance of caution, Plaintiffs Hong Kong Lute Technology Co., Limited and Shenzhen Conglin e-Commerce Co., Ltd. join as parties in bringing this action to obviate any concern that those entities will not be bound by this action.

AMENDED COMPLAINT AND JURY DEMAND — 1

U.S. Patent No. 11,357,893 ("the '893 Patent")[2] is not infringed by Momcozy's wearable breast pumps, including without limitation its flagship product, the S12 Pro, and that the '893 Patent is invalid.

2.      This action further arises under the laws of the state of Washington. Momcozy seeks an order remedying Defendant's tortious interference and unfair competition.

**FACTUAL BACKGROUND**

**A.      Momcozy Is a Leading Seller of Breast Pumps on the Amazon.com Marketplace.**

3.      Momcozy is a leader in the maternity- and infant-care product fields. Momcozy is the top brand in Amazon's baby category. The vast majority of Momcozy's United States sales are made through the Amazon.com marketplace, where it has been the leading seller in the "Breast Pump" and "Electric Breast Pump" product categories and the top brand in the "baby" category. Since entering the market in early 2019, Momcozy has been extraordinarily successful—its sales have at least doubled each year.

4.      Momcozy's flagship product is the S12 Pro breast pump, which it developed to include an innovative design and suction structure that helps mothers solve the problem of breastfeeding. Within months after its launch on November 8, 2022, the S12 Pro generated significant sales via the Amazon.com marketplace and achieved the number one position in the electric breast pump product category. The resounding marketplace success of Momcozy's breast pumps, including the S12 Pro, is no accident—moms have responded to its combination of innovation, quality, comfort, and value, and the S12 Pro has earned Amazon.com buyer reviews that average more than four stars.

**B.      Defendant Has Accused Momcozy's More Successful Products of Infringing the '893 Patent.**

5.      Defendant also sells maternal care products, including breast pumps, which it markets under the Elvie trade name. Although, like Momcozy, Defendant sells its breast pump

---

[2] *See* Ex. 1 (Dkt. 1-3).  Plaintiffs incorporate by reference the exhibits to the Complaint, Dkt. 1-3 through 1-6.

AMENDED COMPLAINT AND JURY DEMAND — 2

**STOEL RIVES LLP**
600 University Street, Suite 3600
Seattle, WA  98101
*(206) 624-0900*

products in the United States through Amazon.com, it has failed to achieve Momcozy's marketplace success—Defendant's breast pumps are ranked far outside of the top ten on Amazon.com and have earned inferior average ratings based on buyer reviews.

6.     Unable to fairly compete in the market, Defendant has instead sought to interfere with Momcozy's sales via the Amazon.com marketplace via unsupported and incorrect accusations of patent infringement. In particular, Defendant has accused Momcozy's breast pumps of infringing the '893 patent, titled "Breast Pump System," and naming Jonathan O'Toole, Adam Rollo, and Andrew Carr as inventors and Chiaro Technology, Ltd. as the applicant and assignee.[3] The '893 patent issued on June 14, 2022, from U.S. Patent Application No. 17/203,050 (the "'050 Application"), which Defendant filed on March 16, 2021, long after Momcozy entered the breast pump market.

7.     The '893 patent describes its purported invention as an improved "wearable breast pump system including a housing shaped at least in part to fit inside a bra and a piezo air-pump."[4] The patent's specification describes breast pumps that predated this invention as typically using a "large suction generating device . . . . [that] is attached by air lines to one or two breast shields which engage with the user's breasts."[5] Such prior art breast pumps' "suction generating device" applied a "pressure cycle . . . via the air lines[] to the breast shields[,] . . . . [which] generate[d] a pressure cycle on the user's breasts to simulate the suction generated by a feeding child."[6] Such prior art breast pumps also typically included components such as "[m]ilk collection bottles," which could be in the form of separate bottles connected to each breast shield with tubing.[7] In addition, such prior art breast pumps often included "specialized bras" to enable mothers to use the breast pump "discretely, such as in an office environment."[8] These specialized bras included

---

[3] Ex. 1 (Dkt. 1-3), the '893 patent, cover page.
[4] *Id.*, Abstract.
[5] *Id.* at 1:43-46.
[6] *Id.* at 1:46-50.
[7] *Id.* at 1:52-56.
[8] *Id.* at 1:57-58.

