THE HONORABLE JOHN H. CHUN

1

2

3

4

5

6

7
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
8
AT SEATTLE

9

10
SHENZHEN ROOT TECHNOLOGY CO., LTD., | Case No. 2:23-cv-631
HONG KONG LUTE TECHNOLOGY CO.,
LIMITED, AND SHENZHEN CONGLIN E-
11
COMMERCE CO., LTD.,

12
Plaintiffs,    **CHIARO TECHNOLOGY LTD.'S**
**ANSWER, DEFENSES, AND**
**AMENDED COUNTERCLAIMS TO**
13
v.    **PLAINTIFFS' AMENDED**
**COMPLAINT**
14
CHIARO TECHNOLOGY Ltd.,

15
Defendant.

16
_____

17
CHIARO TECHNOLOGY LTD.,

18
Counterclaim Plaintiff,

19
v.

20
SHENZHEN ROOT TECHNOLOGY CO., LTD.,
HONG KONG LUTE TECHNOLOGY CO.,
21
LIMITED, SHENZHEN CONGLIN E-
COMMERCE CO., LTD, SHENZHEN ROOT E-
22
COMMERCE CO., LTD., SHENZHEN TPH
TECHNOLOGY CO., LTD., SHENZHEN
23
JINRUIXING TECHNOLOGY CO., LTD.,
SHENZHEN LUTEJIACHENG NETWORK
24
TECHNOLOGY CO., LTD., and SHENZHEN
JINRUIHANG TECHNOLOGY CO., LTD.,
25
SHENZHEN XITAO NETWORK
TECHNOLOGY CO., LTD.,
26
Counterclaim Defendants.

27

Defendant/Counterclaim Plaintiff Chiaro Technology Ltd. ("Defendant" or "Elvie") hereby submits its ~~Answer, Defenses, and~~ Amended Counterclaims to Plaintiff's Amended Complaint for Declaratory Judgment and Other Relief ("Amended Complaint") filed by Shenzhen Root Technology Co., Ltd. and its affiliates Hong Kong Lute Technology Co., Limited and Shenzhen Conglin e-Commerce Co., Ltd. (collectively "Plaintiffs"). ~~Any and all allegations contained in Plaintiffs' Amended Complaint not expressly admitted in this Answer are denied.~~

## ~~GENERAL DENIAL~~

~~Elvie denies all allegations in Plaintiffs' Amended Complaint except for those specifically admitted below. With respect to the allegations made in the Amended Complaint, upon knowledge with respect to Elvie's own acts, and on information and belief as to other matters, Elvie responds and alleges as follows:~~

## ~~NATURE OF THE ACTION~~

~~1.     This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*., and the United States Patent Act, 35 U.S.C. § 1, *et seq*. Momcozy seeks declaratory judgments that U.S. Patent No. 11,357,893 ("the '893 Patent") is not infringed by Momcozy's wearable breast pumps, including without limitation its flagship product, the S12 Pro, and that the '893 Patent is invalid.~~

~~**ANSWER:**    Paragraph 1 of the Amended Complaint contains statements that are neither allegations nor averments to which a response is required. Paragraph 1 of the Amended Complaint also states legal conclusions, to which no response is required. To the extent a response is required, Elvie admits that Plaintiffs purport to bring a civil action for declaratory judgment of noninfringement of U.S. Patent No. 11,357,893 (the "'893 patent") by Momcozy's wearable breast pumps, including without limitation its flagship product, the S12 Pro, arising under 28 U.S.C. § 2201, *et seq*., and the United States Patent Act, 35 U.S.C. § 1, *et seq*. Further, Elvie admits that Plaintiffs purport to bring a civil action for alleged invalidity of the '893 patent.~~

~~2.     This action further arises under the laws of the state of Washington. Momcozy seeks an order remedying Defendant's tortious interference and unfair competition.~~

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**ANSWER:** ~~Paragraph 2 contains legal conclusions and allegations to which no response is required. To the extent a response is required, Elvie admits that this purports to be an action arising under the laws of the state of Washington and that Plaintiffs purport to seek an order remedying Elvie's alleged tortious interference and unfair competition.~~

## ~~FACTUAL BACKGROUND~~

~~3.     Momcozy is a leader in the maternity- and infant-care product fields. Momcozy is the top brand in Amazon's baby category. The vast majority of Momcozy's United States sales are made through the Amazon.com marketplace, where it has been the leading seller in the "Breast Pump" and "Electric Breast Pump" product categories and the top brand in the "baby" category. Since entering the market in early 2019, Momcozy has been extraordinarily successful—its sales have at least doubled each year.~~

**ANSWER:** ~~Paragraph 3 of the Amended Complaint contains statements that are neither allegations nor averments to which a response is required. To the extent a response is required, Elvie admits that Momcozy sells breast pump products on the Amazon.com marketplace. Elvie lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 3 as pled, and deny those allegations on that basis.~~

~~4.     Momcozy's flagship product is the S12 Pro breast pump, which it developed to include an innovative design and suction structure that helps mothers solve the problem of breastfeeding. Within months after its launch on November 8, 2022, the S12 Pro generated significant sales via the Amazon.com marketplace and achieved the number one position in the electric breast pump product category. The resounding marketplace success of Momcozy's breast pumps, including the S12 Pro, is no accident—moms have responded to its combination of innovation, quality, comfort, and value, and the S12 Pro has earned Amazon.com buyer reviews that average more than four stars.~~

**ANSWER:** ~~Paragraph 4 of the Amended Complaint contains statements that are neither allegations nor averments to which a response is required. To the extent a response is required, Elvie admits that Momcozy sells the S12 Pro breast pump on the Amazon.com marketplace. Elvie lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 4 as pled, and deny those allegations on that basis.~~

5. ~~Defendant also sells maternal care products, including breast pumps, which it markets under the Elvie trade name. Although, like Momcozy, Defendant sells its breast pump products in the United States through Amazon.com, it has failed to achieve Momcozy's marketplace success—Defendant's breast pumps are ranked far outside of the top ten on Amazon.com and have earned inferior average ratings based on buyer reviews.~~

~~**ANSWER:** Paragraph 5 of the Amended Complaint contains statements that are neither allegations nor averments to which a response is required. To the extent a response is required, Elvie admits that it sells maternal care products, including breast pumps marketed under the Elvie trade name. Elvie further admits that one platform on which it sells its breast pump products in the United States is through Amazon.com. Elvie denies the remaining allegations of Paragraph 5.~~

6. ~~Unable to fairly compete in the market, Defendant has instead sought to interfere with Momcozy's sales via the Amazon.com marketplace via unsupported and incorrect accusations of patent infringement. In particular, Defendant has accused Momcozy's breast pumps of infringing the '893 patent, titled "Breast Pump System," and naming Jonathan O'Toole, Adam Rollo, and Andrew Carr as inventors and Chiaro Technology, Ltd. as the applicant and assignee. The '893 patent issued on June 14, 2022, from U.S. Patent Application No. 17/203,050 (the "'050 Application"), which Defendant filed on March 16, 2021, long after Momcozy entered the breast pump market.~~

~~**ANSWER:** Paragraph 6 of the Amended Complaint contains statements that are neither allegations nor averments to which a response is required. To the extent a response is required, Elvie admits that, through an Amazon APEX proceeding, it accused Momcozy's breast pumps of infringing its '893 patent titled "Breast Pump System." Elvie further admits that the '893 patent lists as inventors Jonathan O'Toole, Adam Rollo, and Andrew Carr and identifies Chiaro Technology, Ltd as the applicant and assignee. Elvie admits that the '893 patent issued on June 14, 2022 from U.S. Patent Application No. 17/203,050 ("the '050 application") filed on March 16, 2021 and claiming priority to Great Britain patent applications filed as early as June 15, 2017. Elvie denies the remaining allegations of Paragraph 6.~~

7. ~~The '893 patent describes its purported invention as an improved "wearable breast pump system including a housing shaped at least in part to fit inside a bra and a piezo air-pump." The patent's specification describes breast pumps that predated this invention as typically using a "large suction generating device . . . . [that] is attached by air lines to one or two breast shields which engage with the user's breasts." Such prior art breast pumps' "suction generating device"~~

applied a "pressure cycle . . . via the air lines[] to the breast shields[,] . . . . [which] generate[d] a pressure cycle on the user's breasts to simulate the suction generated by a feeding child." Such prior art breast pumps also typically included components such as "[m]ilk collection bottles," which could be in the form of separate bottles connected to each breast shield with tubing. In addition, such prior art breast pumps often included "specialized bras" to enable mothers to use the breast pump "discretely, such as in an office environment." These specialized bras included "a central slit, for the nipple tunnel of the breast shield to extend through," and held the "breast shield within the bra, with the suction generating device and milk bottle outside the bra."

ANSWER:    Elvie admits that Plaintiffs purport to present incomplete selections of text of the '893 patent, but the actual and complete disclosure of the '893 patent speaks for itself and is controlling. Elvie denies the remaining allegations of Paragraph 7 that are contrary to the actual and complete disclosure of the '893 patent.

8.    The '893 patent also notes that "[f]ully integrated wearable breast pump systems have begun to enter the market . . . [that contain] the suction source, power supply and milk container . . . in a single, wearable device[,] [such that] there is no need for bulky external components or connections." But the patent identifies additional problems with these wearable breast pumps. For example, the patent describes an earlier patent application, US 2013 0023821 A1, that discloses an "integrated wearable breast pump system" in which "[t]he breast shield has a small protrusion to engage with the[] housing components," including "a motor driven vacuum pump and power source."

ANSWER:    Elvie admits that Plaintiffs purport to present incomplete selections of text of the '893 patent, but the actual and complete disclosure of the '893 patent speaks for itself and is controlling. Elvie denies the remaining allegations of Paragraph 8 that are contrary to the actual and complete disclosure of the '893 patent.

9.    The '893 patent purports to improve upon these prior art breast bumps. Its "Summary of the Invention" section identifies "[t]he invention [a]s a wearable breast pump system including: a housing shaped at least in part to fit inside a bra; a piezo air-pump fitted in the housing and forming part of a closed loop system that drives a separate, deformable diaphragm to generate negative air pressure, that diaphragm being removably mounted on a breast shield." Figures 3 and 4 below depict an embodiment of this alleged invention:

**'893 patent, Fig. 3**          **'893 patent, Fig. 4**

As these figures show, the disclosed breast pump includes a housing (element 1) and milk collection container (element 3) that together from a shape that "roughly conforms with the shape of a tear-drop' shaped breast[,] . . . . which allows the breast pump 100 to substantially fit within the cup of a user's bra." Also shown above is a breast shield (element 7), which nestles into the housing when the components are assembled together. The housing contains a piezo air pump (not shown above), and the breast pump includes a "diaphragm [element 13] for transferring the pressure from the pump to the milk-collection side of the system." The diaphragm is held in place by a two-part diaphragm housing (elements 19A and 19B). As shown above, one of these parts of the diaphragm housing, element 19B, "is provided in a recessed portion of the housing 1."

**ANSWER:**   Elvie admits that Plaintiffs purport to present incomplete selections of text and figures of the '893 patent, but the actual and complete disclosure of the '893 patent speaks for itself and is controlling. Elvie denies the remaining allegations of Paragraph 9 that are contrary to the actual and complete disclosure of the '893 patent.

10.   The '893 patent contains a single independent claim and 27 dependent claims, all of which depend from independent claim 1. Claim 1 recites:

A breast pump device that is configured as a self-contained, in-bra wearable device, the breast pump comprising:

a housing that includes:

a battery, and

a pump powered by the battery and generating negative air pressure;

a breast shield made up of a breast flange and a nipple tunnel;

a milk container that is configured to be attached to and removed from the housing; and

1

2

a diaphragm configured to be seated against a diaphragm holder that forms a recess or cavity at least in part with an external surface of the housing, the diaphragm deforming in response to changes in air pressure caused by the pump to create negative air pressure in the nipple tunnel.

3

4

5

6

7

**ANSWER:**   Elvie admits that the '893 patent includes, *inter alia*, one independent claim and 27 dependent claims. Elvie further admits that Plaintiffs purport to present the text of claim 1 of the '893 patent, but the actual and complete disclosure of the '893 patent speaks for itself and is controlling. Elvie denies the remaining allegations of Paragraph 10 that are contrary to the actual and complete disclosure of the '893 patent.

8

9

10

11

11.     The version of claim 1 that appeared in the '050 Application as originally filed does not include the limitations in the last paragraph, including "a diaphragm configured to be seated against a diaphragm holder that forms a recess or cavity at least in part with an external surface of the housing." Instead, claim 1 of the originally filed '050 Application included various limitations relating to the rechargeability of the purported invention's battery and a maximum pressure of the recited pump:

12

13

14

15

16

A breast pump device that is configured as a self-contained, in-bra wearable device, the breast pump device comprising:
a housing that includes (a) a rechargeable battery; (b) a power charging circuit for controlling the charging of the rechargeable battery; (c) control electronics powered by the rechargeable battery; (d) a pump powered by the rechargeable batter with maximum suction of approximately 240 mmHg;
a breast shield made up of a breast flange and a nipple tunnel;
a milk container that is configured to be attached to and removed from the housing.

17

18

19

20

**ANSWER:**   Elvie admits that Plaintiffs purport to present the text of claim 1 of the '050 application, but the actual and complete disclosure of the '050 application speaks for itself and is controlling. Elvie denies the remaining allegations of Paragraph 11 that are contrary to the actual and complete disclosure of the '050 application and its prosecution history.

21

22

23

24

12.     In a non-final Office Action, an examiner for the U.S. Patent and Trademark Office ("PTO") found the originally filed claim 1 obvious in view of US Patent Publication No. 2013/0023821 A1 (hereinafter "Khalil") in view of a number of other references. Khalil discloses a self-contained, in-bra wearable pump that looks very similar to the in-bra wearable pump of the '893 patent:

25

26

27

| '893 Patent | Khalil |
|---|---|
|  | |
| ('893 Patent], Fig. 1.) | Khalil, FIG. 9. |

**ANSWER:** Plaintiffs purport to characterize incomplete selections of the prosecution history, but the actual and complete text of the prosecution history speaks for itself and is controlling. Elvie denies the remaining allegations of Paragraph 12 that are contrary to the actual and complete disclosure of the prosecution history.

