# Exhibit D

EXTERNAL EMAIL: Use caution before clicking links or attachments.

Hi Josephine,

Good morning

Regarding your question about Xitao, we have conducted a thorough investigation. Our investigation reveals that our previous response was inaccurate.

One reason is that Xitao's sales of the S12 Pro is our client's group are almost negligible. As of January 17, 2024, Beijing time, the cumulative sales amount is only $67.98, less than $100. The operation of the Alibaba store involves the handover between former and current employees, and the need for coordination among various departments when responding to your interrogatory, leading to the oversight. However, it is certain that this was an honest oversight; our client has no reason to hide this public information, which can be easily found on internet. Nevertheless, we deeply apologize for any inconvenience this may have caused.

Here is our updated response to the interrogatory:

Shenzhen Xitao Network Technology Co., Ltd. is a post-importation distributor through alibaba.com of the S12 Pro, S12, S9 Pro, S9, M1, and M5 products.

Best regards,

Wu

YANG Qianwu (杨乾武 律师)
He/Him/His
Admitted in California & China
Founding Managing Partner
SHM Law Firm

M: +86 139 2521 2009 (WhatsApp) | T: +86 755 8326 6693

25F, China Resource Tower (华润大厦)
2666 Keyuan South Road, Nanshan
Shenzhen, 518052, China

3000 El Camino Real, Building 4, Suite 200, (Palo Alto, California 94306

On 17 Jan 2024, at 11:53, YANG Qianwu <yang@shm.law> wrote:

Hi Josephine,

Let me first address the urgent matters here and I will follow up on other questions as soon as practicable.

"1.   What is Momcozy's relationship with Xitao as discussed in our email on January 9?"

Comment 1
Please be informed that our team, in collaboration with our clients, has been actively engaged in a thorough investigation since we were first notified. The complexity of the situation, particularly the involvement of former employees and the necessity for cross-departmental verifications, has extended the duration of our inquiry. In fact, we were following up on this matter before receiving your email today.

Our initial findings suggest that the earlier evidence disclosure about the relationship between Xitao and Momcozy may contain inadvertent errors stemming from communication challenges. We are committed to ensuring accuracy and clarity in this matter.

We anticipate being able to provide a comprehensive and conclusive response by the end of this week. We apologize for any inconvenience this may have caused and appreciate your patience.

"Also, Elvie intends to disclose a Chinese privacy law expert in this case using the procedure set forth in the Protective Order. We understand that Plaintiffs will have five days to object to her disclosure, but this would mean that she cannot join the call tomorrow if you feel the information you will share may be confidential. We expect to send you her signed Exhibit A and CV this evening. Please let us know if Plaintiffs consent to her participation on the call tomorrow; if not, we will join the call without her."

Comment 2
We do not object to the disclosure of confidential material to this expert, and welcome Ms. Sun's participation in our meet and confer tomorrow, hoping that we can engage in a candid and constructive dialogue, ultimately leading to an amicable resolution.

Best regards,
Wu

On Jan 17, 2024, at 07:48, Josephine Kim <JOSKIM@sternekessler.com> wrote:

Hi Wu,

Thank you for circulating the meeting invitation. We hope to make this a productive conversation. Per your request, we are sending some points for discussion.

1.  What specific provisions of the PIPL and DSL do you believe prohibit disclosure of WeChat messages? Could you provide Momcozy's specific position? I believe to date we have just received a list of statutes.
2.  We would like to clarify whether Momcozy has a WeChat business account or otherwise uses WeChat for business purposes. We are a little unclear on Momcozy's position here.
3.  Do Momcozy employees access WeChat from business and personal devices (i.e., work computer and personal cell phone), or only from their personal devices?
4.  Does Momcozy know if its employees would consent to collection of WeChat business messages? We understand the parties still need to discuss the appropriate custodians.
5.  What is Momcozy's relationship with Xitao as discussed in our email on January 9?

Also, Elvie intends to disclose a Chinese privacy law expert in this case using the procedure set forth in the Protective Order. We understand that Plaintiffs will have five days to object to her disclosure, but this would mean that she cannot join the call tomorrow if you feel the information you will share may be confidential. We expect to send you her signed Exhibit A and CV this evening. Please let us know if Plaintiffs consent to her participation on the call tomorrow; if not, we will join the call without her.

