THE HONORABLE KYMBERLY K. EVANSON

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9  SHENZHEN ROOT TECHNOLOGY CO., LTD.,          Case No. 2:23-cv-631
   HONG KONG LUTE TECHNOLOGY CO.,
10 LIMITED, AND SHENZHEN CONGLIN E-
   COMMERCE CO., LTD.,
11                                               **CHIARO TECHNOLOGY LTD.'S**
                Plaintiffs,                       **REPLY TO MOTION FOR LEAVE**
12                                               **TO AMEND COUNTERCLAIMS**
          v.
13                                               **NOTING DATE: MARCH 22, 2024**
   CHIARO TECHNOLOGY Ltd.,
14
                Defendant.
15

16 CHIARO TECHNOLOGY LTD.,

17                Counterclaim Plaintiff,

18 v.

19 SHENZHEN ROOT TECHNOLOGY CO., LTD.,
   HONG KONG LUTE TECHNOLOGY CO.,
20 LIMITED, SHENZHEN CONGLIN E-
   COMMERCE CO., LTD, SHENZHEN ROOT E-
21 COMMERCE CO., LTD., SHENZHEN TPH
   TECHNOLOGY CO., LTD., SHENZHEN
22 LUTEJIACHENG NETWORK TECHNOLOGY
   CO., LTD., and SHENZHEN JINRUIHANG
23 TECHNOLOGY CO., LTD.,

24                Counterclaim Defendants.

25
26
27
28
   ELVIE'S REPLY TO MOTION FOR LEAVE
   TO AMEND COUNTERCLAIMS
   No. 2:23-CV-00631-KKE – Page 1

1

## I.      Introduction

2        This is an ordinary, procedural issue that Momcozy is using to further delay this litigation.

3   Elvie filed its Motion to Amend ahead of the mutually agreed upon deadline to amend the pleadings

4   adopted by the Court's Scheduling Order. *See* Dkt. #62; Dkt. #64. Momcozy has no real basis to

5   oppose Elvie's Motion (and, in fact, admits as much in its Opposition).[1] Rather, what Momcozy

6   seeks is an extension of the case schedule by a year. Now that its products are relisted on Amazon,

7   Momcozy has no incentive to litigate this case—that *Momcozy* filed—at a reasonable pace. Instead,

8   Momcozy attempts to delay the prosecution of Elvie's infringement claims all while hiding behind

9   a purposefully complex corporate shell game. Elvie should not be prejudiced by Momcozy's lack

10  of desire to try the case it brought. Momcozy cannot dispute that it had notice of Elvie's intent to

11  include new patents when it negotiated the current case schedule or that it provided inaccurate

12  information to Elvie in its verified responses to Elvie's interrogatories frustrating Elvie's

13  identification of the "Xitao" Momcozy entity. Nor can Momcozy dispute that Elvie timely filed its

14  Motion. Momcozy has not and cannot demonstrate unfair prejudice, and Elvie's Motion should be

15  granted.

16  ## II.      Momcozy does not have a proper basis to oppose Elvie's Motion.

17       Momcozy does not have a proper basis to oppose Elvie's Motion to Amend its

18  Counterclaims. Indeed, Momcozy openly admits (Opp. at 3) that Momcozy does not necessarily

19  oppose Elvie's Motion. Rather, Momcozy is concerned with the case schedule. (Opp. at 3). But the

20  Local Rules specifically provide an avenue for parties to move to amend the scheduling order with

21  good cause. *See* W.D. Wash. LCR 16(b)(6). Momcozy attempts to avoid filing its own motion and

22  meeting the required good cause standard by opposing Elvie's timely filed Motion to Amend despite

23  having no legitimate issue with Elvie's Motion. This is highly improper and not a reasonable basis

24  to oppose Elvie's Motion.

25           [1] Now, Momcozy raises new arguments regarding Elvie's Motion for the first time,
including delay. Elvie's delay, however, is due in part to Momcozy's requests for extensions of
26  time to consider Elvie's proposals, obtain new Washington counsel, accommodate travel and
holiday schedules, etc., which Elvie has been freely granting in good faith for numerous issues. It
27  is inequitable for Momcozy to take a substantial amount of time to consider Elvie's proposals and
then use that delay as a shield when Elvie does precisely what it informed Momcozy it would.

28

ELVIE'S REPLY TO MOTION FOR LEAVE
TO AMEND COUNTERCLAIMS
No. 2:23-CV-00631-KKE – Page 2

LOWE GRAHAM JONES™

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

**III.    The current case schedule already takes into account Elvie's newly asserted patents.**

The Court issued its Scheduling Order with the knowledge that Elvie intended to assert new patents and add new products in this case. Elvie was upfront about this fact from the beginning. For example, the Joint Status Report, which set forth the Parties' proposed case schedule, specifically noted that, "Elvie intends to allege that Plaintiffs (and other 'Momcozy' entities) infringe *additional Elvie patents* by making, using, selling, or offering to sell in the United States or importing into the United States *various product lines*." Dkt. #61 at pp. 1-2. In fact, the Parties negotiated a case schedule with full knowledge that Elvie intended to add new patents and products. *See id.* Indeed, based on that report, the Court issued a Scheduling Order providing a case schedule that is *even longer* than what the Parties' mutually agreed to and requested. *Compare* Dkt. #62 *with* Dkt. #61. For example, the Court set the *Markman* hearing for December 2024 compared to the parties' proposed April 2024 date. *Id.* The Court also set the deadline for opening expert reports for February 3, 2025, compared to the parties' proposed October 2024 date. *Id.* Further, the parties proposed August 2025 for trial, and the Court adopted a September 2025 date. Therefore, the current case schedule already accommodates Elvie's assertion of its new patents against additional products, which Elvie has transparently raised with the Court and with Momcozy at every stage of this case.

Momcozy argues that "[t]he current case schedule allows an interval of only 14 months and 22 days between disclosure of preliminary infringement contentions and asserted claims, on one hand, and the trial date, on the other." Opp. at 5-6. At the outset, if Momcozy's concern is the interval between infringement contentions and trial, Elvie is willing to agree to an earlier date for the exchange of contentions. In fact, Elvie specifically proposed to do so in a previous correspondence with Momcozy on its own accord in order to adjust some case deadlines. But Momcozy refused to engage in that discussion. Like several issues raised in Momcozy's opposition, this is the first time Elvie is hearing of this concern.

Setting that issue aside, however, what Momcozy does not acknowledge is that the current 859 days (or 28 months) to trial in this case is already on par with other patent cases in this District. In the Western District of Washington, the average time to trial for a patent case is 29 months (886 days). *See* Ex. A. In fact, Elvie is aware of two cases in the Western District of Washington that

ELVIE'S REPLY TO MOTION FOR LEAVE
TO AMEND COUNTERCLAIMS
No. 2:23-CV-00631-KKE – Page 3

LOWE GRAHAM JONES

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

reached trial in a similar or shorter timeframe despite involving several more patents. *See, e.g.*, *NXP US Inc et al v. Impinj Inc.*, 20-cv-01503 (W.D. Wash. Oct. 7, 2020) (reaching trial 973 days after transfer to W.D. Wash. despite involving eight patents and a three-month stay for an IPR); *Immersion Corporation v. Valve Corporation*, 23-cv-00712 (W.D. Wash. May 15, 2023) (trial scheduled for 25 months after initiation despite involving seven patents). If the parties extended the case by another eleven months, as Momcozy asks the Court to do, that would make this case an outlier in the time-to-trial statistics, not the norm. The current case schedule is typical for patent litigation cases in this district, and Momcozy has not provided any evidence otherwise.

**IV.    Elvie relied in good faith on Momcozy's representations, including incorrect verified responses to Elvie's interrogatories.**

Elvie should not be prejudiced for relying on Momcozy's verified responses to Elvie's interrogatories. Momcozy leans hard into the fact that information regarding Xitao was online prior to Elvie filing its Initial Counterclaims. *See* Dkt. #108 at p. 4. But this ignores the fact that it was Elvie who uncovered this information on the Internet. Using this information, Elvie confronted Momcozy about Xitao, and Momcozy denied that Shenzhen Xitao Network Technology Co., Ltd. was connected to the S12 Pro product *under penalty of perjury*. *See* Ex. B, Momcozy's Responses to Elvie's First Set of Interrogatories. At the time Elvie filed its Counterclaims, Elvie relied on Momcozy's verified responses to Elvie's interrogatories. Elvie cannot now be prejudiced because it relied on Momcozy's false statement. Similarly, Momcozy asserts to the Court that "Xitao's total sales of the S12 Pro amounted to less than $100." *See* Opp. at 4. Momcozy made this same representation to Elvie, but Elvie subsequently discovered this appeared to be grossly inaccurate based on public records and raised the inaccuracy with Momcozy's counsel. *See* Ex. C, January 24, 2024 J. Kim Email. Shockingly, Momcozy repeats the same inaccurate information in its Opposition despite having provided no substantive response to Elvie's assertion of falsity.

Nor does the inclusion of Xitao warrant the nearly one-year extension of the case that Momcozy requests. Momcozy openly admits that Xitao is part of the corporate family. *See* Opp. at 3 n. 1. Momcozy argues that Elvie would need "*at least*" six months to serve Xitao under the Hague Convention. But that is only if Momcozy does not allow its current counsel to accept service for

ELVIE'S REPLY TO MOTION FOR LEAVE
TO AMEND COUNTERCLAIMS
No. 2:23-CV-00631-KKE – Page 4

LOWE GRAHAM JONES℠

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

Xitao, which it is able to do given the fact that it has accepted service for the other entities Elvie named that are related to Momcozy. Thus, any delay in service would be because of Momcozy, not Elvie. And if Momcozy does not accept service, which would be unreasonable, Elvie intends to file a Motion for Alternative Service which would greatly reduce the time for service.

The issues Elvie faced with naming Xitao now seem to be customary behavior by Momcozy. As Elvie previewed for the Court previously, Momcozy appears to be playing a corporate shell game, likely in an attempt to keep its assets hidden in case a judgment is issued against it. Indeed, the Court previously noted that the information Elvie found regarding Momcozy's corporate structure was "troubling."[2] *See* Dkt #59 at p. 2. Momcozy cannot now use its tactic of hiding its corporate structure to delay the case more than it already has, and Elvie has every reason to suspect it will be prejudiced by Momcozy's attempt to move the trial date out.

## V.    Momcozy seeks to further delay this litigation

Momcozy's true intent in seeking to extend the case schedule becomes clearer in light of the current facts. Momcozy filed this declaratory judgment action because Amazon removed the listings for the S12 Pro after a neutral patent evaluator found that the S12 Pro likely infringes the '893 patent through Amazon's APEX proceedings. *See* Dkt. # 1 ¶¶ 15-23. However, Momcozy was able to get the products relisted after the Court asked Elvie to show cause as to why the products infringed the Asserted Patents based off of Momcozy's Motion for a Temporary Restraining Order. *See* Dkt. #53 at p. 3-4. With its product being relisted, Momcozy is now stonewalling Elvie in prosecuting its case.

As an example, Elvie served its First Set of Requests for Production on June 22, 2023, and its Second Set of Requests for Production on October 20, 2023. *See* Exs. D-E. To date, Momcozy has not produced a single document despite Elvie diligently following up with Momcozy regarding its numerous deficiencies. *See, e.g.*, Ex. F at 2-3, March 7, 2024 A. Alfano Email; *id.* at 1, March 20, 2024 J. Kim Email. In reality, now that Momcozy's products are relisted, Momcozy has no incentive to continue to participate in this case. And Momcozy's refusal to actively partake in

---

[2] Specifically, Elvie found that Momcozy had made false representations regarding its corporate structure.

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

discovery is just one example of Momcozy's current approach to the case it chose to bring. Its opposition to Elvie's motion is another.

Lastly, Momcozy incredibly points the finger at Elvie for filing its "motion nearly 4 months after the two patents in question were granted and almost 7 months after becoming aware of Xitao." Opp. at 7. With respect to Xitao, as discussed above, Momcozy completely ignores that it was its own *inaccurate* verified responses to Elvie's interrogatories that stymied Elvie's efforts to uncover Xitao's involvement. And Momcozy ignores the fact Elvie notified Momcozy nearly *6 months ago* that it intended to add the new patents and product lines. *See* Dkt. #101, Ex. C, November 29, 2023 J. Kim Email at p. 1-2. On February 20, Elvie asked Momcozy if it would stipulate to Elvie's amended counterclaims adding the Xitao entity and additional patents and products, given it was prior to the deadline to amend pleadings and add parties and it was a mere procedural issue. Even on the day Elvie filed its motion, Momcozy requested more time to consider the request even though the deadline was just days away. *See* Ex. G, March 1, 2024 J. Kim Email. Recognizing that Momcozy had no intention of compromising and instead was simply trying to delay proceedings further, Elvie had no other option but to file its Motion for Leave to Amend within the time scheduled by this Court and previously agreed to by Momcozy. Momcozy's claims of undue delay ring hollow.

## VI.   Conclusion

Momcozy does not oppose Elvie's motion as a substantive matter; it has no proper basis to do so. Instead, Momcozy conflates Elvie's request to amend its counterclaims with its own desires to delay this case by a year.[3]

For the foregoing reasons, and the reasons stated in Elvie's Opening Motion, Elvie respectfully requests that the Court grant its Motion for Leave to Amend Elvie's Counterclaims.

---

[3] Should the Court grant Momcozy's request to extend the case schedule by a year, Elvie requests leave to file a motion for Momcozy to post bond in order to secure all costs associated with the litigation and guarantee Elvie's ability to recoup those costs. *See Guangzhou Yucheng Trading Co., Ltd. v. DBest Prods., Inc.*, No. CV 21-4758 (C.D. Cal. Feb. 13, 2023).

