1          THE HONORABLE KYMBERLEY K. EVANSON

2

3

4

5

6

7                  UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
8                            AT SEATTLE

9

10   SHENZHEN ROOT TECHNOLOGY CO., LTD.,      Case No. 2:23-cv-631
     HONG KONG LUTE TECHNOLOGY CO.,
     LIMITED, AND SHENZHEN CONGLIN E-
11   COMMERCE CO., LTD.,

12                Plaintiffs,                 **CHIARO TECHNOLOGY LTD.'S
                                              AMENDED COUNTERCLAIMS**
13        v.

14   CHIARO TECHNOLOGY Ltd.,

15                Defendant.

16   ─────────────────────────────────────

17   CHIARO TECHNOLOGY LTD.,

18                Counterclaim Plaintiff,

19   v.

20   SHENZHEN ROOT TECHNOLOGY CO., LTD.,
     HONG KONG LUTE TECHNOLOGY CO.,
     LIMITED, SHENZHEN CONGLIN E-
21   COMMERCE CO., LTD, SHENZHEN ROOT E-
     COMMERCE CO., LTD., SHENZHEN TPH
22   TECHNOLOGY CO., LTD., SHENZHEN
     LUTEJIACHENG NETWORK TECHNOLOGY
23   CO., LTD., and SHENZHEN JINRUIHANG
     TECHNOLOGY CO., LTD., SHENZHEN
24   XITAO NETWORK TECHNOLOGY CO., LTD.,

25                Counterclaim Defendants.

26

27



Defendant/Counterclaim Plaintiff Chiaro Technology Ltd. ("Defendant" or "Elvie") hereby submits its Amended Counterclaims to Plaintiff's Amended Complaint for Declaratory Judgment and Other Relief ("Amended Complaint") filed by Shenzhen Root Technology Co., Ltd. and its affiliates Hong Kong Lute Technology Co., Limited and Shenzhen Conglin e-Commerce Co., Ltd. (collectively "Plaintiffs").

## AMENDED COUNTERCLAIMS

Elvie asserts the following amended counterclaims against Counterclaim Defendants Shenzhen Root Technology Co., Ltd. Hong Kong Lute Technology Co., Ltd., and Shenzhen TPH Technology Co., Ltd. (collectively, "Plaintiffs"), as well as Shenzhen Root E-Commerce Co., Ltd., Shenzhen Lutejiacheng Network Technology Co., Ltd., and Shenzhen Xitao Network Technology Co., Ltd.

### Nature of the Counterclaims

1.      This counterclaim is for willful patent infringement of U.S. Patent Nos. 11,357,893 (the "'893 patent"), 11,413,380 (the "'380 patent"), 11,813,381 (the "'381 patent") and 11,806, 454 (the "'454 patent") (collectively, the "Asserted Patents") and breach of contract under Washington common law.

2.      Elvie alleges that Momcozy's S9, S9 Pro, S12, S12 Pro, M1, M5, V1, and V2 products (collectively, the "Accused Products") infringe at least one of the Asserted Patents.

3.      Elvie alleges that each of Momcozy's S9, S9 Pro, S12, S12 Pro, M1, and M5 products (collectively, the "Accused Products") infringe the '893 and '380 patents.

4.      Elvie alleges that the Momcozy S9, S9 Pro, S12, and S12 Pro additionally infringe the '381 patent.

5.      Elvie alleges that the Momcozy V1 and V2 infringe the '454 patent.

### The Parties

6.      Elvie is a company incorporated under the laws of England and Wales and located at 63-66 Hatton Garden, Second Floor, London, EC1N 8LE, United Kingdom.



7.      On information and belief, Shenzhen Root Technology Co., Ltd. ("Shenzhen Root") is a company formed in China with the address 2F2-201 Shenzhou Computer Building, Curie Madame Avenue, Longgang District, Shenzhen, China. On information and belief, Shenzhen Root is managed by Pan Silin as the General Manager and Executive Director and Pan Zhenxiang as the supervisor. Shenzhen Root is assigned the United Social Credit Code ("USCC") of 91440300MA5FX6EH4G.

8.      On information and belief, Hong Kong Lute Technology Co., Limited ("Hong Kong Lute") is a foreign corporation that is registered in the state of Colorado under the address 18121 E Hampden Ave, Unit C, #1007, Aurora, CO 80013. On information and belief, Pan Silin is listed as the sole Officer of Hong Kong Lute. Hong Kong Lute is formed under the laws of Hong Kong and has its principal place of business at Room 02, 21F Shek Kwan Commercial Building, 38 Bi Street, Yau Ma Tei, Kowloon, Hong Kong. Hong Kong Lute is assigned the company code of 3069869.

9.      As Plaintiffs have admitted, Shenzhen Root is a parent of Hong Kong Lute. *See* Plaintiffs' August 7, 2023 Responses to Defendant's First Set of Interrogatories, Interrogatory No. 2.

10.     As Plaintiffs have admitted, Hong Kong Lute is a subsidiary of Shenzhen Root. *See* Plaintiffs' August 7, 2023 Responses to Defendant's First Set of Interrogatories, Interrogatory No. 2.

11.     On information and belief, Shenzhen Conglin E-Commerce Co., Ltd. ("Shenzhen Conglin") is a company formed in China with the address 401D81, Leizhen Building, No. 40, Fuming Road, Futian District, Shenzhen, China. Shenzhen Conglin is managed by Gong Shaocong and Duan Shuyu. On information and belief, Shenzhen Conglin is assigned the USCC of 91440300MA5H3EYN0R.

12.     As Plaintiffs have admitted, Shenzhen Root is a parent of Shenzhen Conglin, which is owned in trust for the benefit of and is controlled by Shenzhen Root. *See* Plaintiffs' August 7, 2023 Responses to Defendant's First Set of Interrogatories, Interrogatory No. 2.

DEFENDANT'S AMENDED COUNTERCLAIMS – 3
Case No. 2:23-CV-631

LOWE GRAHAM JONES PLLC
1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

13.     As Plaintiffs have admitted, Shenzhen Conglin is a subsidiary of, is owned in trust for the benefit of, and is controlled by Shenzhen Root. *See* Plaintiffs' August 7, 2023 Responses to Defendant's First Set of Interrogatories, Interrogatory No. 2.

14.     On information and belief, Shenzhen TPH Technology Co., Ltd. ("Shenzhen TPH") is a company formed in China with the address 2F, Building 29, Lianchuang Technology Park II, Longgang District, Shenzhen, China. On information and belief, Shenzhen TPH is managed by Zianzi Chen and Yanhong Cai. According to Shenzhen E-Commerce and Hong Kong Dian Ying Industry Co. Ltd, Shenzhen TPH is responsible for the manufacture and sale to Shenzhen E-Commerce and Hong Kong Dian Ying Industry Co. Ltd of at least the S9, S12, and M1 breast pumps. On information and belief, Shenzhen TPH is assigned the USCC of 914403003352154174.

15.     On information and belief, Shenzhen Root E-Commerce Co., Ltd. ("Shenzhen E-Commerce") is a company formed in China with the address 2F2-208 Shenzhou Computer Building, Curie Madame Avenue, Longgang District, Shenzhen, China. On information and belief, Shenzhen E-Commerce recently changed its name to Shenzhen Yuyou Technology Co., Ltd. On information and belief, Shenzhen E-Commerce is managed by Yongge Zheng and Geyu Zheng. On information and belief, Shenzhen E-Commerce is assigned the USCC of 91440300359646166T.