AMENDED COMPLAINT AND JURY DEMAND — 3

STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA  98101
*(206) 624-0900*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

"a central slit, for the nipple tunnel of the breast shield to extend through," and held the "breast shield within the bra, with the suction generating device and milk bottle outside the bra."[9]

8.      The '893 patent also notes that "[f]ully integrated wearable breast pump systems have begun to enter the market . . . [that contain] the suction source, power supply and milk container . . . in a single, wearable device[,] [such that] there is no need for bulky external components or connections."[10] But the patent identifies additional problems with these wearable breast pumps. For example, the patent describes an earlier patent application, US 2013 0023821 A1, that discloses an "integrated wearable breast pump system" in which "[t]he breast shield has a small protrusion to engage with the[] housing components," including "a motor driven vacuum pump and power source."[11]

9.      The '893 patent purports to improve upon these prior art breast bumps. Its "Summary of the Invention" section identifies "[t]he invention [a]s a wearable breast pump system including: a housing shaped at least in part to fit inside a bra; a piezo air-pump fitted in the housing and forming part of a closed loop system that drives a separate, deformable diaphragm to generate negative air pressure, that diaphragm being removably mounted on a breast shield."[12] Figures 3 and 4 below depict an embodiment of this alleged invention:

---

[9] *Id.* at 1:61-62.
[10] *Id.* at 2:7-12.
[11] *Id.* at 2:45-53.
[12] *Id.* at 3:66-4:4.

AMENDED COMPLAINT AND JURY DEMAND — 4

STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA  98101
*(206) 624-0900*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

 

'893 patent, Fig. 3                    '893 patent, Fig. 4

As these figures show, the disclosed breast pump includes a housing (element 1) and milk collection container (element 3) that together from a shape that "roughly conforms with the shape of a tear-drop' shaped breast[,] . . . . which allows the breast pump 100 to substantially fit within the cup of a user's bra."[13] Also shown above is a breast shield (element 7), which nestles into the housing when the components are assembled together. The housing contains a piezo air pump (not shown above), and the breast pump includes a "diaphragm [element 13] for transferring the pressure from the pump to the milk-collection side of the system."[14] The diaphragm is held in place by a two-part diaphragm housing (elements 19A and 19B). As shown above, one of these parts of the diaphragm housing, element 19B, "is provided in a recessed portion of the housing 1."[15]

        10.    The '893 patent contains a single independent claim and 27 dependent claims, all of which depend from independent claim 1. Claim 1 recites:

        A breast pump device that is configured as a self-contained, in-bra wearable device, the breast pump comprising:

                a housing that includes:

                        a battery, and

---

[13] Id. at 8:38-41.
[14] Id. at 10:35-37.
[15] Id. at 11:34-36.

STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101
(206) 624-0900

a pump powered by the battery and generating negative air pressure;

a breast shield made up of a breast flange and a nipple tunnel;

a milk container that is configured to be attached to and removed from the housing; and

a diaphragm configured to be seated against a diaphragm holder that forms a recess or cavity at least in part with an external surface of the housing, the diaphragm deforming in response to changes in air pressure caused by the pump to create negative air pressure in the nipple tunnel.

11.    The version of claim 1 that appeared in the '050 Application as originally filed does not include the limitations in the last paragraph, including "a diaphragm configured to be seated against a diaphragm holder that forms a recess or cavity at least in part with an external surface of the housing." Instead, claim 1 of the originally filed '050 Application included various limitations relating to the rechargeability of the purported invention's battery and a maximum pressure of the recited pump:

A breast pump device that is configured as a self-contained, in-bra wearable device, the breast pump device comprising:

a housing that includes (a) a rechargeable battery; (b) a power charging circuit for controlling the charging of the rechargeable battery; (c) control electronics powered by the rechargeable battery; (d) a pump powered by the rechargeable batter with maximum suction of approximately 240 mmHg;

a breast shield made up of a breast flange and a nipple tunnel;

a milk container that is configured to be attached to and removed from the housing.

12.    In a non-final Office Action, an examiner for the U.S. Patent and Trademark Office ("PTO") found the originally filed claim 1 obvious in view of US Patent Publication No. 2013/0023821 A1 (hereinafter "Khalil") in view of a number of other references. Khalil discloses

STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101
(206) 624-0900

1

2

a self-contained, in-bra wearable pump that looks very similar to the in-bra wearable pump of the '893 patent:



| '893 Patent | Khalil |
|---|---|
| ('893 Patent], Fig. 1.) | Khalil, FIG. 9. |

13.    The examiner also found the remaining dependent claims of the '050 Application obvious in view of Khalil and a number of other references.

14.    In response the applicant conducted an interview with the examiner on September 23, 2021, after which, Defendant amended claim 1 to eliminate the rechargeability and pressure limitations and add the limitations relating to the diaphragm, diaphragm holder, and recess or cavity.