13. The examiner also found the remaining dependent claims of the '050 Application obvious in view of Khalil and a number of other references.

**ANSWER:** Plaintiffs purport to characterize incomplete selections of the prosecution history, but the actual and complete text of the prosecution history speaks for itself and is controlling. Elvie denies the remaining allegations of Paragraph 13 that are contrary to the actual and complete disclosure of the prosecution history.

14. In response the applicant conducted an interview with the examiner on September 23, 2021, after which, Defendant amended claim 1 to eliminate the rechargeability and pressure limitations and add the limitations relating to the diaphragm, diaphragm holder, and recess or cavity.

**ANSWER:**     Plaintiffs purport to characterize incomplete selections of the prosecution history, but the actual and complete text of the prosecution history speaks for itself and is controlling. Elvie denies the remaining allegations of Paragraph 14 that are contrary to the actual and complete disclosure of the prosecution history.

15.     The applicant never disputed that Khalil or the other prior art references possessed the limitations identified by the examiner. Instead, the applicant merely stated that "[w]ithout acquiescing to the rejection of claim 1," it was amending the claim and that the cited prior art does not teach the limitation added by the amendment.

**ANSWER:**     Plaintiffs purport to characterize incomplete selections of the prosecution history, but the actual and complete text of the prosecution history speaks for itself and is controlling. Elvie denies the remaining allegations of Paragraph 15 that are contrary to the actual and complete disclosure of the prosecution history.

16.     The examiner thereafter issued a final office action on November 4, 2021, that found in relevant part that amended claim 1 was allowable, while rejecting a number of other claims. In doing so, the examiner specifically cited the new limitation as the basis for finding amended claim 1 allowable, writing that the prior art:

> fails to teach among all the limitations or render obvious a diaphragm configured to be seated against a diaphragm holder that forms a recess or cavity at least in part with an external surface of the housing, in combination with the total structure and function as claimed. Instead [the prior art] teaches a diaphragm . . . which is seated against a diaphragm holder . . . . However, this sub-assembly is shown to be fully positioned within the housing so that it is enclosed by the housing and cannot be considered to form a recess or cavity with an external surface of the housing.

**ANSWER:**     Plaintiffs purport to characterize incomplete selections of the prosecution history, but the actual and complete text of the prosecution history speaks for itself and is controlling. Elvie denies the remaining allegations of Paragraph 16 that are contrary to the actual and complete disclosure of the prosecution history.

17.     In response to this final office action, the applicant cancelled the unallowed claims and the application proceeded to allowance, issuing as the '893 patent.

**ANSWER:**     Plaintiffs purport to characterize incomplete selections of the prosecution history, but the actual and complete text of the prosecution history speaks for itself and is

controlling. Elvie denies the remaining allegations of Paragraph 17 that are contrary to the actual and complete disclosure of the prosecution history.

18.     Thus, the prosecution history of the '893 patent makes clear that the sole basis on which the '893 patent was allowed to issue over Khalil was the limitation that the diaphragm and diaphragm holder sub-assembly forms a recess or cavity in part with an external surface of the housing, rather than being located within the housing. However, other prior art breast pump designs which the examiner did not address already disclosed that configuration rendering obvious the '893 patent claims.

**ANSWER:**   Denied.

19.     Moreover, notwithstanding Defendant's amendment to add the limitations relating to the diaphragm, diaphragm holder, and recess or cavity, the '893 patent does not describe any breast pump having a "diaphragm holder that forms a cavity at least in part with an external surface of the housing." Indeed, the '050 Application, as originally filed, does not use the word "cavity."

**ANSWER:**   Plaintiffs purport to characterize incomplete selections of the prosecution history, but the actual and complete text of the prosecution history speaks for itself and is controlling. Elvie denies the remaining allegations of Paragraph 19 that are contrary to the actual and complete disclosure of the prosecution history.

20.     Momcozy's breast pumps, including the S12 Pro, differ from the breast pump recited by claim 1 of the '893 patent. For example, the S12 Pro's housing, which includes a non-piezo pump, is positioned atop a domed milk container that fits over the breast, such that it projects out above a bra when worn.

**ANSWER:**   Denied.

21.     Momcozy's breast pumps do not meet each of claim 1's limitations. For example, the S12 Pro does not include "a diaphragm holder that forms a recess or cavity at least in part with an external surface of the housing," as claim 1 requires. Rather, as shown below, the S12 Pro's diaphragm holder is completely separate from the housing and does not form a recess or cavity with the housing's external surface – the diaphragm holder is located entirely within the milk container. It instead includes a tube extending from the outer surface of the milk container that inserts into an opening in the housing, enabling transfer of the negative pressure generated by the pump to the diaphragm:

**ANSWER:**   Denied.

22.     Because the wall of the S12 Pro's milk container separates its diaphragm holder from the pump's housing, the diaphragm holder does not "form[] a recess or cavity at least in

1

part with the external surface of the housing," as claim 1 requires. At least for this reason, the S12 Pro does not infringe the '893 patent.

2

**ANSWER:**   Denied.

3

4

23.    In June 2022, Defendant wrote to Momcozy claiming that certain of its breast pumps infringed the '893 patent, demanding that Momcozy cease and desist from making, using, importing, selling, or offering to sell those products, and requesting information that Defendant could use to calculate damages. Defendant specifically stated that these "demands do not constitute an offer of settlement." Momcozy responded in July 2022 and explained that its products do not infringe.

5

6

7

**ANSWER:**   Elvie admits that it sent Shenzhen Root E-Commerce Co., Ltd and Hong

8

Kong Dian Ying Industry Co. Ltd a letter on June 22, 2022 asking those entities to "cease and

9

desist making, using, importing, selling, and/or offering to sell the Momcozy breast pumps…."

10

Plaintiffs purport to present incomplete selections of text from Elvie's June 22, 2022 letter, but

11

the actual and complete text of the June 22, 2022 letter speaks for itself and is controlling. Elvie

12

admits that counsel for Shenzhen Root E-Commerce Co., Ltd and Hong Kong Dian Ying

13

Industry Co. Ltd responded on July 6, 2022 indicating that "based on our investigation and

14

analysis, it does not appear that the accused breast pumps include the identified intellectual

15

property." Elvie denies the remaining allegations of Paragraph 23.

16

17

24.    After the Parties exchanged further correspondence, on or around February 1, 2023, Defendant requested that nonparty Amazon.com, Inc. ("Amazon") initiate an Amazon Patent Evaluation Express Procedure ("APEX"), an extrajudicial patent dispute resolution process conducted before a single neutral evaluator selected by Amazon who receives a fixed fee of $4,000, which the losing party must pay. APEX proceedings are abbreviated proceedings, lasting a few weeks. There is no opportunity for discovery. The available defenses are strictly limited.

18

19

20

21

**ANSWER:**   Paragraph 24 of the Amended Complaint contains statements that are

22

neither allegations nor averments to which a response is required. To the extent a response is

23

required, Elvie admits that on or around January 30, 2023, Elvie requested that Amazon initiate

24

an Amazon Patent Evaluation Express Procedure ("APEX"), a mutually voluntary, extrajudicial

25

patent dispute resolution process conducted before a neutral evaluator selected by Amazon who

26

receives a fixed fee of $4,000, which the losing party must pay. Elvie further admits that parties

27

who volunteer to participate in the APEX proceeding consent to a cost-efficient evaluation of

infringement of only one claim from one patent and further agree to limit information exchanged between the parties and defenses raised. Elvie denies the remaining allegations of Paragraph 24.

25.      Through its APEX request, Defendant sought to have Amazon remove allegedly infringing product listings of Momcozy's breast pumps, including its flagship S12 Pro product, from the Amazon.com marketplace; its request included the Amazon Standard Identification Numbers ("ASINs") for the S12 Pro, B09VPNMT1P and B09VPRJ2S8. Momcozy has sold these and other breast pumps included in the APEX request through corporate affiliates that it controls, Plaintiff Shenzhen Conglin e-Commerce Co., Ltd., and Shenzhen Jiuruixing Technology Co., Ltd. Further information regarding Momcozy's sale of these breast pumps via Amazon.com is provided in Momcozy's Motion for Temporary Restraining Order (Dkt. #21), Supplemental Brief in support of that Motion (Dkt. #33), and documents submitted in support of that motion, including the Declaration and Supplemental Declaration of Pan Silin (Dkt. #22, 35) and the Declaration of Gong Shaocong (Dkt. #38), which Momcozy incorporates herein by reference.

**ANSWER:**      Elvie admits that it sought to have a number of Momcozy's infringing products removed from the Amazon.com marketplace, which included Amazon Standard Identification Numbers ("ASINs") for the S12 Pro, B09VPNMT1P and B09VPRJ2S8. Elvie lacks sufficient knowledge and information to form a belief as to the truth of the remaining allegations of Paragraph 25 as pled and denies those allegations on that basis.

26.      After Defendant asked Amazon to initiate the APEX proceeding, Amazon contacted Momcozy in writing on February 1, 2023. Amazon informed Momcozy that it could either participate in the APEX or attempt to resolve the dispute with Defendant or in litigation. Amazon further alerted Momcozy that if it did not participate in the APEX proceeding and failed to resolve the dispute or file a district court complaint within three weeks, then Amazon would remove Momcozy's relevant product listings. Although Momcozy attempted to resolve the dispute with Defendant, this was unsuccessful. Because of the importance of sales of the S12 Pro via Amazon.com to its business, Momcozy thus agreed to participate in the APEX proceeding.

**ANSWER:**      Elvie admits that Amazon, as part of its APEX proceeding initiation, contacted Momcozy about its option to participate in the APEX proceeding. Elvie lacks sufficient knowledge and information to form a belief as to the truth of the remaining allegations of Paragraph 26 as pled and denies those allegations on that basis.

27.      Unfortunately, even though the S12 Pro does not meet each limitation of the '893 patent's single independent claim (including "a diaphragm holder that forms a recess or cavity at least in part with an external surface of the housing"), the APEX proceeding resulted in a finding adverse to Momcozy.

DEFENDANT'S ~~ANSWER TO~~ AMENDED ~~COMPLAINT~~ COUNTERCLAIMS – 12      Lowe Graham Jones PLLC
Case No. 2:23-CV-631

**ANSWER:** Elvie admits that the APEX proceeding resulted in a finding by the neutral patent evaluator that the accused products, including Momcozy's S12 Pro, are likely to infringe claim 1 of the '893 patent. Elvie denies the remaining allegations of Paragraph 27.

28. This result was particularly surprising for the S12 Pro because Defendant did not meaningfully address that product in its opening APEX submission; its analysis focused on a different model, the S12, which materially differs from the S12 Pro. Unlike the S12, the S12 Pro's diaphragm holder is located entirely within the milk container, such that there is no objectively reasonable basis for contending that the S12 Pro's diaphragm holder forms a recess or cavity at least in part with the external surface of the housing. Yet Defendant did not separately address this limitation with respect to the S12 Pro in its opening APEX briefing, suggesting that Defendant did not analyze or review the S12 Pro prior to including it in its APEX request. Defendant separately discussed the S12 Pro only in its APEX reply brief, effectively conceded that the S12 Pro's diaphragm holder does not form a "recess" at least in part with the housing's external surface, and failed to meaningfully explain how the diaphragm holder forms a "cavity" in part with the external surface of the housing, even though the diaphragm holder is enclosed within the S12 Pro's milk container.

**ANSWER:** Elvie agrees with Plainitffs' implication that the S12 product infringes the '893 patent. Elvie otherwise denies the remaining allegations in paragraph 28.

29. One day after the APEX decision, on April 25, 2023, Amazon removed the ASINs for the S12 Pro, such that Momcozy could no longer sell the product via Amazon.com. Amazon sellers cannot appeal the result of an APEX decision. Momcozy thus was left with no means of addressing the incorrect APEX ruling and reactivating its products listings other than this action. Absent a declaration of non-infringement, invalidity, or unenforceability, Defendant may continue to utilize Amazon's extra-judicial procedures to exclude Momcozy's noninfringing products from the Amazon.com marketplace, leading to significant losses in sales, customers, and goodwill. Furthermore, due to the APEX decision against Momcozy, Defendant will have the ability to immediately and summarily remove Momcozy's products, including redesigns in most cases, from the Amazon.com marketplace.

**ANSWER:** Elvie admits that, after the neutral patent evaluator conveyed their decision to Amazon that the accused products are likely to infringe claim 1 of the '893 patent, Amazon removed the accused products, including the S12 Pro, from Amazon.com. Elvie further admits that there is no appeal process for APEX decisions. Elvie denies the remaining allegations of Paragraph 29.

30. This delisting has already severely harmed Momcozy's business. Momcozy's lost sales of the delisted S12 Pro amount to significant revenue each day and a significant portion of Momcozy's projected revenue. Further, the delisting also will lead to declines in Momcozy's

product reviews, ratings, and Amazon ranking, which results in lower product visibility in consumer searches and affects Momcozy's ability to retain "Amazon Choice" and "Amazon Bestseller" recognition on the Amazon.com platform.

**ANSWER:** Elvie lacks sufficient knowledge and information to form a belief as to the truth of the remaining allegations of Paragraph 30 as pled and denies those allegations on that basis.

31. Based on the foregoing, a justiciable case or controversy exists between Plaintiffs and Defendant as to whether the S12 Pump infringes the '839[sic] Patent, whether Defendant wrongfully prosecuted the APEX action against Plaintiffs, and whether the claims of the '893 patent are valid and enforceable. Momcozy therefore has filed this Complaint to redress the incorrect APEX decision, obtain declaratory judgments of patent noninfringement and invalidity, and remedy the damage to its business caused by Defendant's interference with Momcozy's Amazon.com business.

**ANSWER:** Paragraph 31 contains legal conclusions and allegations to which no response is required. To the extent a response is required, Elvie denies the allegations of Paragraph 31.

## PARTIES

32. Plaintiff Shenzhen Root Technology Co., Ltd. is organized under the laws of the People's Republic of China and has its principal place of business at Shenzhou Computer Building, Curie Madame Avenue, Longgang District, Shenzhen, China.