Thank you,
Josephine

<image001.png>
Josephine Kim
Director
Sterne, Kessler, Goldstein & Fox P.L.L.C.
Email: joskim@sternekessler.com
Direct: 202.772.8896

From: YANG Qianwu <yang@shm.law>
Sent: Monday, January 15, 2024 5:20 PM
To: Josephine Kim <JOSKIM@sternekessler.com>
Cc: kuijter.erin@dorsey.com; Paul T. Meiklejohn <Meiklejohn.Paul@dorsey.com>; Nirav N. Desai <NDESAI@sternekessler.com>; Joseph H. Kim <JOSEPHK@sternekessler.com>; Walters@lowegrahamjones.com; Hansen.Connor@dorsey.com; ELVIE-MOMCOZY-DJ <ELVIE-MOMCOZY-DJ@sternekessler.com>; SHM Momcozy <shmmomcozy@shm.law>
Subject: Re: ESI Protocol/Protective Order

EXTERNAL EMAIL: Use caution before clicking links or attachments.

Hi Josephine,

I hope you have had a wonderful Martin Luther King Jr. Day.

I confirm that the proposed time of 8 p.m. Eastern Time Wednesday / 9 a.m. Shenzhen Time Thursday works for me.

Per our earlier conversation, if you could send us any additional questions beyond those we've already discussed, that would be greatly appreciated. This will allow us to make the necessary preparations more effectively. We are committed to resolving this matter amicably and to the satisfaction of all parties involved.

I want to reiterate that our clients have nothing to hide and are willing to fully cooperate with the discovery requests. In my perspective, our primary differences seem to stem from certain misunderstandings related to WeChat culture and the nuances of Chinese law. I hope our upcoming meet and confer can clarify these issues and avoid any potential miscalculations.

I look forward to our discussion with you and your team. As a note, we typically use Zoom for such meetings. Could you please send out a Zoom invite? Alternatively, we can organize the meeting if that's more convenient.

Best regards,

Wu

YANG Qianwu (杨乾武 律师)
He/Him/His
Admitted in California & China
Founding Managing Partner
SHM Law Firm

M: +86 139 2521 2009 (WhatsApp) | T: +86 755 8326 6693

25F, China Resources Tower (深圳"春笋")
2666 Keyuan South Road, Nanshan
Shenzhen, 518052, China

3000 El Camino Real, Building 4, Suite 200, (美国硅谷) Palo Alto, California 94306

On Jan 16, 2024, at 01:36, Josephine Kim <JOSKIM@sternekessler.com> wrote:

Hi Wu,

Following up on this, we would be available on Wednesday 8PM ET / Thursday 9AM Shenzhen time for a meet-and-confer. Does this time work for Plaintiffs?

Thanks,
Josephine

<image001.png>

**Josephine Kim**
Director
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** joskim@sternekessler.com
**Direct:** 202.772.8896

**From:** YANG Qianwu <yang@shm.law>
**Sent:** Wednesday, January 10, 2024 7:10 AM
**To:** Josephine Kim <JOSKIM@sternekessler.com>
**Cc:** kolter.erin@dorsey.com; Paul T. Meiklejohn <Meiklejohn.Paul@dorsey.com>; Nirav N. Desai <NDESAI@sternekessler.com>; Joseph H. Kim <JOSEPHK@sternekessler.com>; Walters@lowengrahamjones.com; Hansen.Connor@dorsey.com; ELVIE-MOMCOZY-DI <ELVIE-MOMCOZY-DI@sternekessler.com>; SHM Momcozy <shmmomcozy@shm.law>
**Subject:** Re: ESI Protocol/Protective Order

EXTERNAL EMAIL: Use caution before clicking links or attachments.

Hi Josephine,
Thank you. Please see my comments below:

On Jan 10, 2024, at 10:56, Josephine Kim <JOSKIM@sternekessler.com> wrote:

Hi Wu,

Thank you for your response. We disagree with your position that asking Momcozy to review and produce its business communications on its employees' WeChat would be in violation of Chinese law. Again, we are not asking for Momcozy employees' personal messages or social media activity. There are many ways to avoid any potential concerns with Chinese privacy law, such as through the use of search terms (i.e., "Elvie") or by collecting only those messages between business colleagues, provided that U.S. discovery obligations are complied with. Moreover, U.S. courts have found that Chinese data privacy laws may not protect a Chinese company from complying with its discovery obligations in U.S. litigations.

Comment 1
Since WeChat accounts are privately owned by individual employees, Momcozy cannot legally search these WeChat without the employees' consent. Once again, WeChat accounts are not under the possession, custody or control of Momcozy.

Given Momcozy's prior representation that Momcozy would produce its WeChat if good cause is shown, we disagree that any relevant WeChat business communications are now not in Momcozy's possession, custody, and control.

Comment 2
Please refer to my previous comment regarding this matter in my last email.

As to your other points on the merits of the parties' substantive arguments, those issues will be litigated in due course in the coming months. But we note for the record that you once again willfully ignore all of Elvie's asserted patents besides the '893 patent.

Comment 3
I am afraid that your assertion is out of context, which is about TRO/APEX.