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

1    DATED this 22nd day of March, 2024

2                                                  /s/Josephine Kim

3                                                  Nirav N. Desai (*pro hac vice*)
                                                   Josephine Kim (*pro hac vice*)
4                                                  Alexander Covington (*pro hac vice*)
                                                   Alex Alfano (*pro hac vice*)
5                                                  Joseph Kim (*pro hac vice*)
                                                   Paige Cloud (*pro hac vice*)
6                                                  Michael Webb (*pro hac vice*)
                                                   Richa Patel (*pro hac vice*)
7                                                  Zachary L. Jacobs (*pro hac vice*)
                                                   Christopher Coleman (*pro hac vice*)
8                                                  **STERNE, KESSLER, GOLDSTEIN & FOX PLLC**
                                                   1101 K St.NW
9                                                  Washington, DC 20005
                                                   Telephone: 202.371.2600
10                                                 Facsimile: 202.371.2540

11                                                 LOWE GRAHAM JONES PLLC

12

13                                                 Mark P. Walters, WSBA No. 30819
                                                   Mitchell D. West, WSBA No. 53103
14                                                 Walters@LoweGrahamJones.com
                                                   West@LoweGrahamJones.com
15                                                 1325 Fourth Avenue, Suite 1130
                                                   Seattle, Washington 98101
16                                                 T: 206.381.3300

17

18   I certify that this memorandum contains 1,892 words, in compliance with the Local Civil Rules.

19

20

21

22

23

24

25

26

27

28

ELVIE'S REPLY TO MOTION FOR LEAVE
TO AMEND COUNTERCLAIMS
No. 2:23-CV-00631-KKE – Page 7

LOWE GRAHAM JONES PLLC
1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

Exhibit A


# Federal Court

Showing **900** Patent cases; in W.D.Wash.; pending between 2004-03-22 and 2024-03-21.; sorted by most recent docket activity.

**Timing**



| Event | Cases Reaching Event | Median Days from Case Filing to Order |
|---|---|---|
| Temporary Restraining Order (Grant) | 1 | n/a |
| Temporary Restraining Order (Deny) | 2 | n/a |
| Preliminary Injunction (Grant) | 5 | n/a |
| Preliminary Injunction (Deny) | 17 | 140 |
| Permanent Injunction (Grant) | 47 | 328 |
| Claim Construction Hearing | 105 | 519 |

Exhibit B

THE HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHENZHEN ROOT TECHNOLOGY CO.,
LTD., HONG KONG LUTE TECHNOLOGY
CO., LIMITED, AND SHENZHEN
CONGLIN E-COMMERCE CO., LTD.,

Plaintiffs,

v.

CHIARO TECHNOLOGY, LTD.,

Defendant.

No. 2:23-cv-00631

PLAINTIFFS' RESPONSES TO
DEFENDANT'S FIRST SET OF
INTERROGATORIES

Plaintiffs Shenzhen Root Technology Co., Ltd., Hong Kong Lute Technology Co.,

Limited, and Shenzhen Conglin E-Commerce Co., Ltd. (collectively "Momcozy" or "Plaintiffs")

answer Defendant Chiaro Technology, Ltd.'s First Set of Interrogatories to Plaintiffs (Nos. 1-6)

("requests") as follows:

## OBJECTIONS TO DEFENDANT'S INSTRUCTIONS AND DEFINITIONS

1.      Plaintiffs object to Defendant's incorporation by reference of the definitions set

out in Defendant's Fist Set of Requests for Production (Nos. 1-7) to Plaintiffs.  Plaintiffs will

construe the language used in the requests as Plaintiffs understand them in ordinary English

usage.  However, to the extent Defendant's incorporation by reference of definitions and

instructions is deemed to be effective, Plaintiffs hereby likewise incorporate by reference their

PLAINTIFFS' RESPONSES TO DEFENDANT'S FIRST
SET OF INTERROGATORIES (120034335.2 0080937-00001) — 1

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

objections to those definitions set out in Plaintiffs' Response to Defendant's Fist Set of Requests for Production (Nos. 1-7) to Plaintiffs.

2.      Plaintiffs object to Defendant's direction of these requests jointly and simultaneously to three Plaintiffs.  Because each Plaintiff has participated in responding to these requests, these requests have been served on each Plaintiff pursuant to Fed. R. Civ. P. 33(a)(1).

3.      Plaintiffs object to the term "Accused Products." The only infringement dispute currently part of the above-captioned action is whether Plaintiffs' S12 Pro breast pump infringes U.S. Patent No. 11,357,893.  As such Plaintiffs understand "Accused Products" as referring to Plaintiffs' S12 Pro product.  Plaintiffs cannot anticipate what scope that term will have in responding or asserting objections in response to these requests.  To the extent Elvie contends that this definition changes the scope of the requests to include products other than the S12 Pro in the future, Plaintiffs reserve their right to respond within a reasonable time after any amendment to the pleadings, including the right to assert any new objections as to the revised scope of these requests in connection to any such response.

4.      Plaintiffs object to Defendant's instructions in the requests to the extent they exceed the requirements of Fed. R. Civ. P. 26 and/or 33 as well as to the extent the instructions exceed the requirements of the Court's local rules and standing orders.

5.      Plaintiffs object to providing documents or information subject to the attorney-client privilege and/or attorney work product immunity in response to these requests.

## ANSWERS TO INTERROGATORIES

### INTERROGATORY NO. 1:

> Identify each and every entity involved in the design, redesign, development, operation, manufacture, testing, marketing, distribution, sale, or importation into the United States of the Accused Products, including the Plaintiffs, Shenzhen Jinruihang Technology Co., Ltd., Shenzhen Root E-Commerce Co., Ltd., Hong Kong Dian Ying Industry Co. Ltd., Shenzhen TPH Technology Co., Ltd., Smartlin, Jinruixingkeji, Shenzhenshi Jin Huang Ju Neng ke ji you xian gong si, and Shenzhen Xitao Network Technology Co., Ltd., and describe in detail the function and role of each such entity, including its involvement with respect to the Accused Products.

PLAINTIFFS' RESPONSES TO DEFENDANT'S FIRST
SET OF INTERROGATORIES (120034335.2 0080937-00001) — 2

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

**ANSWER:**

Plaintiffs incorporate by reference their Objections to Defendant's Instructions and Definitions as subsumed within this discovery request.

Plaintiffs object with respect to the phrase "Accused Products" as used in this request, including for the same reasons set out in the definitions section.  The only infringement dispute currently part of the above-captioned action is whether Plaintiffs' S12 Pro breast pump infringes U.S. Patent No. 11,357,893.  As such Plaintiffs understand "Accused Products" as referring to Plaintiffs' S12 Pro product.  To the extent Elvie contends that this definition changes the scope of the requests to include products other than the S12 Pro in the future, Plaintiffs reserve their right to respond within a reasonable time after any amendment to the pleadings, including the right to assert any new objections as to the revised scope of these requests in connection to any such response.

Plaintiffs further object to this interrogatory as compound insofar as it contains multiple distinct subparts that should be counted as separate interrogatories toward the 25-interrogatory limit pursuant to Fed. R. Civ. P. 33(a)(1).

Plaintiffs object as vague and ambiguous with respect to the term "redesign" as applied to the S12 Pro product.

Plaintiffs object as overbroad, unduly burdensome, irrelevant, and disproportionate to the needs of this case to the extent it seeks identification of or a description of roles of entities outside the United States with no substantial role in any acts potentially subject to legal liability in this action and with no immediate connection to any disputed issue.  Plaintiffs further object as overbroad, unduly burdensome, irrelevant, and disproportionate to the needs of this case to the extent it seeks information about entities involved in actions relating to products not imported into the United States.

Plaintiffs object as assuming facts not in evidence to the extent the phrasing of this request rests on an assumption that each of the following represent the legal name of an entity involved with the S12 Pro products: "Shenzhen Jinruihang Technology Co., Ltd., Shenzhen Root

PLAINTIFFS' RESPONSES TO DEFENDANT'S FIRST
SET OF INTERROGATORIES (120034335.2 0080937-00001) — 3

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

E-Commerce Co., Ltd., Hong Kong Dian Ying Industry Co.  Ltd., Shenzhen TPH Technology Co., Ltd., Smartlin, Jinruixingkeji, Shenzhenshi Jin Huang Ju Neng ke ji you xian gong si, and Shenzhen Xitao Network Technology Co., Ltd."

Without waiving and subject to the foregoing objections and limitations, Plaintiffs respond as follows:

The entities known to Plaintiffs to be responsible for the design, development, operation, manufacture, testing, marketing, distribution, sale, and importation into the United States of those S12 Pro products imported into the United States are Plaintiffs Shenzhen Root Technology Co., Ltd., Hong Kong Lute Technology Co., Limited, Shenzhen Conglin E-Commerce Co., Ltd., Shenzhen Lute Jiacheng Supplychain Co., Ltd, and Shenzhen Jinruihang Technology Co., Ltd. In addition, Plaintiffs will identify the manufacturer of the S12 Pro products upon entry of a suitable protective order in this action.

Shenzhen Root Technology Co., Ltd. is responsible for the design, development, operation, manufacture, testing, marketing, distribution, sale, and importation into the United States of those S12 Pro products imported into the United States, either directly or through its subsidiaries.

Shenzhen Lute Jiacheng Supplychain Co., Ltd., a subsidiary of Shenzhen Root Technology Co., Ltd., is responsible for purchasing S12 Pro from Shenzhen Root Technology Co., Ltd.'s manufacturers and then shipping them to Hong Kong.

Hong Kong Lute Technology Co., Limited participated in the distribution and importation into the United States of the S12 Pro products.  Specifically, Hong Kong Lute Technology Co., Limited took possession of S12 Pro products, including in Hong Kong, and caused those products to be imported into the United States.

Shenzhen Conglin E-Commerce Co., Ltd. was involved in the distribution, marketing and sales of S12 Pro products, including sale of those products in the United States via Amazon.com after their importation into the United States.  More specifically, Shenzhen Conglin E-Commerce Co., Ltd. marketed and sold the S12 Pro products via listings with Amazon.com, Inc.  In

PLAINTIFFS' RESPONSES TO DEFENDANT'S FIRST
SET OF INTERROGATORIES (120034335.2 0080937-00001) — 4

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

addition, once Shenzhen Conglin E-Commerce Co., Ltd. created listings with Amazon.com, Inc. for the S12 Pro products and ASIN numbers were generated for those listings, other sellers may have also sold S12 Pro products through those same ASIN numbers and listings, as and to the extent permitted by Amazon.com, Inc.  Smartlin is not the name of a separate entity, but is the name of an Amazon.com account registered by Shenzhen Conglin E-Commerce Co., Ltd.

Shenzhen Jinruihang Technology Co., Ltd. is a post-importation distributor through Amazon.com of the S12 Pro products.   Jinruixingkeji is not the name of a separate entity, but the name of an Amazon.com account registered by Shenzhen Jinruihang Technology Co., Ltd.

The following entity names listed in Elvie's interrogatory above have no connection to the S12 Pro products at issue in this action, to the best of Plaintiffs' knowledge:  Shenzhen Xitao Network Technology Co., Ltd., Shenzhenshi, Jin Huang Ju Neng ke ji you xian gong si; and Hong Kong Dian Ying Industry Co. Ltd.  Shenzhen TPH Technology Co., Ltd. is the manufacturer of the Momcozy S12, with no known connection to the S12 Pro products at issue in this action.

In addition to the narrative response above, Plaintiffs will produce non-privileged documents in their possession, custody, or control pursuant to Fed. R. Civ. P. 33(d) showing entities involved in the design, development, operation, manufacture, testing, marketing, distribution, sale, or importation into the United States of the S12 Pro products and the role of those entities with respect to the S12 Pro Products imported into the United States, to the extent such documents are located after a reasonable search.  Plaintiffs will identify those documents, by identification numbers, after substantial completion of document production.   Production of documents will be on a rolling basis beginning after entry of a suitable protective order.

**INTERROGATORY NO. 2:**

Describe in detail the nature of the relationship between each of the entities identified in response to Interrogatory No. 1, including any parent, subsidiary, partnership, or joint venture relationship, and identify by Bates number the documents showing such relationship.

PLAINTIFFS' RESPONSES TO DEFENDANT'S FIRST
SET OF INTERROGATORIES (120034335.2 0080937-00001) — 5

**STOEL RIVES** LLP
**ATTORNEYS**
**600 University Street, Suite 3600, Seattle, WA  98101**
*Telephone 206.624.0900*

**ANSWER:**

Plaintiffs incorporate by reference their Objections to Defendant's Instructions and Definitions as subsumed within this discovery request.  Plaintiffs object to the definition of the scope of this request based on Plaintiffs' response to Interrogatory No. 1 in this request and incorporate by reference their objections to Interrogatory No. 1 above to the extent the scope of Interrogatory No. 1 is deemed to be incorporated by reference into this interrogatory.

Plaintiffs object as overbroad, unduly burdensome, irrelevant, and disproportionate to the needs of this case to the extent it seeks a detailed description of relationships among entities outside the United States with no substantial role in any acts potentially subject to legal liability in this action and with no immediate connection to any disputed issue.  Plaintiffs further object as overbroad, unduly burdensome, irrelevant, and disproportionate to the needs of this case to the extent it seeks information about entities involved in actions relating to products not imported into the United States.

Plaintiffs further object to this interrogatory as compound insofar as it contains multiple distinct subparts that should be counted as separate interrogatories toward the 25-interrogatory limit pursuant to Fed. R. Civ. P. 33(a)(1).