16.     On information and belief, Shenzhen Lutejiacheng Network Technology Co., Ltd. ("Lutejiacheng") is a company formed in China with the address 2F2-201 Shenzhou Computer Building, Curie Madame Avenue, Longgang District, Shenzhen, China. On information and belief, Lutejiacheng also goes by the name "Shenzhen Lutejiacheng Technology Co., Ltd." On information and belief, Lutejiacheng is managed by Pan Silin and Pan Zhenxiang. On information and belief, Lutejiacheng is assigned the USCC of 91440300MA5FX6EH4G.

17.     On information and belief, Shenzhen Jinruihang Technology Co., Ltd. ("Jinruihang") is a company formed in China with the address Room 204, Building 59, Vanke Donghai'an, No. 216 Huanbi Road, Donghai'an, No. 216 Huanbi Road, Donghai'an Community,

DEFENDANT'S AMENDED COUNTERCLAIMS – 4
Case No. 2:23-CV-631

Meisha Street, Yantian District, Shenzhen, China. On information and belief, Jinruihang is assigned the USCC of 91440300MA5GKP331A.

18.     On information and belief, Shenzhen Xitao Network Technology Co., Ltd. ("Xitao") is a company formed in China with the address 2F2-209, Shenzhou Computer Building, Curie Madame Avenue, Longgang District, Shenzhen, China. On information and belief, Xitao is managed by Zhenxiang Pan. On information and belief, Xitao is assigned the USCC of 91440300MA5DCDL377.

19.     As Plaintiffs have admitted, Shenzhen Root is a parent of Jinruihang. *See* Plaintiffs' August 7, 2023 Responses to Defendant's First Set of Interrogatories, Interrogatory No. 2.

20.     As Plaintiffs have admitted, Jinruihang is a subsidiary of Shenzhen Root. *See* Plaintiffs' August 7, 2023 Responses to Defendant's First Set of Interrogatories, Interrogatory No. 2.

21.     As Plaintiffs have admitted, all shares of Jinruihang are owned by Tao Jin on behalf of and for the benefit of Shenzhen Root. *See* Plaintiffs' August 7, 2023 Responses to Defendant's First Set of Interrogatories, Interrogatory No. 2.

22.     On information and belief, Elvie is aware of two other entities, Hong Kong Dian Ying Industry Co., Ltd. and Smartlin, which may be entities separate from the Counterclaim Defendants and involved in the offer for sale, sale, and/or importation of the Accused Products.

**Jurisdiction and Venue**

23.     This is an action for patent infringement under 35 U.S.C. § 271 and breach of contract claims under Washington common law.

24.     This Court has subject matter jurisdiction pursuant to 35 U.S.C. § 271 for Elvie's claims of patent infringement arising under federal law. This Court has supplemental jurisdiction of Elvie's breach of contract claim pursuant to 28 U.S.C. § 1367, because such claims arise from the same set of operative facts and are so related to the claim arising from Elvie's claim of patent infringement. The Court's exercise of supplemental jurisdiction would promote judicial

DEFENDANT'S AMENDED COUNTERCLAIMS – 5
Case No. 2:23-CV-631

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

economy, convenience, fairness, and avert the risk of inconsistent adjudications of the same issues of law and fact.

25.     On information and belief, Shenzhen Root, Hong Kong Lute, Shenzhen Conglin, Lutejiacheng, Jinruihang, Xitao, and Shenzhen E-Commerce operate in the United States to sell the Accused Products through the brand name "Momcozy" and are related to the entities that represented Momcozy in the APEX Proceeding.

**A.      This Court has Personal Jurisdiction Over Shenzhen Root, Hong Kong Lute, and Shenzhen Conglin**

26.     Counterclaim Defendants Shenzhen Root, Hong Kong Lute, and Shenzhen Conglin have availed themselves of this forum in this action and are therefore subject to personal jurisdiction in this district. *See* Dkt # 54.

27.     On information and belief, Shenzhen Root, Hong Kong Lute, and Shenzhen Conglin sell the Accused Devices in the United States under the tradename "Momcozy." *See* Dkt. #29 at 33; Dkt. #39, ¶¶ 5, 10.

28.     On information and belief, Shenzhen Root is an entity responsible for importing, offering for sale, and selling the Accused Products in the United States. *See* Dkt. #39, ¶ 2.

29.     On information and belief, Shenzhen Root sells the Accused Products online, including at momcozy.com and Amazon.com. *See* Dkt. #39, ¶¶ 7, 10.

30.     As Plaintiffs have admitted, Shenzhen Root is responsible for the design, development, operation, manufacture, testing, marketing, distribution, sale, and importation into the United States of at least the S12 Pro products imported into the United States, either directly or through its subsidiaries. *See* Plaintiffs' August 7, 2023 Responses to Defendant's First Set of Interrogatories, Interrogatory No. 1.

31.     On information and belief, Hong Kong Lute is an entity responsible for importing, offering for sale, and selling the Accused Products in the United States. *See* Dkt. #29 at 33.

32.     On information and belief, Hong Kong Lute sells the Accused Products online, including at momcozy.com and Amazon.com. *See* Dkt. #29 at 33.

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

33.     By May 17, 2022, Hong Kong Lute, along with Shenzhen Lute Jiacheng Technology Co., Ltd., was listed on Momcozy.com as the entities behind Momcozy. *See* Dkt. #29 at 33. On information and belief, the listed Shenzhen Lute Jiacheng Technology Co., Ltd. is the same entity as Shenzhen Lutejiacheng Network Technology Co., Ltd. ("Lutejiacheng"). *See* Dkt. #39, ¶¶ 2–3.

34.     As Plaintiffs have admitted, Hong Kong Lute participated in the distribution and importation into the United States of the S12 Pro products. *See* Plaintiffs' August 7, 2023 Responses to Defendant's First Set of Interrogatories, Interrogatory No. 1.

35.     As Plaintiffs have admitted, Hong Kong Lute took possession of the S12 Pro products, including in Hong Kong, and caused those products to be imported into the United States. *See* Plaintiffs' August 7, 2023 Responses to Defendant's First Set of Interrogatories, Interrogatory No. 1.

36.     On information and belief, Shenzhen Conglin is an entity responsible for importing, offering for sale, and selling the Accused Products in the United States. *See* Dkt. #39, ¶ 10.

37.     On information and belief, Shenzhen Conglin sells the Accused Products online, including at momcozy.com and Amazon.com. *See* Dkt. #39, ¶ 10.

38.     As Plaintiffs have admitted, Shenzhen Conglin was involved in the distribution, marketing, and sales of S12 Pro products, including sales of those products in the United States via Amazon.com after importation into the United States. *See* Plaintiffs' August 7, 2023 Responses to Defendant's First Set of Interrogatories, Interrogatory No. 1.

39.     As Plaintiffs have admitted, Shenzhen Conglin marketed and sold the S12 Pro products via listings with Amazon.com. *See* Plaintiffs' August 7, 2023 Responses to Defendant's First Set of Interrogatories, Interrogatory No. 1.

40.     Therefore, this Court has personal jurisdiction over Shenzhen Root, Hong Kong Lute, and Shenzhen Conglin.

LOWE GRAHAM JONES ᴾᴸᴸᶜ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

**B.      This Court has Personal Jurisdiction Over Shenzhen TPH**

41.      On information and belief, based at least upon correspondence received from Plaintiffs' counsel, Shenzhen TPH is the manufacturer of the S9 and S12 breast pumps on behalf of Momcozy. Dkt. #29 at 170–71; Exhibits 1-2, FDA Website.