15.    The applicant never disputed that Khalil or the other prior art references possessed the limitations identified by the examiner. Instead, the applicant merely stated that "[w]ithout acquiescing to the rejection of claim 1," it was amending the claim and that the cited prior art does not teach the limitation added by the amendment.

16.    The examiner thereafter issued a final office action on November 4, 2021, that found in relevant part that amended claim 1 was allowable, while rejecting a number of other claims. In doing so, the examiner specifically cited the new limitation as the basis for finding amended claim 1 allowable, writing that the prior art:

STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101
(206) 624-0900

fails to teach among all the limitations or render obvious a diaphragm configured to be seated against a diaphragm holder that forms a recess or cavity at least in part with an external surface of the housing, in combination with the total structure and function as claimed. Instead [the prior art] teaches a diaphragm . . . which is seated against a diaphragm holder . . . . However, this sub-assembly is shown to be fully positioned within the housing so that it is enclosed by the housing and cannot be considered to form a recess or cavity with an external surface of the housing.

17.    In response to this final office action, the applicant cancelled the unallowed claims and the application proceeded to allowance, issuing as the '893 patent.

18.    Thus, the prosecution history of the '893 patent makes clear that the sole basis on which the '893 patent was allowed to issue over Khalil was the limitation that the diaphragm and diaphragm holder sub-assembly forms a recess or cavity in part with an external surface of the housing, rather than being located within the housing. However, other prior art breast pump designs which the examiner did not address already disclosed that configuration rendering obvious the '893 patent claims.

19.    Moreover, notwithstanding Defendant's amendment to add the limitations relating to the diaphragm, diaphragm holder, and recess or cavity, the '893 patent does not describe any breast pump having a "diaphragm holder that forms a cavity at least in part with an external surface of the housing." Indeed, the '050 Application, as originally filed, does not use the word "cavity."

STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA  98101
(206) 624-0900

**C.      Momcozy's Breast Pumps Do Not Infringe Claim 1 of the '893 Patent.**

20.      Momcozy's breast pumps, including the S12 Pro,
differ from the breast pump recited by claim 1 of the '893 patent.
For example, the S12 Pro's housing, which includes a non-piezo
pump, is positioned atop a domed milk container that fits over the
breast, such that it projects out above a bra when worn.



21.      Momcozy's breast pumps do not meet each of
claim 1's limitations. For example, the S12 Pro does not include
"a diaphragm holder that forms a recess or cavity at least in part

**Momcozy's S12 Pro**

with an external surface of the housing," as claim 1 requires. Rather, as shown below, the S12

Pro's diaphragm holder is completely separate from the housing and does not form a recess or

cavity with the housing's external surface—the diaphragm holder is located entirely within the



milk container. It instead includes a tube extending from the outer surface of the milk container

that inserts into an opening in the housing, enabling transfer of the negative pressure generated by

the pump to the diaphragm:

22.      Because the wall of the S12 Pro's milk container separates its diaphragm holder

from the pump's housing, the diaphragm holder does not "form[] a recess or cavity at least in part

**STOEL RIVES LLP**
600 University Street, Suite 3600
Seattle, WA  98101
*(206) 624-0900*

with the external surface of the housing," as claim 1 requires. At least for this reason, the S12 Pro does not infringe the '893 patent.

**D.    Defendant Interfered with Momcozy's Sales Via Amazon.com by Initiating an Amazon "APEX" Proceeding and Baselessly Accusing the S12 Pro of Infringement.**

23.    In June 2022, Defendant wrote to Momcozy claiming that certain of its breast pumps infringed the '893 patent, demanding that Momcozy cease and desist from making, using, importing, selling, or offering to sell those products, and requesting information that Defendant could use to calculate damages. Defendant specifically stated that these "demands do not constitute an offer of settlement."[16] Momcozy responded in July 2022 and explained that its products do not infringe.

24.    After the Parties exchanged further correspondence, on or around February 1, 2023, Defendant requested that nonparty Amazon.com, Inc. ("Amazon") initiate an Amazon Patent Evaluation Express Procedure ("APEX"), an extrajudicial patent dispute resolution process conducted before a single neutral evaluator selected by Amazon who receives a fixed fee of $4,000, which the losing party must pay. APEX proceedings are abbreviated proceedings, lasting a few weeks.  There is no opportunity for discovery.  The available defenses are strictly limited.