**ANSWER:** Elvie lacks sufficient knowledge and information to form a belief as to the truth of the remaining allegations of Paragraph 32 as pled and denies those allegations on that basis.

33. Plaintiff Hong Kong Lute Technology Co., Ltd. is organized under the laws of the Hong Kong and has its principal place of business at Room 02, 21F Shek Kwan Commercial Building, 38 Bi Street, Yau Ma Tei, Kowloon, Hong Kong.

**ANSWER:** Elvie lacks sufficient knowledge and information to form a belief as to the truth of the remaining allegations of Paragraph 33 as pled and denies those allegations on that basis.

34. Plaintiff Shenzhen Conglin e-Commerce Co., Ltd. is organized under the laws of the People's Republic of China and has its principal place of business at 21F, Jinzhonghuan International Business Building, No. 3037, Jintian Road, Fu'an Community, Futian Street, Futian District, Shenzhen, China.

1      **ANSWER:**    Elvie lacks sufficient knowledge and information to form a belief as to the

2    truth of the remaining allegations of Paragraph 34 as pled and denies those allegations on that

3    basis.

4      35.    Defendant is organized under the laws of the United Kingdom, with its principal

5    place of business at 63-66 Hatton Garden, EC1N 8LE, London, United Kingdom. On
     information and belief, Defendant is the assignee and owner of the '893 patent.

6      **ANSWER:**    Elvie is a company organized under the laws of England and Wales. The

7    remaining allegations of paragraph 35 are admitted.

8      **STANDING, JURISDICTION, AND VENUE**

9      36.    This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq.,

10   the United States Patent Act, 35 U.S.C. § 1, et seq., and the laws of the state of Washington. This
     Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 2201, 2202, 1331,

11   and 1338(a) because an actual case or controversy currently exists between the Parties regarding

12   the subject matter of this action, and the Court would have subject matter jurisdiction over this
     action if Defendant initiated suit for patent infringement. This court has subject matter over the

13   state law claims asserted in this action pursuant to 28 U.S.C. § 1367(a) because they are so
     related to the declaratory judgment claims that they form part of the same case or controversy.

14      **ANSWER:**    Paragraph 36 contains legal conclusions and allegations to which no

15   response is required. To the extent a response is required, Elvie admits that this action purports to

16   arise under Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*., the United States Patent Act, 35

17   U.S.C. § 1, *et seq*., and the laws of the state of Washington. Elvie denies the remaining

18   allegations of Paragraph 36.

19
       37.    Further, Momcozy has standing under the Declaratory Judgment Act, 28 U.S.C. §
20   2201, et seq., because a substantial controversy exists between Momcozy and Defendant, which

21   have adverse legal interests, of sufficient immediacy and reality to warrant the issue of a
     declaratory judgment. Based on Defendant's conduct—including (i) sending cease-and-desist

22   letters accusing Momcozy of infringing the '893 patent, demanding information sufficient to
     calculate damages, and representing that these "demands do not constitute an offer of

23   settlement"; and (ii) prosecuting an APEX proceeding in which it argued that Momcozy's
     products infringed and should be removed from Amazon.com—Momcozy has a real

24   apprehension that it will face suit or other adverse action from Defendant regarding the '893
     patent. Indeed, via the APEX proceeding, Momcozy already has been forced to address

25   Defendant's infringement accusations in an alternative dispute resolution and has suffered both

26   pecuniary and nonmonetary injuries as a result. Declaratory relief is thus appropriate and
     necessary to establish that the making, using, importation, sale, or offer of sale of the S12 Pro

27

DEFENDANT'S ~~ANSWER TO~~ AMENDED ~~COMPLAINT~~<u>COUNTERCLAIMS</u> – 15    Lowe Graham Jones PLLC
Case No. 2:23-CV-631

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

~~does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '893 Patent. Momcozy is entitled to a judgment declaring that it has not infringed and will not infringe any claim of the '893 patent and an injunction requiring Defendant to retract its takedown requests from Amazon. In further support of its standing to assert the below claims, Momcozy's incorporates by reference its Motion for Temporary Restraining Order (Dkt. #21), Supplemental Brief in support of that Motion (Dkt. #33), and documents submitted in support of that motion, including the Declaration and Supplemental Declaration of Pan Silin (Dkt. #22, 35) and the Declaration of Gong Shaocong (Dkt. #38), which Momcozy incorporates herein by reference. Plaintiff Shenzhen Root Technology Co., Ltd. owns all relevant rights and has standing to bring this action. However, given that Defendant has challenged that standing and out of an abundance of caution, Plaintiffs Hong Kong Lute Technology Co., Limited and Shenzhen Conglin e-Commerce Co., Ltd. join as parties in bringing this action to obviate any concern that those entities will not be bound by this action.~~

**~~ANSWER:~~**   ~~Denied.~~

~~38.     This Court has personal jurisdiction over Defendant because it purposefully availed itself of the privileges of conducting commercial and legal activities in Washington through the APEX proceeding, Momcozy's claims arise out of these activities, and this Court's exercise of jurisdiction would be reasonable. As discussed above, Momcozy's claims arise out of Defendant's prosecution of an APEX dispute resolution by Amazon to have Momcozy's products at issue removed from the Amazon.com marketplace. As is widely known, Amazon's principal place of business is located in Seattle, Washington, and on information and belief, Amazon manages relations among sellers on its marketplace and administers the APEX program in whole or in part from its Seattle facilities. Further, the agreement governing the Parties' APEX proceeding, which Defendant signed, states that "Participants agree to the jurisdiction and venue of the federal and state courts located in King County, Seattle, Washington." Because  Defendant voluntarily initiated an APEX legal action directly related to Momcozy's claims with Amazon in Seattle, Washington, and agreed to jurisdiction and venue in this forum, Defendant may reasonably expect to face litigation in this district.~~

**~~ANSWER:~~**   ~~Paragraph 38 contains legal conclusions and allegations to which no response is required. To the extent a response is required, Elvie does not contest the Court's exercise of personal jurisdiction over it for purposes of this action only. Elvie denies the remaining allegations of Paragraph 38.~~

~~39.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in this district and were perpetrated by Defendant using a resident of and wrongfully prosecuting an APEX legal proceeding in this district—namely, the APEX proceeding discussed above. In addition, as also discussed above, Defendant agreed with respect to the APEX proceeding "to the jurisdiction and venue of the federal and state courts located in King County, Seattle, Washington." Further, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(c) because Defendant is subject to personal jurisdiction in this district, and there is no other juridical district in which a substantial part of the events or omissions giving rise to the claim occurred.~~

1

**ANSWER:** Paragraph 39 contains legal conclusions and allegations to which no

2

response is required. To the extent a response is required, Elvie does not contest venue for

3

purposes of this action only. Elvie denies the remaining allegations of Paragraph 39.

4

**COUNT I**

5

**Declaratory Judgment of Alleged Non-Infringement of the '893 Patent**

6

40.     Momcozy repeats and realleges each of the preceding paragraphs as if they are

7

restated here and incorporates them by reference.

8

**ANSWER:** Elvie incorporates by reference its responses to paragraphs 1 through 39.

9

41.     The manufacture, use, offer for sale, sale, and/or import of Momcozy's breast

10

pumps, including without limitation the S12 Pro, have not infringed and will not infringe,

directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '893

11

Patent. This is because Momcozy's breast pumps, including at least the S12 Pro, do not meet

each and every limitation recited in claim 1 of the '893 Patent, as infringement requires.

12

**ANSWER:** Denied.

13

14

42.     For example, and without limitation, the S12 Pro does not satisfy claim 1's

requirement of "a diaphragm holder that forms a recess or cavity at least in part with an external

15

surface of the housing." As explained above, the S12 Pro's diaphragm holder is located entirely

within the milk container and does not form any recess or cavity with the external surface of the

16

housing. Instead, the S12 Pro includes a tube extending from the outer surface of the milk

container inserts into a separate opening in the housing when assembled, which enables direct

17

transfer of the negative pressure generated by the pump to the diaphragm. Because the S12 Pro's

18

milk container entirely encloses the diaphragm holder, separating it from the pump's external

housing, the diaphragm holder does not "form[] a recess or cavity at least in part with the

19

external surface of the housing," as claim 1 requires.

20

**ANSWER:** Denied.

21

43.     As a further example, and without limitation, Momcozy breast pumps, including

22

at least the S12 Pro, do not satisfy claim 1's requirement of "[a] breast pump device that is

configured as a self-contained, in-bra wearable device." Among other reasons, the Momcozy

23

breast pumps are not configured as an "in-bra wearable device." For example, and without

limitation, the pumps' housing, which contains the pump's suction-generating device, extends up

24

above the bra cup and the pump does not substantially fit within a user's bra for discrete

pumping.

25

**ANSWER:** Denied.

26

44.     An actual and justiciable case or controversy therefore exists between Momcozy

27

and Defendant regarding whether Momcozy has infringed the claims of the '893 patent.

Declaratory relief is thus appropriate and necessary to establish that the making, using, importation, sale, or offer of sale of the S12 Pro does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '893 Patent. Momcozy is entitled to a judgment declaring that it has not infringed and will not infringe any claim of the '893 patent.

**ANSWER:**   Denied.

## COUNT II

### Declaratory Judgment of Alleged Invalidity of the '893 Patent

45.    Momcozy repeats and realleges each of the preceding paragraphs as if they are restated here and incorporates them by reference.

**ANSWER:**   Elvie incorporates by reference its responses to paragraphs 1 through 44.

46.    At least if construed broadly so as to cover the Momcozy products such as the S12 Pro, the sale of which Defendant attempted to ban, the claims of the '893 patent are invalid under the United States patent laws, 35 U.S.C. § 1 et seq., including for failure to meet the requirements for patentability as set forth in, inter alia, 35 U.S.C. §§ 102, 103, and 112 and the corresponding patent regulations set forth in the Code of Federal Regulations, 37 C.F.R. § 1.1, et seq. For example, and without limitation, the claims of the '893 patent are invalid as anticipated under 35 U.S.C. § 102 and/or obvious under 35 U.S.C. § 103 in view of one or more of at least the following prior art references, alone or in combination:

- U.S. Publication No. 2013/0023821
- U.S. Publication No. 2016/0271305 A1
- U.S. Publication No. 2007/0219486 A1
- U.S. Publication No. 2009/0281485 A1
- U.S. Publication No. 2015/157775 A1
- U.S. Patent No. 4,673,388
- U.S. Publication No. 2016/0325031
- U.S. Publication No. 2016/0220743
- WO Publication No. 2015/120321 A1

**ANSWER:**   Denied.

47.    Notably, the sole basis for the examiner allowing the claims of the '893 patent over the prior art the examiner by was the limitation that the diaphragm holder sub-assembly forms a recess or cavity in part with an external surface of the housing, rather than being located within the housing. However, this limitation is also anticipated or obvious at least in view of the prior art listed above.

**ANSWER:**   Denied.

48.    The claims of the '893 patent are also invalid for lack of written description, non-enablement, and claim indefiniteness under 35 U.S.C. § 112 because the patent's specification,

including claims, fails to reasonably convey to persons of ordinary skill in the art that the inventors had possession of the claimed subject matter as of the filing date and to reasonably inform persons of ordinary skill in the art of the claim scope. Further, the specification fails to disclose the full scope of claim 1 in sufficient detail to enable persons of ordinary skill to construct the breast pump recited in claim 1.

**ANSWER:**   Denied.

49.   For example, and without limitation, claim 1 of the '893 patent requires "a diaphragm holder that forms a recess or cavity at least in part with an external surface of the housing." As discussed above, this limitation was not included in the claims as originally filed in the '050 Application that led to the '893 patent; instead, it was added via amendment during prosecution to overcome the Patent Office examiner's rejections based on prior art.

**ANSWER:**   Denied.

50.   But the specification does not describe a breast pump having a diaphragm holder that meets the full scope of this limitation. Although the specification discusses embodiments of the invention that include a diaphragm holder that forms a "recess" in the external surface of the pump's housing, it does not describe any embodiment in which a diaphragm holder forms a "cavity at least in part with an external surface of the housing." Indeed, other than in the limitation of claim 1 added via amendment, the specification does not use the term "cavity."

**ANSWER:**   Denied.

51.   Consequently, the '893 patent's specification does not reasonably convey to persons having ordinary skill in the field of breast pump systems that the inventors possessed a breast pump that included "a diaphragm holder that forms a cavity at least in part with an external surface of the housing" as of the '050 Application's filing date. Claim 1 of the '893 patent is thus invalid for lack of written description. Further, because the specification does not enable persons of ordinary skill to construct a breast pump that includes "a diaphragm holder that forms a cavity at least in part with an external surface of the housing," claim 1 is invalid for non-enablement.

**ANSWER:**   Denied.

52.   Because claim 1 is invalid under section 112, each of the '893 patent's dependent claims are also invalid.

**ANSWER:**   Denied.

53.   An actual and justiciable case or controversy therefore exists between Momcozy and Defendant regarding the validity of the '893 Patent. Declaratory relief is thus appropriate and necessary, and Momcozy is entitled to a judgment declaring that the '893 patent's claims are invalid.

**ANSWER:**   Denied.

1

2

<u>**COUNT III**</u>

<u>**Alleged Tortious Interference**</u>

3

4

~~54.    Momcozy repeats and realleges each of the preceding paragraphs as if they are restated here and incorporates them by reference.~~

5

**ANSWER:**    Elvie incorporates by reference its responses to paragraphs 1 through 53.

6

7

8

~~55.    Defendant knowingly and intentionally interfered with Momcozy's valid and existing business relationship and expectancy of sales of its breast pumps, including the S12 Pro and similar designs, via Amazon.com for an improper purpose and by improper means, causing Amazon to remove the ASINs for those breast pumps, resulting in damages from Momcozy's lost sales of those breast pumps and associated products.~~

9

**ANSWER:**    Denied.

10

11

~~56.    As discussed above, Momcozy has been the leading seller in the "Breast Pump" and "Electric Breast Pump" categories on Amazon.com, achieving significant sales.~~

12

13

14

**ANSWER:**    Elvie lacks sufficient knowledge and information to form a belief as to the truth of the remaining allegations of Paragraph 56 as pled and denies those allegations on that basis.