We agree that a meet-and-confer is the next step here. Please propose some times in the next several days that work for you because we are trying to coordinate the call across multiple time zones.

Comment 4
Currently, I can make myself available from 8:00 AM to 11:30 AM Shenzhen Time for the next several days, except for tomorrow morning.

Best regards,
Wu

Regards,
Josephine

<image001.png>

**Josephine Kim**
Director
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** joskim@sternekessler.com
**Direct:** 202.772.8896
**From:** YANG Qianwu <yang@shm.law>
**Sent:** Thursday, January 4, 2024 8:04 AM
**To:** Josephine Kim <JOSKIM@sternekessler.com>
**Cc:** kolter.erin@dorsey.com; Paul T. Meiklejohn <Meiklejohn.Paul@dorsey.com>; Nirav N. Desai <NDESAI@sternekessler.com>; Joseph H. Kim <JOSEPHK@sternekessler.com>; Walters@lowengrahamjones.com; Hansen.Connor@dorsey.com; ELVIE-MOMCOZY-DI <ELVIE-MOMCOZY-DI@sternekessler.com>; SHM Momcozy <shmmomcozy@shm.law>
**Subject:** Re: ESI Protocol/Protective Order

EXTERNAL EMAIL: Use caution before clicking links or attachments.

Hi Josephine,

Thank you very much for your message. We also extend our warmest wishes for a happy new year to you and your team. Please find my comments below:

On Jan 4, 2024, at 10:14, Josephine Kim <JOSKIM@sternekessler.com> wrote:

Hi Wu,

I hope you had a good holiday and we wish you a Happy New Year.

Circling back to our discussion below, thank you for the further information regarding Momcozy's use of DingDing and WeChat. Elvie maintains its view that discovery into these platforms is appropriate because they are vehicles for Momcozy's business communications.

Comment 1

Generally speaking, WeChat is not a business vehicle for Momcozy's business communications. As we explained before, WeChat is occasionally used as an alternative to mobile phone or text/voice messages, as Elvie probably does with text messages or social media communications. Momcozy's primary business vehicles are Ding Talk and Email in this context.

Again, Elvie is not seeking any personal or privileged messages, so we disagree that this is a concern, nor is this a basis for which non-privileged, responsive information should be withheld.

Comment 2

As you might be aware, WeChat is an integral part of daily life for most people in China. It's a highly personal platform, essential for communicating with family, friends, and relatives. Beyond just a communication tool, WeChat serves as a significant personal finance platform and is central to various aspects of personal life in China.

Consider this scenario: when you notice a Chinese friend frequently checking her mobile phone in China, there's a high likelihood she's browsing WeChat. She's probably engaging with personal messages or browsing Discovery posts from family and friends, primarily on WeChat.

**More importantly, the WeChat accounts of employees are not under the possession, custody, or control of Momcozy.**

Also, Momcozy previously offered to preserve and produce WeChat upon demonstration of good cause in its December 15, 2023 email, so we believe your latest statement that WeChat is outside of your client's control is a hurdle that can be overcome.

Comment 3

Honestly speaking, that is because we believe there is no way for Elvie to demonstrate any good cause to request any responsive WeChat messages.

It's worth reiterating that:

**1. WeChats are private, which are not under Momcozy's possession, custody, or control.**

2. Since WeChat information is highly personal and sensitive, any improper use of employees' WeChat information may implicate serious legal consequences and even criminal liabilities.

I would like to draw your attention to the following most relevant Chinese laws:

1) Personal Information Protection Law of the People's Republic of China. (Chapter Three on "Rules for the Cross-Border Provision of Personal Information" is a special chapter regulating cross-border provision of personal information, which sets a even higher bar than the general rules under the PIPL.);

2) Data Security Law of the People's Republic of China;

3) Article 7 of the Seventh Amendment to the Criminal Law of the People's Republic of China (Article 253 of Criminal Law);

4) Interpretation of the Supreme People's Court and the Supreme People's Procuratorate on Several Issues Concerning the Application of Law in Handling Criminal Cases of Infringement of Citizens' Personal Information.

If you would like to further this discussion, we welcome Elvie to retain Chinese law experts in this area with substantial experience in cross-border matters to join this discussion.

3. Furthermore, I would like to draw your attention to this provision of the draft ESI Agreement:

"5. Foreign data privacy laws. Nothing in this Order is intended to prevent either party from complying with the requirements of a foreign country's data privacy laws, e.g., the European Union's General Data Protection Regulation (GDPR) (EU) 2016/679. The parties agree to meet and confer before including custodians or data sources subject to such laws in any ESI or other discovery request."