Without waiving and subject to the foregoing objections and limitations, Plaintiffs respond as follows:

Shenzhen Root Technology Co., Ltd. is a parent of Shenzhen Conglin E-Commerce Co., Ltd., which is owned in trust for the benefit of and is controlled by Shenzhen Root Technology Co., Ltd.  Shenzhen Root Technology Co., Ltd. is also a parent of Hong Kong Lute Technology Co., Limited.  Shenzhen Root Technology Co., Ltd. is also a parent of Shenzhen Lute Jiacheng Supplychain Co., Ltd.  Shenzhen Root Technology Co., Ltd. is also a parent of Shenzhen Jinruihang Technology Co., Ltd.  All shares of Shenzhen Jinruihang Technology Co., Ltd.  are owned by Tao Jin on behalf of and for the benefit of Shenzhen Root Technology Co., Ltd.  Shenzhen Root Technology Co., Ltd. is itself a subsidiary of Shenzhen Lute Jiacheng Investment Holding Co., Ltd., which owns a majority of the stock of Shenzhen Root Technology Co., Ltd..

PLAINTIFFS' RESPONSES TO DEFENDANT'S FIRST
SET OF INTERROGATORIES (120034335.2 0080937-00001) — 6

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

Hong Kong Lute Technology Co., Limited is a subsidiary of Shenzhen Root Technology Co., Ltd.

Shenzhen Lute Jiacheng Supplychain Co., Ltd. is a subsidiary of Shenzhen Root Technology Co., Ltd.

Shenzhen Jinruihang Technology Co., Ltd. is a subsidiary of Shenzhen Root Technology Co., Ltd.

Shenzhen Conglin E-Commerce Co., Ltd. is a subsidiary of, is owned in trust for the benefit of, and is controlled by Shenzhen Root Technology Co., Ltd.

The manufacturer of the S12 Pro products, which will be identified in response to Interrogatory No. 1 upon entry of a suitable protective order, is not involved in any parent, subsidiary, partnership, or joint venture relationship with any Plaintiff.

Shenzhen TPH Technology Co., Ltd., the designer and manufacturer of the S12 products, not currently at issue in this case, has no involvement in the manufacture of the S12 Pro products currently at issue in this case.  Plaintiffs have no parent, subsidiary, partnership or joint venture relationship with Shenzhen TPH Technology Co., Ltd., or with other sellers of the S12 products, including Shenzhen Yinyi Electronic Technology Co., Ltd. (trading as "TSRETE"), minquanxianzhiyueshangmaoyouxiangongsi (trading as "TSRETE"), Wenchangshimenghuanxueshangmaoyouxiangongsi (trading as "TSRETE"), Guangzhouchengfengdianzishangwuyouxiangongsi (trading as "TSRETE"), chengduwengaogenengyuankejiyouxiangongsi (trading as "TSRETE"), Chengdu baitiyangjiaju youxiangongsi (trading as "TSRETE"), Guangzhou Peitong Technology Co., Ltd (trading as "kmaier"), guang zhou wei chen ke ji you xian gong si (trading as "kmaier"), Shenzhen Hengkang Sheng Wu Ke Ji You Xian Gong Si (trading as "Healcan"), Beijinghaotianwangkejiyouxiangongsi (trading as "Mumeasy"), Dahneth Global Inc (trading as "kamsie"), yiwushiyuhahaguojihuoyundailiyouxiangongsi (trading as "MyMom"), Shenzhentianfutiankejiyouxiangongsi (trading as "Nuliie"), huizhoushitailedianzishangwuyouxiangongsi (trading as "eulumap"),

PLAINTIFFS' RESPONSES TO DEFENDANT'S FIRST
SET OF INTERROGATORIES (120034335.2 0080937-00001) — 7

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

Changshashiyuhuaqusongronghuwaiyongpindian (trading as "Fisroa"),

shenzhenshiduduxiongkejiyouxiangongsi (trading as "VOZRO"), Shenzhen Duoguo Technology

Co., Ltd (trading as "Hywestger"), xinhuaquantongdianzikejiyouxiangongsi (trading as

"KotiSIG"), and fuzhouningmaokejiyouxiangongsi (trading as "Goldeep").

    Plaintiffs will supplement its response to this interrogatory to identify by identification

number documents otherwise produced by Plaintiffs, if any, showing the relationships identified

above, after substantial completion of document production.

**INTERROGATORY NO. 3:**

> For each of the entities identified in response to Interrogatory No. 1, identify and
> describe in detail:  the principal place of business, the country's laws under which
> the entity is organized, the Unified Social Credit Code (USCC) if applicable, and
> the name of the Executive Director or Chief Executive Officer, and identify by
> Bates number the documents showing such information.

    **ANSWER:**

    Plaintiffs incorporate by reference their Objections to Defendant's Instructions and

Definitions as subsumed within this discovery request.  Plaintiffs object to the definition of the

scope of this request based on Plaintiffs' response to Interrogatory No. 1 in this request and

incorporate by reference their objections to Interrogatory No. 1 above to the extent the scope of

Interrogatory No. 1 is deemed to be incorporated by reference into this interrogatory.  Plaintiffs

object as overbroad, unduly burdensome, irrelevant, and disproportionate to the needs of this

case to the extent it seeks additional detailed identifying information regarding entities outside

the United States with no substantial role in any act potentially subject to legal liability in this

action and with no immediate connection to any disputed issue.  Plaintiffs further object as

overbroad, unduly burdensome, irrelevant, and disproportionate to the needs of this case to the

extent it seeks information about entities involved in actions relating to products not imported

into the United States.  Plaintiffs further object to this interrogatory as compound insofar as it

contains multiple distinct subparts that should be counted as separate interrogatories toward the

25-interrogatory limit pursuant to Fed. R. Civ. P. 33(a)(1).

PLAINTIFFS' RESPONSES TO DEFENDANT'S FIRST
SET OF INTERROGATORIES (120034335.2 0080937-00001) — 8

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

Without waiving and subject to the foregoing objections and limitations, Plaintiffs respond as follows:

Shenzhen Root Technology Co., Ltd. is organized under the laws of the People's Republic of China and has its principal place of business at Shenzhou Computer Building, Curie Madame Avenue, Longgang District, Shenzhen, China.  The Chief Executive Officer/Executive Director of Shenzhen Root Technology Co., Ltd. is Pan Silin.  Its Unified Social Credit Code (USCC) is 91440300MA5FX6EH4G.

Hong Kong Lute Technology Co., Limited is organized under the laws of the Hong Kong and has its principal place of business at Room 02, 21F Shek Kwan Commercial Building, 38 Bi Street, Yau Ma Tei, Kowloon, Hong Kong.  Its Chief Executive Officer/Executive Director is Pan Junyu and its Tax ID is  73206481-000-07-22-A.

Shenzhen Conglin E-Commerce Co., Ltd. is organized under the laws of the People's Republic of China and has its principal place of business at 21F, Jinzhonghuan International Business Building, No. 3037, Jintian Road, Fu'an Community, Futian Street, Futian District, Shenzhen, China.  Its legal representative (executive director) is Gong Shaocong and its Unified Social Credit Code (USCC) is 91440300MA5H3EYN0R.

Shenzhen Lute Jiacheng Supplychain Co., Ltd. is organized under the laws of the People's Republic of China and has its principal place of business at 2F2-204, Shenzhou Computer Building, Madame Curie Avenue, Bantian Street, Longgang District, Shenzhen, China.  Its Chief Executive Officer/Executive Director is Pan Silin, and its Uniform Social Credit Code (USCC) is 91440300MA5H2AX26D.

Shenzhen Jinruihang Technology Co., Ltd. is organized under the laws of the People's Republic of China and has its principal place of business at Room 204, Building 59, Vanke Donghai'an, No. 216 Huanbi Road, Donghai'an Community, Meisha Street, Yantian District, Shenzhen, China.  Its Uniform Social Credit Code (USCC) is 91440300MA5GKP331A, and the legal representative (executive director) is Tao Jin.

PLAINTIFFS' RESPONSES TO DEFENDANT'S FIRST
SET OF INTERROGATORIES (120034335.2 0080937-00001) — 9

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

In addition, Plaintiffs will supplement this response to provide additional information regarding the manufacturer of the S12 Pro products upon entry of a suitable protective order in this action.

Plaintiffs will supplement its response to this interrogatory to identify by identification number documents otherwise produced by Plaintiffs, if any, showing these facts about the entities identified above, after substantial completion of document production.

**INTERROGATORY NO. 4:**

> Identify by name, model number, and any other identifying indicia any "Momcozy" products that use or include wearable breast pumps and, for each product, identify the individuals and entities involved in or responsible for its design, redesign, development, operation, manufacture, testing, marketing, distribution, sale, or importation into the United States.

**ANSWER:**

Plaintiffs incorporate by reference their Objections to Defendant's Instructions and Definitions as subsumed within this discovery request. Plaintiffs further object to this interrogatory as compound insofar as it contains multiple distinct subparts that should be counted as separate interrogatories toward the 25-interrogatory limit pursuant to Fed. R. Civ. P. 33(a)(1).

As to the first portion of this request, seeking identification of Plaintiffs' products "that use or include wearable breast pumps," Plaintiffs object as vague and ambiguous and as calling for a *Markman* legal conclusion as to what constitutes a "*wearable*" breast pump. Plaintiffs further object to this subpart of this interrogatory as overly broad, unduly burdensome, irrelevant, and disproportionate to the needs of this case, including because the language of this request differs from the claim language of the asserted patent. Plaintiffs also object to this portion of the request to the extent it can be construed to seek information regarding products not imported into the United States.

As to second subpart of this request, seeking information about the identity of any individuals and entities performing certain actions with respect to the products listed, if any, in response to the first subpart of this request, Plaintiffs object as overly broad, unduly burdensome,

PLAINTIFFS' RESPONSES TO DEFENDANT'S FIRST
SET OF INTERROGATORIES (120034335.2 0080937-00001) — 10

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

irrelevant, and disproportionate to the needs of this case to the extent it seeks information about *every* such individual and entity and to the extent it seeks any such information as to any products other than the S12 Pro products.  Plaintiffs further object as vague and ambiguous with respect to the term "redesign" as applied to the S12 Pro products.

Without waiving and subject to the foregoing objections and limitations, Plaintiffs respond as follows:

Plaintiffs will produce non-privileged documents pursuant to Fed. R. Civ. P. 33(d) showing the breast pumps they have imported into the United States, such that Defendant can draw its own legal conclusion as to which, if any, constitute "wearable" breast pumps.

Plaintiffs will also produce non-privileged documents pursuant to Fed. R. Civ. P. 33(d) showing the individuals and entities primarily responsible for design, development, operation, manufacture, testing, marketing, distribution, sale, or importation into the United States of the S12 Pro products, the only products currently at issue in this action, to the extent such documents exist in Plaintiffs' possession, custody, or control and can be found after a reasonable search.

Plaintiffs will identify those documents, by identification numbers, after substantial completion of document production.   Production of documents will be on a rolling basis beginning after entry of a suitable protective order.

**INTERROGATORY NO. 5:**

> Describe in detail the chain of custody of the Accused Products from the point of manufacture to final distribution to the Amazon.com customer in the United States, including identifying all entities involved in each step and their role, and identify by Bates number the documents showing such information.

**ANSWER:**

Plaintiffs incorporate by reference their Objections to Defendant's Instructions and Definitions as subsumed within this discovery request.  Plaintiffs object with respect to the phrase "Accused Products" as used in this request, including for the same reasons set out in the definitions section.  The only issue infringement dispute currently in the above-captioned action is whether Plaintiffs' S12 Pro breast pump infringes any valid claim of Defendant's U.S. Patent

PLAINTIFFS' RESPONSES TO DEFENDANT'S FIRST
SET OF INTERROGATORIES (120034335.2 0080937-00001) — 11

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

No. 11,357,893.  To the extent Elvie contends that this definition changes the scope of the requests to include products other than the S12 Pro, Plaintiffs reserve their right to respond within a reasonable time after any such amendment to the pleadings, and specifically reserve the right to assert any new objections as to the revised scope of these requests.

Plaintiffs further object to this interrogatory as compound insofar as it contains multiple distinct subparts that should be counted as separate interrogatories toward the 25-interrogatory limit pursuant to Fed. R. Civ. P. 33(a)(1).

Plaintiffs object as overbroad, unduly burdensome, irrelevant, and disproportionate to the needs of this case to the extent it seeks information regarding pre-importation shipment, storage, or other transactions involving products imported into the United States and to the extent it seeks chain of custody information for every unit of S12 Pro products imported into the United States.

Without waiving and subject to the foregoing objections and limitations, Plaintiffs respond as follows:

Plaintiffs will produce non-privileged documents in their possession, custody, or control pursuant to Fed. R. Civ. P. 33(d) showing the chain of custody of exemplary S12 Pro breast pumps imported into the United States, to the extent documents showing such chain of custody are available in Plaintiffs' possession, custody, or control and are located after a reasonable search.  Plaintiffs will identify those documents, by identification numbers, after substantial completion of document production.   Production of documents will be on a rolling basis beginning after entry of a suitable protective order.

**INTERROGATORY NO. 6:**

> Identify in detail all factual bases for Your contention that You do not willfully infringe any Patents-in-Suit, including, but not limited to, whether Plaintiffs will rely on any opinion of counsel, whether written or oral, to rebut Elvie's willful infringement contention, the identity of each such opinion (including, but not limited to, by the date, author(s), addressee(s), recipient(s), and type), and whether and why Plaintiffs redesigned and continued to sell its breast pump products after receiving Elvie's Cease and Desist letter in June 2022 (see Amended Complaint at ¶ 23).