42.      On information and belief, based at least upon correspondence received from Plaintiffs' counsel, Shenzhen TPH has indemnified Shenzhen Root E-Commerce Co., Ltd. and Hong Kong Dian Ying Industry Co. Ltd. for any patent infringement of at least the S9, S12, and M1 breast pumps. Dkt. #29 at 170–71.

43.      On information and belief, Shenzhen TPH knowingly manufactured and sold, at least, the S9, S12, and M1 breast pumps to the entity called "Momcozy," or entities working on behalf of "Momcozy," knowing that they would be imported into and sold in the United States, including the State of Washington.

44.      On information and belief, Shenzhen TPH manufactures and sells to Counterclaim Defendants at least the S9, S12, and M1 breast pumps, knowing that the products will be imported into and sold in the United States.[1]

45.      On information and belief, Shenzhen TPH has indemnified Plaintiffs for charges of patent infringement against at least the S9, S12, and M1 breast pumps. Dkt. #29 at 170.

46.      On information and belief, Shenzhen TPH is aware of Elvie's patents. *See* Dkt. #29 at 170–71.

47.      On information and belief, Shenzhen TPH has informed Plaintiffs that the products it manufactures do not infringe any intellectual property, including Elvie's patents. *See* Dkt. #29 at 170–71.

48.      Therefore, this Court has personal jurisdiction over Shenzhen TPH.

---

[1] According to Pan Silin's declaration, the S12 Pro is not manufactured by Shenzhen TPH. *See* Dkt. #35 at 5. Elvie has propounded discovery regarding the correct identity of the manufacturer of each of the Accused Products.

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

1

**C.      This Court has Personal Jurisdiction Over Shenzhen E-Commerce**

2

49.      On information and belief, Shenzhen E-Commerce sells the Accused Devices in

3

the United States under the tradename "Momcozy." *See, e.g.*, Dkt. #29 at 27, 32.

4

50.      On information and belief, Shenzhen E-Commerce is an entity offering for sale

5

and selling Momcozy products, including the Accused Products, in the United States, including

6

this District, through, at least, its online website, momcozy.com. *See* Dkt. #29 at 27, 32.

7

51.      By at least November 29, 2020, Shenzhen E-Commerce was listed on

8

Momcozy.com as the entity behind Momcozy. *See* Dkt. #29 at 27, 32.

9

52.      By at least March 3, 2022, Shenzhen E-Commerce and Hong Kong Dian Ying

10

Industry Co., Limited were listed on Momcozy.com as the entities behind Momcozy. *See* Dkt.

11

#29 at 32.

12

53.      Therefore, this Court has personal jurisdiction over Shenzhen E-Commerce.

13

**D.      This Court has Personal Jurisdiction Over Lutejiacheng**

14

54.      On information and belief, Lutejiacheng sells the Accused Devices in the United

15

States under the tradename "Momcozy." *See* Ex. 22, FDA Lutejiacheng Registration.

16

55.      On information and belief, Lutejiacheng is an entity involved in the sale and

17

importation of the Accused Products into the United States.

18

56.      By May 17, 2022, Shenzhen Lute Jiacheng Technology Co., Ltd., along with

19

Hong Kong Lute, was listed on Momcozy.com as the entities behind Momcozy. *See* Dkt. #29 at

20

33. On information and belief, the listed Shenzhen Lute Jiacheng Technology Co., Ltd is the

21

same entity as Shenzhen Lutejiacheng Network Technology Co., Ltd. ("Lutejiacheng").

22

57.      On information and belief, Lutejiacheng is managed by Pan Silin, the alleged sole

23

founder and CEO of Shenzhen Root Technology Co., Ltd. Dkt. #19, ¶ 1.

24

58.      On information and belief, Momcozy's U.S. trademark registration for the mark

25

"Momcozy" was registered under Lutejiacheng's name. *See* Dkt. #35, ¶ 8; Dkt. #35, Ex. 29 at 1.

26

59.      On information and belief, Lutejiacheng registered the Accused Products with the

27

FDA in order to sell the Accused Products within the United States. *See* Exhibit 22, FDA

DEFENDANT'S AMENDED COUNTERCLAIMS – 9
Case No. 2:23-CV-631



1    Lutejiacheng Registration. On information and belief, Lutejiacheng offers for sale, sells, and/or

2    imports the Accused Products in the United States.

3        60.    On information and belief, Lutejiacheng made the Accused Products available for

4    sale in the United States with knowledge that the Accused Products infringed Elvie's patents. *See*

5    Dkt. #22, ¶ 12.

6        61.    On information and belief, Lutejiacheng has made the devices available for

7    purchase in the United States by registering the device with the FDA in the United States.

8        62.    Therefore, this Court has personal jurisdiction over Lutejiacheng.

9    **E.    This Court has Personal Jurisdiction Over Jinruihang**

10       63.    On information and belief, Jinruihang is a subsidiary of Shenzhen Root.

11       64.    As Plaintiffs have admitted, Jinruihang is a post-importation distributor through

12   Amazon.com of, at least, the S12 Pro products. *See* Plaintiffs' August 7, 2023 Responses to

13   Defendant's First Set of Interrogatories, Interrogatory No. 1.

14       65.    Based on representations from Plaintiffs' counsel, Elvie understands that

15   Jinruihang is the entity that sells the Momcozy products on Amazon.com through the United

16   States, including this District, under the name "Jinruixingkeji." *See* Dkt. #39, ¶ 10.

17       66.    On information and belief, Jinruihang sells the S12 Pro products throughout the

18   United States, including this District, through online marketplaces such as Amazon.com. *See*

19   Dkt. #39, ¶ 10.

20       67.    Therefore, this Court has personal jurisdiction over Jinruihang.

21       68.    Venue is proper in this judicial district under 28 U.S.C. §§ 1391, 1400, and as a

22   result of Counterclaim Defendants' choice of forum in filing this action.

23   **F.    The Court has Personal Jurisdiction Over Xitao**

24       69.    On information and belief, Xitao is an entity offering for sale and selling

25   Momcozy products, including the Accused Products, in the United States, including this District,

26   through, at least, its online website on Alibaba.com.

27

DEFENDANT'S AMENDED COUNTERCLAIMS – 10
Case No. 2:23-CV-631

LOWE GRAHAM JONES ᴾᴸᴸᶜ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

70.     Plaintiffs have admitted during discovery that Xitao is a post-importation distributor of, at least, the S12 Pro, S12, S9 Pro, S9, M1, and M5 products within the United States.

71.     Therefore, this Court has personal jurisdiction over Xitao.

72.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391, 1400, and as a result of Counterclaim Defendants' choice of forum in filing this action.

## Background

### A. Elvie's Innovations in Women's Health

73.     Elvie was founded in April 2013 by Tania Boler, an internationally recognized women's health expert, with the mission to revolutionize women's healthcare by developing smarter, "female first" technology that improves the health and lives of women.

74.     Since 2013, Elvie has innovated, developed, and sold products in women's healthcare categories, which have been overlooked for many years, including breast pumps and pelvic floor health. The first product to launch, Elvie Trainer, is an award-winning Kegel trainer and app that helps women strengthen the pelvic floor. Its second product, Elvie Pump, is the world's first silent, wearable breast pump. Elvie Pump launched during the 2018 London Fashion Week when Valeria Garcia walked the runway while wearing the Elvie Pump.

75.     Prior to the launch of the Elvie Pump, the breast pump industry had remained largely stagnant for almost half a century, with breast pumps being loud, big, and typically requiring an electrical outlet. Elvie invested substantial time and resources to investigate the issues women faced when using existing breast pumps. With its in-bra, discreet, silent, and wireless design, the Elvie Pump changed the way that mothers can breastfeed to meet the demands of their increasingly busier lives.