25.    Through its APEX request, Defendant sought to have Amazon remove allegedly infringing product listings of Momcozy's breast pumps, including its flagship S12 Pro product, from the Amazon.com marketplace; its request included the Amazon Standard Identification Numbers ("ASINs") for the S12 Pro, B09VPNMT1P and B09VPRJ2S8. Momcozy has sold these and other breast pumps included in the APEX request through corporate affiliates that it controls, Plaintiff Shenzhen Conglin e-Commerce Co., Ltd., and Shenzhen Jiuruixing Technology Co., Ltd. Further information regarding Momcozy's sale of these breast pumps via Amazon.com is provided in Momcozy's Motion for Temporary Restraining Order (Dkt. #21), Supplemental Brief in support of that Motion (Dkt. #33), and documents submitted in support of that motion, including the

---

[16] Ex. 2 (Dkt. 1-4).

STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA  98101
*(206) 624-0900*

Declaration and Supplemental Declaration of Pan Silin (Dkt. #22, 35) and the Declaration of Gong Shaocong (Dkt. #38), which Momcozy incorporates herein by reference.

26.    After Defendant asked Amazon to initiate the APEX proceeding, Amazon contacted Momcozy in writing on February 1, 2023. Amazon informed Momcozy that it could either participate in the APEX or attempt to resolve the dispute with Defendant or in litigation.[17] Amazon further alerted Momcozy that if it did not participate in the APEX proceeding and failed to resolve the dispute or file a district court complaint within three weeks, then Amazon would remove Momcozy's relevant product listings.[18] Although Momcozy attempted to resolve the dispute with Defendant, this was unsuccessful. Because of the importance of sales of the S12 Pro via Amazon.com to its business, Momcozy thus agreed to participate in the APEX proceeding.

27.    Unfortunately, even though the S12 Pro does not meet each limitation of the '893 patent's single independent claim (including "a diaphragm holder that forms a recess or cavity at least in part with an external surface of the housing"), the APEX proceeding resulted in a finding adverse to Momcozy.

28.    This result was particularly surprising for the S12 Pro because Defendant did not meaningfully address that product in its opening APEX submission; its analysis focused on a different model, the S12, which materially differs from the S12 Pro. Unlike the S12, the S12 Pro's diaphragm holder is located entirely within the milk container, such that there is no objectively reasonable basis for contending that the S12 Pro's diaphragm holder forms a recess or cavity at least in part with the external surface of the housing. Yet Defendant did not separately address this limitation with respect to the S12 Pro in its opening APEX briefing, suggesting that Defendant did not analyze or review the S12 Pro prior to including it in its APEX request. Defendant separately discussed the S12 Pro only in its APEX reply brief, effectively conceded that the S12 Pro's diaphragm holder does not form a "recess" at least in part with the housing's external surface, and failed to meaningfully explain how the diaphragm holder forms a "cavity" in part with the external

[17] *See* Ex. 3 (Dkt. 1-5).
[18] *See id.*

STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101
(206) 624-0900

surface of the housing, even though the diaphragm holder is enclosed within the S12 Pro's milk container.

29.     One day after the APEX decision, on April 25, 2023, Amazon removed the ASINs for the S12 Pro, such that Momcozy could no longer sell the product via Amazon.com. Amazon sellers cannot appeal the result of an APEX decision. Momcozy thus was left with no means of addressing the incorrect APEX ruling and reactivating its products listings other than this action. Absent a declaration of non-infringement, invalidity, or unenforceability, Defendant may continue to utilize Amazon's extra-judicial procedures to exclude Momcozy's noninfringing products from the Amazon.com marketplace, leading to significant losses in sales, customers, and goodwill. Furthermore, due to the APEX decision against Momcozy, Defendant will have the ability to immediately and summarily remove Momcozy's products, including redesigns in most cases, from the Amazon.com marketplace.

30.     This delisting has already severely harmed Momcozy's business. Momcozy's lost sales of the delisted S12 Pro amount to significant revenue each day and a significant portion of Momcozy's projected revenue. Further, the delisting also will lead to declines in Momcozy's product reviews, ratings, and Amazon ranking, which results in lower product visibility in consumer searches and affects Momcozy's ability to retain "Amazon Choice" and "Amazon Bestseller" recognition on the Amazon.com platform.

31.     Based on the foregoing, a justiciable case or controversy exists between Plaintiffs and Defendant as to whether the S12 Pump infringes the '839 Patent, whether Defendant wrongfully prosecuted the APEX action against Plaintiffs, and whether the claims of the '893 patent are valid and enforceable. Momcozy therefore has filed this Complaint to redress the incorrect APEX decision, obtain declaratory judgments of patent noninfringement and invalidity, and remedy the damage to its business caused by Defendant's interference with Momcozy's Amazon.com business.