15

16

17

18

19

20

~~57.    Defendant had knowledge of Momcozy's relationship with Amazon and its sales of the S12 Pro and other breast pumps via Amazon.com, including without limitation via its affiliates Shenzhen Conglin e-Commerce Co., Ltd., and Shenzhen Jiuruixing Technology Co., Ltd., as shown by Defendant's APEX request directed to those products. Further information regarding Momcozy's sale of these breast pumps via Amazon.com is provided in Momcozy's Motion for Temporary Restraining Order (Dkt. #21), Supplemental Brief in support of that Motion (Dkt. #33), and documents submitted in support of that motion, including the Declaration and Supplemental Declaration of Pan Silin (Dkt. #22, 35) and the Declaration of Gong Shaocong (Dkt. #38), which Momcozy incorporates herein by reference.~~

21

22

23

**ANSWER:**    Elvie admits that it had knowledge of Momcozy-branded products, including the S12 Pro, being sold on Amazon.com and that Elvie initiated an APEX proceeding directed to these products. Elvie denies the remaining allegations of Paragraph 57.

24

25

~~58.    By submitting the APEX request and prosecuting the subsequent APEX proceeding, Defendant intentionally interfered with and caused the termination of Momcozy's ability to sell the S12 Pro and other breast pumps via Amazon.com through its affiliates.~~

26

**ANSWER:**    Denied.

27

1
2
3
4

59.    And Defendant used improper means to so interfere—as explained above, Defendant lacked an objectively reasonable basis to include at least the S12 Pro in its APEX request and accuse it of infringing the '893 patent — a patent that Defendant knew or should have known is not infringed at least by the S12 Pro and is invalid (including as set forth above) — as shown by its failure to separately address that model in its opening APEX brief and to meaningfully explain how it includes a "diaphragm holder forming a recess or cavity at least in part with an external surface of the housing."

5

**ANSWER:**    Denied.

6
7
8
9

60.    As a direct and proximate result of this misconduct, Momcozy has suffered damages, including significant sums in lost sales of the S12 Pro and other breast pumps, resulting in lost revenue and lost profits directly attributable to those lost sales, in an amount to be proven at trial and in a manner that cannot be fully measured or compensated in economic terms alone. Such irreparable harm will continue unless Defendant's acts are restrained and enjoined during and after this action.

10

**ANSWER:**    Denied.

11

**COUNT IV**

12

**Unfair Competition**

13
14

61.    Momcozy repeats and realleges each of the preceding paragraphs as if they are restated here and incorporates them by reference.

15

**ANSWER:**    Elvie incorporates by reference its responses to paragraphs 1 through 60.

16
17
18
19
20
21
22
23
24

62.    Momcozy is a leading seller and competitor of Defendant's in the "Breast Pump" and "Electric Breast Pump" categories on Amazon.com and through other channels, achieving significant sales. In an effort to exclude Momcozy from the market, Defendant commenced legal proceedings, including via the Amazon APEX action, against Plaintiffs without legal or factual justification in order to hamper Momcozy's fair competition in the sale of breast pumps, including the S12 Pro and similar designs. Defendant succeeded in removing Momcozy's competing products from the market under color of authority as the purported owner of the '893 patent, even though Defendant knew or should have known that there were no good-faith grounds to assert infringement of any valid and enforcement patent claim against at least Momcozy's S12 Pro breast pump. Further information regarding Defendant's bad faith assertion of the '893 patent against Momcozy's sale of these breast pumps via Amazon.com is provided in Momcozy's Motion for Temporary Restraining Order (Dkt. #21), Supplemental Brief in support of that Motion (Dkt. #33), and documents submitted in support of that motion, including the Declaration and Supplemental Declaration of Pan Silin (Dkt. #22, 35) and the Declaration of Gong Shaocong (Dkt. #38), which Momcozy incorporates herein by reference.

25

**ANSWER:**    Denied.

26
27

63.    Defendant's bad faith acts against Momcozy's directly competing business have diverted and are likely to further divert sales away from Momcozy. Through its unfair

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

competition scheme, Defendant has damaged and is likely to further damage Momcozy's business, goodwill, and reputation among its actual and potential business partners, investors, customers, and the public, including and beyond the harm caused to Momcozy's valued relationship with Amazon or customers lost while Momcozy's products were delisted from that platform. Momcozy's business and the value thereof have been and are likely to be further injured as a result of Defendant's improper assertion of the '893 patent, including through Defendant's commencement and prosecution of the APEX action and other acts of improvident patent assertion against Momcozy.

**ANSWER:** Denied.

64. As a direct and proximate result of Defendant's unfair competition, Plaintiffs have been, and continue to be, materially harmed in an amount to be proven at trial and in a manner that cannot be fully measured or compensated in economic terms alone. Such irreparable harm will continue unless Defendant's acts are restrained and enjoined during and after this action.

**ANSWER.** Denied.

## PRAYER FOR RELIEF

This section of Plaintiff's Amended Complaint constitutes Prayers for Relief that do not require a response. Elvie denies that Plaintiffs are entitled to any judgment or requested relief or any other relief whatsoever and, therefore, specifically deny Paragraphs (i) to (vi) of the Amended Complaint Prayer for Relief. Each averment and/or allegation contained in Plaintiffs' Amended Complaint that is not specifically admitted herein is hereby denied.

## DEFENSES

Without prejudice to the denials set forth in this Answer, without admitting any averments of Plaintiffs' Amended Complaint not otherwise admitted, and without undertaking any of the burdens imposed by law on Plaintiffs, Defendant avers and asserts the following Defenses to the Amended Complaint. Defendant expressly reserves the right to allege additional defenses as they become known through the course of discovery.

## FIRST DEFENSE

### (Failure to State a Claim)

65. Plaintiffs' Amended Complaint fails to state a claim upon which relief may be granted.

1

### ~~SECOND DEFENSE~~

2

### ~~(Lack of Standing)~~

3      ~~66.     Plaintiffs lack standing to bring their claims to the extent they are not the entity or~~

4 ~~entities against which Elvie has a case or controversy.~~

5

### ~~THIRD DEFENSE~~

6

### ~~(Inability to Prove Invalidity)~~

7      ~~67.     Plaintiffs' claims are barred, in whole or in part, because it cannot prove~~

8 ~~invalidity of a valid and enforceable patent.~~

9

### ~~FOURTH DEFENSE~~

10

### ~~(Plaintiffs' Claims are Barred)~~

11      ~~68.     One or more of Plaintiffs' claims are barred by the equitable doctrines of~~

12 ~~acquiescence, waiver, estoppel, equitable estoppel, and/or unclean hands.~~

13

### ~~FIFTH DEFENSE~~

14

### ~~(Plaintiffs' Requested Relief is Barred)~~

15      ~~69.     One or more of the relief sought by Plaintiffs is barred or limited pursuant to one~~

16 ~~or more sections of title 35 of the U.S. Code and/or any other judicial or statutory requirement.~~

17

### ~~SIXTH DEFENSE~~

18

### ~~(Elvie's Actions Were Legally Justified)~~

19      ~~70.     Elvie's actions were legally justified or privileged to protect its own contractual~~

20 ~~and financial interests.~~

21

### ~~SEVENTH DEFENSE~~

22

### ~~(Competition Privilege)~~

23      ~~71.     Elvie's conduct was protected by the competition privilege.~~

24

### ~~EIGHTH DEFENSE~~

25

### ~~(Commercial Speech)~~

26      ~~72.     Elvie's conduct was protected commercial speech.~~

27

1

### ~~NINTH DEFENSE~~

2

#### ~~(Good Faith)~~

3 ~~73.     At all times Elvie acted in good faith and was enforcing its rights as a patent~~

4 ~~owner. Elvie acted without any improper purpose or through any improper means.~~

5

### ~~TENTH DEFENSE~~

6

#### ~~(Third Party Actions)~~

7 ~~74.     Any lost sales by Plaintiffs were in relation to a decision made by a third party,~~

8 ~~Amazon.com.~~

9

### ~~ELEVENTH DEFENSE~~

10

#### ~~(Intentional Conduct)~~

11 ~~75.     The injuries and damages, if any, claimed by the Plaintiffs were proximately~~

12 ~~caused or contributed to by Plaintiffs' own intentional conduct.~~

13

### ~~TWELFTH DEFENSE~~

14

#### ~~(Additional Defenses)~~

15 ~~76.     Plaintiffs' claims are barred and/or limited by any additional defenses that~~

16 ~~discovery may reveal.~~

17

### ~~RESERVATION OF DEFENSES~~

18 ~~77.     Elvie reserves the right to assert additional defenses as may be warranted by~~

19 ~~discovery or further factual investigation in this action.~~

20

### ~~RELIEF REQUESTED~~

21 ~~Having answered Plaintiffs' Amended Complaint, Defendant Elvie prays for judgment as~~

22 ~~follows:~~

23 ~~A.     That Plaintiffs take nothing by its Complaint;~~

24 ~~B.     That judgment be entered in Defendant's favor;~~

25 ~~C.     That the Court dismiss each and every claim in Plaintiffs' Amended Complaint~~

26 ~~with prejudice, and that all relief requested by the Plaintiffs is denied;~~

27

1      D.      That Defendant be awarded Defendant attorneys' fees and costs incurred in this

2 litigation under 35 U.S.C. § 285; and

3      E.      Any further relief as the Court may deem just and proper.

## ~~COUNTERCLAIMS~~

**~~Defendant and Counterclaim Plaintiff Chiaro Technology Ltd. ("Elvie") assert the~~ ~~following~~AMENDED COUNTERCLAIMS**

Elvie asserts the following amended counterclaims against Counterclaim Defendants Shenzhen Root Technology Co., Ltd. Hong Kong Lute Technology Co., Ltd., and Shenzhen TPH Technology Co., Ltd. (collectively, "Plaintiffs"), as well as Shenzhen Root E-Commerce Co., Ltd.~~, Shenzhen Jinruixing Technology Co., Ltd., and~~ Shenzhen Lutejiacheng Network Technology Co., Ltd., Shenzhen Conglin E-Commerce Co., Ltd., Shenzhen Jinruihang Technology Co., Ltd., and Shenzhen Xitao Network Technology Co., Ltd.

### Nature of the Counterclaims

1.      This counterclaim is for willful patent infringement of U.S. Patent Nos. 11,357,893 (the "'893 patent"),~~ and~~ 11,413,380 (the "'380 patent"), 11,813,381 (the "'381 patent") and 11,806, 454 (the "'454 patent") (collectively, the "Asserted Patents")[1] and breach of contract under Washington common law.

2.      Elvie alleges that Momcozy's S9, S9 Pro, S12, S12 Pro, M1, M5, V1, and V2 products (collectively, the "Accused Products") infringe at least one of the Asserted Patents.

3.      Elvie alleges that each of Momcozy's S9, S9 Pro, S12, S12 Pro, M1, and M5 products (collectively, the "Accused Products") infringe ~~each of the~~ ~~Asserted Patents.[2]~~ '893 and '380 patents.

4.      Elvie alleges that the Momcozy S9, S9 Pro, S12, and S12 Pro additionally infringe the '381 patent.

5.      Elvie alleges that the Momcozy V1 and V2 infringe the '454 patent.

---

[1] ~~Elvie intends to amend its Counterclaims to further assert infringement of allowed Patent Application No. 17/203,292 upon its issuance by the USPTO.~~

[2] ~~Elvie may also amend its Counterclaims to identify additional products that infringe the Asserted Patents, including Momcozy's new V1 product.~~

1

**The Parties**[3]

2   6.   Elvie is a company incorporated under the laws of England and Wales and located

3   at 63-66 Hatton Garden, Second Floor, London, EC1N 8LE, United Kingdom.

4   7.   On information and belief, Shenzhen Root Technology Co., Ltd. ("Shenzhen

5   Root") is a company formed in China with the address 2F2-201 Shenzhou Computer Building,

6   Curie Madame Avenue, Longgang District, Shenzhen, China. On information and belief,

7   Shenzhen Root is managed by Pan Silin as the General Manager and Executive Director and Pan

8   Zhenxiang as the supervisor. Shenzhen Root is assigned the United Social Credit Code

9   ("USCC") of 91440300MA5FX6EH4G.

10   8.   On information and belief, Hong Kong Lute Technology Co., Limited ("Hong

11   Kong Lute") is a foreign corporation that is registered in the state of Colorado under the address

12   18121 E Hampden Ave, Unit C, #1007, Aurora, CO 80013. On information and belief, Pan Silin

13   is listed as the sole Officer of Hong Kong Lute. Hong Kong Lute is formed under the laws of

14   Hong Kong and has its principal place of business at Room 02, 21F Shek Kwan Commercial

15   Building, 38 Bi Street, Yau Ma Tei, Kowloon, Hong Kong. Hong Kong Lute is assigned the

16   company code of 3069869.

17   9.   As Plaintiffs have admitted, Shenzhen Root is a parent of Hong Kong Lute. *See*

18   Plaintiffs' August 7, 2023 Responses to Defendant's First Set of Interrogatories, Interrogatory

19   No. 2.

20   10.   As Plaintiffs have admitted, Hong Kong Lute is a subsidiary of Shenzhen Root.

21   *See* Plaintiffs' August 7, 2023 Responses to Defendant's First Set of Interrogatories,

22   Interrogatory No. 2.

23

---

24   [3] ~~Elvie has propounded discovery requesting Plaintiffs to identify all entities involved in the~~
~~design, redesign, development, operation, manufacture, testing, marketing, distribution,~~
25   ~~sale, or importation into the United States of the Accused Products. However, discovery~~
~~is ongoing and Plaintiffs have not yet identified all entities and information requested as~~
26   ~~of this filing. *See* Plaintiffs' August 7, 2023 Responses to Defendant's First Set of~~
~~Interrogatories. Elvie reserves the right to amend its Counterclaims, including naming~~
~~additional Counterclaim Defendants, as discovery progresses and after Plaintiffs fully~~
27   ~~respond to Elvie's discovery requests.~~

11.     On information and belief, Shenzhen Conglin E-Commerce Co., Ltd. ("Shenzhen Conglin") is a company formed in China with the address 401D81, Leizhen Building, No. 40, Fuming Road, Futian District, Shenzhen, China. Shenzhen Conglin is managed by Gong Shaocong and Duan Shuyu. On information and belief, Shenzhen Conglin is assigned the USCC of 91440300MA5H3EYN0R.