Your note also expresses disbelief that the WeChat messages will contain relevant information regarding willfulness, relying only on the Court's May 17, 2023 Order Denying Momcozy's Motion for Temporary Restraining Order. As we've previously conveyed to you, your confidence based on that Order is misplaced for a number of reasons. As you know, that Order only addressed the '893 patent and the S12 Pro product at issue, not any of Elvie's other asserted patents or other accused Momcozy products. And while Momcozy had months to prepare its TRO briefing complete with expert declaration, Elvie had only 3 days to respond to hundreds of pages, so the Court only had the benefit of Momcozy's full perspective.

Comment 4

We believe that Elvie is the de facto plaintiff here, which should have had much more time to prepare the case than the de facto defendant, Momcozy, especially with respect to why and how the S12 Pro infringes upon the '893 patent. However, in addition to incorrect conclusory arguments during the APEX and TRO procedures, Elvie offered little reasoning on why and how the S12 Pro infringes the '893 patent.

As a matter of fact, Momcozy only had a couple of weeks to prepare for the filing of this case and the Motion for Temporary Restraining Order last April after the shockingly incorrect result of the APEX.

Moreover, Elvie's infringement read is correct as a matter of law, as the APEX neutral evaluator found.

Comment 5

Elvie failed to address why the S12 Pro infringes upon the '893 patent in its submissions in addition to the conclusory arguments during APEX. It only took a couple of weeks, if not days, for the Amazon-appointed lawyer to incorrectly find it is likely that S12 Pro infringes upon the '893 patent. However, it also took a judge a couple of weeks to determine S12 Pro is unlikely to infringe, which also proves that the finding of the Amazon-appointed lawyer is wrong.

We already explained in our August 14, 2023 infringement claim charts and again during our September 2023 meet-and-confer why the claims, specification, and prosecution history all support Elvie's interpretation of the claims for literal infringement and DOE. See, e.g., D.I. 69 at Ex. 12 at 9-10 (August 14, 2023 infringement claim charts clearly identifying the "diaphragm holder that forms a recess or cavity at least in part with an external surface of the housing").

Comment 6

Frankly, we still cannot see why the S12 Pro infringes on the '893 patent, particularly how it meets the limitation of "a diaphragm configured to be seated against a diaphragm holder that forms a recess or cavity at least in part with an external surface of the housing," among several others as we argued during the APEX and the Motion for TRO.

Furthermore, we believe the '893 patent is invalid because, among other reasons, it is anticipated by Khalil. The examiner, among others, overlooked the important technical teaching of Fig. 10 of Khalil, which was a significant reason why the '893 patent was allowed.

These facts contribute to Elvie's claim for willfulness and we believe the DingDing and WeChat messages should also be produced because that is where any Momcozy employee discussion regarding Elvie or Elvie's intellectual property is likely to be captured.

Comment 7
Please refer to the above comments.

It appears the parties are approaching an impasse on this issue and will require the Court's assistance. We understand that while Momcozy would be willing to search and produce relevant DingDing messages, it does not agree to do so for WeChat. Please let us know if this is incorrect. Therefore we propose that the parties submit the ESI stipulation with the parties' respective positions for the Court's consideration. We propose exchanging our respective written positions by Friday at 2PM ET so that we may submit the ESI stipulation shortly thereafter.

Comment 8
We would like to propose a meet and confer between the Counsels, with the participation of Chinese law experts from Elvie, before we burden this matter with the Court

As to your question about Elvie: Elvie uses Slack for inter-office communications, but we do not see how Elvie's inter-office communications are relevant to any claims or defenses in this case.

Comment 9
It is relevant to our claim of tortious interference. Therefore, Slack should receive the same treatment as DingTalk.

Regards,
Josephine

Best regards,
Wu

<image001.png>

**Josephine Kim**
Director
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** joskim@sternekessler.com
**Direct:** 202.772.8896

---

**From:** YANG Qianwu <yang@shm.law>
**Sent:** Tuesday, December 19, 2023 4:55 PM
**To:** Josephine Kim <JOSKIM@sternekessler.com>
**Cc:** kolter.erin@dorsey.com; Paul T. Meiklejohn <Meiklejohn.Paul@dorsey.com>; Nirav N. Desai <NDESAI@sternekessler.com>; Joseph H. Kim <JOSEPHK@sternekessler.com>; Walters@lowegrahamjones.com; Hansen.Connor@dorsey.com; ELVIE-MOMCOZY-DJ <ELVIE-MOMCOZY-DJ@sternekessler.com>; SHM Momcozy <shmmomcozy@shm.law>
**Subject:** Re: ESI Protocol/Protective Order

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Hi Josephine,
Thank you. Please see my comments below:

> On Dec 20, 2023, at 04:23, Josephine Kim <JOSKIM@sternekessler.com> wrote:
>
> Hi Wu,
>
> Thank you for your message. We will consider this new information and get back to you soon with an updated proposal for the ESI stipulation.