PLAINTIFFS' RESPONSES TO DEFENDANT'S FIRST
SET OF INTERROGATORIES (120034335.2 0080937-00001) — 12

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

**ANSWER:**

Plaintiffs incorporate by reference their Objections to Defendant's Instructions and Definitions as subsumed within this discovery request. Plaintiffs object to this request to the extent it seeks information subject to the attorney-client privilege and/or attorney work product immunity. Plaintiffs object to the term "Patents-in-Suit" as used in this request and/or with respect to the definition purportedly incorporated by reference in these requests. The only issue of infringement of any patent currently at issue in the above-captioned action is whether Plaintiffs' S12 Pro breast pump infringes any valid claim of Defendant's U.S. Patent No. 11,357,893. To the extent Elvie contends that this definition changes the scope of the requests in the future, Plaintiffs reserve their right to respond within a reasonable time after any such amendment to the pleadings, and specifically reserve the right to assert any new objections as to the revised scope of these requests.

Plaintiffs further object to the undefined term "breast pump products" as used in this request to the extent it involves products other than the S12 Pro products, as vague and ambiguous, overbroad, unduly burdensome, irrelevant, and disproportionate to the needs of this case.

Plaintiffs object to this request as premature and violative of Local Patent Rule 112(d). Plaintiffs will respond to this interrogatory according to the deadline to disclose opinions of counsel and related documents pursuant to Local Patent Rule 140.

Without waiving and subject to the foregoing objections and limitations, Plaintiffs respond as follows:

Plaintiffs responded to Elvie's cease and desist letter in at least two communications setting out Plaintiffs' non-infringement positions as to the Patent-in-Suit. Plaintiffs incorporate the substance of those letters, which will be identified by production number after they are produced, into its response to this interrogatory response. Elvie never responded to those letters with any detailed infringement analysis as to the S12 Pro products at issue in this action, and even in the prior APEX proceeding never provided (and still has not provided) any detailed

PLAINTIFFS' RESPONSES TO DEFENDANT'S FIRST
SET OF INTERROGATORIES (120034335.2 0080937-00001) — 13

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

claim chart refuting those positions or identifying how the S12 Pro product accused in this action purportedly infringes any claim of the Patent-in-Suit.  For at least these reasons, Plaintiffs did not and do not have any reason to believe the S12 Pro products infringe any claim of the Patent-in-Suit, and instead believe in good faith that the S12 Pro products at issue in this case are non-infringing and that Plaintiffs remain free to use, import, offer for sale, and sell those products in the United States.

DATED:  August 7, 2023

STOEL RIVES LLP

/s/ Brian C. Park
Brian C. Park, Bar No. 25584
brian.park@stoel.com
Jacqueline Middleton, Bar No. 52636
jacqueline.middleton@stoel.com
Stoel Rives LLP
600 University Street, Suite 3600
Seattle, WA  98101
Telephone:  206.386.7542
Facsimile:  206.386.7500

Qianwu Yang (*pro hac vice*)
Xiaomin Cao (*pro hac vice*)
SHM LAW FIRM
25 F, China Resources Tower,
2666 Keyuan South Rd., Nanshan
Shenzhen, China 518052
Tel.: +86 139 2521 2009
Fax: +86 755 8326 6693
yang@shm.law
cao.xiaomin@shm.law

Attorneys for Plaintiffs

PLAINTIFFS' RESPONSES TO DEFENDANT'S FIRST
SET OF INTERROGATORIES (120034335.2 0080937-00001) — 14

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1

2

## <u>CERTIFICATE OF SERVICE</u>

3        I hereby certify that I served the foregoing on the following named person(s) on the date

4   indicated below via email.

5

| | |
|---|---|
| Eric R Chad<br>MERCHANT & GOULD (MN)<br>150 S Fifth Street, Suite 2200<br>Minneapolis, MN 55402<br>Telephone: 612.332.5300<br>Email: echad@merchantgould.com<br><br>Joshua A Hartman<br>MERCHANT & GOULD (VA)<br>1900 Duke Street, Suite 600<br>Alexandria, VA 22314<br>Telephone: 703.684.2500<br>Email: jhartman@merchnatgould.com | Josephine Kim<br>Nirav Desai<br>Richa Patel<br>STERNE KESSLER GOLDSTEIN & FOX PLLC<br>1100 New York Avenue, NW, Suite 600<br>Washington, DC 20005<br>Telephone: 202.772.8904<br>Email: joskim@sternekessler.com<br>        ndesai@sternekessler.com<br>        rpatel@sternekessler.com |
| Paul T. Meiklejohn<br>Erin Kolter<br>Dorsey & Whitney LLP<br>701 Fifth Avenue, Suite 6100<br>Seattle, WA 98104-7043<br>Telephone: 206.903.8746<br>Email: meiklejohn.paul@dorsey.com<br>        kolter.erin@dorsey.com | Mark P Walters<br>Mitchell D West<br>LOWE GRAHAM JONES PLLC<br>1325 Fourth Avenue, Suite 1130<br>Seattle, WA 98101<br>Telephone: 206.850.8088<br>Email: walters@lowegrahamjones.com<br>        west@lowegrahamjones.com |

16

17        DATED:  August 7, 2023.

18

19                                */s/ Brian C. Park*

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE - 1

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

## VERIFICATION

I, Pan Silin, am the founder and chief executive officer of Shenzhen Root Technology Co., Ltd., a party to this action. I am authorized to make this verification for and on Plaintiffs' behalf. I have read the foregoing document entitled Plaintiffs' Responses to Defendant's First Set of Interrogatories and am informed and believe, and on that ground allege, that the factual matters stated in the responses are true and correct to the best of my knowledge.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed at _____*Shenzhen*_____ on August _7_, 2023.

_____*Pan silin*_____
Pan Silin

VERIFICATION — 1

Exhibit C

| | |
|---|---|
| **From:** | Josephine Kim |
| **Sent:** | Wednesday, January 24, 2024 1:05 AM |
| **To:** | YANG Qianwu |
| **Cc:** | kolter.erin@dorsey.com; Paul T. Meiklejohn; Nirav N. Desai; Joseph H. Kim; walters@lowegrahamjones.com; Hansen.Connor@dorsey.com; ELVIE-MOMCOZY-DJ |
| **Subject:** | RE: ESI Protocol/Protective Order |

Dear Wu:

We appreciate the updated response to Interrogatory No. 1 with information about Shenzhen Xitao Network Technology Co., Ltd.'s involvement with the Accused Products. However, we still have outstanding concerns about Plaintiffs' explanation and discovery responses.

First, we have reason to doubt that the Xitao sales information about the S12 Pro was accurate. In particular, you noted that this "oversight" was due in part to the "almost negligible" cumulative sales ($67.98) of the S12 Pro through Xitao. But the Xitao Alibaba webpage only offers Momcozy products, including the S12 Pro, in bulk. For the S12 Pro, the minimum order quantity is 20 units at $45.34 per unit, or $906.80 total as of 1/23/24. Thus, a cumulative sales figure of $67.98 (which is around one device) seems impossible. The negligible S12 Pro sales also appears inconsistent with the S12 Pro's ranking as the "#8 Most popular in Electric Breast Pumps" on Alibaba. *See* S12 Pro listing. Please advise whether any of our information is incorrect or otherwise explain how such small sales occurred through Xitao's Alibaba online storefront.

Second, Plaintiffs' interrogatory response to date was not only incorrect but was improperly limited to the sales of the S12 Pro, rather than covering all the Accused Products (S12, S9 Pro, S9, M1, and M5 products), which have been asserted in this case since August 14, 2023. As noted in Elvie's December 21, 2023 letter, Momcozy has improperly limited its interrogatory responses to just the S12 Pro product and has failed to supplement its responses as required by the Federal Rules. *See* FRCP 26(e). We have not received a response to this or any other issue raised in Elvie's December 21, 2023 letter. Please advise when Plaintiffs plan to respond to Elvie's letter and when Plaintiffs will supplement their numerous deficient discovery responses.

Regards,
Josephine

---

**Josephine Kim**
Director
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** joskim@sternekessler.com
**Direct:** 202.772.8896

# Exhibit D

1    STERNE, KESSLER, GOLDSTEIN & FOX PLLC

2    Nirav N. Desai (*pro hac vice*)
Josephine Kim (*pro hac vice*)

3    Richa Patel (*pro hac vice*)
1100 New York Avenue N.W.

4    Washington, D.C. 20005
Telephone: 202.371.2600

5    Facsimile: 202.371.2540

6    Email: ndesai@sternekessler.com
Email: joskim@sternekessler.com

7    Email: rpatel@sternekessler.com

8    *Attorneys for Defendant Chiaro Technology, Ltd.*

9    UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

10    AT SEATTLE

11

12    SHENZHEN ROOT TECHNOLOGY CO., LTD.,
HONG KONG LUTE TECHNOLOGY, CO., LTD,

13    AND SHENZHEN CONGLIN E-COMMERCE
CO., LTD

    Case No. 2:23-cv-631

    Honorable: John H. Chun

14    Plaintiff,

15    v.

16    CHIARO TECHNOLOGY Ltd.,

17    Defendant.

18

19    **DEFENDANT'S FIRST SET OF REQUESTS FOR PRODUCTION**

20    **AND INSPECTION TO PLAINTIFF (NOS. 1-7)**

21        Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Chiaro Technology

22    Ltd., Inc., d/b/a Elvie respectfully requests that Plaintiffs Shenzhen Root Technology Co., Ltd.,

23    Hong Kong Lute Technology Co., Ltd., and Shenzhen Conglin E-Commerce Co., Ltd.

24    ("Plaintiffs") produce, permit inspection and copying (with convenient access to duplicating

25    equipment), or otherwise cause to be produced, each of the following documents and things within

26

27    the possession, custody, or control of Plaintiff. Production shall be made at the offices of Sterne,

28

Kessler, Goldstein & Fox, 1100 New York Avenue NW, Washington, D.C. 20005, or at such other place(s) as counsel may agree upon, within thirty (30) days of service hereof. These Requests for Production ("Requests") are continuing in nature and shall be timely supplemented in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

## **DEFINITIONS**

The following definitions apply to the Requests set forth below:

The terms "You," "Your," and "Plaintiffs" shall refer to Plaintiff Shenzhen Root Technology Co., Ltd., Hong Kong Lute Technology, Co., Ltd., and Shenzhen Conglin E-Commerce Co., Ltd. and any of their predecessors, domestic or foreign divisions, departments, subsidiaries, parents, Affiliates, and other legal Entities that are wholly or partially owned or controlled by Plaintiff, either directly or indirectly, and each of their respective present or former directors, officers, employees, partners, agents, consultants, experts, representatives, and attorneys, as well as all other individuals in the employ of or otherwise acting on behalf of Plaintiffs.

The term "Affiliate(s)" shall refer to any past or current parents or subsidiaries as well as any past or current corporations, business Entities, trusts, or commonly-owned corporations, as well as any other Entity owning, owned by, controlling, controlled by, or under common control or ownership of an Entity (whether legally, beneficially, by agreement or through stock ownership or other equity interest, directly or indirectly) and their permitted successors and assigns. For clarity, a corporation or other business Entity is only an "Affiliate" during such time that it directly or indirectly controls, is controlled by, or is under common control with a given Entity.

The term "Defendant" or "Elvie" shall refer to Defendant Chiaro Technology Ltd., Inc., d/b/a Elvie, and any of their predecessors, domestic or foreign divisions, departments, subsidiaries,

2

parents, Affiliates, and other legal Entities that are wholly or partially owned or controlled by Defendant, either directly or indirectly, and each of their respective present or former directors, officers, employees, partners, agents, consultants, experts, representatives, and attorneys, as well as all other individuals in the employ of or otherwise acting on behalf of Defendant.

The term "Third Party" or "Third Parties" means any Person or Entity other than Plaintiff or Defendant.

The term "Person" shall mean any natural person or group of natural persons.

The terms "Entity" or "Entities" shall mean any firm, association, organization, partnership, business, trust, corporation, proprietorship, scientific or academic establishment, governmental agency, or organizational unit thereof, including U.S. and foreign.

The term "Complaint" means the Complaint filed by Plaintiff in this action against Defendant, the Amended Complaint filed by Plaintiff against Defendant in this action, and any future amended or joined complaints.

The term "Patents-in-Suit" shall mean United States Patent Nos. 11,357,893 ("the '893 Patent"), and any other Patent that Defendant asserts in this action, including in any Answer and Counterclaims.

The term "Related Patent" includes (i) any patent that, in whole or in part, claims priority to, or the benefit of the filing date of, any patent-in-suit, including any child, continuation, continuation-in-part, continuing prosecution, divisional, reissue, reexamination, substitution, or extension thereof, (ii) any patent from which any patent-in-suit claims the benefit of priority or otherwise claims the benefit of the filing date thereof, including any and all parent patents of any patent-in-suit, and (iii) any patent that claims the benefit of priority or otherwise claims the benefit of the filing date of any patent described in (ii).

3

The term "Accused Product(s)" means any products that Defendant alleges infringe the Patents-in-Suit, including the S12 and S12 Pro, as well as any other products which may be accused of infringement in this action.

The term "Prior Art" encompasses the Patent, printed publications, patent applications, samples, products, articles, previous inventions, previous knowledge, previous uses, previous sales, or previous offers to sell encompassed by any of the categories set forth in 35 U.S.C. §§ 102 and 103 or falling under obvious-type double patenting, that relate to the subject matter of one or more of the Patents-in-Suit, even if Plaintiffs contend that they do not anticipate or render obvious the inventions claimed in the Patents-in-Suit.

The phrase "subject matter," when used in relation to a patent, means all products, processes, services, technology, implementation, uses, and other matter covered by one or more claims of that patent.

The terms "infringe," "infringed," and "infringement" mean direct infringement, contributory infringement, inducement of infringement, literal infringement, and infringement under the doctrine of equivalents. *See* 35 U.S.C. § 271.