76.     In addition, Elvie Pump allows mothers to control the pump through a phone application. This allows mothers to customize the pump to fit their needs while giving them the freedom to pump whenever and wherever they would like.

LOWE GRAHAM JONES ᴘʟʟᴄ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

77.     Noted as one of "the biggest innovation[s] in pumping technology of the past 100 years," *See Elvie*, Core77 Design Awards 2019, https://designawards.core77.com/health-wellness/85273/Elvie (last accessed May 10, 2023), Elvie Pump's trailblazing technology includes a coin-sized pump, sleek design, and the ability to run quietly and discreetly.

78.     The Elvie Pump has won over 20 awards for its innovation including International Design Awards, Mumsnet Awards, Dezeen Awards, Baby Magazine Awards, The Red Dot Awards and Good Design Awards amongst others. *See* Ex. 3, Achievements at Elvie + Chiaro.

79.     For example, in 2019, TIME named the Elvie Pump as one of the "Best Inventions of 2019" (Exhibit 4); the Core77 Design Awards named the Elvie Pump as a runner up in the category of Health & Wellness (Exhibit 5); and Dezeen named the Elvie Pump the "Wearable Design of the Year." (Exhibit 6). In 2020, the European Centre awarded the Elvie Pump the 'Good Design Award." (Exhibit 7). Furthermore, in 2022, Forbes named the Elvie Pump the "Best Wearable Breast Pump." (Exhibit 8).

80.     In light of the Elvie Pump's groundbreaking technology and popularity, copycat devices (such as Momcozy's S12 Pro device) began appearing in the marketplace in the past several years. These devices are typically sold at a much lower price point than the Elvie Pump partly because, unlike Elvie, the manufacturers of these devices did not have to invest in extensive research & development, nor do they maintain 'hospital-grade' quality.

81.     In order to protect its pioneering technology, Elvie applied for and received numerous patents covering its innovative breast pump design and architecture.

82.     Elvie began filing patent applications on its design and architecture before Counterclaim Defendants ever sold a single breast pump.

**B.  The Asserted Patents**

83.     On June 14, 2022, the United States Patent and Trademark Office ("USPTO") duly and lawfully issued U.S. Patent No. 11,357,893 ("the '893 patent"), entitled, "Breast Pump System." A true and correct copy of the '893 patent is attached hereto as Exhibit 23. The '893 patent was exclusively licensed to Elvie, and Elvie possesses the exclusive right of recovery for



LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

1    any past, present, or future infringements of the '893 patent, including equitable relief and

2    damages.

3        84.    The '893 patent claims priority to a number of Great Britain patent applications

4    with priority dates as early as June 15, 2017. The '893 patent issued from U.S. Patent

5    Application No. 17/203,050 (the "'050 application"), which was filed on March 16, 2021. The

6    '050 application is a continuation of U.S. Patent Application No. 17/181,057 (the "'057

7    application"), which was filed on February 22, 2021. The '057 application is a continuation of

8    U.S. Patent Application 16/009,547 (the "'547 application"), which was filed on June 15, 2018

9    and issued as U.S. Patent No. 10,926,011.

10       85.    On August 16, 2022, the United States Patent and Trademark Office ("USPTO")

11   duly and lawfully issued U.S. Patent No. 11,413,380 (the "'380 patent"), entitled, "Breast Pump

12   System." A true and correct copy of the '380 patent is attached hereto as Exhibit 24. The '380

13   patent was exclusively licensed to Elvie, and Elvie possesses the exclusive right of recovery for

14   any past, present, or future infringements of the '380 patent, including equitable relief and

15   damages.

16       86.    The '380 patent claims priority to a number of Great Britain patent applications

17   with priority dates as early as June 15, 2017. The '380 patent issued from U.S. Patent

18   Application No. 17/203,327 (the "'327 application"), which was filed on March 16, 2021. The

19   '327 application is a continuation of U.S. Patent Application No. 17/181,057 (the "'057

20   application"), which was filed on February 22, 2021. The '057 application is a continuation of

21   U.S. Patent Application No. 16/009,547 (the "'547 application"), which was filed on June 15,

22   2018 and issued as U.S. Patent No. 10,926,011.

23       87.    On November 14, 2023, the United States Patent and Trademark Office

24   ("USPTO") duly and lawfully issued U.S. Patent No. 11,813,381 (the "'381 patent") entitled

25   "Breast Pump System." A true and correct copy of the '381 patent is attached hereto as Exhibit

26   26. The '381 patent was exclusively licensed to Elvie, and Elvie possesses the exclusive right of

27

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

1    recovery for any past, present, or future infringements of the '381 patent, including equitable

2    relief and damages.

3        88.    The '381 patent claims priority to a number of Great Britain patent applications

4    with priority dates as early as June 15, 2017. The '381 patent issued from U.S. Patent

5    Application No. 17/203,292 (the "'292 application"), which was filed on July 8, 2021. The '292

6    application is a continuation of U.S. Patent Application No. 17/181,057 (the "'057 application"),

7    which was filed on February 22, 2021. The '057 application is a continuation of U.S. Patent

8    Application No. 16/009,547 (the "'547 application"), which was filed on June 15, 2018 and

9    issued as U.S. Patent No. 10,926,011.

10       89.    The '893, '380, and '381 patents' priority date of June 15, 2017, is well before

11   Momcozy first entered the market in 2019. *See* Dkt #54, ¶ 3.

12       90.    On November 7, 2023, the United States Patent and Trademark Office

13   ("USPTO") duly and lawfully issued U.S. Patent No. 11,806,454 (the "'454 patent") entitled

14   "Wearable Breast Pump System." A true and correct copy of the '454 patent is attached hereto as

15   Exhibit 25. The '454 patent was exclusively licensed to Elvie, and Elvie possesses the exclusive

16   right of recovery for any past, present, or future infringements of the '454 patent, including

17   equitable relief and damages.

18       91.    The '454 patent claims priority to Great Britain patent application number

19   2004395 with a priority date as early as March 26, 2020. The '454 patent issued from U.S. Patent

20   Application No. 18/148,864 (the "'864 application"), which was filed on May 25, 2023. The

21   '454 application is a continuation of U.S. Patent Application No. 17/907,347 (the "'347

22   application"), which was filed on March 25, 2021.

23       92.    The '454 patent's priority date of March 26, 2020 is well before Momcozy first

24   sold the V1 and V2 products in the United States.

25

26

27

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

**C.  Momcozy's Unlawful Conduct**

      **1.**      **The Accused Products**

      93.      Seeing the success that Elvie achieved through its wearable breast pump inventions, Counterclaim Defendants began manufacturing, importing, and selling the Accused Products, which copy Elvie's architecture. Counterclaim Defendants make, use, sell, and offer for sale these breast pumps under the "Momcozy" name, including the S9, S9 Pro, S12, S12 Pro, M1, M5, V1, and V2 models.[2]

      94.      Counterclaim Defendants sell the Accused Products through online marketplaces, such as Amazon.com, Walmart.com, and on the Momcozy website. In part because Counterclaim Defendants merely copied Elvie's architecture and did not—and do not—invest the time and resources to develop an innovative product that Elvie did and continues to do, Counterclaim Defendants are able to make and sell the Accused Products at a much lower price point than Elvie.