//

STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA  98101
(206) 624-0900

1

## PARTIES

2      32.     Plaintiff Shenzhen Root Technology Co., Ltd. is organized under the laws of the

3 People's Republic of China and has its principal place of business at Shenzhou Computer Building,

4 Curie Madame Avenue, Longgang District, Shenzhen, China.

5      33.     Plaintiff Hong Kong Lute Technology Co., Ltd. is organized under the laws of the

6 Hong Kong and has its principal place of business at Room 02, 21F Shek Kwan Commercial

7 Building, 38 Bi Street, Yau Ma Tei, Kowloon, Hong Kong.

8      34.     Plaintiff Shenzhen Conglin e-Commerce Co., Ltd. is organized under the laws of

9 the People's Republic of China and has its principal place of business at 21F, Jinzhonghuan

10 International Business Building, No. 3037, Jintian Road, Fu'an Community, Futian Street, Futian

11 District, Shenzhen, China.

12      35.     Defendant is organized under the laws of the United Kingdom, with its principal

13 place of business at 63-66 Hatton Garden, EC1N 8LE, London, United Kingdom. On information

14 and belief, Defendant is the assignee and owner of the '893 patent.

15                        ## STANDING, JURISDICTION, AND VENUE

16      36.     This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*,

17 the United States Patent Act, 35 U.S.C. § 1, *et seq.*, and the laws of the state of Washington. This

18 Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 2201, 2202, 1331,

19 and 1338(a) because an actual case or controversy currently exists between the Parties regarding

20 the subject matter of this action, and the Court would have subject matter jurisdiction over this

21 action if Defendant initiated suit for patent infringement. This court has subject matter over the

22 state law claims asserted in this action pursuant to 28 U.S.C. § 1367(a) because they are so related

23 to the declaratory judgment claims that they form part of the same case or controversy.

24      37.     Further, Momcozy has standing under the Declaratory Judgment Act, 28 U.S.C. §

25 2201, *et seq.*, because a substantial controversy exists between Momcozy and Defendant, which

26 have adverse legal interests, of sufficient immediacy and reality to warrant the issue of a

AMENDED COMPLAINT AND JURY DEMAND — 13

declaratory judgment. Based on Defendant's conduct—including (i) sending cease-and-desist letters accusing Momcozy of infringing the '893 patent, demanding information sufficient to calculate damages, and representing that these "demands do not constitute an offer of settlement";[19] and (ii) prosecuting an APEX proceeding in which it argued that Momcozy's products infringed and should be removed from Amazon.com—Momcozy has a real apprehension that it will face suit or other adverse action from Defendant regarding the '893 patent. Indeed, via the APEX proceeding, Momcozy already has been forced to address Defendant's infringement accusations in an alternative dispute resolution and has suffered both pecuniary and nonmonetary injuries as a result. Declaratory relief is thus appropriate and necessary to establish that the making, using, importation, sale, or offer of sale of the S12 Pro does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '893 Patent. Momcozy is entitled to a judgment declaring that it has not infringed and will not infringe any claim of the '893 patent and an injunction requiring Defendant to retract its takedown requests from Amazon. In further support of its standing to assert the below claims, Momcozy's incorporates by reference its Motion for Temporary Restraining Order (Dkt. #21), Supplemental Brief in support of that Motion (Dkt. #33), and documents submitted in support of that motion, including the Declaration and Supplemental Declaration of Pan Silin (Dkt. #22, 35) and the Declaration of Gong Shaocong (Dkt. #38), which Momcozy incorporates herein by reference. Plaintiff Shenzhen Root Technology Co., Ltd. owns all relevant rights and has standing to bring this action. However, given that Defendant has challenged that standing and out of an abundance of caution, Plaintiffs Hong Kong Lute Technology Co., Limited and Shenzhen Conglin e-Commerce Co., Ltd. join as parties in bringing this action to obviate any concern that those entities will not be bound by this action.

38.    This Court has personal jurisdiction over Defendant because it purposefully availed itself of the privileges of conducting commercial and legal activities in Washington through the

---

[19] Ex. 2 (Dkt. 1-4).

STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101
(206) 624-0900

1
2
3
4
5
6
7
8
9
10
11
12

APEX proceeding, Momcozy's claims arise out of these activities, and this Court's exercise of jurisdiction would be reasonable. As discussed above, Momcozy's claims arise out of Defendant's prosecution of an APEX dispute resolution by Amazon to have Momcozy's products at issue removed from the Amazon.com marketplace. As is widely known, Amazon's principal place of business is located in Seattle, Washington, and on information and belief, Amazon manages relations among sellers on its marketplace and administers the APEX program in whole or in part from its Seattle facilities. Further, the agreement governing the Parties' APEX proceeding, which Defendant signed, states that "Participants agree to the jurisdiction and venue of the federal and state courts located in King County, Seattle, Washington."[20] Because Defendant voluntarily initiated an APEX legal action directly related to Momcozy's claims with Amazon in Seattle, Washington, and agreed to jurisdiction and venue in this forum, Defendant may reasonably expect to face litigation in this district.