12.     As Plaintiffs have admitted, Shenzhen Root is a parent of Shenzhen Conglin, which is owned in trust for the benefit of and is controlled by Shenzhen Root. *See* Plaintiffs' August 7, 2023 Responses to Defendant's First Set of Interrogatories, Interrogatory No. 2.

13.     As Plaintiffs have admitted, Shenzhen Conglin is a subsidiary of, is owned in trust for the benefit of, and is controlled by Shenzhen Root. *See* Plaintiffs' August 7, 2023 Responses to Defendant's First Set of Interrogatories, Interrogatory No. 2.

14.     On information and belief, Shenzhen TPH Technology Co., Ltd. ("Shenzhen TPH") is a company formed in China with the address 2F, Building 29, Lianchuang Technology Park II, Longgang District, Shenzhen, China. On information and belief, Shenzhen TPH is managed by Zianzi Chen and Yanhong Cai. According to Shenzhen E-Commerce and Hong Kong Dian Ying Industry Co. Ltd, Shenzhen TPH is responsible for the manufacture and sale to Shenzhen E-Commerce and Hong Kong Dian Ying Industry Co. Ltd of at least the S9, S12, and M1 breast pumps. On information and belief, Shenzhen TPH is assigned the USCC of 914403003352154174.

15.     On information and belief, Shenzhen Jinruixing Technology Co., Ltd. ("Jinruixing") is a company formed in China with the address 4F, Building D, No. 2 Shihuan Road, Baoan District, Shenzhen, China. On information and belief, Jinruixing is managed by Tao Yang and Yujiao Sun. According to Pan Silin, Jinruixing is responsible for selling the Accused Products on Amazon.com. Dkt # 39 at p. 5. On information and belief, Shenzhen Jinruixing Technology Co., Ltd. is assigned the USCC of 91440300MA5D9A071A.

16.     On information and belief, Shenzhen Root E-Commerce Co., Ltd. ("Shenzhen E-Commerce") is a company formed in China with the address 2F2-208 Shenzhou Computer

Building, Curie Madame Avenue, Longgang District, Shenzhen, China. On information and belief, Shenzhen E-Commerce recently changed its name to Shenzhen Yuyou Technology Co., Ltd. On information and belief, Shenzhen E-Commerce is managed by Yongge Zheng and Geyu Zheng. ~~On information and belief, Yongge Zhen is the sole shareholder of Shenzhen Conglin.~~ On information and belief, Shenzhen E-Commerce is assigned the USCC of 91440300359646166T.

17.    On information and belief, Shenzhen Lutejiacheng <u>Network</u> Technology Co., Ltd. ("Lutejiacheng") is a company formed in China with the address 2F2-201 Shenzhou Computer Building, Curie Madame Avenue, Longgang District, Shenzhen, China. <u>On information and belief, Lutejiacheng also goes by the name "Shenzhen Lutejiacheng Technology Co., Ltd."</u> On information and belief, Lutejiacheng is managed by Pan Silin and Pan Zhenxiang. On information and belief, Lutejiacheng is assigned the USCC of 91440300MA5FX6EH4G.

~~18.    As Plaintiffs have admitted, Shenzhen Root is a parent of Lutejiacheng. See Plaintiffs' August 7, 2023 Responses to Defendant's First Set of Interrogatories, Interrogatory No. 2.~~

~~19.    As Plaintiffs have admitted, Lutejiacheng is a subsidiary of Shenzhen Root. See Plaintiffs' August 7, 2023 Responses to Defendant's First Set of Interrogatories, Interrogatory No. 2.~~

20.    On information and belief, Shenzhen Jinruihang Technology Co., Ltd. ("Jinruihang") is a company formed in China with the address Room 204, Building 59, Vanke Donghai'an, No. 216 Huanbi Road, Donghai'an, No. 216 Huanbi Road, Donghai'an Community, Meisha Street, Yantian District, Shenzhen, China. On information and belief, Jinruihang is assigned the USCC of 91440300MA5GKP331A.

21.    <u>On information and belief, Shenzhen Xitao Network Technology Co., Ltd. ("Xitao") is a company formed in China with the address 2F2-209, Shenzhou Computer Building, Curie Madame Avenue, Longgang District, Shenzhen, China. On information and</u>

belief, Xitao is managed by Zhenxiang Pan. On information and belief, Xitao is assigned the USCC of 91440300MA5DCDL377.

22.     As Plaintiffs have admitted, Shenzhen Root is a parent of Jinruihang. *See* Plaintiffs' August 7, 2023 Responses to Defendant's First Set of Interrogatories, Interrogatory No. 2.

23.     As Plaintiffs have admitted, Jinruihang is a subsidiary of Shenzhen Root. *See* Plaintiffs' August 7, 2023 Responses to Defendant's First Set of Interrogatories, Interrogatory No. 2.

24.     As Plaintiffs have admitted, all shares of Jinruihang are owned by Tao Jin on behalf of and for the benefit of Shenzhen Root. *See* Plaintiffs' August 7, 2023 Responses to Defendant's First Set of Interrogatories, Interrogatory No. 2.

25.     On information and belief, Elvie is aware of two other entities, Hong Kong Dian Ying Industry Co., Ltd. and Smartlin, ~~that~~which may be entities separate from the Counterclaim Defendants and involved in the offer for sale, sale, and/or importation of the Accused Products. ~~Elvie has propounded discovery regarding these entities.~~

### Jurisdiction and Venue

26.     This is an action for patent infringement under 35 U.S.C. § 271 and breach of contract claims under Washington common law.

27.     This Court has subject matter jurisdiction pursuant to 35 U.S.C. § 271 for Elvie's claims of patent infringement arising under federal law. This Court has supplemental jurisdiction of Elvie's breach of contract claim pursuant to 28 U.S.C. § 1367, because such claims arise from the same set of operative facts and are so related to the claim arising from Elvie's claim of patent infringement. The Court's exercise of supplemental jurisdiction would promote judicial economy, convenience, fairness, and avert the risk of inconsistent adjudications of the same issues of law and fact.

28.     On information and belief, Shenzhen Root, Hong Kong Lute, Shenzhen Conglin, ~~Jinruixing,~~ Lutejiacheng, Jinruihang, Xitao, and Shenzhen E-Commerce operate in the United

States to sell the Accused Products through the brand name "Momcozy" and are related to the entities that represented Momcozy in the APEX Proceeding.

**A.      This Court has Personal Jurisdiction Over Shenzhen Root, Hong Kong Lute, and Shenzhen Conglin**

29.      Counterclaim Defendants Shenzhen Root, Hong Kong Lute, and Shenzhen Conglin have availed themselves of this forum in this action and are therefore subject to personal jurisdiction in this district. *See* Dkt #54.

30.      On information and belief, Shenzhen Root, Hong Kong Lute, and Shenzhen Conglin sell the Accused Devices in the United States under the tradename "Momcozy." *See* Dkt. #-29 at ~~p.~~ 33; Dkt. #-39, ¶¶ 5, 10.

31.      On information and belief, Shenzhen Root is an entity responsible for importing, offering for sale, and selling the Accused Products in the United States. *See* Dkt. #-39, ¶ 2.

32.      On information and belief, Shenzhen Root sells the Accused Products online, including at momcozy.com and Amazon.com. *See* Dkt. #39, ¶¶ 7, 10.

33.      As Plaintiffs have admitted, Shenzhen Root is responsible for the design, development, operation, manufacture, testing, marketing, distribution, sale, and importation into the United States of at least the S12 Pro products imported into the United States, either directly or through its subsidiaries. *See* Plaintiffs' August 7, 2023 Responses to Defendant's First Set of Interrogatories, Interrogatory No. 1.

34.      On information and belief, Hong Kong Lute is an entity responsible for importing, offering for sale, and selling the Accused Products in the United States. *See* Dkt. #-29 at 33.

35.      On information and belief, Hong Kong Lute sells the Accused Products online, including at momcozy.com and Amazon.com. *See* Dkt. #-29 at 33.

36.      By May 17, 2022, Hong Kong Lute, along with Shenzhen Lute Jiacheng Technology Co., Ltd., was listed on Momcozy.com as the entities behind Momcozy. *See* Dkt. #-29 at 33. On information and belief, the listed Shenzhen Lute Jiacheng Technology Co., Ltd. is

the same entity as Shenzhen Lutejiacheng <u>Network</u> Technology Co., Ltd. ("Lutejiacheng"). <u>See</u> <u>Dkt. #39, ¶¶ 2–3.</u>

37.     As Plaintiffs have admitted, Hong Kong Lute participated in the distribution and importation into the United States of the S12 Pro products. *See* Plaintiffs' August 7, 2023 Responses to Defendant's First Set of Interrogatories, Interrogatory No. 1.

38.     As Plaintiffs have admitted, Hong Kong Lute took possession of the S12 Pro products, including in Hong Kong, and caused those products to be imported into the United States. *See* Plaintiffs' August 7, 2023 Responses to Defendant's First Set of Interrogatories, Interrogatory No. 1.

39.     On information and belief, Shenzhen Conglin is an entity responsible for importing, offering for sale, and selling the Accused Products in the United States. *See* Dkt. #-39<u>,</u> ¶ 10.

40.     On information and belief, Shenzhen Conglin sells the Accused Products online, including at momcozy.com and Amazon.com. *See* Dkt. #-39<u>,</u> ¶ 10.

41.     As Plaintiffs have admitted, Shenzhen Conglin was involved in the distribution, marketing, and sales of S12 Pro products, including sales of those products in the United States via Amazon.com after importation into the United States. *See* Plaintiffs' August 7, 2023 Responses to Defendant's First Set of Interrogatories, Interrogatory No. 1.

42.     As Plaintiffs have admitted, Shenzhen Conglin marketed and sold the S12 Pro products via listings with Amazon.com. *See* Plaintiffs' August 7, 2023 Responses to Defendant's First Set of Interrogatories, Interrogatory No. 1.

43.     Therefore, this Court has personal jurisdiction over Shenzhen Root, Hong Kong Lute, and Shenzhen Conglin.

**B.     This Court has Personal Jurisdiction Over Shenzhen TPH**

44.     On information and belief, based at least upon correspondence received from Plaintiffs' counsel, Shenzhen TPH is the manufacturer of the S9<del>,</del> and S12 breast pumps on behalf of Momcozy. Dkt. #-29 at 170<del>-</del>-71; <del>Ex.</del><u>Exhibits</u> 1<u>-2</u>, FDA Website.

45.     On information and belief, based at least upon correspondence received from Plaintiffs' counsel, Shenzhen TPH has indemnified Shenzhen Root E-Commerce Co., Ltd. and Hong Kong Dian Ying Industry Co. Ltd. for any patent infringement of at least the S9, S12, and M1 breast pumps. Dkt. #29 at 170–-71.

46.     On information and belief, Shenzhen TPH knowingly manufactured and sold, at least, the S9, S12, and M1 breast pumps to the entity called "Momcozy," or entities working on behalf of "Momcozy," knowing that they would be imported into and sold in the United States, including the State of Washington.

47.     On information and belief, Shenzhen TPH manufactures and sells to Counterclaim Defendants at least the S9, S12, and M1 breast pumps, knowing that the products will be imported into and sold in the United States.[4]

48.     On information and belief, Shenzhen TPH has indemnified Plaintiffs for charges of patent infringement against at least the S9, S12, and M1 breast pumps. Dkt. #-29 at p. 170.

49.     On information and belief, Shenzhen TPH is aware of Elvie's patents. *See* Dkt. #29 at p. 170–-71.

50.     On information and belief, Shenzhen TPH has informed Plaintiffs that the products it manufactures do not infringe any intellectual property, including Elvie's patents. *See* Dkt. #29 at p. 170–-71.

51.     Therefore, this Court has personal jurisdiction over Shenzhen TPH.

C.      This Court has Personal Jurisdiction Over Jinruixing

52.     On information and belief, Jinruixing sells the Accused Devices in the United States under the tradename "Momcozy." *See* Dkt. # 39 at p. 4-5.

---

[4] According to Pan Silin's declaration, the S12 Pro is not manufactured by Shenzhen TPH. *See* Dkt. #35 at p. 5. Elvie has propounded discovery regarding the correct identity of the manufacturer of each of the Accused Products.

53.     ~~On information and belief, Jinruixing participated in the APEX proceeding that Counterclaim Defendants allege provides the Court with personal jurisdiction. *See* Dkt. #20 at Ex. 4 at 1.~~

54.     ~~The agreement governing the APEX proceeding between Elvie and Momcozy, which Jinruixing signed, states that, "Participants agree to the jurisdiction and venue of the federal and state courts located in King County, Seattle, Washington." *See* Dkt. # 54 ¶ 38; Dkt. # 39 at p. 5.~~

55.     ~~On information and belief, Jinruixing offers for sale, sells, and/or imports the Momcozy Accused Products through online marketplaces such as Amazon.com, including in this District. *See* Dkt. # 39 at p 4-5.~~

56.     ~~On information and belief, Jinruixing made the Accused Products available for sale in the United States with knowledge that the Accused Products infringed Elvie's patents. *See* Dkt. #22, ¶ 12.~~

57.     ~~Therefore, this Court has personal jurisdiction over Jinruixing.~~

**D.     This Court has Personal Jurisdiction Over Shenzhen E-Commerce**

58.     On information and belief, Shenzhen E-Commerce sells the Accused Devices in the United States under the tradename "Momcozy." *See, e.g.*, Dkt. #29 at 27, 32.

59.     On information and belief, Shenzhen E-Commerce is an entity offering for sale and selling Momcozy products, including the Accused Products, in the United States, including this District, through, at least, its online website, momcozy.com. *See* Dkt. #29 at ~~p.~~ 27, 32.

60.     By at least November 29, 2020, Shenzhen E-Commerce was listed on Momcozy.com as the entity behind Momcozy. *See* Dkt. #29 at 27, 32.

61.     By at least March 3, 2022, Shenzhen E-Commerce and Hong Kong Dian Ying Industry Co., Limited were listed on Momcozy.com as the entities behind Momcozy. *See* Dkt. #29 at 32.