Comment 1
Could you also please confirm that Elvie does not use other platforms or apps for work related to this case?

> One thing that we are still not clear about is how Momcozy uses DingDing vs. WeChat. For example, is one used for external communications and another used for internal communications? Or does their usage vary by Momcozy employee?

Comment 2
As I explained, WeChat is primarily used for personal purposes in this context. Therefore, our client cannot provide an exact estimate for this question. Sometimes, we use WeChat in lieu of mobile phone calls or text messages. For example, the client may sometimes use WeChat to call me. It works as a substitute for mobile phone calls or text messages.

If we have to speculate, WeChat is primarily used for external communications in this context.

> We understand that your client has privacy concerns about WeChat but as I mentioned previously, Elvie will not be seeking production of personal WeChat communications.

Comment 3
Practically speaking, the risk of inadvertently disclosing sensitive information is too high. Moreover, it might be unavoidable to expose those personal, sensitive messages to at least a group of lawyers and the ESI provider, which may violate Chinese privacy law.

More importantly, these wechat messages are out of our client's control.

> Nor was it our suggestion that 30% of business communications are done via WeChat—that was the number you provided in your November 29 email. We are nonetheless eager to come to an amicable agreement on this matter.

Comment 4

That is our client's speculation, which is based on feelings. Again, the WeChat messages are out of our client's control, and our client cannot make any accurate calculations.

In the context of this case, honestly speaking, I cannot see the relevance of WeChat messages to prove any "bad faith" to make Elvie's willful infringement case. It is almost impossible to imagine our client would be found to act as "a pirate who plunders" the asserted patent after the court even has found "tentatively" the accused S12 Pro, the flagship product of our client, is noninfringing.

Thank you.


Thank you again. We will be in touch soon.


Josephine


<image001.png>

**Josephine Kim**
Director
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** joskim@sternekessler.com
**Direct:** 202.772.8896

---

**From:** YANG Qianwu <yang@shm.law>
**Sent:** Friday, December 15, 2023 6:46 PM
**To:** Josephine Kim <JOSKIM@sternekessler.com>
**Cc:** kolter.erin@dorsey.com; Paul T. Meiklejohn <meiklejohn.paul@dorsey.com>; Nirav N. Desai <NDESAI@sternekessler.com>; Joseph H. Kim <JOSEPHK@sternekessler.com>; walters@lowegrahamjones.com; Hansen.Connor@dorsey.com; ELVIE-MOMCOZY-DJ <ELVIE-MOMCOZY-DJ@sternekessler.com>; SHM Momcozy <shmmomcozy@shm.law>
**Subject:** Re: ESI Protocol/Protective Order

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Hi Josephine,

Thank you for your follow-up.

In response to your question about the digital platform our client uses for daily work purposes, I can confirm that it is DingDing. Please note that this is confidential information.

With this clarification, I'd like to address the issue of WeChat usage. Given that WeChat is primarily used for private purposes in the context of this case, we believe that enforcing the exception of WeChat on page 4 of the ESI agreement would be disproportionate and overly burdensome for our client.

Additionally, regarding the at least 30% use of WeChat for work-related purposes mentioned in your previous email, I must clarify that this figure is not accurate. Since WeChat is mainly utilized for personal communication, it's challenging to provide an exact percentage. However, it is certain that work-related use does not amount to at least 30%, contrary to your earlier suggestion. We are simply speculating that it is around that figure.

Our client will preserve WeChat messages under our proposed version of the ESI agreement and will produce them if a demonstration of good cause is provided. However, it is non-negotiable for our client to produce WeChat messages due to serious privacy concerns and the potential violation of Chinese personal information protection laws, as your side suggests, in addition to the reasons we have explained to you before.

Best regards,

Wu

YANG Qianwu (杨乾武 律师)
He/Him/His
Admitted in California & China
Founding Managing Partner
SHM Law Firm

M: +86 139 2521 2009 (WhatsApp) | T: +86 755 8326 6693

25F, China Resources Tower (深圳"春笋")
2666 Keyuan South Road, Nanshan
Shenzhen, 518052, China

3000 El Camino Real, Building 4, Suite 200, (美国硅谷)Palo Alto, California 94306


On 16 Dec 2023, at 04:05, Josephine Kim <JOSKIM@sternekessler.com> wrote:

Counsel,

Now that the PO is entered, please share the WeChat information you had mentioned you would provide once the PO is

entered. I believe that is the last remaining issue in the ESI agreement.