The term "Document" is defined broadly to be given the full scope of that term contemplated in the Federal Rules of Civil Procedure, and the Federal Rules of Evidence, and includes all non-identical copies of a document, all drafts of final documents, all other written, typed, printed, recorded, or graphically portrayed matter in any form or embodiment, and all other data compilations from which information can be obtained and translated if necessary, that are or have been in Your actual or constructive custody or control, regardless of the medium on which they are produced, reproduced, or stored (including computer programs and files containing any requested information), and any recording or writing, as these terms are defined in Federal Rule of Evidence

4

1001. Any document bearing marks, including initials, stamped initials, comments, or notations not part of the original text or photographic reproduction thereof, is a separate document.

The term "Thing(s)" shall be construed under the broadest possible construction under the Federal Rules of Civil Procedure.

The term "United States" shall be interpreted as the fifty states, the District of Columbia, and Puerto Rico.

The terms "relate to," "related to," or "relating to" shall mean, in whole or in part, constituting, containing, embodying, reflecting, describing, analyzing, identifying, mentioning, stating, referring directly or indirectly to, dealing with, or in any way pertaining to.

The term "describe," when used in relation to an act, event, instance, occasion, transaction, conversation, or Communication, shall mean: (1) to state the date and place thereof; (2) to identify the individual participants; (3) to summarize separately for each individual participant what s/he said or did; and (4) to identify each Document used or prepared in connection therewith or making any reference thereto.

The term "identify," when used with respect to a Person, shall mean to state the Person's full name, present or last known address, the occupation or business in which the Person is engaged, and the Person's present or last-known employer and title or position.

The term "identify," when used with respect to a Document, means to state, to the extent known, the (1) type of Document, (2) subject matter, (3) date of the Document, (4) author(s), addressee(s), recipient(s), and (5) Bates number.

The term "identify," when used with respect to a Communication, shall mean to state, to the extent known, the (i) means of Communication (e.g., telephone call, meeting, etc.), (ii) date of the

Communication, (iii) subject matter of the Communication, and (iv) originator, recipient, and any other party to the Communication.

The term "identify," when used with respect to a product, shall mean to state, to the extent known, the product or component name, including cross-references to all trade names and designations, internal names, and names used during development, product or part numbers, item numbers, revisions, trademarks, SKU numbers, date coding, site codes, and manufacturing line codes associated with each such product, and to describe in detail all means for interpreting those identifying descriptions.

The terms "use" and "using" shall include without limitation use in testing, use in demonstrating, and use in training.

The term "Communication(s)" shall mean all written, electronic, oral, telephonic, fax, or other inquiries, dialogues, conversations, interviews, correspondence, consultations, negotiations, agreements, understandings, meetings, letters, notes, telegrams, advertisements, computer mail, email, and all other Documents evidencing any verbal or nonverbal interaction between Persons and/or Entities.

The term "date" shall mean the exact day, month, year, if ascertainable, or, if not, the best approximation thereof.

## INSTRUCTIONS

The following instructions shall apply to these Requests:

1.      You are to provide full and complete responses to the following Requests after conducting a diligent and thorough investigation into all information within Your possession, custody, or control. If You cannot provide a full and complete response to any Request, You should

DEFENDANT'S 1st SET OF RFP's (NOS. 1-7)                          CASE NO. 2:23-CV-631

respond to the Request to the extent possible, specifying the portion of the Request You are unable to answer and providing any information You have regarding the unanswered portion.

2.      Please produce all Documents as they are maintained and organized in the normal course of business, including and maintaining any file structures or groupings. In the alternative, for each Document produced, please identify the request(s) for production and, where applicable, the interrogatory(ies) to which it is responsive.

3.      If a Request seeks information referencing or regarding a Document or Thing that has been lost, discarded, destroyed, or is otherwise unavailable for any reason, it should be identified as completely as possible, by stating without limitation: the date of disposal, the manner of disposal, the reason for disposal, any Person, firm or corporation who has possession, custody, or control of a full, partial, or incomplete copy of such Document, and the identity of all Persons who participated in the destruction or discarding or who have knowledge of the data and circumstances surrounding the destruction or discarding of the Document or Thing.

4.      Where an objection is made to a Request, state all grounds upon which Your objection is based. If You object to any Request in part, respond to the extent that You do not claim the Request to be objectionable.

5.      If any requested information is withheld based on a claim of privilege or immunity, in accordance with Fed. R. Civ. P. 26(b)(5) describe the nature of the documents, communications, or tangible things with sufficient specificity to permit Defendant to assess the veracity of the privilege claim.

6.      If possible, and unless otherwise specified, supply all financial data requested on a calendar year basis. If fiscal year data is provided, please specify the dates on which the fiscal year begins and ends.

7

7.     If a Document is in a language other than English and an English translation exists, whether complete or partial, please produce both the native-language version and the English-translation version of the Document.

8.     The use of the plural or singular form of a word herein shall be interpreted to include both the plural and singular forms so as not to exclude any information otherwise within the scope of any discovery request.

9.     The terms "and" and "or" as used herein shall be interpreted both conjunctively and disjunctively so as not to exclude any information otherwise within the scope of any Request.

## REQUESTS FOR PRODUCTION AND INSPECTION

**REQUEST FOR PRODUCTION NO. 1:**

Documents, including organizational charts, sufficient to show (i) each of the entities involved in the design, redesign, development, operation, manufacture, testing, marketing, distribution, sale, or importation into the United States of any Accused Products, (ii) the nature of each such entity's relationship to each other; and (iii) the function and role of each such entity, including its involvement with respect to the Accused Products.

**REQUEST FOR PRODUCTION NO. 2:**

Documents, including organizational charts, sufficient to show the names, positions, titles, duties, and reporting relationships of all officers and employees of the entities identified in response to Interrogatory No. 1 that are involved in or knowledgeable regarding the design, redesign, development, operation, manufacture, testing, marketing, distribution, sale, or importation into the United States of any Accused Products.

8

**REQUEST FOR PRODUCTION NO. 3:**

All contracts and agreements involving You or any entities identified in response to Interrogatory No. 1 regarding the design, redesign, development, operation, manufacture, testing, marketing, distribution, sale, or importation into the United States of any Accused Product, including any agreements with Amazon for the marketing, sale, inventory, and distribution of the Accused Products in the United States.

**REQUEST FOR PRODUCTION NO. 4:**

Documents sufficient to identify all locations where Plaintiffs manufacture or have manufactured the Accused Products, and the entities involved in such manufacture.

**REQUEST FOR PRODUCTION NO. 5:**

Documents showing the shipment, chain of distribution, and importation of the Accused Products into the United States, including transit and importation records (e.g., Bills of Lading, internal records) showing the dates of occurrence, the quantity and identity of products involved in each occurrence, and the entities involved in each occurrence, and including documents showing the shipment of Accused Products "from the manufacturer to Amazon.com's (US) warehouse," as stated in the May 9, 2023 Pan Silin Declaration (at ¶ 18).

**REQUEST FOR PRODUCTION NO. 6:**

Documents regarding the Accused Products inventory, as referenced in paragraph 18 of the May 9, 2023 Pan Silin Declaration, including records showing the location, amount, value, and "rapid turnover" of Accused Product inventory, including that held by Amazon.

DEFENDANT'S 1st SET OF RFP's (NOS. 1-7)                                    CASE NO. 2:23-CV-631

1

**REQUEST FOR PRODUCTION NO. 7:**

2

      All Documents, Communications, and Things identified in Plaintiffs' responses to all

3

interrogatories and requests for admissions or used, relied on, or considered by Plaintiffs in

4

drafting Your responses to interrogatories or requests for admissions.

5

6

    DATED this 22ᵗʰ day of June, 2023

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<table>
<tr><td></td><td>/s/ Josephine Kim</td></tr>
<tr><td></td><td>Josephine Kim (*pro hac vice*)</td></tr>
<tr><td></td><td>**STERNE, KESSLER, GOLDSTEIN & FOX PLLC**</td></tr>
<tr><td></td><td>1100 New York Ave., NW</td></tr>
<tr><td></td><td>Washington, DC 20005</td></tr>
<tr><td></td><td>Telephone: 202.371.2600</td></tr>
<tr><td></td><td>Facsimile: 202.371.2540</td></tr>
</table>

Lowe Graham Jones PLLC

Mark P. Walters, WSBA No. 30819
Mitchell D. West, WSBA No. 53103
*walters@LoweGrahamJones.com*
*west@LoweGrahamJones.com*
1325 Fourth Avenue, Suite 1130
Seattle, WA 98101
T: 206.381.3300
F: 206.381.3301

DEFENDANT'S 1st SET OF RFP's (NOS. 1-7)                                        CASE NO. 2:23-CV-631

Exhibit E

THE HONORABLE KYMBERLY K. EVANSON

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHENZHEN ROOT TECHNOLOGY CO., LTD.,
HONG KONG LUTE TECHNOLOGY, CO., LTD,
AND SHENZHEN CONGLIN E-COMMERCE
CO., LTD

Plaintiffs,

v.

CHIARO TECHNOLOGY Ltd.,

Defendant.

CHIARO TECHNOLOGY LTD.,

Counterclaim Plaintiff,

v.

SHENZHEN ROOT TECHNOLOGY CO., LTD.,
HONG KONG LUTE TECHNOLOGY CO., LTD.,
SHENZHEN CONGLIN E-COMMERCE CO.,
LTD., SHENZHEN ROOT E-COMMERCE CO.,
LTD., SHENZHEN TPH TECHNOLOGY CO.,
LTD., SHENZHEN JINRUIXING
TECHNOLOGY CO., LTD., SHENZHEN
LUTEJIACHENG NETWORK TECHNOLOGY
CO., LTD., and SHENZHEN JINRUIHANG
TECHNOLOGY CO., LTD.

Counterclaim Defendants.

Case No. 2:23-cv-631

**DEFENDANT'S SECOND SET OF
REQUESTS FOR PRODUCTION TO
PLAINTIFFS AND
COUNTERCLAIM DEFENDANTS
(NOS. 8-65)**

**DEFENDANT'S SECOND SET OF REQUESTS FOR PRODUCTION
TO PLAINTIFFS AND COUNTERCLAIM DEFENDANTS (NOS. 8-65)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of the Western District of Washington, Defendant and Counterclaim Plaintiff Chiaro Technology Ltd., Inc., d/b/a Elvie respectfully requests that Plaintiffs and Counterclaim Defendants Shenzhen Root Technology Co., Ltd., Hong Kong Lute Technology Co., Ltd., Shenzhen Conglin E-Commerce Co., Ltd., Shenzhen Root E-Commerce Co., Ltd., Shenzhen TPH Technology Co., Ltd., Shenzhen Jinruixing Technology Co., Ltd., Shenzhen Lutejiacheng Network Technology Co., Ltd., and Shenzhen Jinruihang Technology Co., Ltd. (collectively, "Momcozy") produce, permit inspection and copying (with convenient access to duplicating equipment), or otherwise cause to be produced, each of the following documents and things within the possession, custody, or control of Plaintiffs. Production shall be made at the offices of Sterne, Kessler, Goldstein & Fox, 1101 K Street, NW, 10th Floor, Washington, D.C. 20005, or at such other place(s) as counsel may agree upon, within thirty (30) days of service hereof. These Requests for Production ("Requests") are continuing in nature and shall be timely supplemented in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

**DEFINITIONS**

The following definitions apply to the Requests set forth below:

1.     The terms "You," "Your," and "Momcozy" shall refer to Plaintiffs Shenzhen Root Technology Co., Ltd., Hong Kong Lute Technology Co., Ltd., Shenzhen Conglin E-Commerce Co., Ltd., Shenzhen Root E-Commerce Co., Ltd., Shenzhen TPH Technology Co., Ltd., Shenzhen Jinruixing Technology Co., Ltd., Shenzhen Lutejiacheng Network Technology Co., Ltd., and Shenzhen Jinruihang Technology Co., Ltd., and any of their predecessors, domestic or foreign divisions, departments, subsidiaries, parents, Affiliates, and other legal Entities that are wholly or partially owned or controlled by Plaintiffs, either directly or indirectly, and each of their respective present or former directors, officers, employees, partners, agents, consultants, experts,

representatives, and attorneys, as well as all other individuals in the employ of or otherwise acting on behalf of Plaintiffs.

2.      The term "Affiliate(s)" shall refer to any past or current parents or subsidiaries as well as any past or current corporations, business Entities, trusts, or commonly-owned corporations, as well as any other Entity owning, owned by, controlling, controlled by, or under common control or ownership of an Entity (whether legally, beneficially, by agreement or through stock ownership or other equity interest, directly or indirectly) and their permitted successors and assigns. For clarity, a corporation or other business Entity is only an "Affiliate" during such time that it directly or indirectly controls, is controlled by, or is under common control with a given Entity.

3.      The term "Defendant," "Chiaro," and "Elvie" shall refer to Defendant Chiaro Technology Ltd., Inc., d/b/a Elvie, and any of their predecessors, domestic or foreign divisions, departments, subsidiaries, parents, Affiliates, and other legal Entities that are wholly or partially owned or controlled by Defendant, either directly or indirectly, and each of their respective present or former directors, officers, employees, partners, agents, consultants, experts, representatives, and attorneys, as well as all other individuals in the employ of or otherwise acting on behalf of Defendant.

4.      The term "Third Party" or "Third Parties" means any Person or Entity other than Plaintiffs or Defendant.

5.      The term "Person" shall mean any natural person or group of natural persons.

6.      The terms "Entity" or "Entities" shall mean any firm, association, organization, partnership, business, trust, corporation, proprietorship, scientific or academic establishment, governmental agency, or organizational unit thereof, including U.S. and foreign.

7.      The term "Complaint" means the Complaint filed by Plaintiffs in this action against Defendant, the Amended Complaint filed by Plaintiffs against Defendant in this action, and any future amended or joined complaints.