      95.      Owing to their late entry into the marketplace using Elvie's by-then-known architecture, the Accused Products have not garnered the industry praise that Elvie's products did years before. Instead, Counterclaim Defendants tout their Amazon buyer reviews that, not surprisingly, focus merely on Momcozy's relatively lower prices.[3]

      96.      Forced to address Momcozy's copying, in June 2022, Elvie attempted to resolve the issue without Court action by sending a cease and desist letter to the entities, "Shenzhen Root E-Commerce Co., Ltd." and "Hong Kong Dian Ying Industry Co., Ltd." regarding Momcozy's sales of the S9, S12, and M1 Breast Pumps, that infringed upon Elvie's Patents, including the '893 patent. *See* Dkt. #1, Ex. 2 at 2–3. These entities were listed on the Momcozy website's

---

[2] To the extent Momcozy introduces additional products, Elvie reserves the right to obtain discovery on those products and further identify them as Accused Products. For example, Momcozy's website references an S10 product, but it is not currently available for purchase.

[3] It is also well known that Amazon buyer reviews are easily manipulated. *See, e.g.*, Ex. 9, https://www.bloomberg.com/news/articles/2021-08-18/amazon-amzn-cracks-down-on-fake-reviews-hitting-chinese-retailers#xj4y7vzkg; *see also* https://www.wsj.com/articles/how-scammers-in-china-manipulate-amazon-11545044402.

LOWE GRAHAM JONES ᴾᴸᴸᶜ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

"Contact Us" page with their respective address. Elvie included copies of its patents in the letter. *See id.*

97.     In response to Elvie's letter, the entities informed Elvie that "Shenzhen TPH Technology Co., Ltd." was the alleged manufacturer of the Accused Products and that the entity "had warranted and guaranteed that it has complete intellectual property rights for those products, which do not infringe any intellectual property rights of others, including the '893 patent." *See* Dkt. #29 at 170. Momcozy continued to sell its Accused Products.

### 2.     The APEX Proceeding

98.     Elvie sought relief from Amazon itself and, on January 30, 2023, Elvie received notice that its request to participate in the Amazon APEX proceeding as to Momcozy's S12 and S12 Pro devices infringing the '893 patent had been accepted. *See* Dkt. #29, Ex. 20.

99.     Two different entities responded as the "Seller" on behalf of Momcozy, "Smartlin" and "Jinruixingkeji," and agreed to participate in the APEX proceeding. *See* Dkt. #53-7; Dkt. #53-8. The person signing on behalf of the Seller was Tao Jin. *See* Dkt. #53-7.  Gong Shaocong likewise signed on behalf of Smartlin. Dkt. #53-8.

100.     As a part of the APEX proceeding, each party had to sign an Agreement (the "APEX Agreement") detailing the procedure of the APEX proceeding. *See* Dkt. #53-7 at 1. Specifically, the APEX Agreement notes that, "Participants agree not to disclose to third parties information or documents learned from other participants, Amazon, or Evaluator in the Evaluation, except to their respective affiliates, legal counsel or as required by law." *See id.* § 2.

101.     Amazon designed its APEX procedure "[t]o efficiently resolve claims that third-party product listings infringe utility patents." Dkt. #20-5 at 1. "APEX is voluntary, confidential, and allows owners of U.S. utility patents or their authorized representatives, such as attorneys or exclusive licensees . . . to obtain a fast evaluation of patent infringement claims against products . . . , identified by Amazon Standard Identification Number, listed by third-party sellers . . . on amazon.com." *Id.*

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

102.     If sellers volunteer to participate, a Neutral Patent Evaluator reviews a patent infringement claim against the seller's product listings on Amazon.com. *Id*. The Evaluator will set a schedule for submission of written arguments. *Id*. In general, the Schedule will provide: (i) the Patent Owner with 14 days for its initial arguments; (ii) Sellers with 14 days to respond; and (iii) the Patent Owner with 7 days to reply. *Id*. The Patent Owner may use a total of 20 double-spaced 8.5 x 11" pages between its two submissions. *Id*. Each Seller may use 15 double-spaced pages in its response. *Id*. Claim charts and exhibits are not counted against page limits. *Id*. "To make the Evaluation fast, efficient, and relatively low-cost, it is limited to one claim from one unexpired U.S. utility patent." *Id*.  There are no depositions, document requests, or other forms of discovery. *Id*. The evaluator will make a yes/no decision about whether the patent covers the product listings." *Id*.

103.     An experienced, partner-level patent attorney at a Boston law firm was assigned as the Neutral Patent Evaluator ("NPE") and the parties each submitted their briefing to the NPE. Elvie submitted its opening brief on March 20, 2023. *See* Dkt. #20, Ex. 6. In its opening brief, Elvie provided detailed allegations of infringement with respect to the Momcozy products at issue, including the image provided below comparing Momcozy's S12 product with the '893 patent. *See* Dkt. #20, Ex. 6 at 3.



104.    Two weeks later, the entities appearing on behalf of Momcozy submitted identical responsive briefs. The parties were allowed unlimited pages for exhibits and non-infringement charts. Notably, these responsive briefs contained the same non-infringement arguments the Plaintiffs are alleging in this case.

105.    One week later, Elvie submitted its reply brief.

106.    After a 7-week briefing schedule, the NPE found that Elvie had shown a likelihood of success of showing infringement despite the same non-infringement arguments Plaintiffs continue to allege. Amazon removed the infringing Momcozy Amazon listings from the marketplace the next day on April 25, 2023. *See* Dkt # 1 at 9.

107.    Despite the NPE's finding that Elvie demonstrated a likelihood of success of showing infringement and Amazon subsequently removing the product listings, Momcozy decided to relist its S12 Pro product back on Amazon.

**3.    The Declaratory Judgment Action**

108.    Despite the NPE informing Counterclaim Defendants that the S12 and S12 Pro products are likely to infringe claim 1 of the '893 patent, Counterclaim Defendants continue to make, use, sell, and offer for sale those products at least on its website.

109.    On information and belief, Counterclaim Defendants did not and have not informed Walmart or any other reseller of the Momcozy S12 and S12 Pro of the NPE's determination regarding infringement.

110.    Instead, on April 28, 2023, Plaintiffs filed a Declaratory Judgment Action against Elvie seeking a declaratory judgment that its S12 and S12 Pro devices do not infringe the '893 patent. *See generally* Dkt. #1.

111.    By the time Plaintiffs filed their Declaratory Judgment Action, Elvie had interacted with no less than seven different entities claiming to be Momcozy.

112.    Despite signing the APEX Agreement, which contained a confidentiality clause, Plaintiffs publicly used documents and information they received through the APEX Proceeding

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

to support their Complaint, including a detailed discussion of Elvie's infringement arguments in the APEX Proceeding. *See* Dkt. #1, ¶ 20.

113.   Plaintiffs then filed for a Temporary Restraining Order ("TRO") claiming immediate harm despite their extensive delay in seeking a TRO. *See* Dkt. #17. Again, Plaintiffs publicly used information considered confidential under the APEX Agreement to support its claims. *See, e.g. id.* at 12; *see also* Dkt. #20, Ex. 6; Dkt. #22, Exs. 10–11, 15–16.

114.   In its Opposition to Plaintiffs' TRO, Elvie pointed out that it had never heard of the then sole Plaintiff entity, Shenzhen Root Technology Co., Ltd., or Pan Silin. *See* Dkt. #28 at 9–10. Rather, the only Momcozy-related entities Elvie was aware of were (1) the recipients of Elvie's cease-and-desist correspondence ("Shenzhen Root E-Commerce Co., Ltd." and "Hong Kong Dian Ying Industry Co. Ltd." *See id.* at 10; *see also id.* Ex. 18); (2) Shenzhen TPH Technology Co., Ltd., the entity Shenzhen Root E-Commerce Co., Ltd. and Hong Kong Dian Ying Industry Co. Ltd. pointed out to Elvie as the manufacturer of the S12 product (*see id.* Ex. 17); and (3) the participants in the APEX proceeding ("Smartlin" and "Jinruixingkeji").