13
14
15
16
17
18
19
20
21

39.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in this district and were perpetrated by Defendant using a resident of and wrongfully prosecuting an APEX legal proceeding in this district—namely, the APEX proceeding discussed above. In addition, as also discussed above, Defendant agreed with respect to the APEX proceeding "to the jurisdiction and venue of the federal and state courts located in King County, Seattle, Washington."[21] Further, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(c) because Defendant is subject to personal jurisdiction in this district, and there is no other juridical district in which a substantial part of the events or omissions giving rise to the claim occurred.

22
23

## COUNT I
### Declaratory Judgment of Non-Infringement of the '893 Patent

24
25

40.     Momcozy repeats and realleges each of the preceding paragraphs as if they are restated here and incorporates them by reference.

26

---

[20] Ex. 4 (Dkt. 1-6), Amazon Patent Evaluation Express Agreement ¶ 5 (Feb. 1, 2023).
[21] *Id.*

STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA  98101
*(206) 624-0900*

41.     The manufacture, use, offer for sale, sale, and/or import of Momcozy's breast pumps, including without limitation the S12 Pro, have not infringed and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '893 Patent. This is because Momcozy's breast pumps, including at least the S12 Pro, do not meet each and every limitation recited in claim 1 of the '893 Patent, as infringement requires.

42.     For example, and without limitation, the S12 Pro does not satisfy claim 1's requirement of "a diaphragm holder that forms a recess or cavity at least in part with an external surface of the housing." As explained above, the S12 Pro's diaphragm holder is located entirely within the milk container and does not form any recess or cavity with the external surface of the housing. Instead, the S12 Pro includes a tube extending from the outer surface of the milk container inserts into a separate opening in the housing when assembled, which enables direct transfer of the negative pressure generated by the pump to the diaphragm. Because the S12 Pro's milk container entirely encloses the diaphragm holder, separating it from the pump's external housing, the diaphragm holder does not "form[] a recess or cavity at least in part with the external surface of the housing," as claim 1 requires.

43.     As a further example, and without limitation, Momcozy breast pumps, including at least the S12 Pro, do not satisfy claim 1's requirement of "[a] breast pump device that is configured as a self-contained, in-bra wearable device." Among other reasons, the Momcozy breast pumps are not configured as an "in-bra wearable device." For example, and without limitation, the pumps' housing, which contains the pump's suction-generating device, extends up above the bra cup and the pump does not substantially fit within a user's bra for discrete pumping.

44.     An actual and justiciable case or controversy therefore exists between Momcozy and Defendant regarding whether Momcozy has infringed the claims of the '893 patent. Declaratory relief is thus appropriate and necessary to establish that the making, using, importation, sale, or offer of sale of the S12 Pro does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '893 Patent. Momcozy

STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA  98101
(206) 624-0900

1    is entitled to a judgment declaring that it has not infringed and will not infringe any claim of the

2    '893 patent.

3                                                **COUNT II**
                      **Declaratory Judgment of Invalidity of the '893 Patent**
4

5        45.    Momcozy repeats and realleges each of the preceding paragraphs as if they are

6    restated here and incorporates them by reference.

7        46.    At least if construed broadly so as to cover the Momcozy products such as the S12

8    Pro, the sale of which Defendant attempted to ban, the claims of the '893 patent are invalid under

9    the United States patent laws, 35 U.S.C. § 1 *et seq*., including for failure to meet the requirements

10   for patentability as set forth in, *inter alia*, 35 U.S.C. §§ 102, 103, and 112 and the corresponding

11   patent regulations set forth in the Code of Federal Regulations, 37 C.F.R. § 1.1, *et seq*. For

12   example, and without limitation, the claims of the '893 patent are invalid as anticipated under 35

13   U.S.C. § 102 and/or obvious under 35 U.S.C. § 103 in view of one or more of at least the following

14   prior art references, alone or in combination:

15       • U.S. Publication No. 2013/0023821

16       • U.S. Publication No. 2016/0271305 A1

17       • U.S. Publication No. 2007/0219486 A1

18       • U.S. Publication No. 2009/0281485 A1

19       • U.S. Publication No. 2015/157775 A1

20       • U.S. Patent No. 4,673,388

21       • U.S. Publication No. 2016/0325031

22       • U.S. Publication No. 2016/0220743

23       • WO Publication No. 2015/120321 A1

24       47.    Notably, the sole basis for the examiner allowing the claims of the '893 patent over

25   the prior art the examiner by was the limitation that the diaphragm holder sub-assembly forms a

26   recess or cavity in part with an external surface of the housing, rather than being located within

AMENDED COMPLAINT AND JURY DEMAND — 17

the housing. However, this limitation is also anticipated or obvious at least in view of the prior art listed above.