62.     Therefore, this Court has personal jurisdiction over Shenzhen E-Commerce.

**E.      This Court has Personal Jurisdiction Over Lutejiacheng**

63.      On information and belief, Lutejiacheng sells the Accused Devices in the United States under the tradename "Momcozy." *See* Ex. 22, FDA Lutejiacheng Registration.

64.      On information and belief, Lutejiacheng is an entity involved in the sale and importation of the Accused Products into the United States.

65.      By May 17, 2022, Shenzhen Lute Jiacheng Technology Co., Ltd., along with Hong Kong Lute, was listed on Momcozy.com as the entities behind Momcozy. *See* Dkt. #29 at 33. On information and belief, the listed Shenzhen Lute Jiacheng Technology Co., Ltd is the same entity as Shenzhen Lutejiacheng <u>Network</u> Technology Co., Ltd. ("Lutejiacheng").

66.      On information and belief, Lutejiacheng is managed by Pan Silin, the alleged sole founder and CEO of Shenzhen Root Technology Co., Ltd. Dkt. #19, ¶ 1.

67.      On information and belief, Momcozy's U.S. trademark registration for the mark "Momcozy" was registered under Lutejiacheng's name. *See* Dkt. #35 ~~at~~, ¶ 8 ~~and~~<u>; Dkt. #35,</u> Ex. 29 at 1.

68.      On information and belief, Lutejiacheng registered the Accused Products with the FDA in order to sell the Accused Products within the United States. *See* Exhibit 22, FDA Lutejiacheng Registration. On information and belief, Lutejiacheng offers for sale, sells, and/or imports the Accused Products in the United States.

69.      On information and belief, Lutejiacheng made the Accused Products available for sale in the United States with knowledge that the Accused Products infringed Elvie's patents. *See* Dkt. #22, ¶ 12.

70.      On information and belief, Lutejiacheng has made the devices available for purchase in the United States by registering the device with <u>the</u> FDA in the United States.

71.      ~~As Plaintiffs have admitted, Lutejiacheng is responsible for purchasing S12 Pro products from Shenzhen Root's manufacturers and then shipping them to Hong King before the products are imported into the United States. *See* Plaintiffs' August 7, 2023 Responses to Defendant's First Set of Interrogatories, Interrogatory No. 1.~~

1   72.   Therefore, this Court has personal jurisdiction over Lutejiacheng.

2   **F.   This Court has Personal Jurisdiction Over Jinruihang**

3   73.   On information and belief, Jinruihang is a subsidiary of Shenzhen Root.

4   74.   As Plaintiffs have admitted, Jinruihang is a post-importation distributor through

5   Amazon.com of, at least, the S12 Pro products. *See* Plaintiffs' August 7, 2023 Responses to

6   Defendant's First Set of Interrogatories, Interrogatory No. 1.

7   75.   Based on representations from Plaintiffs' counsel, Elvie understands that

8   Jinruihang is the entity that sells the Momcozy products on Amazon.com through the United

9   States, including this District, under the name "Jinruixingkeji." *See* Dkt. #39, ¶ 10.

10   76.   On information and belief, Jinruihang sells the S12 Pro products throughout the

11   United States, including this ~~district~~District, through online marketplaces such as Amazon.com.

12   *See* Dkt. #39, ¶ 10.

13   77.   Therefore, this Court has personal jurisdiction over Jinruihang.

14   78.   Venue is proper in this judicial district under 28 U.S.C. §§ 1391 ~~and~~, 1400, and as

15   a result of Counterclaim Defendants' choice of forum in filing this action.

16   **G.   The Court has Personal Jurisdiction Over Xitao**

17   79.   On information and belief, Xitao is an entity offering for sale and selling

18   Momcozy products, including the Accused Products, in the United States, including this District,

19   through, at least, its online website on Alibaba.com.

20   80.   Plaintiffs have admitted during discovery that Xitao is a post-importation

21   distributor of, at least, the S12 Pro, S12, S9 Pro, S9, M1, and M5 products within the United

22   States.

23   81.   Therefore, this Court has personal jurisdiction over Xitao.

24   82.   Venue is proper in this judicial district under 28 U.S.C. §§ 1391, 1400, and as a

25   result of Counterclaim Defendants' choice of forum in filing this action.

26

27

**Background**

**A.  Elvie's Innovations in Women's Health**

83.      Elvie was founded in April 2013 by Tania Boler, an internationally recognized women's health expert, with the mission to revolutionize women's healthcare by developing smarter, "female first" technology that improves the health and lives of women.

84.      Since 2013, Elvie has innovated, developed, and sold products in women's healthcare categories, which have been overlooked for many years, including breast pumps and pelvic floor health. The first product to launch, Elvie Trainer, is an award-winning Kegel trainer and app that helps women strengthen the pelvic floor. Its second product, Elvie Pump, is the world's first silent, wearable breast pump. Elvie Pump launched during the 2018 London Fashion Week when Valeria Garcia walked the runway while wearing the Elvie Pump.

85.      Prior to the launch of the Elvie Pump, the breast pump industry had remained largely stagnant for almost half a century, with breast pumps being loud, big, and typically requiring an electrical outlet. Elvie invested substantial time and resources to investigate the issues women faced when using existing breast pumps. With its in-bra, discreet, silent, and wireless design, the Elvie Pump changed the way that mothers can breastfeed to meet the demands of their increasingly busier lives.

86.      In addition, Elvie Pump allows mothers to control the pump through a phone application. This allows mothers to customize the pump to fit their needs while giving them the freedom to pump whenever and wherever they would like.

87.      Noted as one of "the biggest innovation[s] in pumping technology of the past 100 years," *See Elvie*, Core77 Design Awards 2019, https://designawards.core77.com/health-wellness/85273/Elvie (last accessed May 10, 2023), Elvie Pump's trailblazing technology includes a coin-sized pump, sleek design, and the ability to run quietly and discreetly.

88.      The Elvie Pump has won over 20 awards for its innovation including International Design Awards, Mumsnet Awards, Dezeen Awards, Baby Magazine Awards, The Red Dot Awards and Good Design Awards amongst others. *See* Ex. 3, Achievements at Elvie + Chiaro.

89.     For example, in 2019, TIME named the Elvie Pump as one of the "Best Inventions of 2019" (Exhibit 4); the Core77 Design Awards named the Elvie Pump as a runner up in the category of Health & Wellness (Exhibit 5); and Dezeen named the Elvie Pump the "Wearable Design of the Year." (Exhibit 6). In 2020, the European Centre awarded the Elvie Pump the 'Good Design Award." (Exhibit 7). Furthermore, in 2022, Forbes named the Elvie Pump the "Best Wearable Breast Pump." (Exhibit 8).

90.     In light of the Elvie Pump's groundbreaking technology and popularity, copycat devices (such as Momcozy's S12 Pro device) began appearing in the marketplace in the past several years. These devices are typically sold at a much lower price point than the Elvie Pump partly because, unlike Elvie, the manufacturers of these devices did not have to invest in extensive research & development, nor do they maintain 'hospital-grade' quality.

91.     In order to protect its pioneering technology, Elvie applied for and received numerous patents covering its innovative breast pump design and architecture.

92.     Elvie began filing patent applications on its design and architecture before Counterclaim Defendants ever sold a single breast pump.

**B.  The Asserted Patents**

93.     On June 14, 2022, the United States Patent and Trademark Office ("USPTO") duly and lawfully issued U.S. Patent No. 11,357,893 ("the '893 patent"), entitled, "Breast Pump System." A true and correct copy of the '893 patent is attached hereto as Exhibit 23. The '893 patent was exclusively licensed to Elvie, and Elvie possesses the exclusive right of recovery for any past, present, or future infringements of the '893 patent, including equitable relief and damages.

94.     The '893 patent claims priority to a number of Great Britain patent applications with priority dates as early as June 15, 2017. The '893 patent issued from U.S. Patent Application No. 17/203,050 (the "'050 application"), which was filed on March 16, 2021. The '050 application is a continuation of U.S. Patent Application No. 17/181,057 (the "'057 application"), which was filed on February 22, 2021. The '057 application is a continuation of

U.S. Patent Application 16/009,547 (the "'547 application"), which was filed on June 15, 2018 and issued as U.S. Patent No. 10,926,011.

95.     On August 16, 2022, the United States Patent and Trademark Office ("USPTO") duly and lawfully issued U.S. Patent No. 11,413,380 (the "'380 patent"), entitled, "Breast Pump System." A true and correct copy of the '380 patent is attached hereto as Exhibit 24. The '380 patent was exclusively licensed to Elvie, and Elvie possesses the exclusive right of recovery for any past, present, or future infringements of the '380 patent, including equitable relief and damages.

96.     The '380 patent claims priority to a number of Great Britain patent applications with priority dates as early as June 15, 2017. The '380 patent issued from U.S. Patent Application No. 17/203,327 (the "'327 application"), which was filed on March 16, 2021. The '327 application is a continuation of U.S. Patent Application No. 17/181,057 (the "'057 application"), which was filed on February 22, 2021. The '057 application is a continuation of U.S. Patent Application No. 16/009,547 (the "'547 application"), which was filed on June 15, 2018 and issued as U.S. Patent No. 10,926,011.

97.     On November 14, 2023, the United States Patent and Trademark Office ("USPTO") duly and lawfully issued U.S. Patent No. 11,813,381 (the "'381 patent") entitled "Breast Pump System." A true and correct copy of the '381 patent is attached hereto as Exhibit 26. The ~~Asserted Patents~~'381 patent was exclusively licensed to Elvie, and Elvie possesses the exclusive right of recovery for any past, present, or future infringements of the '381 patent, including equitable relief and damages.

98.     The '381 patent claims priority to a number of Great Britain patent applications with priority dates as early as June 15, 2017. The '381 patent issued from U.S. Patent Application No. 17/203,292 (the "'292 application"), which was filed on July 8, 2021. The '292 application is a continuation of U.S. Patent Application No. 17/181,057 (the "'057 application"), which was filed on February 22, 2021. The '057 application is a continuation of U.S. Patent

Application No. 16/009,547 (the "'547 application"), which was filed on June 15, 2018 and issued as U.S. Patent No. 10,926,011.

99.     The '893, '380, and '381 patents' priority date of June 15, 2017, is well before Momcozy first entered the market in 2019. *See* Dkt #54, ¶ 3.

100.     On November 7, 2023, the United States Patent and Trademark Office ("USPTO") duly and lawfully issued U.S. Patent No. 11,806,454 (the "'454 patent") entitled "Wearable Breast Pump System." A true and correct copy of the '454 patent is attached hereto as Exhibit 25. The '454 patent was exclusively licensed to Elvie, and Elvie possesses the exclusive right of recovery for any past, present, or future infringements of the '454 patent, including equitable relief and damages.

101.     The '454 patent claims priority to Great Britain patent application number 2004395 with a priority date as early as March 26, 2020. The '454 patent issued from U.S. Patent Application No. 18/148,864 (the "'864 application"), which was filed on May 25, 2023. The '454 application is a continuation of U.S. Patent Application No. 17/907,347 (the "'347 application"), which was filed on March 25, 2021.

102.     The '454 patent's priority date of March 26, 2020 is well before Momcozy first sold the V1 and V2 products in the United States.

**C. Momcozy's Unlawful Conduct**

> **1.     The Accused Products**

103.     Seeing the success that Elvie achieved through its wearable breast pump inventions, Counterclaim Defendants began manufacturing, importing, and selling the Accused Products, which copy Elvie's architecture. Counterclaim Defendants make, use, sell, and offer for sale these breast pumps under the "Momcozy" name, including the S9, S9 Pro, S12, S12 Pro, M1, M5, V1, and V2 models.[5]

---

[5] To the extent Momcozy introduces additional products, Elvie reserves the right to obtain discovery on those products and further identify them as Accused Products. For example, Momcozy's website references an S10 product, but it is not currently available for purchase.

104.    Counterclaim Defendants sell the Accused Products through online marketplaces, such as Amazon.com, Walmart.com, and on the Momcozy website. In part because Counterclaim Defendants merely copied Elvie's architecture and did not—and do not—invest the time and resources to develop an innovative product that Elvie did and continues to do, Counterclaim Defendants are able to make and sell the Accused Products at a much lower price point than Elvie.

105.    Owing to their late entry into the marketplace using Elvie's by-then-known architecture, the Accused Products have not garnered the industry praise that Elvie's products did years before. Instead, Counterclaim Defendants tout their Amazon buyer reviews that, not surprisingly, focus merely on Momcozy's relatively lower prices.[6]

106.    Forced to address Momcozy's copying, in June 2022, Elvie attempted to resolve the issue without Court action by sending a cease and desist letter to the entities, "Shenzhen Root E-Commerce Co., Ltd." and "Hong Kong Dian Ying Industry Co., Ltd." regarding Momcozy's sales of the S9, S12, and M1 Breast Pumps, that infringed upon Elvie's Patents, including the '893 patent. *See* Dkt. #1, Ex. 2 at ~~p. 2 -~~3. These entities were listed on the Momcozy website's "Contact Us" page with their respective address. Elvie included copies of its patents in the letter. *See id.*

107.    In response to Elvie's letter, the entities informed Elvie that "Shenzhen TPH Technology Co., Ltd." was the alleged manufacturer of the Accused Products and that the entity "had warranted and guaranteed that it has complete intellectual property rights for those products, which do not infringe any intellectual property rights of others, including the '893 patent." *See* Dkt. #29 at ~~p.~~ 170. Momcozy continued to sell its Accused Products.

---

[6] It is also well known that Amazon buyer reviews are easily manipulated. *See, e.g.*, Ex. 9, https://www.bloomberg.com/news/articles/2021-08-18/amazon-amzn-cracks-down-on-fake-reviews-hitting-chinese-retailers#xj4y7vzkg; *see also* https://www.wsj.com/articles/how-scammers-in-china-manipulate-amazon-11545044402.