Thanks,
Josephine

<image001.png>

**Josephine Kim**
Director
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** joskim@sternekessler.com
**Direct:** 202.772.8896

---

**From:** Josephine Kim
**Sent:** Friday, December 1, 2023 3:19 PM
**To:** 'YANG Qianwu' <yang@shm.law>
**Cc:** kolter.erin@dorsey.com; Paul T. Meiklejohn <meiklejohn.paul@dorsey.com>; Nirav N. Desai <NDESAI@sternekessler.com>; Joseph H. Kim <JOSEPHK@sternekessler.com>; walters@lowegrahamjones.com; Hansen.Connor@dorsey.com; ELVIE-MOMCOZY-DJ <ELVIE-MOMCOZY-DJ@sternekessler.com>; SHM Momcozy <shmmomcozy@shm.law>
**Subject:** RE: ESI Protocol/Protective Order

Counsel,

Please let us know when we can expect the final draft of the PO. I recall we had agreed upon the final redlines. We can continue to discuss the WeChat issue in more detail once the PO is entered.

Thanks,
Josephine

<image001.png>

**Josephine Kim**
Director
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** joskim@sternekessler.com
**Direct:** 202.772.8896

---

**From:** YANG Qianwu <yang@shm.law>
**Sent:** Wednesday, November 29, 2023 1:53 AM
**To:** Josephine Kim <JOSKIM@sternekessler.com>
**Cc:** kolter.erin@dorsey.com; Paul T. Meiklejohn <meiklejohn.paul@dorsey.com>; Nirav N. Desai <NDESAI@sternekessler.com>; Joseph H. Kim <JOSEPHK@sternekessler.com>; walters@lowegrahamjones.com; Hansen.Connor@dorsey.com; ELVIE-MOMCOZY-DJ <ELVIE-MOMCOZY-DJ@sternekessler.com>; SHM Momcozy <shmmomcozy@shm.law>
**Subject:** Re: ESI Protocol/Protective Order

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Hi Josephine,
Many thanks. Please see my comments below.

On Nov 29, 2023, at 11:48, Josephine Kim <JOSKIM@sternekessler.com> wrote:

Hi Wu,

Thank you for your email.  We appreciate your efforts to expedite this process.

First, as a showing of good faith and in order to move this along, Elvie will agree to the two-year prosecution bar.

Comment 1
Many thanks again.

We believe this resolves all remaining issues with the Protective Order. We are fine with the remaining redlines Momcozy proposed in Erin's November 14, 2023 email. Would you please send us the to-be-filed version with exhibits so we can give our sign-off for filing?

Comment 2
will do.

We also understand that Momcozy will supplement its discovery responses shortly after this is filed.

Comment 3
Yes.

Second, we continue to have questions and concerns about Momcozy's use of WeChat. You've mentioned that Momcozy uses email to communicate with you about this litigation. But our concern is how Momcozy conducts its business communications (i.e., with third parties), not its communications with legal counsel. This is not clear from your explanation. We are also unclear how WeChat is not a relevant source of information when you say at least 30% of work is done by employees over WeChat.

Comment 4
30% is truly a rough estimate on our part.

Although patent cases do not always require collecting this type of ESI, it would be necessary in this case if Momcozy or its employees are sharing unique business information and files on the platform. And to be clear, Elvie would not be seeking production of Momcozy employees' private WeChat communications that have no relevance to the issues in this case.

As the Protective Order is ready to be entered, we ask that you disclose more information on the ESI platforms, which you offered in your email.

Comment 5
Will do after the PO is officially entered. However, we still believe that the WeChat exception, or any similar exception suggested by your team, is disproportionate to the needs of this case, which is primarily about patent infringement.

Best regards,
Wu

Best regards,
Josephine

<image001.png>
**Josephine Kim**
Director
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** joskim@sternekessler.com
**Direct:** 202.772.8896

---

**From:** YANG Qianwu <yang@shm.law>
**Sent:** Tuesday, November 28, 2023 9:02 AM
**To:** Josephine Kim <JOSKIM@sternekessler.com>
**Cc:** kolter.erin@dorsey.com; meiklejohn.paul@dorsey.com; Nirav N. Desai <NDESAI@sternekessler.com>; Joseph H. Kim <JOSEPHK@sternekessler.com>; walters@lowegrahamjones.com; Hansen.Connor@dorsey.com; ELVIE-MOMCOZY-DJ <ELVIE-MOMCOZY-DJ@sternekessler.com>; SHM Momcozy <shmmomcozy@shm.law>
**Subject:** Re: ESI Protocol/Protective Order

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Hi Josephine,

Good morning. Regarding the PO and ESI Protocol, I would like to take over from Erin to expedite the process a bit, as this has now become a very fact-specific matter.