8.     The term "Patent(s)-in-Suit" shall mean United States Patent Nos. 11,357,893 ("the '893 Patent"), 11,413,380 ("the '380 Patent"), and any other Patent that Defendant asserts in this action.

9.     The term "Related Patent" includes (i) any patent that, in whole or in part, claims priority to, or the benefit of the filing date of, any patent-in-suit, including any child, continuation, continuation-in-part, continuing prosecution, divisional, reissue, reexamination, substitution, or extension thereof, (ii) any patent from which any patent-in-suit claims the benefit of priority or otherwise claims the benefit of the filing date thereof, including any and all parent patents of any patent-in-suit, and (iii) any patent that claims the benefit of priority or otherwise claims the benefit of the filing date of any patent described in (ii).

10.     The term "Accused Momcozy Product(s)" means any products that Defendant alleges infringe the Patents-in-Suit, including the S12, S12 Pro, S9, S9 Pro, M1, M5, and any other Momcozy product identified in response to Interrogatory No. 8.

11.     The term "Prior Art" encompasses the Patent, printed publications, patent applications, samples, products, articles, previous inventions, previous knowledge, previous uses, previous sales, or previous offers to sell encompassed by any of the categories set forth in 35 U.S.C. §§ 102 and 103 or falling under obvious-type double patenting, that relate to the subject matter of one or more of the Patents-in-Suit, even if Plaintiffs contend that they do not anticipate or render obvious the inventions claimed in the Patents-in-Suit.

12.     The phrase "subject matter," when used in relation to a patent, means all products, processes, services, technology, implementation, uses, and other matter covered by one or more claims of that patent.

13.     The terms "infringe," "infringed," and "infringement" mean direct infringement, contributory infringement, inducement of infringement, literal infringement, and infringement under the doctrine of equivalents. *See* 35 U.S.C. § 271.

14.     The term "Document" is defined broadly to be given the full scope of that term contemplated in the Federal Rules of Civil Procedure, and the Federal Rules of Evidence, and

includes all non-identical copies of a document, all drafts of final documents, all other written, typed, printed, recorded, or graphically portrayed matter in any form or embodiment, and all other data compilations from which information can be obtained and translated if necessary, that are or have been in Your actual or constructive custody or control, regardless of the medium on which they are produced, reproduced, or stored (including computer programs and files containing any requested information), and any recording or writing, as these terms are defined in Federal Rule of Evidence 1001. Any document bearing marks, including initials, stamped initials, comments, or notations not part of the original text or photographic reproduction thereof, is a separate document.

15.     The term "Communication(s)" shall mean all written, electronic, oral, telephonic, fax, or other inquiries, dialogues, conversations, interviews, correspondence, consultations, negotiations, agreements, understandings, meetings, letters, notes, telegrams, advertisements, computer mail, email, and all other Documents evidencing any verbal or nonverbal interaction between Persons and/or Entities.

16.     The term "Thing(s)" shall be construed under the broadest possible construction under the Federal Rules of Civil Procedure.

17.     The terms "United States" and "U.S." shall be interpreted as the fifty states, the District of Columbia, and Puerto Rico.

18.     The terms "relate to," "related to," or "relating to" shall mean, in whole or in part, constituting, containing, embodying, reflecting, describing, analyzing, identifying, mentioning, stating, referring directly or indirectly to, dealing with, or in any way pertaining to.

19.     The term "describe," when used in relation to an act, event, instance, occasion, transaction, conversation, or Communication, shall mean: (1) to state the date and place thereof; (2) to identify the individual participants; (3) to summarize separately for each individual participant what s/he said or did; and (4) to identify each Document used or prepared in connection therewith or making any reference thereto.

20.     The term "identify," when used with respect to a Person, shall mean to state the Person's full name, present or last known address, the occupation or business in which the Person is engaged, and the Person's present or last-known employer and title or position.

21.     The term "identify," when used with respect to a Document, means to state, to the extent known, the (1) type of Document, (2) subject matter, (3) date of the Document, (4) author(s), addressee(s), recipient(s), and (5) Bates number.

22.     The term "identify," when used with respect to a Communication, shall mean to state, to the extent known, the (i) means of Communication (e.g., telephone call, meeting, etc.), (ii) date of the Communication, (iii) subject matter of the Communication, and (iv) originator, recipient, and any other party to the Communication.

23.     The term "identify," when used with respect to a product, shall mean to state, to the extent known, the product or component name, including cross-references to all trade names and designations, internal names, and names used during development, product or part numbers, item numbers, revisions, trademarks, SKU numbers, date coding, site codes, and manufacturing line codes associated with each such product, and to describe in detail all means for interpreting those identifying descriptions.

24.     The terms "include" and "including" mean include or including without limitation.

25.     The terms "each" and "any" mean "any and all."

26.     The terms "use" and "using" shall include without limitation use in testing, use in demonstrating, and use in training.

27.     The terms "sell" and "sold" shall mean selling, leasing, and transferring title to.

28.     The term "date" shall mean the exact day, month, year, if ascertainable, or, if not, the best approximation thereof.

## INSTRUCTIONS

The following instructions shall apply to these Requests:

1.     You are to provide full and complete responses to the following Requests after conducting a diligent and thorough investigation into all information within Your possession,

custody, or control. If You cannot provide a full and complete response to any Request, You should respond to the Request to the extent possible, specifying the portion of the Request You are unable to answer and providing any information You have regarding the unanswered portion.

2.     You are to produce all Documents as they are maintained and organized in the normal course of business, including and maintaining any file structures or groupings. In the alternative, for each Document produced, please identify the request(s) for production and, where applicable, the interrogatory(ies) to which it is responsive.

3.     If a Request seeks information referencing or regarding a Document or Thing that has been lost, discarded, destroyed, or is otherwise unavailable for any reason, it should be identified as completely as possible, by stating without limitation: the date of disposal, the manner of disposal, the reason for disposal, any Person, firm or corporation who has possession, custody, or control of a full, partial, or incomplete copy of such Document, and the identity of all Persons who participated in the destruction or discarding or who have knowledge of the data and circumstances surrounding the destruction or discarding of the Document or Thing.

4.     Where an objection is made to a Request, state all grounds upon which Your objection is based. If You object to any Request in part, respond to the extent that You do not claim the Request to be objectionable.

5.     If any requested information is withheld based on a claim of privilege or immunity, in accordance with Fed. R. Civ. P. 26(b)(5) describe the nature of each of the documents, communications, or tangible things with sufficient specificity to permit Defendant to assess the veracity of the privilege claim.

6.     If possible, and unless otherwise specified, supply all financial data requested on a calendar year basis. If fiscal year data is provided, please specify the dates on which the fiscal year begins and ends.

7.     If a Document is in a language other than English and an English translation exists, whether complete or partial, please produce both the native-language version and the English-translation version of the Document.

8.      The use of the plural or singular form of a word herein shall be interpreted to include both the plural and singular forms so as not to exclude any information otherwise within the scope of any discovery request.

9.      The terms "and" and "or" as used herein shall be interpreted both conjunctively and disjunctively so as not to exclude any information otherwise within the scope of any Request.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 8:**

All Documents, Communications, and Things referred to, identified in, used, relied upon, or consulted by You in preparing the Complaint and/or Counterclaim Answer.

**REQUEST FOR PRODUCTION NO. 9:**

All Documents, Communications, and Things that support, refute, or otherwise relate to any claim, defense, allegation, or potential remedy in this lawsuit.

**REQUEST FOR PRODUCTION NO. 10:**

Any agreements relating to the subject matter or outcome of this lawsuit, including agreements reflecting any financial or other interest in the lawsuit's outcome or any person's obligation to indemnify.

**REQUEST FOR PRODUCTION NO. 11:**

All Documents, Communications, and Things relating to Elvie.

**REQUEST FOR PRODUCTION NO. 12:**

All Documents, Communications, and Things relating to any Patent-in-Suit or any Related Patent, including all documents that reference or discuss any Patent-in-Suit or any Related Patent.

**REQUEST FOR PRODUCTION NO. 13:**

All non-privileged Documents, Communications, and Things relating to any opinions of counsel relating to any Patent-in-Suit or any Related Patent, including opinions relating to infringement, validity, enforceability, scope, or ownership, as well as opinions referenced in Momcozy's filings in the above-captioned case, including Pan Silin's Declaration in support of Plaintiffs' Motion for Temporary Restraining Order. *See* Dkt. 22, Ex. 15 (listing "Letter of Non-

Infringement for Momcozy" and "Legal Opinion on Redesigns Against the Elvie Patents"); Dkt. # 29, Ex. 19 at 3-4.

**REQUEST FOR PRODUCTION NO. 14:**

All Documents, Communications, and Things relating to any Prior Art collected, identified, or considered in relation to any Patent-in-Suit or any Related Patent, including existing English translations of any foreign patent or publication.

**REQUEST FOR PRODUCTION NO. 15:**

All Documents, Communications, and Things relating to any evidence of the obviousness or non-obviousness of any subject matter claimed in any Patent-in-Suit.

**REQUEST FOR PRODUCTION NO. 16:**

All non-privileged Documents, Communications, and Things relating to whether or why any Accused Momcozy Product may or may not infringe any Patent-in-Suit.

**REQUEST FOR PRODUCTION NO. 17:**

All Documents, Communications, and Things relating to any communications between You, or anyone acting on Your behalf, and any other person relating to Elvie, Elvie's products, any Patent-in-Suit, this lawsuit, or any claim, defense, or remedy in this lawsuit.

**REQUEST FOR PRODUCTION NO. 18:**

All Documents, Communications, and Things relating to any communications between You, or anyone acting on Your behalf, and any other person, including another Plaintiff, relating to any Accused Momcozy Product.

**REQUEST FOR PRODUCTION NO. 19:**

All Documents, Communications, and Things relating to Momcozy's first awareness of each Patent-in-Suit.

**REQUEST FOR PRODUCTION NO. 20:**

All Documents, Communications, and Things relating to any attempts to design around or modify the Accused Momcozy Products to avoid infringement of any Patent-in-Suit.

**REQUEST FOR PRODUCTION NO. 21:**

All Documents, Communications, and Things relating to the meaning or scope of the claims in any Patent-in-Suit, including any documents on which Momcozy may rely to support any construction or interpretation of any claim limitation.

**REQUEST FOR PRODUCTION NO. 22:**

All Documents, Communications, and Things relating to the level of technical knowledge, schooling, experience, and expertise of a person having ordinary skill in the art of any subject matter claimed in the Patents-in-Suit.

**REQUEST FOR PRODUCTION NO. 23:**

All Documents, Communications, and Things relating to the design, development, functionality, or testing of any Accused Momcozy Product, including specifications, requirement documents, schematics, manuals, drawings, guides, instructions, and layouts.

**REQUEST FOR PRODUCTION NO. 24:**

All Documents, Communications, and Things relating to the features and functionality accused of infringement, including specifications, requirement documents, schematics, manuals, drawings, guides, instructions, and layouts.

**REQUEST FOR PRODUCTION NO. 25:**

All Documents, Communications, and Things relating to any advantages or disadvantages of the Accused Momcozy Products, including documents relating to any features that drive consumer demand for any Accused Momcozy Product.

**REQUEST FOR PRODUCTION NO. 26:**

All Documents, Communications, and Things relating to any patent, invention disclosure, or patent application, whether pending or abandoned, owned by, assigned to, or filed on behalf of Momcozy, relating to wearable breast pumps or any Accused Momcozy Product, or that cites a Patent-in-Suit or a Related Patent.

**REQUEST FOR PRODUCTION NO. 27:**

Two samples of each Accused Momcozy Product, including any packaging, instructions, guides, or labels for each product.

**REQUEST FOR PRODUCTION NO. 28:**

All Documents, Communications, and Things relating to the first disclosure, first use, first offer for sale, first sale, first importation, first demonstration, and first test of each Accused Momcozy Product.

**REQUEST FOR PRODUCTION NO. 29:**

All Documents, Communications, and Things relating to the decision to develop any Accused Momcozy Product, including documents relating to the potential market for each product, potential competitors, and third-party patent rights.

**REQUEST FOR PRODUCTION NO. 30:**

All Documents, Communications, and Things relating to the manufacture of any Accused Momcozy Product, including product drawings, schematics, manuals, and test protocols.

**REQUEST FOR PRODUCTION NO. 31:**

Documents, Communications, and Things sufficient to show the locations of each step of the manufacture and testing of each Accused Momcozy Product.

**REQUEST FOR PRODUCTION NO. 32:**

Documents, Communications, and Things sufficient to show, for each Accused Momcozy Product on a quarterly basis, the number of products imported into the United States by or on behalf of Momcozy.

**REQUEST FOR PRODUCTION NO. 33:**

All Documents, Communications, and Things concerning any decision to continue making, using, offering for sale, selling, or importing any Accused Momcozy Product after You became aware of each Patent-in-Suit.

**REQUEST FOR PRODUCTION NO. 34:**

All contracts and agreements with other persons related to the manufacture, testing, sale, development, or marketing of any Accused Momcozy Product.

**REQUEST FOR PRODUCTION NO. 35:**

All Documents, Communications, and Things relating to any application by Momcozy to any private or governmental agency for registration, certification, or approval of any aspect of any Accused Momcozy Product.

**REQUEST FOR PRODUCTION NO. 36:**

All Documents, Communications, and Things relating to how Momcozy instructs others on how to manufacture or use any Accused Momcozy Product, including any user manuals, articles, data sheets, or product specifications.

**REQUEST FOR PRODUCTION NO. 37:**

All Documents, Communications, and Things relating to the marketing, advertising, or promotion of any Accused Momcozy Product, including any advertisements or advertising campaigns, advertising budgets and expenditures, Momcozy's webpage design and development, brochures, pamphlets, catalogs, or price lists.