115.   In response, Pan Silin submitted a declaration stating that "Shenzhen Root Technology Co., Ltd." is the same entity as "Shenzhen Root E-Commerce Co., Ltd." *See* Dkt. #39, ¶ 2.

116.   However, public records show that Shenzhen Root Technology Co., Ltd. and Shenzhen Root E-Commerce Co., Ltd. are not the same entities.

117.   Rather, Shenzhen Root Technology Co. has a USCC of 91440300MA5FX6EH4G while Shenzhen Root E-Commerce Co., Ltd. has a USCC of 91440300359646166T. *Compare* Dkt. #35-1 at 5, Dkt. #35-2 at 2, 4 *with* Dkt. #53, Ex. 4 at 8 (disclosing the latter USCC and a 2022 name change from "Shenzhen Lute (Root) E-Commerce Co. Ltd." to yet another undisclosed company "Shen Zhen Yuyou Technology Co., Ltd.").

118.   Elvie has propounded discovery regarding the relationship between these entities and regarding the corporate structure of the Counterclaim Defendants.

119.   Plaintiffs TRO was eventually denied. *See* Dkt. #43.

DEFENDANT'S AMENDED COUNTERCLAIMS – 19
Case No. 2:23-CV-631

LOWE GRAHAM JONES℠
1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

120.     In the Order Denying the TRO, the Court stated that "based on its initial review of the '893 Patent, the Court tentatively believes that Plaintiff is likely to prevail on the merits" but that "the harms cited are not so immediate and irreparable that an emergency TRO is appropriate." Dkt. #43 at 7. The Order further stated that it "will further evaluate the motion at the preliminary-injunction stage with the benefit of additional briefing and a hearing." Dkt. #43 at 6–7.

121.     However, Plaintiffs used the Court's TRO denial to request that Amazon relist the Accused Products. *See* Dkt. #53-1 at 2. Amazon stated that, "we are interpreting the TRO order as an order finding that the S12 Pros do not infringe." Dkt. #53-1 at 2. Amazon subsequently relisted the S12 and S12 Pro products. *See id.*

122.     Because Elvie did not receive a full and fair opportunity to respond to Plaintiffs' TRO, Elvie filed a Motion for Reconsideration to clarify the Court's Order when denying the TRO. *See* Dkt. #53. There, Elvie pointed out the discrepancies in Pan Silin's declaration, including facts relating to whether the Court has jurisdiction over Plaintiff Shenzhen Root's case, as described on pages 6 and 7.

123.     In response, Plaintiffs filed a new complaint adding two new plaintiffs, Hong Kong Lute Technology Co., Ltd. and Shenzhen Conglin E-Commerce Co., Ltd. *See* Dkt. #54. Once again, neither of these entities were the entities Elvie communicated with for the cease-and-desist letter or through the APEX Proceeding.

124.     On May 31, 2023, Elvie filed a Motion for Reconsideration, seeking modification of the Court's Order Denying the TRO. *See* Dkt. #53. The Court denied Elvie's Motion for Reconsideration but stated in its Order that "its merits determination is—as the order states—at most 'tentative.'" *See* Dkt. #59 at 2.

125.     The Court also noted regarding the jurisdiction issue that "[s]ome of the facts raised by Defendants are troubling." *See* Dkt. #59 at 3.

**4.     Counterclaim Defendants' Infringing Activity is Willful**

126.     Counterclaim Defendants' infringing conduct is willful.

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

127.    On information and belief, Defendants sought to copy Elvie's patented products, including the Elvie Pump and Elvie Stride. Moreover, Elvie provides notice to prospective infringers of its extensive patent portfolio via its website in order to protect its hard-earned innovations.  *See* https://www.elvie.com/en-us/patents. This publication satisfies the standard for constructive notice under 35 U.S.C. § 287(a) for purposes of virtual patent marking.

128.    Counterclaim Defendants were on notice that the Accused Products infringed Elvie's patents since, at least, June 22, 2022, when Elvie sent Momcozy a cease-and-desist letter. *See* Dkt #1-4 at 2–3; Dkt. #29 at 170–71.

129.    Despite Elvie's cease-and-desist letter, Counterclaim Defendants continued to sell the Accused Products. *See, e.g.*, Dkt. #53-1.

130.    Through the APEX Proceeding, Counterclaim Defendant received detailed knowledge of how its Accused Products infringed, at least, claim 1 of the '893 patent. *See, e.g.*, Dkt. #20, Ex. 6.

131.    Despite receiving this knowledge, Counterclaim Defendants continued to sell its Accused Products.

132.    Through the APEX Proceeding, a neutral third-party determined that it was likely Momcozy's products infringed, at least, claim 1 of the '893 patent.

133.    Despite these findings, Counterclaim Defendants continued to sell its Accused Products.

134.    Instead of ceasing the sale of the Accused Products that infringed Elvie's patents, Counterclaim Defendants filed a Declaratory Judgment Action against Elvie because Amazon requires a finding of non-infringement or invalidity to continue selling on Amazon.

135.    In addition, Counterclaim Defendants filed for a TRO, which was denied.

136.    In its Order denying the TRO, the Court never made a finding of non-infringement or invalidity.

137.    In its Order denying the TRO, the Court requested Elvie show cause of why it should not grant a preliminary injunction.

DEFENDANT'S AMENDED COUNTERCLAIMS – 21
Case No. 2:23-CV-631

LOWE GRAHAM JONES ᴾᴸᴸᶜ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

138.   Before Elvie could respond with its full briefing, Counterclaim Defendants submitted the Order denying the TRO to Amazon, which Amazon then interpreted as the Court making a finding of non-infringement.

139.   Amazon took the Order denying the TRO as a finding of non-infringement and relisted Counterclaim Defendant's Accused Products at Counterclaim Defendant's insistence.

140.   Plaintiffs withdrew the Motion to TRO, denying Elvie the chance to fully respond to Plaintiffs allegations of non-infringement.

141.   To date, the only fully briefed ruling that has been made is that the Accused Products infringe, at least, claim 1 of the '893 patent.

142.   Despite this, Counterclaim Defendants continue to sell the Accused Products.

143.   Counterclaim Defendants' willful conduct began, at least, as of the date of Elvie's cease-and-desist letter. The willful conduct was only compounded when it received the NPE's determination that the Accused Products likely infringed the '893 patent.

144.   Counterclaim Defendants' willful conduct continued on when it received the TRO denial and used that denial to ask Amazon to re-list its Accused Products on Amazon despite knowing it had not yet received a finding of non-infringement.

145.   Counterclaim Defendants should be deemed to willfully infringe the Asserted Patents, at least, as of June 2022 or the date of issuance, whichever is earlier.

146.   In addition, on information and belief, Counterclaim Defendants' marketing mimics that of Elvie's. For example, the following S12 advertisement that began running on September 26, 2023 copies the imagery of Elvie's long-running advertisement of the Elvie Pump available on at least Elvie's Amazon page:

DEFENDANT'S AMENDED COUNTERCLAIMS – 22
Case No. 2:23-CV-631

LOWE GRAHAM JONES ᴾᴸᴸᶜ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301



147.    Further, Counterclaim Defendants' V1 and V2 products are nearly identical to Elvie's Stride product that is covered by the '454 patent. Elvie's patents, including those covering the Elvie Stride, are listed on Elvie's website. *See, e.g.*, https://www.elvie.com/en-us/patents.

148.    Counterclaim Defendants' knowledge of the Asserted Patents and the Accused Products' infringement thereof is sufficient to satisfy the knowledge element for induced, contributory, and willful infringement.