48.     The claims of the '893 patent are also invalid for lack of written description, non-enablement, and claim indefiniteness under 35 U.S.C. § 112 because the patent's specification, including claims, fails to reasonably convey to persons of ordinary skill in the art that the inventors had possession of the claimed subject matter as of the filing date and to reasonably inform persons of ordinary skill in the art of the claim scope. Further, the specification fails to disclose the full scope of claim 1 in sufficient detail to enable persons of ordinary skill to construct the breast pump recited in claim 1.

49.     For example, and without limitation, claim 1 of the '893 patent requires "a diaphragm holder that forms a recess or cavity at least in part with an external surface of the housing." As discussed above, this limitation was not included in the claims as originally filed in the '050 Application that led to the '893 patent; instead, it was added via amendment during prosecution to overcome the Patent Office examiner's rejections based on prior art.

50.     But the specification does not describe a breast pump having a diaphragm holder that meets the full scope of this limitation. Although the specification discusses embodiments of the invention that include a diaphragm holder that forms a "recess" in the external surface of the pump's housing, it does not describe any embodiment in which a diaphragm holder forms a "cavity at least in part with an external surface of the housing." Indeed, other than in the limitation of claim 1 added via amendment, the specification does not use the term "cavity."

51.     Consequently, the '893 patent's specification does not reasonably convey to persons having ordinary skill in the field of breast pump systems that the inventors possessed a breast pump that included "a diaphragm holder that forms a cavity at least in part with an external surface of the housing" as of the '050 Application's filing date. Claim 1 of the '893 patent is thus invalid for lack of written description. Further, because the specification does not enable persons

AMENDED COMPLAINT AND JURY DEMAND — 18

of ordinary skill to construct a breast pump that includes "a diaphragm holder that forms a cavity at least in part with an external surface of the housing," claim 1 is invalid for non-enablement.

52.    Because claim 1 is invalid under section 112, each of the '893 patent's dependent claims are also invalid.

53.    An actual and justiciable case or controversy therefore exists between Momcozy and Defendant regarding the validity of the '893 Patent. Declaratory relief is thus appropriate and necessary, and Momcozy is entitled to a judgment declaring that the '893 patent's claims are invalid.

## COUNT III
## Tortious Interference

54.    Momcozy repeats and realleges each of the preceding paragraphs as if they are restated here and incorporates them by reference.

55.    Defendant knowingly and intentionally interfered with Momcozy's valid and existing business relationship and expectancy of sales of its breast pumps, including the S12 Pro and similar designs, via Amazon.com for an improper purpose and by improper means, causing Amazon to remove the ASINs for those breast pumps, resulting in damages from Momcozy's lost sales of those breast pumps and associated products.

56.    As discussed above, Momcozy has been the leading seller in the "Breast Pump" and "Electric Breast Pump" categories on Amazon.com, achieving significant sales.

57.    Defendant had knowledge of Momcozy's relationship with Amazon and its sales of the S12 Pro and other breast pumps via Amazon.com, including without limitation via its affiliates Shenzhen Conglin e-Commerce Co., Ltd., and Shenzhen Jiuruixing Technology Co., Ltd., as shown by Defendant's APEX request directed to those products. Further information regarding Momcozy's sale of these breast pumps via Amazon.com is provided in Momcozy's Motion for Temporary Restraining Order (Dkt. #21), Supplemental Brief in support of that Motion (Dkt. #33), and documents submitted in support of that motion, including the Declaration and

STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA  98101
(206) 624-0900

Supplemental Declaration of Pan Silin (Dkt. #22, 35) and the Declaration of Gong Shaocong (Dkt. #38), which Momcozy incorporates herein by reference.

58.     By submitting the APEX request and prosecuting the subsequent APEX proceeding, Defendant intentionally interfered with and caused the termination of Momcozy's ability to sell the S12 Pro and other breast pumps via Amazon.com through its affiliates.

59.     And Defendant used improper means to so interfere—as explained above, Defendant lacked an objectively reasonable basis to include at least the S12 Pro in its APEX request and accuse it of infringing the '893 patent — a patent that Defendant knew or should have known is not infringed at least by the S12 Pro and is invalid (including as set forth above) — as shown by its failure to separately address that model in its opening APEX brief and to meaningfully explain how it includes a "diaphragm holder forming a recess or cavity at least in part with an external surface of the housing."