1

2. **The APEX Proceeding**

2        108.    Elvie sought relief from Amazon itself and, on January 30, 2023, Elvie received

3    notice that its request to participate in the Amazon APEX proceeding as to Momcozy's S12 and

4    S12 Pro devices infringing the '893 patent had been accepted. *See* Dkt. #29, Ex. 20.

5        109.    Two different entities responded as the "Seller" on behalf of Momcozy,

6    "Smartlin" and "Jinruixingkeji," and agreed to participate in the APEX ~~Proceeding~~proceeding.

7    *See* Dkt. #53-7; Dkt. #53-8. The person signing on behalf of the Seller was Tao Jin. *See* ~~id.~~Dkt.

8    #53-7.  Gong Shaocong likewise signed on behalf of Smartlin. Dkt. #53-8 ~~at p. 4-8~~.

9        110.    As a part of the APEX ~~Proceeding~~proceeding, each party had to sign an

10   Agreement (the "APEX Agreement") detailing the procedure of the APEX

11   ~~Proceeding~~proceeding. *See* Dkt. #53-7 at 1. Specifically, the APEX Agreement notes that,

12   "Participants agree not to disclose to third parties information or documents learned from other

13   participants, Amazon, or Evaluator in the Evaluation, except to their respective affiliates, legal

14   counsel or as required by law." *See id.* § 2.

15       111.    Amazon designed its APEX procedure "[t]o efficiently resolve claims that third-

16   party product listings infringe utility patents." ~~D.I.~~Dkt. #20-5 ~~(Hartman Decl.)~~ at 1. "APEX is

17   voluntary, confidential, and allows owners of U.S. utility patents or their authorized

18   representatives, such as attorneys or exclusive licensees . . . to obtain a fast evaluation of patent

19   infringement claims against products . . . , identified by Amazon Standard Identification Number,

20   listed by third-party sellers . . . on amazon.com." *Id.*

21       112.    If sellers volunteer to participate, a Neutral Patent Evaluator reviews a patent

22   infringement claim against the seller's product listings on Amazon.com. *Id.* The Evaluator will

23   set a schedule for submission of written arguments. *Id.* In general, the Schedule will provide: (i)

24   the Patent Owner with 14 days for its initial arguments; (ii) Sellers with 14 days to respond; and

25   (iii) the Patent Owner with 7 days to reply. *Id.* The Patent Owner may use a total of 20 double-

26   spaced 8.5 x 11" pages between its two submissions. *Id.* Each Seller may use 15 double-spaced

27   pages in its response. *Id.* Claim charts and exhibits are not counted against page limits. *Id.* "To

make the Evaluation fast, efficient, and relatively low-cost, it is limited to one claim from one unexpired U.S. utility patent." *Id*. ~~And there~~There are no depositions, document requests, or other forms of discovery. *Id*. The evaluator will make a yes/no decision about whether the patent covers the product listings." *Id*.

113.    An experienced, partner-level patent attorney at a Boston law firm was assigned as the Neutral Patent Evaluator ("NPE") and the parties each submitted their briefing to the NPE. Elvie submitted its opening brief on March 20, 2023. *See* Dkt. #20, Ex. 6. In its opening brief, Elvie provided detailed allegations of infringement with respect to the Momcozy products at issue, including the image provided below comparing Momcozy's S12 product with the '893 patent. *See* Dkt. #20, Ex. 6 at 3.



114.    Two weeks later, the entities appearing on behalf of Momcozy submitted identical responsive briefs. The parties were allowed unlimited pages for exhibits and non-infringement charts. Notably, these responsive briefs contained the same non-infringement arguments the Plaintiffs are alleging in this case.

115.    One week later, Elvie submitted its reply brief.

116.    After a 7-week briefing schedule, the NPE found that Elvie had shown a likelihood of success of showing infringement despite the same non-infringement arguments Plaintiffs continue to allege. Amazon removed the infringing Momcozy Amazon listings from the marketplace the next day on April 25, 2023. *See* Dkt #~~1~~ at ~~p.~~ 9.

117.    Despite the NPE's finding that Elvie demonstrated a likelihood of success of showing infringement and Amazon subsequently ~~removed~~removing the product listings, Momcozy decided to relist its S12 Pro product back on Amazon.

**3.    The Declaratory Judgment Action**

118.    Despite the NPE informing Counterclaim Defendants that the S12 and S12 Pro products are likely to infringe claim 1 of the '893 patent, Counterclaim Defendants continue to make, use, sell, and offer for sale those products at least on its website.

119.    On information and belief, Counterclaim Defendants did not and have not informed Walmart or any other reseller of the Momcozy S12 and S12 Pro of the NPE's determination regarding infringement.

120.    Instead, on April 28, 2023, Plaintiffs filed a Declaratory Judgment Action against Elvie seeking a declaratory judgment that its S12 and S12 Pro devices do not infringe the '893 patent. *See generally* Dkt. #1.

121.    By the time Plaintiffs filed their Declaratory Judgment Action, Elvie had interacted with no less than seven different entities claiming to be Momcozy.

122.    Despite signing the APEX Agreement, which contained a confidentiality clause, Plaintiffs publicly used documents and information they received through the APEX Proceeding to support their Complaint, including a detailed discussion of Elvie's infringement arguments in the APEX Proceeding. *See* Dkt. #1, ¶ 20.

123.    Plaintiffs then filed for a Temporary Restraining Order ("TRO") claiming immediate harm despite their extensive delay in seeking a TRO. *See* Dkt. #17. Again, Plaintiffs publicly used information considered confidential under the APEX Agreement to support its claims. *See, e.g. id.* at 12; *see also* Dkt. #~~19~~20, Ex. 6; Dkt. #22, Exs. 10-~~11~~, 15-~~16~~.

124.    In its Opposition to Plaintiffs' TRO, Elvie pointed out that it had never heard of the then sole Plaintiff entity, Shenzhen Root Technology Co., Ltd., or Pan Silin. *See* Dkt. #28 at 9 ~~-~~ 10. Rather, the only Momcozy-related entities Elvie was aware of were (1) the recipients of Elvie's cease-and-desist correspondence ("Shenzhen Root E-Commerce Co., Ltd." and "Hong Kong Dian Ying Industry Co. Ltd." *See id.* at 10; *see also id.* Ex. 18); (2) Shenzhen TPH Technology Co., Ltd., the entity Shenzhen Root E-Commerce Co., Ltd. and Hong Kong Dian Ying Industry Co. Ltd. pointed out to Elvie as the manufacturer of the S12 product (*see id.* Ex. 17); and (3) the participants in the APEX proceeding ("Smartlin" and "Jinruixingkeji").

125.    In response, Pan Silin submitted a declaration stating that "Shenzhen Root Technology Co., Ltd." is the same entity as "Shenzhen Root E-Commerce Co., Ltd." *See* Dkt. #39, ¶ 2.

126.    However, public records show that Shenzhen Root Technology Co., Ltd. and Shenzhen Root E-Commerce Co., Ltd. are not the same entities.

127.    Rather, Shenzhen Root Technology Co. has a USCC of 91440300MA5FX6EH4G while Shenzhen Root E-Commerce Co., Ltd. has a USCC of 91440300359646166T. *Compare* Dkt. #35, ~~Ex. 36~~ 1 at 5, Dkt. #35, ~~Ex. 37~~ 2 at 2, 4 *with* Dkt. #53, Ex. 4 at ~~p.~~ 8 (disclosing the latter USCC and a 2022 name change from "Shenzhen Lute (Root) E-Commerce Co. Ltd." to yet another undisclosed company "Shen Zhen Yuyou Technology Co., Ltd.").

128.    Elvie has propounded discovery regarding the relationship between these entities and regarding the corporate structure of the Counterclaim Defendants.

129.    Plaintiffs TRO was eventually denied. *See* Dkt. #43.

130.    In the Order Denying the TRO, the Court stated that "based on its initial review of the '893 Patent, the Court tentatively believes that Plaintiff is likely to prevail on the merits" but that "the harms cited are not so immediate and irreparable that an emergency TRO is appropriate." Dkt. #43 at 7. The Order further stated that it "will further evaluate the motion at the preliminary-injunction stage with the benefit of additional briefing and a hearing." Dkt. #43 at ~~p. 6~~ 7.

131.     However, Plaintiffs used the Court's TRO denial to request that Amazon relist the Accused Products. *See* Dkt. #53-1 at ~~p.~~ 2. Amazon stated that, "we are interpreting the TRO order as an order finding that the S12 Pros do not infringe." Dkt. #53-1 at ~~p.~~ 2. Amazon subsequently relisted the S12 and S12 Pro products. *See id.*

132.     Because Elvie did not receive a full and fair opportunity to respond to Plaintiffs' TRO, Elvie filed a Motion for Reconsideration to clarify the Court's Order when denying the TRO. *See* Dkt. #53. There, Elvie pointed out the discrepancies in Pan Silin's declaration, including facts relating to whether the Court has jurisdiction over Plaintiff Shenzhen Root's case, as described on pages 6 and 7.

133.     In response, Plaintiffs filed a new complaint adding two new plaintiffs, Hong Kong Lute Technology Co., Ltd. and Shenzhen Conglin E-Commerce Co., Ltd. *See* Dkt. #54. Once again, neither of these entities were the entities Elvie communicated with for the cease-and-desist letter or through the APEX Proceeding.

134.     On May 31, 2023, Elvie filed a Motion for Reconsideration, seeking modification of the Court's Order Denying the TRO. <u>*See*</u> Dkt. #53. The Court denied Elvie's Motion for Reconsideration but stated in its Order that "its merits determination is—as the order states—at most "'tentative.'" <u>*See*</u> Dkt. #59 at ~~p.~~ 2.

135.     The Court also noted regarding the jurisdiction issue that "[s]ome of the facts raised by Defendants are troubling." <u>*See*</u> Dkt. #59 at ~~p.~~ 3.

**4.     Counterclaim Defendants' Infringing Activity is Willful**

136.     Counterclaim Defendants' infringing conduct is willful.

137.     <u>On information and belief, Defendants sought to copy Elvie's patented products, including the Elvie Pump and Elvie Stride. Moreover, Elvie provides notice to prospective infringers of its extensive patent portfolio via its website in order to protect its hard-earned innovations.  *See* https://www.elvie.com/en-us/patents. This publication satisfies the standard for constructive notice under 35 U.S.C. § 287(a) for purposes of virtual patent marking.</u>

138.   Counterclaim Defendants were on notice that the Accused Products infringed Elvie's patents since, at least, June 22, 2022, when Elvie sent Momcozy a cease-and-desist letter. *See* Dkt #1-4 at 2 -–3; Dkt. #29 at 170 -–71.

139.   Despite Elvie's cease-and-desist letter, Counterclaim Defendants continued to sell the Accused Products. *See, e.g.,* Dkt. #29–53-1.

140.   Through the APEX Proceeding, Counterclaim Defendant received detailed knowledge of how its Accused Products infringed, at least, claim 1 of the '893 patent. *See, e.g.*, Dkt. #20, Ex. 6.

141.   Despite receiving this knowledge, Counterclaim Defendants continued to sell its Accused Products.

142.   Through the APEX Proceeding, a neutral third-party determined that it was likely Momcozy's products infringed, at least, claim 1 of the '893 patent.

143.   Despite these findings, Counterclaim Defendants continued to sell its Accused Products.

144.   Instead of ceasing the sale of the Accused Products that infringed Elvie's patents, Counterclaim Defendants filed a Declaratory Judgment Action against Elvie because Amazon requires a finding of non-infringement or invalidity to continue selling on Amazon.

145.   In addition, Counterclaim Defendants filed for a TRO, which was denied.

146.   In its Order denying the TRO, the Court never made a finding of non-infringement or invalidity.

147.   In its Order denying the TRO, the Court requested Elvie show cause of why it should not grant a preliminary injunction.

148.   Before Elvie could respond with its full briefing, Counterclaim Defendants submitted the Order denying the TRO to Amazon, which Amazon then interpreted as the Court making a finding of non-infringement.

149.   Amazon took the Order denying the TRO as a finding of non-infringement and relisted Counterclaim Defendant's Accused Products at Counterclaim Defendant's insistence.

150.    Plaintiffs withdrew the Motion to TRO, denying Elvie the chance to fully respond to Plaintiffs allegations of non-infringement.

151.    To date, the only fully briefed ruling that has been made is that the Accused Products infringe, at least, claim 1 of the '~~892~~893 patent.

152.    Despite this, Counterclaim Defendants continue to sell the Accused Products.

153.    Counterclaim Defendants' willful conduct began, at least, as of the date of Elvie's cease-and-desist letter. The willful conduct was only compounded when it received the NPE's determination that the Accused Products likely infringed the '893 patent.

154.    Counterclaim Defendants' willful conduct continued on when it received the TRO denial and used that denial to ask Amazon to re-list its Accused Products on Amazon despite knowing it had not yet received a finding of non-infringement.

155.    Counterclaim Defendants should be deemed to willfully infringe the Asserted Patents, at least, as of June 2022 or the date of issuance, whichever is earlier.

156.    In addition, on information and belief, Counterclaim Defendants' marketing mimics that of Elvie's. For example, the following S12 advertisement that began running on September 26, 2023 copies the imagery of Elvie's long-running advertisement of the Elvie Pump available on at least Elvie's Amazon page:





157.   Further, Counterclaim Defendants' V1 and V2 products are nearly identical to Elvie's Stride product that is covered by the '454 patent. Elvie's patents, including those covering the Elvie Stride, are listed on Elvie's website. *See, e.g.*, https://www.elvie.com/en-us/patents.

158.   Counterclaim Defendants' knowledge of the Asserted Patents and the Accused Products' infringement thereof is sufficient to satisfy the knowledge element for induced, contributory, and willful infringement.

159.   Elvie is entitled to trebled damages for Counterclaim Defendants' willful infringement.

## Count I

### (Infringement of U.S. Patent No. 11,357,893)

160.   The allegations of paragraphs 1 through ~~142~~159 are realleged and reincorporated by reference as if fully set forth herein.