1. Prosecution Bar

We'd like your team to agree with the 2-year prosecution bar duration for the following reasons:

a) our client may soon disclose highly confidential new design plans to your team, which presents a significant risk of inadvertent exposure.

b) Additionally, adopting a 2-year duration for the prosecution bar aligns with established practice. See e.g., Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets by the United States District Court for the Northern District of California, which can be reviewed here:https://www.cand.uscourts.gov/wp-content/uploads/forms/model-protective-orders/ND_Cal_Patent_Highly_Sensitive_Model_Prot_Ord_Revised.docx.

2. ESI Protocol:

Following up on your question regarding WeChat:

(1) Does Momcozy have a WeChat Enterprise (WeChat Work) account?
   - Comment 1: No.

(2) Does Momcozy advertise WeChat as a way for customers to contact Momcozy (on the website, etc.)?
   - Comment 2: No.

(3) Do Momcozy employees use a different WeChat ID for work-related communications?
   - Comment 3: No such policy or practice, to our knowledge.

(4) Do they use their personal WeChat IDs?
   - Comment 4: Yes, to our knowledge.

(5) From your email below, it sounds like the same ID is used for personal and work communications.
   - Comment 5: Yes, to our knowledge.

(6) How much do Momcozy employees use WeChat for work (a rough percentage)?
   - Comment 6: A rough estimate is approximately 30 percent, but this is difficult to accurately speculate.

(7) What other ESI platforms do employees use for work? What is the primary form of communication?
   - Comment 7: Currently, I can disclose that email is an important form of communication between my team and the client's work team on this case. We will disclose more information after the Protective Order is entered.

However, as this case primarily concerns patent infringement, we believe the model language for ESI discovery is sufficient, and the exception suggested by your team is disproportionate.

Have a great day.

Best regards,
Wu

YANG Qianwu (杨乾武 律师)
He/Him/His
Admitted in California & China
Founding Managing Partner
SHM Law Firm

M: +86 139 2521 2009 (WhatsApp) | T: +86 755 8326 6693

25F, China Resources Tower（深圳"春笋"）

2666 Keyuan South Road, Nanshan
Shenzhen, 518052, China

3000 El Camino Real, Building 4, Suite 200,（美国硅谷）Palo Alto, California 94306

On 21 Nov 2023, at 00:16, Josephine Kim <JOSKIM@sternekessler.com> wrote:

Hi Erin,

2PM PT / 5PM ET today works for us.

Thanks,
Josephine

<image001.png>
**Josephine Kim**
Director
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** joskim@sternekessler.com
**Direct:** 202.772.8896

---

**From:** kolter.erin@dorsey.com <kolter.erin@dorsey.com>
**Sent:** Saturday, November 18, 2023 12:44 PM
**To:** Josephine Kim <JOSKIM@sternekessler.com>
**Cc:** Meiklejohn.Paul@dorsey.com; yang@shm.law; Nirav N. Desai <NDESAI@sternekessler.com>; Joseph H. Kim <JOSEPHK@sternekessler.com>; Walters@lowegrahamjones.com; Hansen.Connor@dorsey.com; ELVIE-MOMCOZY-DJ <ELVIE-MOMCOZY-DJ@sternekessler.com>
**Subject:** Re: ESI Protocol/Protective Order

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Josephine,

We are available for a call anytime after 9 am PT on Monday (20th), please let us know what works best for you and I can circulate a dial-in.

Thanks,
Erin

Erin C. Kolter
Dorsey & Whitney LLP
P: 206.903.2390

On Nov 15, 2023, at 10:27 AM, Josephine Kim <JOSKIM@sternekessler.com> wrote:

EXTERNAL FROM OUTSIDE DORSEY. BE CAUTIOUS OF LINKS AND ATTACHMENTS.

Hi Erin,

We'd appreciate a call to discuss the ESI and PO documents. Can you send us your availability later this week or early next week?

Going forward please also cc the Elvie listserv: ELVIE-MOMCOZY-DJ@sternekessler.com.

Thanks,
Josephine

<image002.png>

**Josephine Kim**
Director
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** joskim@sternekessler.com
**Direct:** 202.772.8896

_____

**From:** kolter.erin@dorsey.com <kolter.erin@dorsey.com>
**Sent:** Thursday, November 9, 2023 7:44 PM
**To:** Josephine Kim <JOSKIM@sternekessler.com>; Meiklejohn.Paul@dorsey.com
**Cc:** yang@shm.law; Nirav N. Desai <NDESAI@sternekessler.com>; Joseph H. Kim <JOSEPHK@sternekessler.com>; walters@lowegrahamjones.com; Hansen.Connor@dorsey.com
**Subject:** RE: ESI Protocol/Protective Order

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Hi Jo,

Attached is our further revision to the ESI agreement – we are fine with everything but the WeChat addition on page 4. We are happy to jump on a call to discuss if that would be helpful.

We will send our proposed revisions to the protective order shortly.