**REQUEST FOR PRODUCTION NO. 38:**

All Documents, Communications, and Things relating to Momcozy's marketing strategies and the development thereof, including its advertising strategy, pricing strategy, website design and development, analysis of the relevant consumers and market, and product design strategy to target such consumers and market.

**REQUEST FOR PRODUCTION NO. 39:**

Documents sufficient to show Your past, present, and/or future strategies for advertising and/or marketing any Accused Momcozy Product.

**REQUEST FOR PRODUCTION NO. 40:**

All Documents, Communications, and Things relating to the pricing of any Accused Momcozy Product, including documents sufficient to show how Momcozy sets the price of any Accused Momcozy Product.

**REQUEST FOR PRODUCTION NO. 41:**

Documents sufficient to show the retail price and distributor price of each of the Accused Momcozy Product.

**REQUEST FOR PRODUCTION NO. 42:**

All Documents, Communications, and Things relating to the market for each Accused Momcozy Product, including any studies, reports, or analyses relating to market share, market demand, market segments, competition, consumer surveys, or revenue.

**REQUEST FOR PRODUCTION NO. 43:**

Documents sufficient to show Your projections or forecasts concerning all relevant markets for the Accused Momcozy Products, including, without limitation, forecasts of market size, market share, and consumer demand, and any descriptions of how such forecasting was and is done or used by You.

**REQUEST FOR PRODUCTION NO. 44:**

All Documents, Communications, and Things relating to any search for Prior Art for the subject matter defined by any of the claims of the Patents-in-Suit, including literature, publications, or references cited in the Patents-in-Suit.

**REQUEST FOR PRODUCTION NO. 45:**

All Documents, Communications, and Things relating to any products that compete with any Accused Momcozy Product, including any analyses of the strengths or weaknesses of those products compared to any Accused Momcozy Product.

**REQUEST FOR PRODUCTION NO. 46:**

Documents, Communications, and Things sufficient to show, for each Accused Momcozy Product on a quarterly basis, quantity sold, price, gross revenue, terms and conditions of sale, customer name, and country of sale.

**REQUEST FOR PRODUCTION NO. 47:**

Documents, Communications, and Things sufficient to show the profitability of each Accused Momcozy Product, including revenues, costs of sale, order contributions, product margins, gross margins, and operating profits.

**REQUEST FOR PRODUCTION NO. 48:**

Financial statements, including, but not limited to, income statements, balance sheets, sales reports, product line profit, loss, and margin statements, and cash flow statements concerning or related to any Accused Momcozy Product.

**REQUEST FOR PRODUCTION NO. 49:**

Documents sufficient to show financial budgets or projections of financial budgets related to any Accused Momcozy Product.

**REQUEST FOR PRODUCTION NO. 50:**

All Documents, Communications, and Things supporting, refuting, or otherwise relating to any claims for damages or other relief or remedies, including any claim for an injunction, a reasonable royalty, lost profits, price erosion, prejudgment interest, or enhanced damages.

**REQUEST FOR PRODUCTION NO. 51:**

All Documents, Communications, and Things supporting, refuting, or otherwise relating to Momcozy's allegations that it is entitled to attorney fees and litigation costs.

**REQUEST FOR PRODUCTION NO. 52:**

All Documents, Communications, and Things You intend to or may rely on to rebut the objective evidence of nonobviousness of any Patent-in-Suit.

**REQUEST FOR PRODUCTION NO. 53:**

All documents and things that Momcozy identified in Momcozy's Initial Disclosures.

**REQUEST FOR PRODUCTION NO. 54:**

All communications with customers, potential customers, users, resellers, or importers of the Accused Momcozy Products regarding the Accused Momcozy Products, including all communications regarding customer complaints.

**REQUEST FOR PRODUCTION NO. 55:**

All documents and things sufficient to show whether each element or step of each asserted claim in the Patents-in-Suit is found or not found in each of the Accused Momcozy Products.

**REQUEST FOR PRODUCTION NO. 56:**

All Documents, Communications, and Things concerning non-infringing alternatives or acceptable substitutes, if any, or the lack thereof, for any alleged invention described in the specification or any claim of the Patents-in-Suit.

**REQUEST FOR PRODUCTION NO. 57:**

All Documents, Communications, and Things provided by or to You, either formally or informally, to any third party involving the Patents-in-Suit.

**REQUEST FOR PRODUCTION NO. 58:**

All Documents, Communications, and Things upon which Momcozy intends to rely at any hearing or trial in support of, or defense against, any claim in this action.

**REQUEST FOR PRODUCTION NO. 59:**

All Documents, Communications, and Things comprising or related to any sworn testimony, reports, declarations, or affidavits ever given in, used in, or prepared for any proceeding by any person whom You expect to call as a fact or expert witness at trial in this action, or on whose testimony, written or oral, You intend to rely at any stage of this action.

**REQUEST FOR PRODUCTION NO. 60:**

All Documents, Interrogatory Responses, Expert Reports, and Non-Infringement Contentions that Momcozy produces in *Dao Health v. Shenzhen Lutejiacheng Tech. Co., Ltd.*, 1:23-cv-04885 (N.D. Il. 2023).

**REQUEST FOR PRODUCTION NO. 61:**

Documents sufficient to describe all of Momcozy's electronic data and document retention policies.

**REQUEST FOR PRODUCTION NO. 62:**

All Documents, Communications, and Things related to any design, redesign, modification, adjustment of, or change to any Momcozy product (including any Accused Momcozy Product) that occurred, is occurring, will occur, is planned to occur, or was suggested, considered, or discussed, including changes in light of, or to avoid infringement of, the Patents-in-Suit.

**REQUEST FOR PRODUCTION NO. 63:**

All Documents, Communications, and Things regarding any future breast pump products identified in response to Elvie's Interrogatory Nos. 7 and 8 that Momcozy intends to bring to market.

**REQUEST FOR PRODUCTION NO. 64:**

All Documents, Communications, and Things that Momcozy alleges supports any allegation made in the Complaint.

**REQUEST FOR PRODUCTION NO. 65:**

All Documents, Communications, and Things relating to Momcozy's decision to file the Complaint.

DATED this 20th day of October, 2023

/s/ Joseph H. Kim

Joseph H. Kim
STERNE, KESSLER, GOLDSTEIN & FOX PLLC
1101 K Street, NW
10th Floor
Washington, D.C. 20005
T: 202.371.2600
F: 202.371.2540
josephk@sternekessler.com

Mark P. Walters, WSBA No. 30819
Mitchell D. West, WSBA No. 53103
LOWE GRAHAM JONES PLLC
1325 Fourth Avenue, Suite 1130
Seattle, WA 98101
T: 206.381.3300
F: 206.381.3301
walters@LoweGrahamJones.com
west@LoweGrahamJones.com

*Attorneys for Defendant*
*Chiaro Technology, Ltd.*

Exhibit F

| | |
|---|---|
| **From:** | Joseph H. Kim |
| **Sent:** | Wednesday, March 20, 2024 6:56 PM |
| **To:** | YANG Qianwu; Alex Alfano |
| **Cc:** | chen@shm.law; jroller@aretelaw.com; SHM Momcozy; Walters@lowegrahamjones.com; ELVIE-MOMCOZY-DJ |
| **Subject:** | RE: Shenzhen Root Technology Co., Ltd., et al. v. Chiaro Technology Ltd., Case No. 2:23-cv-631: 2023-11-09 Discovery Deficiencies |

Counsel,

It has been nearly two weeks since Momcozy promised a substantive response to Elvie's email regarding Momcozy's numerous discovery deficiencies. We have not heard back from you regarding the issues Elvie raised. We note that Elvie has already produced over 10,000 pages of discovery in response to Momcozy's discovery requests. At this time, Momcozy has produced nothing. Momcozy's delay in producing relevant information and refusing to actively partake in discovery is highly prejudicial to Elvie.

By March 22, 2024, please provide a substantive response to our March 7, 2024 email. Otherwise, Elvie will have no choice but to seek relief from the Court.

Regards,
Joe

---

**Joseph H. Kim**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** josephk@sternekessler.com
**Direct:** 202.772.8718

**Administrative Assistant:** Renee Moore
**Direct:** 202.772.8820   **Main:** 202.371.2600

---

**From:** YANG Qianwu <yang@shm.law>
**Sent:** Wednesday, March 6, 2024 7:05 PM
**To:** Alex Alfano <aalfano@sternekessler.com>
**Cc:** chen@shm.law; jroller@aretelaw.com; SHM Momcozy <shmmomcozy@shm.law>; Walters@lowegrahamjones.com; ELVIE-MOMCOZY-DJ <ELVIE-MOMCOZY-DJ@sternekessler.com>
**Subject:** Re: Shenzhen Root Technology Co., Ltd., et al. v. Chiaro Technology Ltd., Case No. 2:23-cv-631: 2023-11-09 Discovery Deficiencies

**EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Hi Alex,

Before we respond substantively to you further, we would like to remind you that Elvie has produced virtually nothing to us either.

Best regards,

Wu


YANG Qianwu（杨乾武 律师）
He/Him/His
Admitted in California & China
Founding Managing Partner
SHM Law Firm

M: +86 139 2521 2009 (WhatsApp) | T: +86 755 8326 6693

Shenzhen Office
深圳办公室（春笋）

25F, China Resources Tower
2666 Keyuan South Road, Nanshan
Shenzhen, 518052, China

Silicon Valley Office
美国硅谷办公室

3000 El Camino Real, Building 4, Suite 200, Palo Alto, California 94306


On Mar 7, 2024, at 07:52, Alex Alfano <aalfano@sternekessler.com> wrote:

Dear Wu,

We write to follow up on several unresolved issues. As an initial matter, Momcozy promised to provide a substantive response to Elvie's request for "assurance that Momcozy will not raise any delay argument on this or related issues" and that "the resolution of this WeChat issue should not delay discovery or document production, given that the parties are aligned on the remaining provisions of the draft ESI stipulation." Email from Q. Yang to J. Kim (Feb. 7, 2024). In light of Momcozy's silence following the holiday extension, Elvie understands that Momcozy agrees to the sought-after assurances upon which Elvie conditioned its extension.

We also want to follow up on several other unresolved issues for which Momcozy agreed to respond:

1. **First**, despite Momcozy's assurances otherwise, Momcozy has still not responded to Elvie's deficiency letter dated Dec. 21, 2023. *See* Email from Q. Yang to J. Kim (Dec. 22, 2023). In this letter, Elvie raised multiple issues, including Momcozy's improper limiting of the definition of "Accused Products" in response to Elvie's requests for production and interrogatories, baseless objection to the phrase "redesign" as vague and ambiguous, improper withholding of samples of the Accused Products, and failure to produce any documents in this case.

2. **Second**, Momcozy noted that it would "respond further" to Elvie's deficiency letter dated Feb. 1, 2024, but Elvie has not received any further response. *See* Email from Q. Yang to A. Alfano (Feb. 1, 2024). In this letter, Elvie not only reminded Momcozy of the issues raised in its previous letter, but additionally raised Momcozy's failure to supplement its discovery responses following entry of the protective order, improper withholding of discovery of non-Accused Products, and improper withholding of responses to Interrogatories Nos. 18-20. Elvie also sought confirmation that Momcozy is not withholding non-privileged information related to Momcozy's knowledge of Elvie's patents and the identity of foreign entities involved with Momcozy products. Finally, Elvie sought to clarify the scope of Momcozy's forthcoming production of documents related to the timeline of development, manufacture, and sale of Momcozy products.

3. **Third**, on February 5, 2024, the parties held a meet and confer during which Momcozy assured Elvie that it was working diligently on a production, but no documents have been produced. Now, Momcozy argues that Elvie is "unreasonable" to expect production of "highly confidential" documents before entry of the ESI agreement. The parties' narrow WeChat dispute is insufficient grounds for Momcozy to pause all discovery in this case. Momcozy cannot hide between procedural hurdles, such as a dispute over an ESI agreement, to avoid engaging in discovery for weeks or months until the dispute is resolved.

Please confirm by <u>Monday, March 11, 2024</u>, that Momcozy will provide full substantive responses by <u>Monday, March 18, 2024</u> to all of the deficiencies identified in Elvie's above-referenced deficiency letters. Otherwise, Elvie will raise these issues with the Court.

Further, Elvie has concerns about Momcozy's email dated Feb. 1, 2024, where Momcozy asserts that pursuing the Xitao matter any further would be a waste of time. Despite Momcozy's assertions, Elvie recently discovered information suggesting that Momcozy has again misrepresented Xitao's sales of the S12 Pro. Initially, Elvie provided evidence demonstrating that Xitao sold more than $100 worth of units. *See* Email from J. Kim to Q. Yang (Jan. 24, 2024). In response, Momcozy summarily declared that the issue would be a waste of time. *See* Email from Q. Yang to A. Alfano (Feb. 1, 2024). Since then, the Alibaba storefront added a tracker for customers to see the volume of orders, sales, and inquiries for the S12 Pro, as well as the volume of orders, sales, and inquiries for Xitao as a whole. As shown in the attached screenshots, Xitao sold over $60,000 worth of the S12 Pro over the past six months, over half of Xitao's total sales. This new information, together with the Alibaba-provided statistic that Xitao sells 55% of its products to North America, directly contradicts Momcozy's representations that Xitao has sold less than $100 worth of the S12 Pro from the Alibaba storefront.

Therefore, by no later than <u>Monday, March 11, 2024</u>, please provide a full explanation of Momcozy's relationship with Xitao pursuant to Interrogatory No. 1, and provide a date certain by which Momcozy will produce all Xitao sales records since the start of the S12 sales pursuant to RFP Nos. 28, 33, 34, and 46-48. Again, failure for Momcozy to provide substantive discovery on this issue will require Elvie to seek the Court's assistance.