149.    Elvie is entitled to trebled damages for Counterclaim Defendants' willful infringement.

<u>Count I</u>

**(Infringement of U.S. Patent No. 11,357,893)**

150.    The allegations of paragraphs 1 through 149 are realleged and reincorporated by reference as if fully set forth herein.

DEFENDANT'S AMENDED COUNTERCLAIMS – 23
Case No. 2:23-CV-631

151. The '893 patent is directed towards a wearable breast pump system including a housing shaped at least in part to fit inside a bra and an air-pump. Exemplary claim 1 of the '893 patent recites:

> A breast pump device that is configured as a self-contained, in-bra wearable device, the breast pump device containing:
> a housing that includes:
> a battery, and
> a pump powered by the battery and generating negative air pressure;
> a breast shield made up of a breast flange and a nipple tunnel;
> a milk container that is configured to be attached to and removed from the housing; and
> a diaphragm configured to be seated against a diaphragm holder that forms a recess or cavity at least in part with an external surface of the housing, the diaphragm deforming in response to changes in air pressure caused by the pump to create negative air pressure in the nipple tunnel.

152. Counterclaim Defendants have directly infringed and continue to directly infringe one or more claims of the '893 patent in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, selling, and/or importing into the United States products that include, but are not limited to, the S9, S9 Pro, S12, S12 Pro, M1, and M5 devices. For example, Counterclaim Defendants' Accused Products include or perform each and every limitation of at least, claim 1 of the '893 patent, either literally or under the doctrine of equivalents.

153. Elvie attaches hereto Exhibits 10-15 which provide exemplary claim charts describing how the Accused Products meet the limitations described in claim 1 of the '893 patent.

154. Counterclaim Defendants also indirectly infringe one or more claims of the Asserted Patents in violation of 35 U.S.C. § 271(b) and/or (c) by actively inducing infringement of the Asserted Patents by other by offering to sell or selling within the United States a device covered by the claims of the Asserted Patents that is not a staple article or commodity of the commerce suitable for substantial non-infringing uses.

155. For example, Counterclaim Defendants instruct customers of their Accused Products on how to use and operate the Accused Products.

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

156.    Counterclaim Defendants' direct and indirect infringement of the '893 patent has been, and continues to be, willful. On information and belief, Plaintiffs have been aware of the '893 patent since before the filing of this Complaint and has infringed the '893 patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271.

157.    Counterclaim Defendants' infringement of the '893 patent has damaged, and continues to damage Elvie in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that Elvie would have made but for Momcozy's infringing acts as provided by 35 U.S.C. § 284.

158.    Elvie will suffer irreparable harm unless Plaintiffs are enjoined from infringing the '893 patent.

## Count II

### (Infringement of U.S. Patent No. 11,413,380)

159.    The allegations of paragraphs 1 through 158 are realleged and reincorporated by reference as if fully set forth herein.

160.    The '380 patent is directed towards a wearable breast pump system including a housing shaped at least in part to fit inside a bra and an air-pump. Exemplary claim 29 of the '380 patent recites:

> A breast pump device that is configured as a self-contained, in-bra wearable device, the breast pump device comprising:
> a self-contained, in-bra wearable device comprising:
> a housing that includes:
> > a rechargeable battery,
> > a power charging circuit for controlling charging of the rechargeable battery,
> > control electronics powered by the rechargeable battery,
> > a pump powered by the rechargeable battery and configured to generate negative air pressure, and
> > a Universal Serial Bus (USB) charging socket for transferring power to the power charging circuit and the rechargeable battery;
> a breast shield made up of a breast flange and a nipple tunnel;
> a milk container that is configured to be attached to and removed from the housing; and
> a membrane that is configured to define a pumping chamber at least in part with an external surface of the housing, the membrane configured to deform in response to changes in air pressure caused by the pump to create negative air pressure in the nipple tunnel.

LOWE GRAHAM JONES PLLC
1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

161.    Counterclaim Defendants have directly infringed and continue to directly infringe one or more claims of the '380 patent in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, selling, and/or importing into the United States products that include, but are not limited to, the S9, S9 Pro, S12, S12 Pro, M1, and M5 devices. For example, Counterclaim Defendants' Accused Products include or perform each and every limitation of at least, claim 29 of the '380 patent, either literally or under the doctrine of equivalents.

162.    Elvie attaches hereto Exhibits 16–21 which provide exemplary claim charts describing how the Accused Products meet the limitations described in claim 29 of the '380 patent.

163.    Counterclaim Defendants also indirectly infringe one or more claims of the '380 patent in violation of 35 U.S.C. § 271(b) and/or (c) by actively inducing infringement of the '380 patent by offering to sell or selling within the United States a device covered by the claims of the '380 patent that is not a staple article or commodity of the commerce suitable for substantial non-infringing uses.

164.    For example, Counterclaim Defendants instruct customers of their Accused Products on how to use and operate the Accused Products.

165.    Counterclaim Defendants' direct and indirect infringement of the '380 patent has been, and continues to be, willful. On information and belief, Counterclaim Defendants have been aware of the '380 patent since before the filing of this Complaint and has infringed the '380 patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271.

166.    Counterclaim Defendants' infringement of the '380 patent has damaged, and continues to damage, Elvie in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that Elvie would have made but for Counterclaim Defendants' infringing acts as provided by 35 U.S.C. § 284.

167.    Elvie will suffer irreparable harm unless Counterclaim Defendants are enjoined from infringing the '380 patent.

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

1

2

### Count III

### (Infringement of U.S. Patent No. 11,813,381)

3     168.    The allegations of paragraphs 1 through 167 are realleged and reincorporated by

4 reference as if fully set forth herein.

5     169.    The '381 patent is directed towards a wearable breast pump system including a

6 housing shaped at least in part to fit inside a bra and an air-pump. Exemplary claim 1 of the '381

7 patent recites:

8        A breast pump device comprising:
           a self-contained, in-bra wearable device comprising:

9                a diaphragm configured to prevent milk from reaching an air pump by
                    forming a seal around its outer edge;

10           a housing that includes:
                a battery, and

11                the air pump powered by the battery and configured to generate
                    negative air pressure by driving the diaphragm;

12           a breast shield comprising a breast flange and a nipple tunnel extending from the
              breast flange, the nipple tunnel comprising a closed end and a milk port

13              intermediate to the breast flange and the closed end, and the breast shield
              being separate from the diaphragm; and

14           a milk container that is configured to attach to the housing and receive expressed
              milk via the milk port.

15     170.    Counterclaim Defendants have directly infringed and continue to directly infringe

16 one or more claims of the '381 patent in violation of 35 U.S.C. § 271(a) by making, using,

17 offering to sell, selling, and/or importing into the United States products that include, but are not

18 limited to, the S9, S9 Pro, S12, and S12 Pro. For example, Counterclaim Defendants' Accused

19 Products include or perform each and every limitation of at least, claim 1 of the '381 patent,

20 either literally or under the doctrine of equivalents.

21     171.    Elvie attaches hereto Exhibits 27-30 which provide exemplary claim charts

22 describing how the Accused Products meet the limitations described in claim 1 of the '381

23 patent.

24     172.    Counterclaim Defendants also indirectly infringe one or more claims of the

25 Asserted Patents in violation of 35 U.S.C. § 271(b) and/or (c) by actively inducing infringement

26 of the Asserted Patents by others by offering to sell or selling within the United States a device

27



Lowe Graham Jones pllc

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

covered by the claims of the Asserted Patents that is not a staple article or commodity of the commerce suitable for substantial non-infringing uses.