60.     As a direct and proximate result of this misconduct, Momcozy has suffered damages, including significant sums in lost sales of the S12 Pro and other breast pumps, resulting in lost revenue and lost profits directly attributable to those lost sales, in an amount to be proven at trial and in a manner that cannot be fully measured or compensated in economic terms alone. Such irreparable harm will continue unless Defendant's acts are restrained and enjoined during and after this action.

## COUNT IV
### Unfair Competition

61.     Momcozy repeats and realleges each of the preceding paragraphs as if they are restated here and incorporates them by reference.

62.     Momcozy is a leading seller and competitor of Defendant's in the "Breast Pump" and "Electric Breast Pump" categories on Amazon.com and through other channels, achieving significant sales. In an effort to exclude Momcozy from the market, Defendant commenced legal proceedings, including via the Amazon APEX action, against Plaintiffs without legal or factual justification in order to hamper Momcozy's fair competition in the sale of breast pumps, including

STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA  98101
(206) 624-0900

the S12 Pro and similar designs. Defendant succeeded in removing Momcozy's competing products from the market under color of authority as the purported owner of the '893 patent, even though Defendant knew or should have known that there were no good-faith grounds to assert infringement of any valid and enforcement patent claim against at least Momcozy's S12 Pro breast pump.  Further information regarding Defendant's bad faith assertion of the '893 patent against Momcozy's sale of these breast pumps via Amazon.com is provided in Momcozy's Motion for Temporary Restraining Order (Dkt. #21), Supplemental Brief in support of that Motion (Dkt. #33), and documents submitted in support of that motion, including the Declaration and Supplemental Declaration of Pan Silin (Dkt. #22, 35) and the Declaration of Gong Shaocong (Dkt. #38), which Momcozy incorporates herein by reference.

63.    Defendant's bad faith acts against Momcozy's directly competing business have diverted and are likely to further divert sales away from Momcozy. Through its unfair competition scheme, Defendant has damaged and is likely to further damage Momcozy's business, goodwill, and reputation among its actual and potential business partners, investors, customers, and the public, including and beyond the harm caused to Momcozy's valued relationship with Amazon or customers lost while Momcozy's products were delisted from that platform. Momcozy's business and the value thereof have been and are likely to be further injured as a result of Defendant's improper assertion of the '893 patent, including through Defendant's commencement and prosecution of the APEX action and other acts of improvident patent assertion against Momcozy.

64.    As a direct and proximate result of Defendant's unfair competition, Plaintiffs have been, and continue to be, materially harmed in an amount to be proven at trial and in a manner that cannot be fully measured or compensated in economic terms alone.  Such irreparable harm will continue unless Defendant's acts are restrained and enjoined during and after this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

**STOEL RIVES LLP**
600 University Street, Suite 3600
Seattle, WA  98101
*(206) 624-0900*

i.      A judgment declaring that the manufacture, use, offer for sale, sale, and/or importation of Plaintiffs' products have not infringed and will not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '893 patent;

ii.     A judgment declaring that the claims of the '893 patent are invalid;

iii.    An order enjoining Defendant from further enforcement of the '893 patent and requiring it to retract its takedown request from Amazon.

iv.     An award of monetary damages sufficient to compensate Plaintiffs for Defendant's tortious conduct and unfair competition;

v.      An order awarding Plaintiffs' costs and reasonable attorney's fees as permitted by law; and

vi.     Such other and further relief as this Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demands a trial by jury on all claims and issues so triable.


Dated: June 2, 2023.

Respectfully submitted,

STOEL RIVES LLP

*/s/ Brian C. Park*
Brian C. Park, WSBA No. 25584
Jacqueline Middleton, WSBA No. 52636
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101
*brian.park@stoel.com*
*jacqueline.middleton@stoel.com*
Tel.: (206) 386-7542
Fax: (206) 386-7500

Qianwu Yang (admitted *pro hac vice*)
Xiaomin Cao (admitted *pro hac vice*)
SHM LAW FIRM
25 F, China Resources Tower,
 2666 Keyuan South Rd., Nanshan

STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA  98101
*(206) 624-0900*

Shenzhen, China 518052
Tel.: +86 139 2521 2009
Fax: +86 755 8326 6693
*yang@shm.law*
*cao.xiaomin@shm.law*

Attorneys for Plaintiffs

**STOEL RIVES LLP**
600 University Street, Suite 3600
Seattle, WA  98101
*(206) 624-0900*

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification and serve such filing on all counsel of record.

DATED:  June 2, 2023.

/s/ Brian C. Park
Brian C. Park, WSBA No. 25584

AMENDED COMPLAINT AND JURY DEMAND — 24

STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA  98101
(206) 624-0900