161.    The '893 patent is directed towards a wearable breast pump system including a housing shaped at least in part to fit inside a bra and an air-pump. Exemplary claim 1 of the '893 patent recites:

> A breast pump device that is configured as a self-contained, in-bra wearable device, the breast pump device containing:
> a housing that includes:
> a battery, and
> a pump powered by the battery and generating negative air pressure;
> a breast shield made up of a breast flange and a nipple tunnel;
> a milk container that is configured to be attached to and removed from the housing; and
> a diaphragm configured to be seated against a diaphragm holder that forms a recess or cavity at least in part with an external surface of the housing, the diaphragm deforming in response to changes in air pressure caused by the pump to create negative air pressure in the nipple tunnel.

162.    ~~Plaintiffs~~ Counterclaim Defendants have directly infringed and continue to directly infringe one or more claims of the '893 patent in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, selling, and/or importing into the United States products that include, but are not limited to, the S9, S9 Pro, S12, S12 Pro, M1, and M5 devices. For example, ~~Plaintiffs'~~ Counterclaim Defendants' Accused Products include or perform each and every limitation of at least, claim 1 of the '893 patent, either literally or under the doctrine of equivalents.

163.    Elvie attaches hereto Exhibits 10-15 which provide exemplary claim charts describing how the Accused Products meet the limitations described in claim 1 of the '893 patent.

164.    ~~Plaintiffs~~ Counterclaim Defendants also indirectly infringe one or more claims of the Asserted Patents in violation of 35 U.S.C. § 271(b) and/or (c) by actively inducing infringement of the Asserted Patents by other by offering to sell or selling within the United States a device covered by the claims of the Asserted Patents that is not a staple article or commodity of the commerce suitable for substantial non-infringing uses.

165.    For example, ~~Plaintiffs~~<u>Counterclaim Defendants</u> instruct customers of their Accused Products on how to use and operate the Accused Products.

166.    ~~Plaintiffs'~~<u>Counterclaim Defendants'</u> direct and indirect infringement of the '893 patent has been, and continues to be, willful. On information and belief, Plaintiffs have been aware of the '893 patent since before the filing of this Complaint and has infringed the '893 patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271.

167.    ~~Plaintiffs'~~<u>Counterclaim Defendants'</u> infringement of the '893 patent has damaged, and continues to damage Elvie in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that Elvie would have made but for Momcozy's infringing acts as provided by 35 U.S.C. § 284.

168.    Elvie will suffer irreparable harm unless Plaintiffs are enjoined from infringing the '893 patent.

## Count II

## (Infringement of U.S. Patent No. 11,413,380)

169.    The allegations of paragraphs 1 through ~~151~~<u>168</u> are realleged and reincorporated by reference as if fully set forth herein.

170.    The '380 patent is directed towards a wearable breast pump system including a housing shaped at least in part to fit inside a bra and an air-pump. Exemplary claim 29 of the '380 patent recites:

> A breast pump device that is configured as a self-contained, in-bra wearable device, the breast pump device comprising:
> a self-contained, in-bra wearable device comprising:
> a housing that includes:
> a rechargeable battery,
> a power charging circuit for controlling charging of the rechargeable battery,
> control electronics powered by the rechargeable battery,
> a pump powered by the rechargeable battery and configured to generate negative air pressure, and
> a Universal Serial Bus (USB) charging socket for transferring power to the power charging circuit and the rechargeable battery;
> a breast shield made up of a breast flange and a nipple tunnel;
> a milk container that is configured to be attached to and removed from the housing; and

a membrane that is configured to define a pumping chamber at least in part with an external surface of the housing, the membrane configured to deform in response to changes in air pressure caused by the pump to create negative air pressure in the nipple tunnel.

171.   ~~Plaintiffs~~Counterclaim Defendants have directly infringed and continue to directly infringe one or more claims of the '380 patent in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, selling, and/or ~~important~~importing into the United States products that include, but are not limited to, the S9, S9 Pro, S12, S12 Pro, M1, and M5 devices. For example, ~~Plaintiffs'~~Counterclaim Defendants' Accused Products include or perform each and every limitation of at least, claim 29 of the '380 patent, either literally or under the doctrine of equivalents.

172.   Elvie attaches hereto Exhibits 16–21 which provide exemplary claim charts describing how the Accused Products meet the limitations described in claim 29 of the '380 patent.

173.   ~~Plaintiffs~~Counterclaim Defendants also indirectly infringe one or more claims of the '380 patent in violation of 35 U.S.C. § 271(b) and/or (c) by actively inducing infringement of the '380 patent by offering to sell or selling within the United States a device covered by the claims of the '380 patent that is not a staple article or commodity of the commerce suitable for substantial non-infringing uses.

174.   For example, ~~Plaintiffs~~Counterclaim Defendants instruct customers of their Accused Products on how to use and operate the Accused Products.

175.   ~~Plaintiffs'~~Counterclaim Defendants' direct and indirect infringement of the '380 patent has been, and continues to be, willful. On information and belief, ~~Plaintiffs~~Counterclaim Defendants have been aware of the '380 patent since before the filing of this Complaint and has infringed the '380 patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271.

176.   ~~Plaintiffs'~~Counterclaim Defendants' infringement of the '380 patent has damaged, and continues to damage, ~~BTL~~Elvie in an amount yet to be determined, of at least a

reasonable royalty and/or lost profits that ~~BTL~~Elvie would have made ~~buy~~but for ~~Plaintiffs'~~Counterclaim Defendants' infringing acts as provided by 35 U.S.C. § 284.

177.    Elvie will suffer irreparable harm unless ~~Plaintiffs~~Counterclaim Defendants are enjoined from infringing the '380 patent.

### Count III

### ~~(Breach of Contract)~~

### (Infringement of U.S. Patent No. 11,813,381)

178.    The allegations of paragraphs 1 through ~~160~~177 are realleged and reincorporated by reference as if fully set forth herein.

179.    The '381 patent is directed towards a wearable breast pump system including a housing shaped at least in part to fit inside a bra and an air-pump. Exemplary claim 1 of the '381 patent recites:

A breast pump device comprising:
    a self-contained, in-bra wearable device comprising:
        a diaphragm configured to prevent milk from reaching an air pump by
            forming a seal around its outer edge;
    a housing that includes:
        a battery, and
        the air pump powered by the battery and configured to generate
            negative air pressure by driving the diaphragm;
    a breast shield comprising a breast flange and a nipple tunnel extending from the
        breast flange, the nipple tunnel comprising a closed end and a milk port
        intermediate to the breast flange and the closed end, and the breast shield
        being separate from the diaphragm; and
    a milk container that is configured to attach to the housing and receive expressed
        milk via the milk port.

180.    Counterclaim Defendants have directly infringed and continue to directly infringe one or more claims of the '381 patent in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, selling, and/or importing into the United States products that include, but are not limited to, the S9, S9 Pro, S12, and S12 Pro. For example, Counterclaim Defendants' Accused Products include or perform each and every limitation of at least, claim 1 of the '381 patent, either literally or under the doctrine of equivalents.

181. Elvie attaches hereto Exhibits 27-30 which provide exemplary claim charts describing how the Accused Products meet the limitations described in claim 1 of the '381 patent.

182. Counterclaim Defendants also indirectly infringe one or more claims of the Asserted Patents in violation of 35 U.S.C. § 271(b) and/or (c) by actively inducing infringement of the Asserted Patents by others by offering to sell or selling within the United States a device covered by the claims of the Asserted Patents that is not a staple article or commodity of the commerce suitable for substantial non-infringing uses.

183. For example, Counterclaim Defendants instruct customers of their Accused Products on how to use and operate the Accused Products.

184. Counterclaim Defendants' direct and indirect infringement of the '381 patent has been, and continues to be, willful. On information and belief, Plaintiffs have been aware of the '381 patent since its issuance date and has infringed the '381 patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271.

185. Counterclaim Defendants' infringement of the '381 patent has damaged, and continues to damage Elvie in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that Elvie would have made but for Momcozy's infringing acts as provided by 35 U.S.C. § 284.

186. Elvie will suffer irreparable harm unless Counterclaim Defendants are enjoined from infringing the '381 patent.

## Count IV

## (Infringement of U.S. Patent No. 11,806,454)

187. The allegations of paragraphs 1 through 176 are realleged and reincorporated by reference as if fully set forth herein.

188. The '454 patent is directed towards a wearable breast pump system including a housing shaped at least in part to fit inside a bra and an air-pump. Exemplary claim 17 of the '454 patent recites:

A breast pump system comprising:
    a control unit comprising:
        a battery, and
        a pump configured to be powered by the battery and to generate negative
            air pressure; and
    a wearable milk collection hub configured to connect to the control unit via an air
        line, the wearable milk collection hub comprising:
        a breast shield comprising:
            a breast flange; and
            a nipple tunnel extending from the breast flange;
        a diaphragm configured to deform based on the negative air pressure
            generated by the pump to create negative air pressure in the nipple
            tunnel;
        an outer shell comprising a rear end configured to removably attach to the
            breast shield and, an interior volume between the outer shell and
            the breast shield defining a chamber to receive expressed milk; and
        a diaphragm cap configured to cover and seal the diaphragm at a front end
            of the outer shell, the front end being opposite to the rear end, the
            diaphragm cap forms a central region on a front surface of the
            outer shell.

189.    Counterclaim Defendants have directly infringed and continue to directly infringe one or more claims of the '454 patent in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, selling, and/or importing into the United States products that include, but are not limited to, the V1 and V2. For example, Counterclaim Defendants' V1 and V2 include or perform each and every limitation of at least, claim 17 of the '454 patent, either literally or under the doctrine of equivalents.

190.    Elvie attaches hereto Exhibits 31-32 which provide exemplary claim charts describing how the V1 and V2 products meet the limitations described in claim 17 of the '454 patent.

191.    Counterclaim Defendants also indirectly infringe one or more claims of the Asserted Patents in violation of 35 U.S.C. § 271(b) and/or (c) by actively inducing infringement of the Asserted Patents by others by offering to sell or selling within the United States a device covered by the claims of the Asserted Patents that is not a staple article or commodity of the commerce suitable for substantial non-infringing uses.

192.    For example, Counterclaim Defendants instruct customers of their V1 and V2 products on how to use and operate the V1 and V2 products.

193.    Counterclaim Defendants' direct and indirect infringement of the '454 patent has been, and continues to be, willful. On information and belief, Plaintiffs have been aware of the '454 patent since its issuance date and has infringed the '454 patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271.

194.    Counterclaim Defendants' infringement of the '454 patent has damaged, and continues to damage Elvie in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that Elvie would have made but for Momcozy's infringing acts as provided by 35 U.S.C. § 284.

195.    Elvie will suffer irreparable harm unless Counterclaim Defendants are enjoined from infringing the '454 patent.

**Count V**

**(Breach of Contract)**

196.    The allegations of paragraphs 1 through 195 are realleged and reincorporated by reference as if fully set forth herein.

197.    The APEX Agreement is a valid, binding, and enforceable agreement between Elvie and Momcozy that was made for valid consideration, including the exchange of information intended to facilitate the APEX proceeding.

198.    Elvie fully performed its contractual duties and obligations under the APEX Agreement.

199.    Under the Agreement, Momcozy was prohibited from "disclos[ing] to third parties information or documents learned from" the APEX proceeding. Dkt. #53-07 § 2.

200.    In the filing of its complaint, Plaintiffs publicly disclosed information and documents that it learned from the APEX proceeding, including, but not limited to, communications with Amazon. *See* Dkt. #20, Ex. 6; Dkt. #22, Exs. 10–14; Dkt. # 54, Amended Compl. ¶ 28; Dkt. #21, Motion for TRO at 2, 19–20 Exs. 1, 3, 6.

201.    As a result of Plaintiffs' breach of the Apex Agreement, Elvie has suffered damages in an amount to be proven at trial, including Amazon's decision to reinstate Momcozy's Accused Products on its website.

## PRAYER FOR RELIEF

WHEREFORE, Defendant and Counterclaim Plaintiff Elvie requests that this Court enter judgment in favor against Counterclaim Defendants and grant to Elvie the following relief:

A.      Find that Counterclaim Defendants are infringing the Asserted Patents in violation of 35 U.S.C. § 271 (a), (b), and/or (c);

B.      Enter an order preliminarily and permanently enjoining Counterclaim Defendants, their officers, directors, agents, servants, employees, and all other persons in privity or acting in concert with them who receive actual notice of the order by person serve or otherwise, from any further acts of infringement of the Asserted Patents;

C.      Award Elvie damages in an amount adequate to compensate Elvie for Counterclaim Defendants' infringement of the Asserted Patents;

D.      Treble any and all damages award to Elvie by reason of Defendants' willful infringement of the Asserted Patents pursuant to 35 U.S.C. § 284;

E.      Award Elvie interest on damages award and their costs pursuant to 35 U.S.C. § 284;

F.      Find that this is an exceptional case and awarding Elvie its reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

G.      Find that Counterclaim Defendants breach the APEX Agreement under Washington common law;

H.      Award Elvie recoverable damages in an amount to be determined at trial, including an award of compensatory and actual damages, punitive damages, reasonable attorneys' fees, prejudgment interest, post-judgment interest, and costs; and

I.      Award such other and further relief as this Court deems proper.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## DEMAND FOR JURY TRIAL

Elvie respectfully requests a trial by jury of all issues properly triable by jury in this action.

Executed this ___ day of ~~August 2023~~March 2024.

Respectfully submitted,

Lowe Graham Jones PLLC

_____
Mark P. Walters, WSBA No. 30819
Mitchell D. West, WSBA No. 53103
*walters@LoweGrahamJones.com*
*west@LoweGrahamJones.com*
1325 Fourth Avenue, Suite 1130
Seattle, WA 98101
T: 206.381.3300
F: 206.381.3301

_____
Nirav N. Desai (*pro hac vice*)
Josephine Kim (*pro hac vice*)
Alexander Covington (*pro hac vice*)
Alex Alfano (*pro hac vice*)
Joseph Kim (*pro hac vice*)
Paige Cloud (pending *pro hac vice*)
Michael Webb (*pro hac vice*)
Richa Patel (*pro hac vice*)
Zachary L. Jacobs (*pro hac vice*)
Christopher Coleman (*pro hac vice*)
**STERNE, KESSLER, GOLDSTEIN & FOX PLLC**
~~1100 New York Ave.~~
1101 K St. NW, 10th Floor
Washington, DC 20005
Telephone: 202.371.2600
Facsimile: 202.371.2540

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27