Regards,
Erin

**Erin C. Kolter**
**Of Counsel**
<image003.png>

DORSEY & WHITNEY LLP
Columbia Center
701 Fifth Avenue, Suite 6100 |
Seattle, WA 98104-7043
**P:** 206.903.2390  **C:** 310.606.0950

**CONFIDENTIAL COMMUNICATION**
*E-mails from this firm normally contain confidential and privileged material, and are for the sole use of the intended recipient.*
*Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received*
*this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments,*
*including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and*

*any copies thereof.*
*Thank you.*

---

**From:** Josephine Kim <JOSKIM@sternekessler.com>
**Sent:** Monday, October 9, 2023 4:19 AM
**To:** Meiklejohn, Paul <Meiklejohn.Paul@dorsey.com>
**Cc:** yang@shm.law; Kolter, Erin <kolter.erin@dorsey.com>; Nirav N. Desai <NDESAI@sternekessler.com>; Joseph H. Kim <JOSEPHK@sternekessler.com>; Mark Walters <walters@lowegrahamjones.com>
**Subject:** RE: ESI Protocol/Protective Order

Hi Paul,

Attached is Elvie's proposed PO and our edits to the ESI Agreement. For the ESI Agreement I tried to highlight Elvie's additional redlines so they are easier to spot. Please let us know of any questions or concerns.

I am in Asia this week and next, so please email to arrange a call if you'd like to discuss these.

Thanks,
Jo

<image002.png>

**Josephine Kim**
Director
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** joskim@sternekessler.com
**Direct:** 202.772.8896

---

**From:** Josephine Kim
**Sent:** Wednesday, October 4, 2023 10:38 PM
**To:** 'Meiklejohn.Paul@dorsey.com' <Meiklejohn.Paul@dorsey.com>
**Cc:** yang@shm.law; kolter.erin@dorsey.com; Nirav N. Desai <NDESAI@sternekessler.com>
**Subject:** RE: ESI Protocol/Protective Order

Hi Paul,

Apologies for the delay on this as we've been addressing the service concerns. We are conferring with our client on these and hope to have our revisions over to you in the next couple days. For the draft ESI Protocol, it appears that a meet-and-confer is in order (*see* para 1 on page 3), but we'll discuss further once we've sent over our proposed edits.

Thanks,
Josephine

<image002.png>

**Josephine Kim**
Director
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** joskim@sternekessler.com
**Direct:** 202.772.8896

---

**From:** Meiklejohn.Paul@dorsey.com <Meiklejohn.Paul@dorsey.com>
**Sent:** Tuesday, October 3, 2023 7:19 PM
**To:** Josephine Kim <JOSKIM@sternekessler.com>
**Cc:** yang@shm.law; kolter.erin@dorsey.com; Nirav N. Desai <NDESAI@sternekessler.com>
**Subject:** ESI Protocol/Protective Order

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Hi Josephine,

About a month ago, you and I agreed that we would prepare the proposed ESI protocol and you would prepare the proposed protective order.  Shortly thereafter, on September 5, I sent you the proposed ESI protocol.  Two days later, on September 7, you said you were "reviewing the draft ESI Protocol and will revert with [your] comments shortly."  You also said you would  "circulate the draft PO in the next week."

It's been a month now and we have received neither.

Could you please tell me when we can expect to receive the information you said you would provide long ago?

Paul

---

**From:** Josephine Kim <JOSKIM@sternekessler.com>
**Sent:** Thursday, September 7, 2023 8:46 PM
**To:** Meiklejohn, Paul <Meiklejohn.Paul@dorsey.com>
**Cc:** yang@shm.law; Kolter, Erin <kolter.erin@dorsey.com>; Nirav N. Desai <NDESAI@sternekessler.com>
**Subject:** RE: ESI Protocol

EXTERNAL FROM OUTSIDE DORSEY. BE CAUTIOUS OF LINKS AND ATTACHMENTS.

Thanks, Paul. We are reviewing the draft ESI Protocol and will revert with our comments shortly.

We will circulate the draft PO in the next week.

I believe we are waiting for a calendar invite for our call on September 12 at 6:30 PM ET.

Thanks,
Josephine

---

**From:** Meiklejohn.Paul@dorsey.com <Meiklejohn.Paul@dorsey.com>
**Sent:** Tuesday, September 5, 2023 5:36 PM
**To:** Josephine Kim <JOSKIM@sternekessler.com>
**Cc:** yang@shm.law; kolter.erin@dorsey.com
**Subject:** ESI Protocol

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Hi Josephine,

Here is the proposed ESI Protocol with some revisions from the Court's  model agreement.  Please let me have your comments, if any.

What is your plan if the Court enters this before the other 3 CC defendants are in the case?

Do you know the status of the Protective Order?

Paul