Regards,
Alex

<image001.png>   **Alex Alfano**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
1101 K Street, NW, 10th Floor
Washington, DC 20005
<image002.png>
**Email:** aalfano@sternekessler.com
**Direct:** 202.772.8731

**Main:** 202.371.2600

*Notice: The information in this electronic transmission (including any attachments) may contain confidential or legally privileged information and is intended solely for the individual(s) or entity(ies) named above. If you are not an intended recipient or an authorized agent, you are hereby notified that reading, distributing, or otherwise disseminating or copying, or taking any action based on the contents of this transmission is strictly prohibited. Any unauthorized interception of this transmission is illegal under the law. If you have received this transmission in error, please immediately notify the sender by return email and then destroy all copies of the transmission.*

&lt;Xitao Breast Pump Rank.pdf&gt;
&lt;Xitao S12 Pro Order Volume.pdf&gt;
&lt;Xitao S12 Pro Sales.pdf&gt;
&lt;Xitao Total Order Volume.pdf&gt;
&lt;Xitao Total Sales.pdf&gt;

Exhibit G

| | |
|---|---|
| **From:** | Josephine Kim |
| **Sent:** | Friday, March 1, 2024 10:09 AM |
| **To:** | YANG Qianwu |
| **Cc:** | Alex Alfano; SHM Momcozy; chen@shm.law; ELVIE-MOMCOZY-DJ; Walters@lowegrahamjones.com |
| **Subject:** | Re: Shenzhen Root Technology Co., Ltd., et al. v. Chiaro Technology Ltd. // Amended Counterclaims |

Wu,

You have been counsel for Momcozy for the entire duration of the case, even though your local counsel has changed four times, so your effort to distance yourself from prior joint submissions because "Momcozy is changing counsels" is meritless.

We will not further delay filing this motion for leave. We will be filing today, as I mentioned earlier this week, and now we have Momcozy's position. I am available during the remainder of the business day today, Friday, if you want to have a final conversation. You can reach me at 202-772-8896.

Thanks,

Josephine


On Mar 1, 2024, at 9:38 AM, YANG Qianwu <yang@shm.law> wrote:


**EXTERNAL EMAIL:** Use caution before clicking links or attachments.


Hi Josephine,

Momcozy will not oppose Elvie's motion to add two patents and one new party if Elvie will agree with Momcozy on an extended, proposed schedule to accommodate the significantly enlarged scope of the case. If, however, Elvie will not agree to such an extended, proposed schedule, Momcozy will oppose Elvie's motion because litigating the case with the enlarged scope as proposed by Elvie would substantially prejudice Momcozy.

Elvie's prior vague statement about asserting additional Elvie patents in the case was not meaningful—for example, the two new patents were not even granted then.

Furthermore, as you are already aware, Momcozy is changing counsels.

Please let me know your availability to meet and confer about Elvie's motion.

Best regards,

Wu

On Feb 29, 2024, at 12:05, Josephine Kim <JOSKIM@sternekessler.com> wrote:

Wu,

Elvie strongly opposes extending the case schedule by a full year and will not consent to this request. This is a drastic increase that is not warranted by the patents and claims at issue. The Court was aware of the additional parties and patents to be added to the case when it issued the current schedule. You will recall that on June 28, 2023, the parties filed a Joint Status Report and notified the Court that "[w]ith Elvie's forthcoming answer and counterclaims…*Elvie intends to allege that Plaintiffs (and other "Momcozy" entities) infringe additional Elvie patents…*" *See* D.I. 61 at 1-2 (emphasis added). Within a week the Court issued the current schedule with a September 2, 2025 jury trial date, which was even later than the August 17, 2025 "Trial Readiness Date" offered by the parties.

Elvie also intends to notify the Court that the standard practice in patent litigation is for the parties to work together as the case progresses to narrow the issues for trial, with Elvie narrowing its asserted claims and Momcozy narrowing its invalidity assertions. It is not appropriate to jump to extending the trial date by a year due to the addition of patents and parties, especially when Momcozy has made no effort on its end to move discovery along. Momcozy has extended out the WeChat ESI dispute for months by rehashing the same issues over and over. Momcozy also served deficient responses to Elvie's document requests more than *three* months ago and has not responded to our deficiency letters and email requests on the issue. Moreover, we intend to address the TPH issue in due course and do not anticipate it impacting the case schedule.

Nevertheless, we do see that there are some minor scheduling adjustments to address where the Local Patent Rules conflict with the Scheduling Order. We propose the modifications in red below so that the order of events makes sense. We further believe that it is appropriate to pick up the pace of some fact discovery events as shown below given that currently the preliminary infringement contentions are due almost a year after the filing of the Complaint.

| Source | Event | Current Schedule | Proposed Schedule |
|---|---|---|---|
| Scheduling Order | Preliminary Infringement Contentions | Jun. 10 | **Apr. 1** |
| Scheduling Order | Preliminary Invalidity Contentions | Jul. 1 | **Apr. 22** |
| Local Patent Rule 130 (within 20 days of contentions) | Disclose Claim Terms for Construction | Jul. 22 | **May 13** |
| Scheduling Order | Expert Reports on Claim Construction | Jul. 29 | Jul. 29 |

| Local Patent Rule 131 (within 30 days after disclosing proposed terms) | Disclose Proposed Constructions for Claim Terms | Aug. 21 | Jun. 12 |
| Scheduling Order | Rebuttal Expert Reports on Claim Construction | Aug. 23 | Aug. 23 |
| Scheduling Order | Preliminary Claim Chart | Sept. 9 | Sept. 9 |
| Scheduling Order | Joint Claim Chart and Prehearing Statement | Oct. 3 | Oct. 3 |
| Scheduling Order | Opening Claim Construction Briefs | Oct. 28 | Oct. 28 |
| Scheduling Order | Responsive Claim Construction Briefs | Nov. 12 | Nov. 12 |
| Scheduling Order | *Markman* Hearing | Dec. 16 | Dec. 16 |

In view of Elvie's position on the schedule, please let us know by **Noon ET on Friday, March 1** of Momcozy's position on Elvie's Motion for Leave to file Amended Counterclaims as we intend to file our papers this week.

Regards,
Josephine

<image001.png>
**Josephine Kim**
Director
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** joskim@sternekessler.com
**Direct:** 202.772.8896

---

**From:** YANG Qianwu <yang@shm.law>
**Sent:** Sunday, February 25, 2024 11:25 PM
**To:** Josephine Kim <JOSKIM@sternekessler.com>
**Cc:** Alex Alfano <aalfano@sternekessler.com>; SHM Momcozy <shmmomcozy@shm.law>; chen@shm.law; ELVIE-MOMCOZY-DJ <ELVIE-MOMCOZY-DJ@sternekessler.com>; walters@lowegrahamjones.com
**Subject:** Re: Shenzhen Root Technology Co., Ltd., et al. v. Chiaro Technology Ltd. // Amended Counterclaims

> **EXTERNAL EMAIL:** Use caution before clicking links or attachments.

Hi Josephine,

Regarding the enlargement of the case schedule, we believe it is only reasonable to extend the trial date from the current September 2, 2025, to September 2, 2026 or later to reflect the enlargement of the case accordingly, because Elvie will have added 3 more patents, joined 4 more parties, and added 1 more claim to this case after the schedule was established. Moreover, it may take Elvie more than 6 months to complete the service to TPH under the Hague Service Convention.

Please let us know your position regarding this 12-month extention of the trial date.

If Elvie does not consent to the extension of the schedule as requested by Momcozy, Momcozy intends to file a motion to modify the schedule. We would also like to request a meet and confer to discuss our planned motion.

Best regards,

Wu

YANG Qianwu (杨乾武 律师)
He/Him/His
Admitted in California & China
Founding Managing Partner
SHM LAW FIRM

M: +86 139 2521 2009 | M: +1 339 241 0127 | T: +86 136 52448 337 | T: +86 755 8326 6693

Shenzhen Office
25F, China Resources Tower (Spring Bamboo)
2666 Keyuan South Road, Nanshan
Shenzhen, 518052, China

Silicon Valley Office
3000 El Camino Real, Building 4, Suite 200, Palo Alto, California 94306

On Feb 23, 2024, at 21:40, YANG Qianwu <yang@shm.law> wrote:

Hi Josephine,

We will respond to your email substantively after our client confirms our proposal next Monday. Generally, we believe it would be only reasonable to extend the case schedule by 1 year to reflect the significant enlargement of this case.

We prefer to avoid any unnecessary motions or briefs regarding these procedural matters if feasible.

Best regards,

Wu

YANG Qianwu（杨乾武 律师）
He/Him/His
Admitted in California & China
Founding Managing Partner
SHM Law Firm

M: +86 139 2521 2009 (WhatsApp) | T: +86 755 8326 6693

25F, China Resources Tower （深圳"春笋"）
2666 Keyuan South Road, Nanshan
Shenzhen, 518052, China

3000 El Camino Real, Building 4, Suite 200, （美国硅谷）Palo
Alto, California 94306


On 23 Feb 2024, at 09:38, Josephine Kim
<JOSKIM@sternekessler.com> wrote:

Wu,

As to the enlarged case schedule, please let us know
what Momcozy has in mind so we can consider it with
our client. As I have mentioned previously, Elvie is not
keen to extend out the trial date, especially given that
the parties jointly proposed an August 2025 trial date
last summer, but we would like to avoid a dispute and
briefing on the schedule if possible.

Note, however, that Elvie would like to get its Motion
for Leave on file as soon as possible so we'd appreciate
it if you could send us the proposed schedule this week
so we can see if the parties are on the same page. To
the extent the case schedule discussions cannot be
swiftly resolved, Elvie intends to proceed with filing its
Motion for Leave to Amend its Counterclaims, even if
not stipulated.

Thanks,
Josephine


<image001.png>
**Josephine Kim**
Director
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
**Email:** joskim@sternekessler.com
**Direct:** 202.772.8896

**From:** YANG Qianwu <yang@shm.law>
**Sent:** Wednesday, February 21, 2024 10:32 PM
**To:** Josephine Kim <JOSKIM@sternekessler.com>
**Cc:** Alex Alfano <aalfano@sternekessler.com>; SHM
Momcozy <shmmomcozy@shm.law>; chen@shm.law;
ELVIE-MOMCOZY-DJ <ELVIE-MOMCOZY-
DJ@sternekessler.com>; Walters@lowegrahamjones.co
m
**Subject:** Re: Shenzhen Root Technology Co., Ltd., et al.
v. Chiaro Technology Ltd. // Amended Counterclaims

> **EXTERNAL EMAIL:** Use caution before clicking links or
> attachments.

Hi Josephine,

Could we stipulate according to the following
principles:

1. Momcozy agrees to Elvie's amendment of the
complaint to include the two asserted patents and
the additional party.

2. Both parties agree to a substantively enlarged
proposed schedule to accommodate a significant
increase (at least fourfold in terms of the number of
patents, in addition to the joinder of four more
parties and the inclusion of at least one additional
claim) in the scope of the case.

If this is agreeable to your team, we can proceed to
flesh out the proposed enlarged schedule as soon as
practical.

Best regards,

Wu

YANG Qianwu（杨乾武 律师）

6

He/Him/His
Admitted in California & China
Founding Managing Partner
SHM Law Firm

M: +86 139 2521 2009 (WhatsApp) | T: +86 755
8326 6693

Shenzhen Office
深圳办公室（春笋）

25F, China Resources Tower
2666 Keyuan South Road, Nanshan
Shenzhen, 518052, China

Silicon Valley Office
美国硅谷办公室

3000 El Camino Real, Building 4, Suite 200, Palo
Alto, California 94306

On Feb 22, 2024, at 04:14, Josephine
Kim <JOSKIM@sternekessler.com>
wrote:

Hi Wu,

On Elvie's proposal for a stipulated
motion for leave to file the amended
counterclaims mentioned in Alex's
email below, we would appreciate your
prompt response in view of the parties'
recent discussions that this amendment
would be forthcoming and in view of
the March deadline to amend
pleadings.

Thanks,
Josephine

<image002.png>

Josephine Kim
Director
Sterne, Kessler, Goldstein & Fox P.L.L.C.
Email: joskim@sternekessler.com
Direct: 202.772.8896

**From:** Alex Alfano
<aalfano@sternekessler.com>
**Sent:** Tuesday, February 20, 2024 9:49 PM
**To:** YANG Qianwu <yang@shm.law>; SHM Momcozy
<shmmomcozy@shm.law>;chen@shm.law
**Cc:** ELVIE-MOMCOZY-DJ <ELVIE-MOMCOZY-DJ@sternekessler.com>;walters@lowegrahamjones.com
**Subject:** Shenzhen Root Technology Co., Ltd., et al. v. Chiaro Technology Ltd. // Amended Counterclaims

Counsel,

Elvie intends to file its Amended Counterclaims asserting U.S. Patent Nos. 11,813,381 and 11,806,454 and naming Shenzhen Xitao Network Co., Ltd. this week. Given that Elvie intends to file its Amended Counterclaims prior to the deadline for amending pleadings (*see* D.I. 62), please let us know if Plaintiffs would be willing to stipulate to Elvie's leave to file the Amended Counterclaims. Otherwise, please let us know your position on Elvie's Motion for Leave to File Amended Counterclaims.

Best,
Alex



**Alex Alfano**
Associate
**Sterne, Kessler, Goldstein & Fox P.L.L.C.**
1101 K Street, NW, 10th Floor
Washington, DC 20005
<image002.png>
**Email:** aalfano@sternekessler.com
**Direct:** 202.772.8731
**Main:** 202.371.2600