173. For example, Counterclaim Defendants instruct customers of their Accused Products on how to use and operate the Accused Products.

174. Counterclaim Defendants' direct and indirect infringement of the '381 patent has been, and continues to be, willful. On information and belief, Plaintiffs have been aware of the '381 patent since its issuance date and has infringed the '381 patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271.

175. Counterclaim Defendants' infringement of the '381 patent has damaged, and continues to damage Elvie in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that Elvie would have made but for Momcozy's infringing acts as provided by 35 U.S.C. § 284.

176. Elvie will suffer irreparable harm unless Counterclaim Defendants are enjoined from infringing the '381 patent.

## Count IV

### (Infringement of U.S. Patent No. 11,806,454)

177. The allegations of paragraphs 1 through 176 are realleged and reincorporated by reference as if fully set forth herein.

178. The '454 patent is directed towards a wearable breast pump system including a housing shaped at least in part to fit inside a bra and an air-pump. Exemplary claim 17 of the '454 patent recites:

> A breast pump system comprising:
> a control unit comprising:
> a battery, and
> a pump configured to be powered by the battery and to generate negative air pressure; and
> a wearable milk collection hub configured to connect to the control unit via an air line, the wearable milk collection hub comprising:
> a breast shield comprising:
> a breast flange; and
> a nipple tunnel extending from the breast flange;

LOWE GRAHAM JONES ᴾᴸᴸᶜ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

> a diaphragm configured to deform based on the negative air pressure generated by the pump to create negative air pressure in the nipple tunnel;
> an outer shell comprising a rear end configured to removably attach to the breast shield and, an interior volume between the outer shell and the breast shield defining a chamber to receive expressed milk; and
> a diaphragm cap configured to cover and seal the diaphragm at a front end of the outer shell, the front end being opposite to the rear end, the diaphragm cap forms a central region on a front surface of the outer shell.

179.    Counterclaim Defendants have directly infringed and continue to directly infringe one or more claims of the '454 patent in violation of 35 U.S.C. § 271(a) by making, using, offering to sell, selling, and/or importing into the United States products that include, but are not limited to, the V1 and V2. For example, Counterclaim Defendants' V1 and V2 include or perform each and every limitation of at least, claim 17 of the '454 patent, either literally or under the doctrine of equivalents.

180.    Elvie attaches hereto Exhibits 31-32 which provide exemplary claim charts describing how the V1 and V2 products meet the limitations described in claim 17 of the '454 patent.

181.    Counterclaim Defendants also indirectly infringe one or more claims of the Asserted Patents in violation of 35 U.S.C. § 271(b) and/or (c) by actively inducing infringement of the Asserted Patents by others by offering to sell or selling within the United States a device covered by the claims of the Asserted Patents that is not a staple article or commodity of the commerce suitable for substantial non-infringing uses.

182.    For example, Counterclaim Defendants instruct customers of their V1 and V2 products on how to use and operate the V1 and V2 products.

183.    Counterclaim Defendants' direct and indirect infringement of the '454 patent has been, and continues to be, willful. On information and belief, Plaintiffs have been aware of the '454 patent since its issuance date and has infringed the '454 patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271.

184.    Counterclaim Defendants' infringement of the '454 patent has damaged, and continues to damage Elvie in an amount yet to be determined, of at least a reasonable royalty



LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

1    and/or lost profits that Elvie would have made but for Momcozy's infringing acts as provided by

2    35 U.S.C. § 284.

3         185.    Elvie will suffer irreparable harm unless Counterclaim Defendants are enjoined

4    from infringing the '454 patent.

5                                      **Count V**

6                                **(Breach of Contract)**

7         186.    The allegations of paragraphs 1 through 185 are realleged and reincorporated by

8    reference as if fully set forth herein.

9         187.    The APEX Agreement is a valid, binding, and enforceable agreement between

10   Elvie and Momcozy that was made for valid consideration, including the exchange of

11   information intended to facilitate the APEX proceeding.

12        188.    Elvie fully performed its contractual duties and obligations under the APEX

13   Agreement.

14        189.    Under the Agreement, Momcozy was prohibited from "disclos[ing] to third

15   parties information or documents learned from" the APEX proceeding. Dkt. #53-7 § 2.

16        190.    In the filing of its complaint, Plaintiffs publicly disclosed information and

17   documents that it learned from the APEX proceeding, including, but not limited to,

18   communications with Amazon. *See* Dkt. #20, Ex. 6; Dkt. #22, Exs. 10–14; Dkt. # 54, Amended

19   Compl. ¶ 28; Dkt. #21, Motion for TRO at 2, 19–20.

20        191.    As a result of Plaintiffs' breach of the Apex Agreement, Elvie has suffered

21   damages in an amount to be proven at trial, including Amazon's decision to reinstate Momcozy's

22   Accused Products on its website.

23

24                                 **PRAYER FOR RELIEF**

25        WHEREFORE, Defendant and Counterclaim Plaintiff Elvie requests that this Court enter

26   judgment in favor against Counterclaim Defendants and grant to Elvie the following relief:

27        A.      Find that Counterclaim Defendants are infringing the Asserted Patents in violation

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

of 35 U.S.C. § 271 (a), (b), and/or (c);

      B.     Enter an order preliminarily and permanently enjoining Counterclaim Defendants, their officers, directors, agents, servants, employees, and all other persons in privity or acting in concert with them who receive actual notice of the order by person serve or otherwise, from any further acts of infringement of the Asserted Patents;

      C.     Award Elvie damages in an amount adequate to compensate Elvie for Counterclaim Defendants' infringement of the Asserted Patents;

      D.     Treble any and all damages award to Elvie by reason of Defendants' willful infringement of the Asserted Patents pursuant to 35 U.S.C. § 284;

      E.     Award Elvie interest on damages award and their costs pursuant to 35 U.S.C. § 284;

      F.     Find that this is an exceptional case and awarding Elvie its reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

      G.     Find that Counterclaim Defendants breach the APEX Agreement under Washington common law;

      H.     Award Elvie recoverable damages in an amount to be determined at trial, including an award of compensatory and actual damages, punitive damages, reasonable attorneys' fees, prejudgment interest, post-judgment interest, and costs; and

      I.     Award such other and further relief as this Court deems proper.

## <u>DEMAND FOR JURY TRIAL</u>

Elvie respectfully requests a trial by jury of all issues properly triable by jury in this action.

Executed this 1st day of May 2024.

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

Respectfully submitted,

Lowe Graham Jones PLLC

Mark P. Walters, WSBA No. 30819
Mitchell D. West, WSBA No. 53103
*walters@LoweGrahamJones.com*
*west@LoweGrahamJones.com*
1325 Fourth Avenue, Suite 1130
Seattle, WA 98101
T: 206.381.3300
F: 206.381.3301

Nirav N. Desai (*pro hac vice*)
Josephine Kim (*pro hac vice*)
Alexander Covington (*pro hac vice*)
Alex Alfano (*pro hac vice*)
Joseph Kim (*pro hac vice*)
Paige Cloud (pending *pro hac vice*)
Michael Webb (*pro hac vice*)
Richa Patel (*pro hac vice*)
Zachary L. Jacobs (*pro hac vic*)
Christopher Coleman (*pro hac vice*)
**STERNE, KESSLER, GOLDSTEIN & FOX PLLC**
1101 K St NW, 10th Floor
Washington, DC 20005
Telephone: 202.371.2600
Facsimile: 202.371.2540

DEFENDANT'S AMENDED COUNTERCLAIMS – 32
Case No. 2:23-CV-631



LOWE GRAHAM JONES PLLC
1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301